ORIGINAL

CV 18-4586

Page 2

PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF
HABEAS CORPUS BY A PERSON IN STATE CUSTODY

MATSUMOTO, J.

| United States District Court | District _Eastern_ |
|---|---|
| Name (under which you were convicted): _Anthony Rucano_ | Docket or Case No.: _Ind # 270/09_ |
| Place of Confinement: _Green Haven Correctional Facility_ | Prisoner No.: _11A0528_ |

Petitioner (include the name under which you were convicted)

_Anthony Rucano_  v.  _J. LaManna_

Respondent (authorized person having custody of petitioner)

The Attorney General of the State of _New York_

RECEIVED
AUG 10 2018
PRO SE OFFICE

## PETITION

1. (a) Name and location of court that entered the judgment of conviction you are challenging: _Richmond County Supreme Court, 18 Richmond Terrace, Staten Island, N.Y._

   (b) Criminal docket or case number (if you know): _Indictment # 270/09_

2. (a) Date of the judgment of conviction (if you know): _September 21st, 2010_

   (b) Date of sentencing: _January 21st, 2011_

3. Length of sentence: _12 Year Determinate Sentence_

4. In this case, were you convicted on more than one count or of more than one crime?   Yes ☒   No ☐

5. Identify all crimes of which you were convicted and sentenced in this case: _First Degree Rape - Sept. 28th, 2009, (P.L. §130.35[1]) - Count 6; First Degree Criminal Sexual Act Assault - Sept. 25, 2009 (P.L. §130.50[1]), - Count 10; Att. First Degree Rape - Sept. 25th 2009 (PL §§110/130.35[1]) - Count 11; Second Degree Assault, Sept. 28th 2009 (P.L. §120.05[6]) - Count 18; Third Degree Crim. Poss. of a Weapon - Sept. 3rd 2009 (P.L. §§ 265.01[2], 260.05[2]) - Count 23; Third Degree Assault - Sept. 3rd, 2009 (P.L. §120.00[1]) - Count 24_

6. (a) What was your plea? (Check one) _Counts 7, 12-15, 17, 19-22, 25 (11 counts dismissed by court in charge conference)_

   (1) Not guilty ☒          (3) Nolo contendere (no contest) ☐

   (2) Guilty ☐              (4) Insanity plea ☐

   (b) If you entered a guilty plea to one count or charge and a not guilty plea to another count or charge, what did you plead guilty to and what did you plead not guilty to? _N/A_

(c) If you went to trial, what kind of trial did you have? (Check one)

Jury ☒   Judge only ☐

7. Did you testify at either a pretrial hearing, trial or a post-trial hearing?

Yes ☐  No ☒

8. Did you appeal from the judgment of conviction?

Yes ☒ No ☐

9. If you did appeal, answer the following:

(a) Name of court: Appellate Division, Second Department

(b) Docket or case number (if you know): APP. Div. Case # 2011-01960

(c) Result: Affirmed

(d) Date of result (if you know): July 1st, 2015

(e) Citation to the case (if you know): People v. Rucano, 130 AD3d 656, 10 NY3d 892 (2nd Dept. 2015)

(f) Grounds raised: Point 1= Failed to Prove Guilt Upon Reasonable Doubt and the Verdict Was Against The Weight of the Evidence; Point 2= Denied Due Process and the Effective Asst. of Counsel (included Pros. Misconduct); Pro-Se Brief: Point 1 → Defense Counsels Failure To know and Apply The Law Concerning Jury Selection, (A) Absent During Critical Part of Trial, (B) Error During Voir Dire in Selection of Sworn Juror #1, Brian Merrick, (c) Juror selected not sworn immediately under §270.15, (D) Sworn Juror #4 improperly excused under §270.35, (E) Sworn Juror #12 kept under Judges failure to Apply Buford; Point 2- Trial Counsel Took

(g) Did you seek further review by a higher state court?   Yes ☒ No ☐   A Position Contrary to the Defense

If yes, answer the following:

(1) Name of court: New York State Court of Appeals

(2) Docket or case number (if you know): APP. Div. Case # 2011-01960

(3) Result: Denied Leave To Appeal

(4) Date of result (if you know): April 4th, 2016

(5) Citation to the case (if you know): People v. Anthony Rucano, 27 NY3d 1005 (April 4, 2016)

(6) Grounds raised: In responding to deliberating Jurys request for a readback of trial testimony, does trial court have discretion to make new rulings regarding the admissibility of Portions of the requested testimony? Pro-Se Brief= Abuse of Discretion by Trial Court and JATC During readback request, Error of Law on Meaningful Response by APP. Div., Denied Reply Brief and *2

(h) Did you file a petition for certiorari in the United States Supreme Court?   Yes ☐ No ☒

If yes, answer the following: Filed Writ of Certiorari from both Post-Conviction Motions only

(1) Docket or case number (if you know): _____

* Due Process Violated, could not respond to issue raised for 1st time by People in reply to my Pro Se Brief concerning CPL §310.30, Meaningful Response; Point 2 →Improper examination of defense witness; Point 3 → Defense Counsel Lacked Basic Skills Surrounding Jury Selection

Page 4

(2) Result: _____

_____

(3) Date of result (if you know): _____

(4) Citation to the case (if you know): _____

10. Other than the direct appeals listed above, have you previously filed any other petitions, applications, or motions concerning this judgment of conviction in any state court?

Yes ☒   No ☐

11. If your answer to Question 10 was "Yes," give the following information:

(a) (1) Name of court: Appellate Division - Second Department

(2) Docket or case number (if you know): APP Div. Case # 2011-01960

(3) Date of filing (if you know): March 20th 2014 (Date Mailed)

(4) Nature of the proceeding: Motion to Withdraw APP. Counsels Brief / Stay Pursuant to CPLR 2221

(5) Grounds raised: Appellate Counsel submitted brief abandoning more than 50% of his cognizable Ineffective Asst. of Counsel claims (IATC) And failed to present claims he raised in proper venue (Article 440) despite being provided with detailed records and exhibits. I attached dozens of letters between us and copies of all document lists provided to him showing he was aware of issues, including affidavits from experts trial counsel failed to call at trial ** Challenged Constitutionality, as applied, of County Law §722, CPL §440.10(2), CPL §440.30 and CPLR §§1101/1102 as violative of Federal Constitutional Rights to Due Process And Equal Protection, as no provision for Assignment of Counsel to Prepare Article 440 exists; ** Notice Given to Attorney General Pursuant to CPLR §1012(b) And Executive Law §7101, (See Exhibit "A") → & Letter to Solicitor General

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

Yes ☐   No ☒

(7) Result: Motion Denied With No Caselaw Cited

(8) Date of result (if you know): May 19th, 2014

(b) If you filed any second petition, application, or motion, give the same information:

(1) Name of court: Richmond County Supreme Court

(2) Docket or case number (if you know): Ind No. 270/09

(3) Date of filing (if you know): July 15th 2014 (Mailed)

(4) Nature of the proceeding: Vacate Judgment Pursuant to CPL 440.10(1)(c)(d)(F)(G)(h)

(5) Grounds raised: Point 4 Also → Point 1 - Lack of Funding for Attorney as of Right on Collateral Review has created Convoluted Practices - violating Due Process + Equal Protection (Motions for Assignment of Counsel + Evidentiary Hearing submitted Also); Point 2 - cumulative Pros. Misconduct deprived me of Due Process Right to Fair trial & Pervasive Misconduct at Grand Jury Leading to Retroactive Misjoinder And Prejudicial Spillover; Point 3, I. Trial Counsel lacked trial skills, Did not Prepare for Trial, failed to Provide evidence supporting defense theory; A) 8 subPoints - IATC; B) Unsworn Witness; C) Expert Issues; D,E) failure to Use Cross Exam effectively/ II. Jury Selection Issues

raised in Pro-Se brief; III. Prejudicial Spillover/Retroactive MisJoinder; IV. Failure to object (5 subpoints); V. Cumulative IATC; VI. Constitutional Challenge to Statutes

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

Yes ☐ No ☒

(7) Result: Denied C.P.L. §440.30 (1) and (4)(b), Additionally CPL § 440.10 (2)(b)

(8) Date of result (if you know): December 15th, 2014

(c) If you filed any third petition, application, or motion, give the same information:

(1) Name of court: Appellate Division, Second Department

(2) Docket or case number (if you know): App. Div. Case # 2011 -01960

(3) Date of filing (if you know): Sept. 1st, 2016 (mailed with Verification and Affidavit of Service)

(4) Nature of the proceeding: Writ of Error Coram Nobis + Supp. Petition To Expand Record

(5) Grounds raised: Same issues raised in Article 440, since on leave to Appeal the App. Div., 2nd Dept., agreed with trial court and denied leave, holding in Part "A majority of the issues were on the record" and should have been raised on direct Appeal (Pros. Misconduct, IATC, Retroactive Misjoinder, Prejudicial Spillover, Denied Expert in Abuse of Discretion + Bias by Judge) Did not raise Jury selection issues as I raised in Pro-Se Brief on Direct Appeal; Also → Fully Developed Challenge to the "Convoluted Statutory + Procedural Scheme That Moves IATC outside the Direct Appeal Process, without counsel, into N.Y.'s Post-Conviction Procedural Labyrinth," And Argues that the Laws and Rules Interact to Prevent the Vindication of Federal Rights to Effective Assistance of Counsel at Trial Note: Trial Court Never Specified which specific claims were Procedurally barred when denying the 440

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

Yes ☐ No ☒

(7) Result: Denied - Failed to Establish He was Denied Effective Assistance of Appellate Counsel

(8) Date of result (if you know): April 12th, 2017

(d) Did you appeal to the highest state court having jurisdiction over the action taken on your petition, application, or motion?

(1) First petition: Yes ☒ No ☐

(2) Second petition: Yes ☒ No ☐

(3) Third petition: Yes ☒ No ☐

(e) If you did not appeal to the highest state court having jurisdiction, explain why you did not: _____

_____

_____

_____

12. For this petition, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the <u>facts</u> supporting each ground.

<u>CAUTION: To proceed in the federal court, you must ordinarily first exhaust (use up) your available state-court remedies on each ground on which you request action by the federal court. Also, if you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.</u>

**GROUND ONE:** Prosecutorial Misconduct Resulting in Retroactive Misjoinder And Prejudicial Spillover And Brady Violations (Point 1, I, A-D), Also raised in context of Appellate Counsels Failure to raise on Direct Appeal

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.): Leading Questions + Statements by ADA Katchen at Grand Jury combined with bypassing the rules of evidence to allow complainant to read from exculpatory diary as truth of the matter asserted without laying a foundation to stack the deck with charges complainant had no independent recollection of, all serving to improperly bolster his case and violating multiple ABA Standards, ADA Katchen Acted as an unsworn witness when taking exclusive custody of evidence (diary) then not revealing it as Brady material in Omnibus motion even though it was exculpatory + highly questionable, which he continued to do until finally releasing a true copy on 1st day of trial

(b) If you did not exhaust your state remedies on Ground One, explain why: ↓ (continued) Overcharging at Grand Jury resulted in 11 of 21 felonies being dismissed at charge conference, resulting in Retroactive Misjoinder (improperly joining fabricated and/or unsupported charges in the Indictment) And Prejudicial Spillover of testimony on tainted (dismissed) counts inciting Jury to convict me on 3 crimes in "End of September" (IATC And Abuse of Discretion During (readback issue) (See Ground Two)

(c) **Direct Appeal of Ground One:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐ No ☒

(2) If you did <u>not</u> raise this issue in your direct appeal, explain why: Trial Counsels Failure to Object Contemporaneously Left it Unpreserved, Raised in Article 440 and Writ of Error Coram Nobis / APP. Counsel raised Unpreserved Prosecutorial Misconduct Claims / Raised As Ineffective Assistance of Appellate Counsel

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

Yes ☒ No ☐

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: 1) Article 440 to Vacate Judgment ; 2) Writ of Error Coram Nobis

Name and location of the court where the motion or petition was filed: 1) Rich. Co. Sup. Ct., Richmond County (Staten Island) N.Y., And 2) APP. Div. Second Dept., Brooklyn, N.Y.

Docket or case number (if you know): 2) APP. Div. 2nd Dept. Case #2011-01960; 1) Ind No. 270-09

Date of the court's decision: 1) Dec. 15th, 2014 ; 2) April 12th, 2017

Result (attach a copy of the court's opinion or order, if available): 1) Denied Pursuant to C.P.L. § 440.30(1) and (4)(b), Additionally C.P.L. §440.10(2)(b), And 2) Affirmed - Have not shown Ineffective Assistance of Appellate Counsel (Appendix "CC" + "YY")

(3) Did you receive a hearing on your motion or petition?
Yes ☐ No ☒

(4) Did you appeal from the denial of your motion or petition?
Yes ☒ No ☐

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?
Yes ☒ No ☐

(6) If your answer to Question (d)(4) is "Yes," state:
Name and location of the court where the appeal was filed: 1) App. Div. 2nd Dept, Brooklyn, N.Y., And 2) N.Y. State Court of Appeals, Albany, N.Y.
Docket or case number (if you know): 1) App. Div. 2nd Dept. Case # 2015-00499; 2) App. Div. Case # 2011-01960
Date of the court's decision: 1) April 30th, 2015; 2) October 19th 2017
Result (attach a copy of the court's opinion or order, if available): 1) Denied Leave to Appeal and Motion To Reargue + Renew (Appendix "GG" + "KK") And 2) Denied Leave to Appeal (Appendix "CCC")

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground One: Raised multiple motions to Enlarge Judgment Roll (Appendix "G" "H" "L"), Motion to Withdraw Appellate Counsels Brief and to Assign New Counsel to Raise IATC in the Proper Venue (Appendix "P" + "R"), multiple motions to Assign Counsel (Appendix "AA" "MM")

**GROUND TWO:** Ineffective Assistance of Trial Counsel - Failure to Investigate, Object To Unsworn Witness, Hearsay, Trial Court Rulings on Evidence and Abuse of Discretion, to Dismiss Ind, ETC / Also - Ineffective Asst. of Appellate Counsel

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.): Failed to Move to Dismiss the Indictment for Pervasive Misconduct And Brady Violations At the Grand Jury (Point 1, I, A) Leading to Retroactive Misjoinder + Prejudicial Spillover (Point 1, I, B), Denial of Expert Witness Unobjected to, Leading to Failure to Present Complete Defense (Point 1, I, C), Brady Violations (Point 1, I, D), And trial Counsels Lack of Basic Trial Skills Throughout Proceedings during Pretrial motions, Voir Dire and Trial Defeated the Adversarial Process And He took a Position Contrary to the Defense Multiple Times, Failed To Provide Evidence + Testimony in Support of the Theory of the Defense That the Charges Were Fabricated and Failed to Use Cross examination effectively As An impeachment tool Throughout trial, Stipulated Testimony Away (Point 1, I, E) Readback Issues (Point 1, II), Jury Selection Issues (Point 1, III)

(b) If you did not exhaust your state remedies on Ground Two, explain why: _____

_____

_____

(c) **Direct Appeal of Ground Two:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ☒   No ☐   See note below ⟶ *Note: Only raised limited by Appellate*

*Counsel (readback) And Raised in my Pro se Brief on Grounds of A) Failure to object, B)*

*Position contrary to the defense, involving C) Readback + Jury Selection*

(2) If you did not raise this issue in your direct appeal, explain why:

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

Yes ☒   No ☐

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: *1) Article 440 to Vacate Judgment, And 2) Writ of Error Coram Nobis*

Name and location of the court where the motion or petition was filed: *1) Rich Co. Sup. Ct., Richmond County*

*(Staten Island) N.Y. And 2) App. Div. Second Dept. Brooklyn, N.Y.*

Docket or case number (if you know): *1) Ind. No. 270/09, 2) App. Div. Case # 2011-01960*

Date of the court's decision: *1) Dec. 15th, 2014, And 2) April 12th, 2017*

Result (attach a copy of the court's opinion or order, if available): *1) Denied Pursuant to C.P.L. § 440.30(1) +*

*(4)(b), Additionally CPL § 440.10(2)(b), And (2) Affirmed - Have not shown ineffective*

*Assistance of Appellate counsel (Appendix "CC" + "YY")*

(3) Did you receive a hearing on your motion or petition?

Yes ☐   No ☒

(4) Did you appeal from the denial of your motion or petition?

Yes ☒   No ☐

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

Yes ☒   No ☐

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: *App. Div. Second Dept., Brooklyn, N.Y.,*

*And 2) N.Y. State Court of Appeals, Albany, N.Y.*

Docket or case number (if you know): *1) App. Div. 2nd Dept. Case # 2015-00489, 2) App. Div. Case # 2011-01960*

Date of the court's decision: *1) April 30th, 2015   2) October 19th, 2017*

Result (attach a copy of the court's opinion or order, if available): *1) Denied Leave to Appeal And Motion To*

*Reargue + Renew (Appendix "GG" + "KK") And 2) Denied Leave to Appeal*

*(Appendix "CCC")*

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

_____

_____

_____

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Two: Raised Multiple Motions To Enlarge The Judgment Roll (APPendix "G", "H", "L"), Motion To Withdraw APPellate Counsels Brief And To Assign New Counsel To Raise IATC in the ProPer Venue (APPendix "P" + "R"), Multiple Motions To Assign Counsel (APPendix "AA" + "MM")

**GROUND THREE:** Abuse of Discretion BY Trial Court Denying Scientific Testing BY Expert, During Voir Dire, Failure To Meaning fully Respond To Jury Note And Denial of Evidentiary Hearing (Also made by APP, Div, 2nd Dept) on leave

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.): Trial Court Denied Scientific Testing on Material Evidence That would have Created A Reasonable Doubt of My Guilt if not for its omission, which in turn Prevented Me from Presenting a complete defense; APPlied various subsections of law involving voir dire incorrectly and failed to ProPerly examine Prejudice by Jurors; erroneously Acted in A biased manner by stating "I don't care" in response to trial counsels request to unstrike Prejudicial + SPeculative Testimony stricken at trial when Jurors were admonished they could not use, in response to read back request from deliberating Jury, who found Me Guilty of sex crimes directly related to said testimony, and did ↓ ↓ ↓

(b) If you did not exhaust your state remedies on Ground Three, explain why: → (continued) erroneously denied evidentiary hearing; All in An Abuse of discretion with ▓▓▓ where no logical inferences explained these actions → Bias ↗

(c) **Direct Appeal of Ground Three:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ☒  No ☐  (Limited, see Below) → Raised Abuse of Discretion on

(2) If you did not raise this issue in your direct appeal, explain why: Direct APPeal only to 1) Voir Dire Issues (Pro-Se Brief), And 2) Read back Issues (limited by APPellate counsel, but more thoroughly in My Pro-Se Brief) / Rest raised under IATC in Post-Conviction

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

Yes ☒  No ☐

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: 1) Article 440 To Vacate Judgment, And 2) Writ of Error Coram Nobis

Name and location of the court where the motion or petition was filed: 1) Rich Co, SuP. Ct., Richmond County (Staten Island) NY, And 2) APP. Div, Second DePt., Brooklyn, N.Y.

Docket or case number (if you know): 1) Ind. No. 270/09, 2) App. Div. Case # 2011-01960

Date of the court's decision: 1) Dec. 15th, 2014, And 2) April 12th, 2017

Result (attach a copy of the court's opinion or order, if available): 1) Denied Pursuant to CPL § 440.30 (1) + (4) (b), Additionally, C.P.L. § 440.10 (2) (b), AND 2) Affirmed - Have not shown ineffective Assistance of Appellate counsel (Appendix "CC" + "YY")

(3) Did you receive a hearing on your motion or petition?

Yes ☐ No ☒

(4) Did you appeal from the denial of your motion or petition?

Yes ☒ No ☐

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

Yes ☒ No ☐

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: 1) App. Div., Second Dept., Brooklyn, N.Y., And 2) New York State Court of Appeals, Albany, N.Y.

Docket or case number (if you know): 1) App. Div. 2nd Dept. Case # 2015-00499, 2) App. Div. Case # 2011-01960

Date of the court's decision: 1) April 30th, 2015   2) October 19th, 2017

Result (attach a copy of the court's opinion or order, if available): 1) Denied Leave To Appeal And Motion to ReArgue + Renew (Appendix "GG" + "KK"), And 2) Denied Leave To Appeal (Appendix "CCC")

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

_____

_____

_____

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Three: Raised multiple motions to Enlarge Judgment Roll (Appendix "G", "H", "L"), Motion to Withdraw Appellate Counsels Brief And To Assign New Counsel to Raise IATC in the Proper Venue (Appendix "P" + "R"), Multiple motions to Assign Counsel (Appendix "AA" + "MM")

**GROUND FOUR:** The Convoluted Statutory + Procedural Scheme in N.Y. Prevents The Vindication of Federal Rights to Effective Asst. of Counsel, Leading to Challenge Under Structural + Procedural Adequacy

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.): The Procedural History of my case through N.Y. States Appellate Courts Reveal The Inconsistent Application of Procedural Laws And Rules by The Trial And Appellate Courts of this State About the Proper Venue to Raise Mixed And dehors the record claims of IATC; combined with Appellate Firms being Financially Constrained To Record Based Issues Only on Direct Appeal, has created A convoluted Statutory + Procedural Labyrinth from which myself or Any other Pro-Se Litigant can escape; Allowing N.Y. State to use this Labyrinth As A Shield To Prevent Vindication of Federal Rights in N.Y. States more lenient standards, Arguably, To Conserve Finances

_____

_____

(b) If you did not exhaust your state remedies on Ground Four, explain why: _____

_____

_____

_____

(c) **Direct Appeal of Ground Four:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes [X] No [ ]   (See Note Below)

(2) If you did not raise this issue in your direct appeal, explain why: Note: In Motion To Withdraw App. Counsels Brief to App. Div. 2ⁿᵈ Dept, And In Seperate Leave of the May 19ᵗʰ, 2014 Order Denying Motion To Withdraw Appellate Counsels Brief to NYS Court of Appeals

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

Yes [X] No [ ]

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: 1) Article 440 To Vacate the Judgment, And 2) Writ of Error Coram Nobis

Name and location of the court where the motion or petition was filed: 1) Rich. Co. Sup. Ct., Richmond County, (Staten Island) N.Y., And 2) App. Div. Second Dept., Brooklyn, N.Y.

Docket or case number (if you know): 1) Ind. No. 270/09, And 2) App. Div. Case No. 2011-01960

Date of the court's decision: 1) Dec. 15ᵗʰ, 2014, And 2) April 12ᵗʰ, 2017

Result (attach a copy of the court's opinion or order, if available): 1) Denied Pursuant To CPL § 440.30 (1) + (4)(b), Additionally C.P.L. § 440.10 (2)(b), And 2) Affirmed - Have Not Shown Ineffective Assistance of Appellate Counsel (Appendix "CC" + "YY")

(3) Did you receive a hearing on your motion or petition?

Yes [ ] No [X]

(4) Did you appeal from the denial of your motion or petition?

Yes [X] No [ ]

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

Yes [X] No [ ]

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: 1) App. Div., Second Dept., Brooklyn, N.Y., And 2) New York State Court of Appeals, Albany, N.Y.

Docket or case number (if you know): 1) App. Div. 2ⁿᵈ Dept, Case # 2015-00499, 2) App. Div. Case # 2011-01966

Date of the court's decision: 1) April 30ᵗʰ, 2015, 2) October 19ᵗʰ, 2017

Result (attach a copy of the court's opinion or order, if available): Denied Leave To Appeal And Motion To Reargue And Renew (Appendix "GG" And "HH") And 2) Denied

Page 12

Leave to Appeal (Appendix "CCC")

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Four: Raised Multiple Motions To Exhaust Including Motion To Vacate Judgment (App. "AA"), Motion to Withdraw Appellate Counsels Brief, in which I Gave Atty. General Notice of Challenge To Constitutionality of Various State Laws (App. "P" + "R"), And filed seperate Leave App. to N.Y.S. Court of Appeals From May 19, 2014 Order Denying Motion To Withdraw App. Counsels Brief (App. "RR") And filed Writ of Certiorari on both collateral review Motions / Also in Writ of Error Coram Nobis Supp. Mem. (App. "TT")

13. Please answer these additional questions about the petition you are filing:

(a) Have all grounds for relief that you have raised in this petition been presented to the highest state court having jurisdiction?   Yes ☒ No ☐

If your answer is "No," state which grounds have not been so presented and give your reason(s) for not presenting them:

(b) Is there any ground in this petition that has not been presented in some state or federal court? If so, which ground or grounds have not been presented, and state your reasons for not presenting them:

14. Have you previously filed any type of petition, application, or motion in a federal court regarding the conviction that you challenge in this petition? Yes ☒ No ☐

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, the issues raised, the date of the court's decision, and the result for each petition, application, or motion filed. Attach a copy of any court opinions or orders, if available. U.S. Supreme Court, Washington, D.C. (Two Cases/Motions)

(1) Writ of Certiorari from denial of Article 440 (Case No. 15-5753)-challenging the constitutionality of County Law §722, CPLR §1101 And Portions of Article 440, founded on Holdings of Martinez and Trevino, for failure to Assign counsel on first effective Appeal as of right on IATC claims, Aligning N.Y. Law with Texas Law as "Virtually Impossible" to vindicate federal right to counsel, raising challenge under the Federal Adequacy Doctrine, Denied Oct. 19, 2015 (2) Writ of Certiorari from Denial of Writ of Error Coram Nobis (Case No. 17-7919) same as Above - Improved + Structured on "Structural + Procedural Adequacy" Denied on April 16th, 2018

15. Do you have any petition or appeal <u>now pending</u> (filed and not decided yet) in any court, either state or federal, for the judgment you are challenging?        Yes ☐ No ☒

    If "Yes," state the name and  location of the court, the docket or case number, the type of proceeding, and the issues raised. _____

_____

_____

_____

16. Give the name and address, if you know, of each attorney who represented you in the following stages of the judgment you are challenging:

    (a) At preliminary hearing: _None Held-Grand Jury Convened_

    (b) At arraignment and plea: _Carol Siebel ESQ, 60 Bay St., Suite 802, Staten Island, N.Y. 10301 ; (718) 354-3200_

    (c) At trial: _Dennis J. Osullivan -Oct 5th, 2009 until Oct 27th, 2009; 210-13 35th Ave, Bayside N.Y. 11361, THEN Eugene Lamb ESQ, 7 Frean St, Staten Island, N.Y. 10304; (718) 352-7600_

    (d) At sentencing: _Thomas Reilly, from Oct. 24th, 2010 until sentencing, 3884 Amboy Rd., Staten Island, N.Y. 10308   (718)619- 0496_

    (e) On appeal: _Warren Landau of Appellate Advocates submitted Brief, 111 John St., New York, N.Y. 10038, also William Loeb and A. Alexander Down, both of Appellate Advocates_

    (f) In any post-conviction proceeding: _Pro Se - Was Denied Assignment of Counsel_

    (g) On appeal from any ruling against you in a post-conviction proceeding: _Pro-Se - Was Denied Assignment of Counsel_

17. Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging?        Yes ☐ No ☒ _Note: My release date is December 2020_

    (a) If so, give name and location of court that imposed the other sentence you will serve in the future: _N/A_

    (b) Give the date the other sentence was imposed: _N/A_

    (c) Give the length of the other sentence: _N/A_

    (d) Have you filed, or do you plan to file, any petition that challenges the judgment or sentence to be served in the future? Yes ☐ No ☒ _(N/A)_

18. TIMELINESS OF PETITION: If your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2244(d) does not bar your petition.*

**Alternate Arguments #1 →** Writ of Error Coram Nobis Denied on Oct. 19, 2017, Petition For Extension of Time To Seek Writ of Certiorari submitted on Oct. 30th, 2017, And Justice Ginsburg Granted extension of time to And including March 19, 2018. On February 21st 2018, my Writ of Certiorari was Filed with U.S. Sup. Ct. (Case # 17-7919) And Placed on Docket on Feb. 28, 2018, And Denied on April 16th, 2018. This Provides Additional tolling under Saunders v. Senkowski, 587 F.3d 543, 548-549 (2nd Cir. 2009) And § 2244(d)(2) Provides for tolling on the entire time in which "A ProperLy filed Application for State Post-conviction or other collateral review with respect to A Pertinent Judgment or claim is Pending." 28 U.S.C. 2244 (d) (1-2) (emphasis Added). My Writ of Certiorari is A ProperLy filed Application for state Post conviction relief, in which the states procedures Allow Federal Review, And was Pending Application that met requirement for Tolling And stopped the clock.

**Alternate Argument #2 →** Furthermore, under 28 U.S.C. § 2244 (d)(1)(b) I have been the subject of ongoing retaliation by the NYSDOCCS since the escape from Clinton in June 2015, where I was A Member of Honor Block with An exceptional institutional record. I was recently subjected to being fired from my Job in Law Library for exercising my constitutional right to utilize the courts to address Due Process and Equal Protection Rights of myself And Other similarly situated inmates in An Article-9 Class Action, identifying A Potential class of 500-1,000 inmates Affected over the Past 7 years. Six (6) months of Research And my original draft copy of this Habeas Petition were deleted from my Assigned computer workstation on Feb. 9th, 2018, forcing me to start over. This is the subject of A multi-defendant lawsuit in the Northern Dist. of N.Y. under §§ 1983 + 1985, Chief Judge Suddaby Presiding (18-CV-00218 [GTS] [CFH]) Alleging multiple conspiracies, retaliation for Protected Conduct As An ILC Member, Free Speech Violations, etc. I may request tolling And if Granted, Amend this Petition. It is timely As of filing today, Also, U.S. Dept. of Justice Investigation Against NYSDOCCS is Active. AttorneY Shelley Langbuth (17-OCR-0136)

* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2244(d) provides in part that:

(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of —
   (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
   (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such state action;
   (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
   (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Therefore, petitioner asks that the Court grant the following relief: Dismissal of Counts infected with Prejudicial Spillover and/or Improperly Joined at Defective Grand Jury Proceedings or Dismissal of Indictment or Reversal Based on Prosecutorial Misconduct, Brady Violations, Ineffective Asst. of Counsel, Abuse of Discretion Resulting in State Court Errors Denying a Fair Trial

or any other relief to which petitioner may be entitled.

_____
Signature of Attorney (if any)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Petition for Writ of Habeas Corpus was placed in the prison mailing system on August 3rd, 2018

_____ (month, date, year).

Executed (signed) on August 3rd, 2018 _____ (date).

Anthony Rucano
_____
Signature of Petitioner

If the person signing is not petitioner, state relationship to petitioner and explain why petitioner is not signing this petition. _____
_____
_____

United States District Court
Eastern District of New York

Anthony Rucano,

                    Petitioner-Pro Se,

                                                    Index No. _____

       -Against-


J. LaManna, Superintendent,
Green Haven Correctional Facility
                    Respondent.


Application For Habeas Relief

28 U.S.C. § 2254


                              Anthony Rucano, Pro-Se
                              Green Haven Correctional Facility
                              P.O. Box 4000
                              Stormville, N.Y. 12582-4000

August 3rd, 2018

# Table of Contents

Table of Authorities ... vi

Questions Presented ... 1

Preliminary Statement ... 2

Standard of Review ... 5

  A. AEDPA Review Standards ... 5

  B. Presentation And Exhaustion Requirements ... 5

  C. One-Year Limitations Period ... 6

  D. Cause And Prejudice ... 7

  E. Errors of State Law ... 8

Introduction And Explanation of the Outline For This Petition ... 9

Outlines And References Used In This Petition ... 16

Point 1 ... 17

The Inconsistent Application of Statutory And Procedural Laws And Rules In New York State Has Been Used As A Shield To Avoid Enforcing My Federal Rights To Due Process And Equal Protection Under The Law For The Claims Presented In This Petition ... 17

  I. Post-Conviction Issues — Prosecutorial Misconduct And IATC ... 17

    A. Grand Jury Proceedings — Prosecutorial Misconduct Involving The Book ... 18

    B. Retroactive Misjoinder and Prejudicial Spillover ... 21

    C. IATC And the Trial Courts Abuse of Discretion Resulted In Bias Prejudicing Me ... 25

      (i) The Trial Courts Abuse of Discretion That Denied Testing By Expert Was Biased ... 25

      (ii) I Was Denied The Meaningful Opportunity To Present A Complete Defense ... 28

(iii) Failure To Present Other Experts By Trial Counsel Was A Position Contrary To The Defense                                             30

D. Brady Violations Involving The Diary Allowed Pre Judice To Permeate My Entire Trial                                                     32

E. Trial Counsels Errors of Omission And Commission Defeated The Adversarial Process                                                       35

II. Direct Appeal Issues- Read back                                        38

A. Denial of State Created Right To File Pro-Se Supplemental Reply Brief    40

III. Abuse of Discretion And IATC During Jury Selection Raised On Direct Appeal                                                            44

IV. The Trial Courts Failure To Hold A Mandatory Evidentiary Hearing Under C.P.L. § 440.30 (5) Violated My Right To Due Process, And Was A Decision Based On An Unreasonable Determination Of the Facts In Light of The Evidence I Presented To The Trial Court And The App. Div., Second Dept.                                           49

A. Records Obtained From AETNA By The Connecticut Attorney General Supporting My Claims of Criminal Conduct That Eradicated My Right To A Fair And Impartial Trial, Were Provided to the State Courts And No Action Was Taken                                    53

Point 2

The Claims Presented In This Petition Have "Fell Into The Abyss" of Appellate Procedure Found In New York States Convoluted Statutory And Procedural Labyrinth, With The Only Way Out Through The Lost And Long Forbotton Door of Structural And Procedural Ade Quacy Doctrine                              55

I. Only This Court Can Break Through The Shield Preventing The Vindication of My Federal Rights                                            55

A. The Domino Effect of Under-Qualified, Inexperienced And Poorly Compensated Counsel At Trial, Through A Mismanaged Assigned Counsel Plan, Has Created Convoluted Practices Which Violate Due Process And Equal Protection                                                56

B. The Convoluted Statutory And Procedural Labyrinth In New York State Also Structurally Impedes Appellate Counsel, Who Through Financial And Political Constraints Uses This Labyrinth As A Shield To Prevent The Vindication of Federal Rights, And Results In The Ineffective Assistance of Appellate Counsel                                                58

II. Reasons For Granting The Petition                                                61

A. The Question As To Whether The Dicta In Martinez v. Ryan, 132 S.Ct. 1309 (2012), And The Statements In Trevino v. Thaler, 132 S.Ct. 1911 (2013) Renders State Statutes Like County Law § 722 And CPLR § 1101 Unconstitutional, As It Allows A Convoluted Statutory And Procedural Morass Violative of Due Process And Equal Protection To Flourish In States Like New York, Requires This Courts Intervention To Answer                                                61

B. This Court Should Take The "Proverbial Leap" And Find That The Unconstitutional And Convoluted Procedural Scheme In New York State That Moves IATC Claims Outside The Direct Appeal Process Without Counsel Prevents A Defendant From Vindicating Federal Constitutional Rights; Allowing The Challenge Of These Laws Via The Federal Adequacy Doctrine                                                63

I. First-Tier Review By Counsel Is Critical To The Identification And Development Of Claims Based On Ineffective Assistance of Trial Counsel                                                64

C. Martinez v. Ryan And Trevino v. Thaler Opened The Door To A Challenge Via The Doctrine of Structural And Procedural Adequacy                                                66

D. The Holdings of <u>Trevino v. Thaler</u> Are Applicable To The Law In New York State ... 69

E. The Interaction Of Multiple Procedural Rules In New York State Has Created An Unworkable Procedural Labyrinth Made Up of Convoluted Statutory and Procedural Laws That Have Unduly Burdened The Vindication of Federal Rights, Rendering Them Structurally And Procedurally Inadequate Under The Adequacy Doctrine ... 71

F. The Combination of Multiple Procedural Rules, Which Practically And Effectively Moves IATC Claims Outside The Direct Appeal Process, Has Frustrated And Prevented The Vindication of Federal Constitutional Rights, Rendering Them – As Applied - Unconstitutional In New York State ... 73

Conclusion ... 77

# Table of Authorities

## Federal Cases

| | |
|---|---|
| Acosta v. Artuz, 221 F.3d 171 [2ᴺᴰ Cir. 2000] | 6 |
| Ake v. Oklahoma, 470 U.S. 68, 82-83 (1985) | 27 |
| Aparicio v. Artuz, 269 F.3d 78 [2ᴺᴰ Cir. 2001] | 5 |
| Arizona v. Fulminante, 499 U.S. 279 [1991] | 27, 31, 52 |
| Bell v. Cone, 535 U.S. 685, 694 [2003] | 5, 49 |
| Berber v. U.S., 295 U.S. 78 [1935] | 35 |
| Brady v. Maryland, 373 U.S. 83 [1963] | 32 |
| Brecht v. Abrahamson, 507 U.S. 619, 623 [1993] | 8, 63 |
| Carter v. Illinois, 329 U.S. 173 (1946) | 3 |
| Case v. Nebraska, 381 U.S. 336, 337 [1965] | 62 |
| Chapman v. California, 318 U.S. 18 (1967) | 42, 44, 46 |
| Coleman v. Thompson, 501 U.S. 1277 (1991) | 7, 66 |
| Crane v. Kentucky, 476 U.S. 683, 690 [1986] | 28 |
| Cuyler v. Sullivan, 446 U.S. 335 [1980] | 57 |
| Darden v. Wainwright, 477 U.S. 168 [1986] | 34 |
| Davis v. Wechsler, 263 U.S. 22 (1923) | 2 |
| DiSimone v. Phillips, 461 F.3d 181, 185 [2ᴺᴰ Cir. 2006] | 32 |
| Douglas v. California, 373 U.S. 905 [1963] | 58 |
| Duncan v. Louisiana, 391 U.S. 145, 151-154 [1968] | 46 |
| Estelle v. McGuire, 502 U.S. 62, 68 | 8, 40, 43, 44, 46, 52 |
| Ford v. Ahitow, 104 F.3d 926, 936 [7ᵀᴴ Cir. 1997] | 6 |
| Garner v. Lee, 2016 WL 7223335 (EDNY, Dec 13ᵀᴴ 2016) | 10, 50 |
| Gersten v. Senkowski, 426 F.3d 588, 614-615 [2ᴺᴰ Cir. 2005] | 23, 24 |
| Gideon v. Wainwright, 372 U.S. 333 [1963] | 63 |
| Giglio v. U.S., 405 U.S. 150, 154 [1972] | 32 |

Green v. Lee, 964 F.Supp. 2d 237, 263 [E.D.N.Y. 2013] ....... 21

Greiner v. Wells, 417 F.3d 305, 325 [2nd Cir. 2005] ....... 37

Herring v. Estelle, 491 F.2d 125, 127 [5th Cir. 1974] ....... 58

Hicks v. Oklahoma, 447 U.S. 343 [1980] ....... 40, 41

Hoffman v. Arave, 236 F.3d 523, 535-36 (9th Cir. 2001) ....... 67

Holmes v. South Carolina, 126 S.Ct. 1727 [2006] ....... 27, 43

Hurell-Harring v. State, 15 NY3d 8 [2010] ....... 63

Ibarra v. Thaler, 687 F.3d 222, 227 [5th Cir. 2012] ....... 7, 69

Illinois v. Allen, 397 U.S. 337 [1970] ....... 44

In re Winship, 397 U.S. 358, 364 [1970] ....... 37

Jackson v. Shanks, 143 F.3d 1313, 1319 (10th Cir. 1998) ....... 67

Jelinek v. Costello, 247 F.Supp. 2d 212, 276-77 [E.D.N.Y. 2003] ....... 21, 23

Jones v. Stinson, 229 F.3d 112, 120 [2nd Cir. 2000] ....... 28

Jones v. United States, 527 U.S. 373, 390 [1999] ....... 39

Kimmelman v. Morrison, 477 U.S. 365, 378 (1986) ....... 64

Kotteakos v. United States, 328 U.S. 750, 764-65 (1946) ....... 42

Kyles v. Whitley, 514 U.S. 419 [1995] ....... 32

Lee v. Kemna, 534 U.S. 362, 375 [2002] ....... 6

Lindstadt v. Keane, 239 F.3d 191, 206 [2nd Cir. 2001] ....... 21, 23

Lisenbe v. California, 314 U.S. 219, 236 [1941] ....... 8

Lyon v. Senkowski, 109 F.Supp. 2d    [W.D.N.Y. 2000] ....... 5

Marino v. Regan, 332 U.S. 561 (1947) ....... 3

Martinez v. Ryan, 132 S.Ct. 1309 (2012) ....... Passim

Massaro v. United States, 538 U.S. 500, 504-505 (2003) ....... 64, 65, 66

Miller v. Pate, 386 US 1 [1967] ....... 35

Nix v. Whiteside, 475 US 157 [1986] ....... 31

| | |
|---|---|
| Opie v. Meachum, 293 F.Supp 647,650 [D.C. Wyo 1968] | 57 |
| People v. Loftus, 81 N.E.2d 495,497-98 [Ill. 1948] | 3 |
| People ex rel. McGee v. Hill, 183 N.E. 17,19 [Ill. 1932] | 3 |
| Pham v. United States, 371 F.3d 178,186-187 (2nd Cir. 2003) | 15,65 |
| Remmer v. United States, 347 U.S. 227 [1954] | 46 |
| Rogers v. United States, 422 U.S. 35,39 [1975] | 41 |
| Rompilla v. Beard, 545 U.S. 374,394 [2005] | 43 |
| Rosario v. Kuhlman, 829 F.2d 918,924 [2nd Cir. 1988] | 28 |
| Ross v. Oklahoma, 487 U.S. 81 [1988] | 44 |
| Ryan v. Miller, 303 F.3d 231 [2nd Cir. 2002] | 20 |
| Shih Wei Su, 335 F.3d 119,129 [2nd Cir. 2003] | 34 |
| Spencer v. Capra, 2018 WL 3339521 [E.D.N.Y. July 6th, 2018] | 29 |
| Strickland v. Washington, 466 U.S. 668 [1984] | Passim |
| Trevino v. Thaler, 133 S.ct. 1911 (2013) | Passim |
| U.S. v. Bagley, 473 U.S. 667,676 [1985] | 32 |
| U.S. v. Damsky, 740 F.2d 134,138 (2nd Cir.) cert. denied 469 U.S. 918 (1984) | 39 |
| U.S. v. Dukagjini, 326 F.3d 45,62 [2nd Cir. 2003] | 42 |
| U.S. v. Johnson, 529 F.3d 493,502 [2nd Cir. 2008] | 34 |
| U.S. v. Parker, 903 F.2d 91 (2nd Cir. 1990) | 39 |
| U.S. v. Pollak, 474 F.2d 828,832 (2nd Cir. 1973) | 39 |
| U.S. v. Rea, 958 F.2d 1206,1220 (2nd Cir. 1992) | 42 |
| U.S. v. Ronder, 639 F.2d 931,934 (2nd Cir. 1981) | 41 |
| U.S. v. Russell, 411 U.S. 423 [1973] | 52 |
| U.S. v. Schwartz, 283 F.3d 76 [2nd Cir. 2002] | 46 |
| United States v. Agurs, 427 U.S. 97 (1976) | 29 |
| United States v. Chronic, 466 U.S. 648,658 [1984] | 37,48,54 |

United States v. Hernandez-Fundora, 49 F.3d 848 [2nd Cir. 1995] — 27

United States v. Jones, 482 F.3d 60, 78 [2nd Cir. 2006] — 21

United States v. Morales, 185 F.3d 74, 82 [2nd Cir. 1999] — 23

United States v. Rooney, 37 F.3d 847, 855-56 [2nd Cir. 1994] — 23

United States v. Wapnich, 60 F.3d 948, 953-55 [2nd Cir. 1995] — 23

Wade v. Mantello, 333 F.3d 51, 67 [2nd Cir. 2003] — 28

Washington v. Texas, 288 US 14 [1967] — 26, 51

Wiggins v. Smith, 123 S.Ct. 2527 [2003] — 48, 54

Williams v. Taylor, 529 U.S. 362, 403-404 [2000] — 5

Wood v. Allen, 550 U.S. 290 [2010] — 43

Woods v. Mierstheimer, 328 U.S. 211 (1946) — 3

Yates v. Evatt, 500 U.S. 391, 403 [1991] — 42

Yuri v. Garcia, 413 F.3d 201, 210 (2nd Cir. 2005) — 42

Zafro v. United States, 506 U.S. 534 [1993] — 21

Zapulla v. New York, 391 F.3d 462, 468 [2nd Cir. 2004] — 42

State Cases

Hurell-Harring v. State, 15 NY3d 8 [2010] — 63

New York County Lawyers Ass'n v. State, 196 Misc.2d 761 (N.Y.Sup. 2003) — 56

People v. Baghai-Kermani, 84 NY2d 525, 532 [1994] — 22

People v. Baldi, 54 NY2d 137 [1981] — 63

People v. Baxley, 84 NY2d 208 (1994) — 51

People v. Buford, 69 NY2d 290, 299 (1987) — 47

People v. Ciaccio, 47 NY2d 431 [N.Y. 1979] — 40

People v. Concepcion, 17 NY3d 192, 196-197 [2011] — 22

People v. Daly, 14 NY3d 848, 849 [2010] — 22

People v. Doshi, 93 NY2d 499, 505 [1999]                          22

People v. Evans, 16 NY3d 571 [2011]                    7, 10, 55, 70

People v. Freeman, 93 AD3d 805 [2nd Dept. 2012]        62

People v. Malloy, 55 NY2d 296 [N.Y. 1982]              41

People v. O'Rama, 78 N.Y2d 270 (1991)                  41

People v. Stultz, 2 NY3d 277, 284 [2004]               62

People v. Tufano, 69 AD2d 826 [2nd Dept. 1979]         20

Robinson v. State, 16 S.W.3d 808, 810-811 [Tex. Crim. App. 2000]   69


Federal Statutes

28 U.S.C. § 2254                                        4, 5

Federal Rules of Evidence 1002 and 1003                27

Federal Rules of Civil Procedure § 3485, Rule 28       27

Fed. R. Crim. P. 52 (A)                                42

Fed. R. Evid. 103 (A)                                  42

U.S. Const. VI and XIV Amendments                      46

U.S. Const. 14th Amend.                                8


State Statutes

22 NYCRR § 670.12 (h)                                  11

County Law § 722                                       60, 61, 62, 63

C.P.L. § 210.35 (5)                                    20, 25

C.P.L. § 270.15 (2)                                    44, 45

C.P.L. § 270.15 (3)                                    44, 46

C.P.L. § 270.15 (4)                                    44, 45

C.P.L. § 270.35 (1) or (2) (A)                         45, 47, 48

| | |
|---|---|
| C.P.L. § 310.30 | 41 |
| C.P.L. § 440.10 (1) + (4)(b) | 10, 62 |
| C.P.L. § 440.10 (2)(b) | 50, 55 |
| C.P.L. § 440.30 (1) | 10, 62 |
| C.P.L. § 440.30 (4)(b) | 51 |
| C.P.L. § 440.30 (5) | 49, 51, 60 |
| C.P.L. § 450.90 (1) | 11 |
| C.P.L.R. §§ 1101/1102 | 60, 61, 62, 63 |
| C.P.L.R. § 2201 | 10 |

<u>A.B.A. Standards</u>
| | |
|---|---|
| A.B.A. Standards For Criminal Justice, §§ 3-3.5 (b) + 3-3.6 (f) | 18 |

<u>Law Journal Articles</u>
| | |
|---|---|
| Daniel J. Meltzer, <u>State Court Forfeitures of Federal Rights</u>, 99 Harv. L. Rev. 1128, 1182 (1986) | 72 |
| Edelstein, Outside Counsel, <u>Ineffective Assistance of Counsel, N.Y. Collateral Review</u>, NYLJ, Mar. 3, 2008, at 4, col. 4 | 70 |
| <u>Effective Trial Counsel After Martinez v. Ryan, Focusing On The Adequacy of State Procedures</u>, 122 Yale L.J. 2604, June 2013 | 64 |
| Eric M. Freedman, <u>State Post-Conviction Remedies in the Next Fifteen Years: How Synergy Between The State And Federal Government Can Improve The Criminal Justice System Nationally</u>, 24 Fed. Sent'g Rep. 298, 298 (2012) | 71 |
| Justin F. Marceau, <u>Challenging The Habeas Process Rather Than The Result</u>, 69 Wash. Lee L. Rev. 85, 146-156, 166-176 (2011) | 71 |

Mary Dewey, Comment, Martinez v. Ryan: A Shift Toward Broadening Access To Federal Habeas Corpus, 90 Denv. U.L. Rev. 268, 270 (2012)          69

## Questions of Law Presented

### Question #1

Whether The Claims of Prosecutorial Misconduct And Ineffective Assistance of Trial And Appellate Counsel Within This Petition, Standing Alone And Cumulatively, Have Resulted In A Decision That Was Contrary To Or Involved An Unreasonable Application of Clearly Established Federal Law; or A Decision Based On An Unreasonable Determination of The Facts In Light of The Evidence Presented In The State Court Proceedings?

### Question #2

Whether The Equitable Rule Established in Martinez v. Ryan And Trevino v. Thaler, That Provides Cause To Overcome A Procedurally Defaulted Claim of Ineffective Assistance of Trial Counsel, Has Allowed New York State To Continue To Use The Inconsistent Application of Procedural Laws And Rules Within A Convoluted Statutory And Procedural Scheme As A Shield To Avoid Enforcing My Federal Rights To Due Process and Equal Protection; Thereby Preventing Vindication of My Federal Rights To The Effective Assistance of Counsel?

### Question #3

Whether the Unconstitutional And Convoluted Statutory And Procedural Scheme In New York State That Has Arisen From The Way Multiple Laws And Rules Interact, Has Burdened And Prevented My Ability To Vindicate My Federal Right To the Effective Assistance of Trial Counsel And My State Conferred Right To the Effective Assistance of Appellate Counsel, And Has Presented A Meritorious Challenge To How These Statutes And Procedures Were Applied In My Case Under The Doctrine of Structural And Procedural Adequacy, Worthy of Relief By This Court?

1

## Preliminary Statement

This Petition strives to show that a necessary return to a structural approach to adequacy, one that would consider how the interaction of multiple Procedural laws and rules has unduly burdened the vindication of Federal Rights in New York State, has become necessary in the narrow and unique facts of this case.

Such a structural approach to adequacy is consistent with the doctrines original Purposes and is the most sensible way to apply Procedural Adequacy doctrine under the conditions I faced in New York State. Only the deployment of a structural approach to Procedural Adequacy doctrine can stop the burying of systemic Constitutional violations within the complicated and convoluted statutory and Procedural labyrinth as it currently exists in New York State.

The Path I have taken through the direct and Post-conviction appeal of my criminal conviction in New York States complicated and convoluted statutory and Procedural labyrinth was Purposely chosen by me about six years ago when the U.S. Supreme Court decided Martinez v. Ryan, 132 S.Ct. 1309 (2012). The appellate steps I took were made with the sole Purpose of avoiding Procedural traps, but along the way I discovered that the inconsistent application and interaction of multiple statutory and Procedural laws and rules had exposed constitutional infirmities in New York States convoluted statutory and Procedural scheme, which in turn have Provided clear and convincing Proof of how burdened the vindication of Federal Constitutional rights have become in this State.

The Path that I now ask this Court to embark upon has its beginning in the case of Davis v. Wechsler, 263 U.S. 22 (1923), where the Honorable Justice Holmes delivered his opinion stating "Whatever springes the State may set for those who are endeavoring to assert rights that the state confers, the assertion of federal rights, when Plainly and reasonably made, is not to be defeated under local Practice." (Id. at 24).

2

The Supreme Court, 24 years later, took a more structural approach to Procedural Adequacy to stop Illinois from using the interaction of multiple procedural rules to undermine criminal defendants' Federal constitutional rights (Marino v. Regan, 332 U.S. 561 [1947]) (Per curiam).[1]

Now, 71 years later, this structural approach is needed to address the convoluted statutory and procedural labyrinth in New York State. The holdings in Marino apply with equal force today to the procedural labyrinth I have encountered in this State. Consider a portion of the rulings in Marino below:

If the federal guarantee of due process in a criminal trial is to have real significance in [New York], it is imperative that men convicted in violation of their constitutional rights have an adequate opportunity to be heard in court. This opportunity is not adequate so long as they are required to ride the [New York] merry-go-round of [direct appeal or Article 440] and writ of error [coram nobis] before getting a hearing in Federal Court.[2]

We should neither delay nor deny Justice, nor clog its administration, with so useless and harmful a procedural strangling of Federal constitutional rights. (Marino v. Regan, 332 U.S. at 570, supra)

---

[1] Carter v. Illinois, 329 U.S. 173 (1946); Woods v. Mierstheimer, 328 US 211 (1946)

[2] In Illinois, a challenge to a criminal conviction had three procedural avenues, (1) The Writ of Error, (2) The Writ of Habeas Corpus, and (3) The Writ of Coram Nobis (see People v. Loftus, 81 N.E. 2d 495, 497-98 [Ill. 1948] [Per curiam] [describing the Writ of Error and Writ of Coram Nobis]; People ex rel. McGee v. Hill, 183 N.E. 17, 19 [Ill. 1932] [describing the Writ of Habeas Corpus]).

My goal with this Petition is first, to show the existence of meritorious grounds of Prosecutorial Misconduct and Ineffective Assistance of counsel under 28 U.S.C. §2254; second, to show that New York State allows an inconsistent application of Procedural bars, laws and rules to be applied to mixed and dehor the record claims of Prosecutorial Misconduct, IATC and other claims based on Federal rights to shield them, in order to avoid enforcing these Federal rights, within a complicated and convoluted statutory and Procedural labyrinth; and three, to show that the inconsistent application and interaction of these convoluted statutory and Procedural laws and rules Prevents the vindication of these various Federal rights and reQuires the application of the Federal Doctrine of Structural and Procedural AdeQuacy by this Court to correct.

I will show that I went to great lengths to exhaust all my appellate claims through every available Procedural avenue while notifying the appellate courts of the constitutional infirmities I was facing; but I was denied relief at every turn and my numerous attempts to obtain counsel at every Procedural step were rebuked.

Ultimately I will show that I was Prevented from vindicating my Federal Constitutional rights on a multitude of levels, as described within my Petition, and that only this Court can stop the inJustice that I assert occurs for all indigent defendants in New York State; the systemic Practice of burying constitutional violations in this States convoluted statutory and Procedural Labyrinth, which allows New York State to shield themselves and avoid the enforcement of Federal rights; by applying the Federal Doctrine of Structural and Procedural AdeQuacy to Protect their rights.

## Standard of Review

## A. AEDPA Review Standards

In 1996, in an effort to prevent federal habeas "retrials", congress enacted the Anti Terrorism and Effective Death Penalty Act (AEDPA). This legislation significantly restricted a habeas court's role in reviewing state Prisoner applications (see Williams v. Taylor, 529 US 362, 403-404 [2000]). As a result, Title 28 U.S.C. § 2254 now requires that either the defendant show that the challenged state decision or unconstitutional conduct or procedure was "contrary to" or involved an "unreasonable application" of clearly established federal law, as decided by the Supreme Court, or that the adjudication in the state court resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings (see e.g. Bell v. Cone, 535 U.S. 685, 694, 122 S.Ct. 1843, 1850 [2003]).

## B. Presentation and Exhaustion Requirements

As a prerequisite to review in the federal courts, a defendant must give the state courts one full opportunity to resolve any constitutional issues that he wishes the habeas court to resolve (see Lyon v. Senkowski, 109 F. Supp. 2d [WDNY 2000]). A defendant does this by presenting the substance of the federal constitutional claim he is urging upon the federal court to the highest state court following well defined tracts of review ( see Aparicio v. Artuz, 269 F.3d 78 [2ᵈ Cir. 2001]). And while a state court

5

may claim that a particular issue is procedurally barred, the adequacy of the procedural bar to the assertion of the federal question is not within a state's perogative to finally decide. Rather, adequacy is itself a federal question (see Lee v. Kemna, 534 US 362, 375, 122 S.Ct. 877, 885 [2002]).

While AEDPA legislation has raised the bar on the availability of habeas relief by mandating that the habeas review courts give "greater deference to the determination made by the state courts than they were required to do under the previous law" (see Ford v. Ahitow, 104 F.3d 926, 936 [7th Cir. 1997]), this, however, does not diminish a habeas review court's responsibility to review the state's decision with an independent lens required of Article III Judges in an effort to ensure that the Government has not unjustly incarcerated an innocent person because of demonstrable evidence of prosecutorial misconduct or ineffective assistance of counsel so severe it undermines the constitutional validity of the conviction.

## C. One-Year Limitations Period

A conviction becomes final for habeas purposes when the ninety-day period for filing a petition for a writ of certiorari to the Supreme Court has expired. And while a district court may have the authority to raise a petitioner's apparent failure to comply with the AEDPA statute of limitations on its own motion (see Acosta v. Artuz, 221 F.3d 171 [2nd Cir. 2000]), it must provide the defendant notice so that he may have an opportunity to be heard prior to the district court dismissing the application as time-barred.

## D. Cause and Prejudice

One of the most difficult hurdles for a defendant to overcome is when he has actually defaulted on a federal claim. However, federal courts have recognized that in some rare circumstances, a defendant can overcome the procedural bar if he can demonstrate that some impediment external to himself is the cause of the procedural default, and will be prejudiced if the error is not corrected.

In Martinez v. Ryan, 132 S.Ct. 1309 (2012), the Court capitalized on the dicta in Coleman v. Thompson, 501 US 1277 (1991) and held that "when a state requires defendants to raise ineffective assistance of trial counsel claims in initial-review collateral proceedings, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance of counsel if, in the initial-review collateral proceeding, there was no counsel or counsel ... was ineffective under Strickland" (Martinez, 132 S.Ct. at 1320).

Trevino v. Thaler, 133 S.Ct. 1911 (2013), expanded the holdings in Martinez. Unlike Martinez in Arizona, Trevino and Texas, whose laws are closely aligned to New Yorks, have certain procedures for bringing IATC claims on direct appeal (see Ibarra v. Thaler, 687 F.3d 222, 227 [5th Cir. 2012]; compare to People v. Evans, 16 NY3d 571 [2011]). But Texas law, while permitting IATC claims to be raised on direct appeal, "make[s] it 'virtually impossible' for an ineffective assistance claim to be presented on direct review" (Trevino, 133 S.Ct. at 1915). Thus, any claims alleged to be procedurally defaulted in my Article 440, in the unique facts and procedural applications presented to the state courts, will not bar this federal habeas court from reviewing these claims on their merits.

7

E. Errors of State Law

While federal habeas relief generally does not lie for mere errors of state law (see Estelle v. McGuire, 502 US 62, 68 [1991]), the Due Process Clause (U.S. Const., 14th Amend.) requires the state courts conducting criminal trials proceed consistently with the fundamental fairness which is essential to the very concept of Justice (see Lisenbe v. California, 314 US 219, 236 [1941]). But even when errors of state law rise to the level of a constitutional violation, it will only merit habeas relief if it had a substantial and injurious affect or influence in determining the Jury's verdict (see Brecht v. Abrahamson, 507 US 619, 623 [1993]).

<u>Introduction and Explanation of the Outline For This Petition</u>

The unique Procedural morass I've encountered in Pursuit of my criminal appeal in N.Y. States Convoluted Statutory and Procedural Labyrinth has led me to think "outside the box" and explore avenues best suited to vindicate my Federal rights with the knowledge of Martinez, Trevino and the Federal Adequacy Doctrine; a course I have creatively and diligently followed for six years now.

This course has developed into a challenge to the Structural and Procedural Adequacy of the laws, rules and dicta in N.Y. State, and how their interaction effectively Prevents the vindication of federal constitutional rights to the effective assistance of counsel. Like the Supreme Court held in <u>Trevino</u> About Texas, New York States "Procedural framework, by reason of its design and oPeration, make [s] it highly unlikely in a typical case that a defendant will have a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal." In making this argument as it applies to New York State in this Petition, a synopsis of my Procedural history is necessary for the required context, I Provide this in what follows below.

<u>First</u>: I moved to enlarge the Judgment roll with numerous records and transcripts that I wanted to use in my Pro-Se Brief (Appendix "b" through "O"), but the court only allowed transcripts as like Texas, there is no realistic mechanism to enlarge the record on direct appeal. Although appellate Counsel knew I was Preparing Pro-Se brief, he ignored multiple requests to send me the Peoples reply to his brief, forcing me to file a complaint with the Departmental Disciplinary Committee. Almost 6 months later, after first requesting it, he Provided it to me and I discovered that he raised mostly unPreserved claims.

<u>Second</u>: Unable to exPand the record, I filed a Motion To Withdraw appellate Counsels brief (Appendix "P"), requesting new counsel to file motion to vacate Judgment which notified the App. Div., Second Dept., of appellate counsels failure to raise mixed and dehor the record claims in Proper venue. I Provided affidavits and reports of experts, and other extra-record evidence showing the court appellate counsel was aware of dePth and scope of my claims.

9

I challenged the constitutionality of County Law §722, CPLR §§1101/1102 and the potential application of evidentiary protocols in CPL §440.30 and procedural bars in C.PL §440.10 (2)(b) and (c), as applied to assignment of counsel in a post-conviction motion, and I provided Notice to the Attorney General pursuant to Executive Law §7101 and CPLR §1012(b), but they declined to intervene and my application was denied with no reason.

Third: Most of the claims within this Petition were first presented in Motion To Vacate The Judgment (Appendix "AA") asserting Prosecutorial Misconduct, Brady Violations, IATC and a renewed challenge to the constitutionality of various laws and rules under the Federal Adequacy Doctrine. I also filed seperate motions for the assignment of counsel and for an evidentiary hearing. While my direct appeal and motion to vacate the Judgment were pending, on Aug. 5th, 2014, I filed a motion to the App. Div. for a Stay of Action Pursuant to CPLR §2201 (Appendix "T") to consolidate any appeal from my motion to vacate the Judgment with my direct appeal if necessary, but it was denied. I filed my Pro-Se Brief shortly thereafter on October 7th, 2014 (see also Appendix "T"). On Dec. 1st, 2014, my motion to vacate the Judgment was denied pursuant to CPL §440.30 (1) and (4)(b) and CPL §440.10 (2) (b) (Appendix "CC"). NOTE: The holdings found in Garner v. Lee, 2016 WL 7223335 (EDNY, Dec. 13th, 2016) are factually on point to the denial of my Article 440 and apply with equal force:

"It is therefore impossible to determine whether the [] court 'clearly and expressly' rested the entirety of its decision regarding Petitioners ineffective assistance claim on adequate and independent state grounds or which of the Petitioners ineffective assistance arguments the [] court rejected on procedural grounds. Accordingly, the court declines to find that Petitioners ineffective assistance claims is Procedurally barred for Purposes of [] Habeas Review."

Fourth: My leave to appeal to consolidate Motion to Vacate with direct appeal was denied on April 30th, 2015 (Appendix "DD" through "HH") as was my motion to Reargue and Renew that decision (Appendix "II", "JJ" and "KK"), even though the N.Y. State Court of Appeals in People v. Evans, 16 NY3d 571 (2011) prefers this. My direct appeal was denied on July 1st, 2015 (Appendix "C"), finding majority of claims unpreserved and the rest without merit.

Ironically, this decision aligned with my claims asserted in my motion to withdraw Appellate Counsels Brief. The App. Div., Second Dept., violated my Procedural Due Process right to file a reply brief, a regularly practiced State conferred right; five days after deciding my direct Appeal when it decided an Application to file said reply brief on July 6th, 2015 (Appendix "Z", see also Appendix "V", "W", "X" and "Y"). Upon writing the App. Div. Clerk I was told that Pursuant to 22 NYCRR §670.12(h), "the absence of any Provision ... Pertaining to filing a ... "reply brief" is indicative of there being no absolute right to do so." As all moving Parties in N.Y. State Courts Are allowed and permitted to do so, this statement is illogical and contradictory.

__Fifth__: On August 20th, 2015, I filed a supplemental criminal leave Application of my direct Appeal (Appendix "LL"). On October 1st, 2015, I filed a motion to App. Div, Second Dept., to withdraw Appellate Advocates as counsel of record and to assign new counsel to assist Appealing the May 19th, 2014 Order denying Motion to withdraw Appellate Counsels Brief (Appendix "MM", "NN", "OO") which the N.Y. State Court of Appeals allowed me to file a seperate Leave Application for. Once Again, I asserted my arguments that New Yorks convoluted statutory and Procedural scheme was ripe for a challenge under the doctrine of Adequacy as they Prevent the vindication of Federal Rights.

While Pending, on Nov. 3rd, 2015, I filed a motion to enlarge the record to the New York State Court of Appeals, for the inclusion of my Article 440 Application in the Leave to Appeal the May 19th, 2014 Order (Appendix "PP") for necessary context and clarity.

On January 8th, 2016, the App. Div, Second Dept., denied my Application to relieve Appellate Advocates as counsel of record with no reason stated (Appendix "QQ"). On April 4th, 2016, the N.Y. State Court of Appeals denied my Criminal Leave Application from my Direct Appeal (Appendix "F"), and in a seperate order denied Leave from the May 19th, 2014 Order As "Not Appealable Under CPL §450.90(1)" (Appendix "SS"). So why Allow me to submit it All to the court? This Provides yet another example of the Convoluted statutory and Procedural Scheme As it exists in New York State And highlights its erroneous Application that serves to waste Judicial resources.

On September 1st, 2016, I filed a Writ of Error Coram Nobis with Supplemental Affidavit challenging Appellate Counsels Failure To Assemble then investigate a complete record on Appeal before submitting his brief. The foundation of this argument was built upon my Application to Withdraw Appellate Counsels Brief made to the APP. Div., Second Dept., after my Appellate counsel filed his brief with the Court, and fully incorporated it, with all of its exhibits, into my Writ of Error Coram Nobis. (Appendix "TT" through "XX")

The Supplemental Memorandum of Law expanded my argument concerning the "Unconstitutional and Convoluted Procedural Morass" I was entrenched in as a result of the mechanisms in Place that prevented me from vindicating my Federal constitutional rights to Due Process and Effective Assistance of Counsel, in the context of expanding the record and Assigning counsel; representing my renewed challenge via the Federal Adequacy Doctrine.

<u>Note:</u> All of the issues raised in my Article 440 except Jury Selection issues that I exhausted in my Pro-Se Supplemental Brief on direct Appeal), were asserted in my Writ of Error Coram Nobis as trial court secondarily stated that I should have raised issues on direct appeal which was still Pending at the time. As the APP. Div., Second Dept. Agreed with the trial court and denied leave, I presented numerous Questions of Law in my main Affidavit in Support of Coram Nobis relief Addressing the statutory and Procedural infirmities in N.Y. States rules, laws and the irregular Application of dicta concerning the Appropriate forum to raise "mixed" and "dehor the record" claims of IATC.

On April 12th, 2017, the APP. Div., Second Dept. declined to address any of my claims and stated the Application was denied. (Appendix "YY")

On August 20th, 2017, I filed A Statement in Support of Certificate Granting Leave to Appeal the denial of my Writ of Error Coram Nobis, stating "A Convoluted Procedural Scheme, the Improper Application of Procedural Bars and Inconsistent Rulings on The Law Involving "Mixed Claims" of Ineffective Assistance of Trial Counsel in This State, Lie at the Foundation of this Leave Application." (Appendix "AAA" + "ZZ")

I also Provided statistical evidence that the "Contractual and Financial Constraints of Appellate Advocates [with the City of New York] Resulted in Representation That Failed To 'Fully And Competently' Represent Me And Can Be Deemed 'Breach of Contract' when Compared to OILS [N.Y.S. Office of Indigent Legal Services] 'Appellate Standards and Best Practices'." I attached the contract and broke down its contents to show a systemic breach of contract that Prevented indigent defendants from vindicating their federal constitutional right to the effective assistance of trial counsel, which affected about 1 out of every 3 clients they represented. This is what I was subjected to, and this represents one key Aspect of New York States Convoluted Statutory and Procedural Scheme.

On October 5th, 2017, I submitted a Supplement to Statement for Certificate Granting Leave to Appeal and Attached A Declaratory Petition Pending in Albany Co. Supreme Court (Index # 1063-16) challenging various laws related to the denial of counsel to Prepare and Submit an Article 440, in order to vindicate Federal rights to Effective Assistance of Counsel, as unconstitutional. I also Provided Quarterly reports from Appellate Advocates showing they Perform virtually no Article 440's to vindicate mixed or dehor the record claims of IATC on behalf of the clients they represent. Yet, 1 out of 3 clients they Submit Appellate briefs for have 50% or more of the Points they raise unPreserved for Appellate review; exactly what occured in my case. (Appendix "BBB")

On Oct. 19th, 2017, my leave to Appeal the April 12th, 2017 decision denying my Writ of Error Coram Nobis, made by the App. Div, Second Dept., was denied by Chief Judge DiFiore.✳

On Feb. 16th, 2018, I filed a Writ of Certiorari for the denial of my Writ of Error Coram Nobis (Anthony Bucano v. New York, 17-7914), which was denied on April 16th, 2018.

✳ (Appendix "CCC")                                    13

My challenge to the Convoluted Statutory And Procedural Labyrinth That Currently Exists in New York State under the Federal Doctrine of Structural And Procedural Adequacy incorporates All the steps I took, which included detailed notifications And challenges in a myriad of motions, to vindicate my Federal Constitutional right to the Effective Assistance of Counsel in every level of New York State Trial And Appellate Courts on my direct Appeal, And in my initial-review collateral Proceeding Article 440 motion to the trial court (where I was denied counsel) And My Writ of Error Coram Nobis to the Appellate Division, Second Department, which fully incorporated my Motion to Withdraw Appellate Counsels Brief when he failed to utilize A complete record on Appeal, forcing me to file Pro-se motions to enlarge the Judgment roll (largely unsuccessful), and where he failed to raise all claims and mostly raised them in the wrong venue.

The Appellate Path I have Journeyed down over the past 6 years will show that the state courts in New York have used, what I have identified in this Petition As the structurally inadequate Procedural Labyrinth, As a shield to Avoid enforcing my Federal Rights To Due Process And Equal Protection, And have chosen instead to use this shield to force my claims upon this court Eight (8) Years after my conviction And in a forum with a much higher and difficult standard of relief. This will insure the state incurs the least financial cost possible while At the same time insuring I serve my entire Sentence before, what I believe in my heart, this Honorable Court finally Grants me Justice And relief in this matter. This cost is too high...

I respectfully request this court to take into account my diligence And thorough-ness in Pursuit of Justice in this case, And to consider the context of All the steps I took Procedurally As A Pro-Se litigant, without counsel, to notify the state Appellate courts of the claims I was raising Along with this statement:

14

"While [A] Prisoner Not trained in law or familiar with legal Process might reasonably suppose that a heartfelt avowal of his or her veracity, however generalized, is sufficient to secure an evidentiary hearing, that is simply Not the case"

Pham v. United States, 371 F.3d 178, 186-187 (2nd Cir. 2003) (Sotomayor, J., concurring).

I submit that if this Court grants me a hearing and assigns me counsel, that counsel will find within the four corners of the record, including the Procedural Journey through the New York State Appellate Courts, claims which they will be able to fully brief for this Court in a much more artful, Professional and revealing manner.

I am scheduled for release in December 2020, and most likely this Petition will not be resolved by then. While incarcerated, I've dedicated myself to God, my family and learning the law, and along the way, on July 13th, 2016, I lost my common-law wife Diane of 31½ years, mother of our seven children, God's very special gift to me. I firmly believe that God has a Purpose for all of us, a PLAN, which he has slowly revealed to me over the Past 6 years, always insuring I was in the right Place at the right time to effectively Proceed along the long and tumultuous Path of my Appellate Practice. I firmly believe God has yet to reveal his greater Purpose for me, and until then I Place myself in his loving hands.

God Bless this Honorable Court and thank you for your time and diligence in reviewing this Petition.

## Outline And References Used In This Petition

The record in this case is voluminous, and the Petition I have presented requires a brief explanation of the outline and references used to refer to the record.

My intention is to show how my claims interact with and affect each other in the context of how I presented them to the state courts, along with supporting arguments of law relevant to this Petition, in order to show the full effect of how this prejudiced me. This is important in the context of my argument that the interaction of multiple laws and rules in New York States Convoluted Statutory and Procedural Scheme prevented the vindication of my Federal Claims in the New York State Courts. It also easily allows this court to verify that my Federal Claims were presented and exhausted in the State Courts.

By creating my Petition in this fashion, the court can directly refer to the claims I have presented in the briefs submitted to the State Courts, which in turn refer to the official transcripts as well as the records and exhibits in my Pro-Se Applications; and provides a coherent and concise presentation of the relevant portions of a large record.

A synopsis of my claims are outlined logically in the following sections. "I. Prosecutorial Misconduct And Ineffective Assistance of Counsel" expounds on issues raised for the first time in my Article 440 Motion. "440 Aff. at 91 ___" refers to Paragraph Numbers in the Affidavit, and "440 Mem. At Pgs. ___" refers to Pages in the Memorandum of Law.

"II. Direct Appeal Issues - Readback" expounds on issues raised on direct appeal. "APP. Br. At Pgs. ___" refers to Page numbers of Appellate Counsels Brief, "Pro-Se Br. At 91 ___" refers to Paragraph Numbers in my Pro-Se Supp. Brief, and "Supp. Lv. APP. At Pgs. ___" refers to Page Numbers in my Supp. Criminal Leave Application to the New York State Court of Appeals.

"III. Abuse of Discretion And IATC During Jury Selection Raised on Direct Appeal" also expounds on issues raised on direct appeal, and in addition to the abbreviations outlined above, I use "Resp. Supp. Br. At Pgs. ___" to refer to Paragraph Numbers of Respondents Opposition to my Pro-Se Supplemental Brief. Section III refers to the Courts of New York States failure to Grant An Evidentiary Hearing, which violated my Due Process Rights.

16

## Point I

The Inconsistent Application of Statutory and Procedural Laws and Rules in New York State Has Been Used As A Shield To Avoid Enforcing My Federal Rights To Due Process and Equal Protection Under The Law For The Claims Presented In This Petition

### I. Post-Conviction Issues - Prosecutorial Misconduct And IATC

I was arrested on Sept. 29th 2009 at 5PM for crimes allegedly occuring previous night. I was brought to court on Sept. 30th 2009, but never saw a lawyer or judge, yet multiple court records were dated Sept. 30th 2009 (440 Aff. at ¶ 115-119).

On Oct. 1st 2009, while I sat in the precinct a grand jury was convened and only the complainant testified. All of this occured before I met my attorney or saw a judge for the first time at 3 PM, about 3-6 hours after the grand jury convened. When I finally saw the judge and was arraigned, the case was adjourned for grand jury action until Oct 5th 2009, and I posted $5,000 bail the next day (440 Aff. at ¶ 120-128).

On Monday Oct. 5th 2009, I came to court with bankruptcy attorney Dennis J. O'Sullivan. When Judge Green asked ADA Jenks if he was ready to proceed, he stated he did not have my file (as ADA Katchen had it in the grand jury). Mr. O'Sullivan reaffirmed cross grand jury notice, but never received notice the grand jury had already convened and was scheduled to vote just a few hours later. The court had no knowledge either, as the case was adjourned for grand jury action until December 1st, 2009 (440 Aff. at ¶ 144-149).

Detective Wasson of the Special Victims Unit (SVU) interviewed Ms. Ramos on Sept. 30th, 2009, before the grand jury convened, but she only alleged crimes occuring on the evening of Sept. 28th 2009 to him, the crimes I was charged with upon my arrest. The DD5 report shows no further investigation was done, and he closed the investigation on Oct. 6th, 2009 (440 Aff. at ¶ 150-152).

A. Grand Jury Proceedings - Prosecutorial Misconduct Involving The "Book"

The Grand Jury Transcripts show ADA Katchen and ADA Rudich as Present, and ADA Katchen Questioned Complainant after marking for Identification Exhibits 1 to 6 and stating "Good Morning" (440 Aff. at ¶ 153-155).

Using leading Questions and statements consistently throughout the Proceedings, ADA Katchens first Question reveals Complainant, Ms. Ramos, has taken the stand to testify already in Possession of a "book", as she answers "Can I look at my book to refresh?" (440 Aff. at ¶ 153-159, see Grand Jury Transcripts, Ex "1-F", Pg. 4, at ¶ 11-19). What other documents or notes did Ms. Ramus Possess while testifying?

Grand Jury Stenographer Mckenna records the following for ADA Katchen, "No Verbal Response", and Ms. Ramos replies "Yes", obstensibly to a non-verbal cue, a head nod, by one of the ADA's Present, indicating it was ok to read from the book. How many other non-verbal cues occured not seen by stenographer? In the context of these Proceedings so far, and the events leading up to them, the Question of why Ms. Ramos said "refresh", leads to an implication she was coached, as future events solidify this claim further (440 Aff. at ¶ 160-167, Ex. "1-F", Pg. 4 at ¶ 20-21)

These leading Questions and impermissible statements violated ABA Standards For Criminal Justice, §§ 3-3.5 (b) and 3-3.6 (f), as they intentionally interfered with the independence of the Grand Jury, Preempted its independant functions as exclusive finders of fact and abused the Grand Jury Process, which continued going forward in Proceedings (440 Aff. at ¶ 168-197, 206-237; Ex "1-F", Pgs 5-16).

During his Questioning, on two occassions ADA Katchen goes way over the line and provides testimony through leading Questions designed to meet the specific statutory requirements of Counts 1 and 7, in what I allege was Prosecutorial overreaching and "stacking the deck", both of which were crimes alleged to occur on first date of indictment, July 17th, 2009 (440 Aff. at ¶ 172-178, Ex "1-F", Pgs. 5-6, and 7 at ¶ 1-13) Also date of my email to Steve Frankl (440 Aff. at ¶ 500-505, Ex. "1-T"). This witness was never called to corroborate

my Prompt outcry about my fiancees erratic behavior, Trial Counsel Mr. Lambs failure to subpeona this and other emails I provided him before trial to support his theory that Ms. Ramos fabricated charges because I was leaving her amounted to ineffectiveness (Other emails, 440 Aff. at ¶ 349-370, Exs. "3-E"- "3-G", also my trial testimony, T. 376-377, 385, 389, 398, 400, 404, 408-409). These emails would have damaged Ms. Ramos' credibility multiple times in a case largely based on who the jury found more credible (T. 146 at ¶ 16-25, T. 283 at ¶ 3-5), were not subject to the Rape Shield Law, and were known to trial counsel by me and ADA Katchen in his "Rosario/Discovery" letter of June 21st, 2016 (Ex. "2-I" of 440 Aff.).

Returning to the Grand Jury Proceedings, it is when ADA Katchen starts to Question Ms. Ramos about July 28th, 2009 alleged incident that it becomes clear that Ms. Ramos has no independent recollection of these events, but only what is in her "book".

ADA Katchen directs her attention to July 28th, and asks if anything occured between me and Ms. Ramos that day. She replies "yes", and ADA Katchen states "Oh." I allege ADA Katchen met his breaking point when Ms. Ramos finally continues to state "Um, I have to look at my (indicating) ---", which is exactly what stenographer recorded. This is obviously a non-verbal cue in which the complainant is pointing to her "book", but begs the Question of "why not say book again?" (440 Aff. at ¶ 179-183, Ex "1-F", Pg. 7 at ¶ 15-19).

Forced to reveal the truth about the "book" Ms. Ramos took the stand with and was reading from (compared to testimony in 440 Aff. at ¶ 206-246), I allege this is when ADA Katchen lets the "cat out of the bag" and does damage control, and reveals the "book" is actually a diary, but one with only 8 dated entries over a 3 month period alleging crimes (440 Aff. at ¶ 184-188, Ex "1-F", Pg. 7 at ¶ 22-25, Pg. 8 at ¶ 1-6).

ADA Katchens next leading Question shows the coaching that I allege Ms. Ramos received from him when he asked her "Is that what you're using to "refresh"

19

Your recollection "And she replies "yes" (440 Aff. at ¶¶ 189-190, Ex. "1-F", Pg. 8 at ¶ 7-9). ADA Katchen repeatedly and consistently engaged in the use of inferential hearsay with bolstering questions during the Grand Jury Proceedings in violation of the Tufano rule (People v. Tufano, 69 AD2d 826 [2nd Dept, 1979]; Ryan v. Miller, 303 F.3d 231 [2nd Cir. 2002]).

Trial counsel failed to move to recuse ADA Katchen as an unsworn witness for acting as an investigator and violating the advocate-witness rule after he received the Grand Jury transcripts 10 weeks before trial on June 21st, 2010, revealing his lack of basic trial skills. ADA Katchens exclusive knowledge of the diary was apparent, as he made sure Ms. Ramos had it on the stand during her Grand Jury testimony, and his leading-questions were for crimes on dates only found in the diary as no other investigatory record alleged crimes other than for Sept. 28th, 2009, what I was arrested for. I spoke to the court before trial on Sept. 8th, 2009, and repeated what I told trial counsel much earlier, that ADA Katchen was an unsworn witness (440 Aff. at ¶¶ 376-379, also see Jury Selection Transcripts, hereafter "J.S. Tr.", Pg. 8 at ¶ 3-10).

Trial counsel also never challenged Prosecutorial Misconduct with a motion pursuant to C.P.L. §210.35 (5) to dismiss the indictment for defective Grand Jury Proceedings because "the integrity thereof [was] impaired and prejudice to the defendant may [have] result[ed]".

The prejudice that I suffered was compounded, as the improper use of the diary resulted in retroactive misjoinder of fabricated counts in the indictment, most of which were dismissed at the charge conference. This permitted the prosecutor to "stack the deck" with crimes complainant had no independent recollection of to impermissibly bolster his case with an expert on Battered Womans Syndrome not otherwise permitted, as the experts testimony relied on these fabricated crimes. As such, there was a reasonable probability that prosecutorial misconduct led to evidence and testimony being presented on these impermissibly joined and tainted counts (7, 12-15, 17, 19-22, 25) which directly resulted in prejudicial spillover that influenced the jury into finding me guilty on the 4 remaining felony counts. As explained below, the cumulative prejudice that I suffered because of this prosecutorial misconduct requires that the 4 remaining felonies I was found guilty of be dismissed.

20

B.   Retroactive MisJoinder And PreJudicial Spillover

Although there is no specific Supreme Court Authority with respect to "spillover" PreJudice when a criminal count has been dismissed At trial or reversed on Appeal, the Second Circuit has developed a framework for Addressing PreJudicial spillover claims in this context under "retroactive misJoinder" (see e.g. United States v. Jones, 482 F.3d 60, 78 [2ⁿᵈ Cir. 2006] ["Retroactive misJoinder refers to circumstances in which the Joinder of multiple counts was Proper initially, but later developments - such As A district court's dismissal of some counts for lack of evidence or An Appellate court's reversal of less than All convictions - render the initial Joinder imProper"] [internal Quotation marks And brackets omitted]).

Moreover, Although the Second Circuit has not explicitly Addressed the "clearly established federal law" reQuirement, it has Addressed the merits of PreJudicial spillover or retroactive misJoinder claims in the context of habeas Petitions (see Lindstadt v. Keane, 239 F.3d 191, 206 [2ⁿᵈ Cir. 2001] [counts dismissed by court had spillover effect, because Jury that finds Guilt on Abuse Accounts on one occasion is "primed to find the defendant Guilty of Another"]; Jelinek v. Costello, 247 F. Supp. 2d 212, 276-77 [EDNY 2003]; Green v. Lee, 964 F. Supp 2d 237, 263 [EDNY 2013] [defense counsels errors reGarding sexual Abuse counts dismissed by the court had spillover effect on remaining counts, dismissing those As well], And APPears to have implicitly concluded that because the PreJudicial spillover rule is clearly established in A set of facts involving Joinder (see e.g. Zafiro v. United States, 506 US 534 [1993]), it is also clearly established in the context of A set of facts involving retroactive misJoinder.

I fairly Presented my claims of Retroactive MisJoinder And PreJudicial Spillover to the New York State Courts in my Article 440 (APPendix "AA"; 440 Aff. At ¶ 556-563; 440 Mem. At Pgs 91-95) And in my Writ of Error Coram Nobis (APPendix "TT"; Writ. Aff. At ¶ 190-194; Writ. Mem. At Pgs 76-81), who did not exPlAin their reasons

21

for denying relief; so to determine if the state courts decision was based on an un-reasonable determination of the facts in light of the evidence presented to them, my claims must be examined in the context of clearly established law in New York State.

In New York State, Prejudicial spillover "is a Question that can only be resolved on a case-by-case basis" (People v. Baghai-kermani, 84 NY2d 525, 532 [1994]) by evaluating "the individual facts of the case, the nature of the errors and its potential for prejudicial impact on the over-all outcome" (People v. Concepcion, 17 NY3d 192, 196-197 [2011] [internal Quotation marks and citations omitted]); and reversal is required if "there is a reasonable probability that the jury's decision to convict on the tainted counts [in my case, 11 of 21 sex crimes dismissed at charge conference] influenced its guilty verdict on [4 of] the remaining [10] counts [found "Not Guilty" on other 6] in a meaningful way" (People v. Doshi, 93 NY2d 499, 505 [1999]; see also People v. Daly, 14 NY3d 848, 849 [2010]).

Considering the clearly established N.Y. State law above in the context of the individual facts of my case as I have presented them to the state courts, along with the nature of the errors occuring and its prejudicial impact on the overall outcome of my case; there is a more than reasonable probability that the prejudicial spillover that occured allowed the jury to convict me on the 2 felony counts for Sept. 25th, 2009 (that trial counsel never cross-examined complainant on, thereby accepting and conceding as true; see subsection "I", "E", infra), and the only other 2 felony counts I was found guilty on during "the end of September", Sept. 28th, 2009, based on their inflammatory nature. Trial counsels errors concerning Sept. 28th, 2009, included failing to object to prejudicial and speculative testimony of prosecution witness Ms. Mach because he "could not hear it", who then under the guise of damage control moved the trial court to "unstrike" similar testimony stricken from the record during trial in response to a deliberating jurys request for a readback of Ms. Machs testimony in a jury note. The judge, in an abuse of discretion, failed to meaningfully respond by stating "I dont care", granted trial counsels request and read back testimony he admonished jurors that they could not use three times; who found me guilty of these 4 crimes in the "end of September" (see subpoint "II", infra).

22

This PreJudicial spillover was the direct result of inexcusable errors of omission and commission by trial counsel that "tended to incite or arouse the Jury into convicting [me] on these remaining counts" (United States v. Wapnick, 60 F.3d 948, 953-55 [2nd Cir. 1995]; United States v. Rooney, 37 F.3d 847, 855-56 [2nd Cir. 1994]), and the evidence and testimony presented on the dismissed counts "would otherwise be inadmissible on the remaining counts" (United States v. Morales, 185 F.3d 74, 82 [2nd Cir. 1999]; Accord Wapnick, 60 F.3d at 954; Rooney, 37 F.3d at 856; see also Jelinek, 247 F. Supp. 2d at 276-277 [applying Second Circuit procedure for assessing PreJudicial spillover claim]). As such, if trial counsel had properly investigated then cross-examined the complainant (for Sept. 25th) and Ms. Mach (for Sept. 29th) to challenge the veracity and credibility of their testimony, he would have "cast doubt on the veracity of the alleged victims [and Ms. Machs] testimony in its entirety," and thus counsels errors can be presumed to have "infect[ed] all of the counts of which [I] was convicted" (Gersten v. Senkowski, 426 F.3d 588, 614-615 [2nd Cir. 2005]). But for counsels errors, I would have been found "Not Guilty" of all sex crimes against me (Strickland, supra).

I fairly presented the cumulative effect of trial counsels failures under Stricklands "Performance" and "PreJudice" Prongs to the trial court in my Article 440 (Appendix "AA"; 440 Mem. at Pbs. 49-50, 104-109), and to the Appellate Division, Second Dept. in my Writ of Error Coram Nobis (Appendix "TT"; Writ Mem. At Pbs. 81-86). Directly on Point to my case is the Second Circuits decision in Lindstadt, who noted that "Aside from the testimony of [the battered womans syndrome expert], the only [direct] evidence of abuse came from his wife and daughter [in my case, only complainant]; their credibility lay at the heart of the Prosecutions case. Had defense counsel mounted a Proper challenge to [her] testimony as to [the diary, voicemails, emails; see subsection "I", "E", infra], it would have naturally called into Question whether the [sexual] abuse occured at all." Lindstadt, 239 F.3d at 199.

23

Similarly, in Gersten, the Second Circuit found Prejudice where "The Prosecutions case rested on the credibility of the Alleged victim, All other evidence Presented by the Prosecution [downstairs Neighbor And expert] was indirect evidence offered to corroborate Aspects of the Alleged victim's story, Defense Counsels failure to investigate the Prosecutions evidence [And failure to object and cross-examine effectively] led him to decide not to Challenge what was clearly the Most significant corroborative evidence [the diary used At Grand Jury to build case] (Gersten, 426 F. 3d At 612).

Not only was the state courts decision based on an unreasonable determination of the facts in light of the evidence Presented to them, it was also "contrary to" And/or involved an "unreasonable Application" of clearly established federal law, As I have Presented to the state courts and within this Petition, And I Am entitled to relief by this court in the form of A finding of retroactive Misjoinder and Prejudicial spillover resulting in the dismissal of All four felony charges of which I was found guilty of At trial, And my immediate release from state custody.

24

## C. IATC And The Trial Courts Abuse of Discretion Resulted In Bias Prejudicing Me

The errors described below compounded the prejudice I suffered under Strickland, As trial counsels lack of basic trial skills, and specifically his lack of knowledge concerning the rules of evidence and procedure combined with his lack of investigation concerning the diary and its improper use prevented him from filing a motion to dismiss the indictment for defective Grand Jury proceedings pursuant to C.P.L. § 210.35(5). As 11 out of 19 sex crimes extracted exclusively from the fabricated diary at the Grand Jury were dismissed at the charge conference, and the jury found me Not Guilty of the remaining 8 at trial, a high probability existed that without counsels errors that failed to recognize and address the prosecutorial misconduct (see subsection "A", supra) and resulting Due Process violations of Retroactive Misjoinder and Prejudicial Spillover (see subsection "B", supra), the indictment would have been dismissed and I would have not been reindicted, or would have only been reindicted for the alleged crimes I was arrested for.

The "snowball effect" of errors by trial counsel, like a snowball rolling down a hill, grew larger when he failed to object to the abuse of discretion by the trial court when it erroneously denied an examination of the original diary by an expert in a biased manner after moving the court to have the diary accompanied by an ADA to the experts lab, providing service Pro bono at no cost to the state, where he could have performed a "water solubility test" on the ink of the pages that could determine the allegations of sex crimes at the end of multiple dated entries over a 3 month time span were written at the same time. This would have altered the outcome of my case.

### (i) The Trial Courts Abuse of Discretion That Denied Testing By Expert Was Biased

Trial counsel moved for said expert in limine on July 7th, 2010, after ADA Katchen released a poor black and white xerox copy of all diary entries by Ms. Ramos on June 30th, 2010 (440 Aff. at ¶ 271-272, Ex. "I-X"; see Diary in Ex. "I-0"). During the July 7th, 2010 proceedings it became clear that trial counsel did not investigate the

law concerning the diary as evidence as he equated the diary entries to prompt outcry by the complainant, even surprising the trial judge (440 Aff. at ¶ 273-274).

This matter continued in an extensive discussion on July 16th, 2010 about the experts inability to perform the tests outside of his laboratory, which he explained in a written motion (440 Aff. at ¶ 280, Ex. "1-Z") relaying the experts statement that "it [was] impossible to conduct a thorough, meaningful and accurate examination of a photo static or xerox copy [of the diary] such as the copies provided to me by the District Attorney (440 Aff. at ¶ 275-282; July 16th 2010 Transcripts; Ex. "1-Y").

On August 11th, 2010, trial counsel reiterated his argument for an examination of the diary by an expert. At first, the People state they may introduce the diary to explain how she remembers the specific dates and times of alleged crimes (440 Aff., August 11th, 2010 Transcripts, Ex. "3-M", at Pgs. 3-5), but at the end of the proceedings the People adopt the court's position that it would not be appropriate for the People to do so on direct examination (440 Aff., Ex. "3-M" at Pg. 8).

Even though trial counsel went further to state that it was clear that alterations and additions were made to pages in the diary, calling into question its authenticity which was relevant to the defense that the charges were fabricated; the trial court in a further abuse of discretion and in a biased manner made expert scientific evaluations of the evidence he was not qualified to make and stated "how could a hand writing expert tell when an entry or alteration was made" (440 Aff., Ex. "3-M" at Pgs. 5-6) and refused to allow the diary to be brought to a laboratory for scientific testing (440 Aff., Ex "3-M", at Pgs 6-7).

This abuse of discretion resulted in a biased decision that violated my constitutional rights on multiple levels. First, the water solubility test, which could only be performed on the original document, would have established that Ms. Ramos added entries alleging crimes on the last line of multiple dated entries spanning a 2½ month period all on the same date, destroying her credibility and likely exonerating me of all sex offense crimes. As such, I was denied a fair trial by the court improperly restricting my right to present evidence of significant probative value (Washington v. Texas, 288 U.S. 14 [1967]).

Second, my right to defend myself against the charges was impaired by the trial court in applying the states rules of evidence in a way which denied me of my right to present a clear defense supporting fabrication of the charges against me by the complainant (Holmes v. South Carolina, 126 S.Ct. 1727 [2006]). The rules of evidence allow scientific testing on evidence consisting of an original document under the Best Evidence rule (United States v. Hernandez-Fundora, 49 F.3d 848 [2ⁿᵈ Cir. 1995]; see also Federal Rules of Evidence 1002 and 1003).

Third and finally, this was also a clear violation of my constitutional rights to Due Process as well as the Federal Rules of Civil Procedure, §3485, Rule 28; reiterated in Ake v. Oklahoma, 470 U.S.68, 82-83 (1985), which stated that "due process entitles the services of a court appointed expert to conduct appropriate examination and to assist in the evaluation, presentation and preperation of their offense," which is necessary to be provided with a meaningful opportunity to present a complete defense.

I fairly presented these issues in the context of an abuse of discretion by the trial court and IATC in my Article 440 (Appendix "AA", 440 Aff. at ¶¶ 272-284, 289, 581-589; 440 Mem. at Pbs. 101-102), and to the APP. Div. Second Dept. in my Writ of Error Coram Nobis (Appendix "TT"; Writ Aff. at ¶¶ 92-98, 206-211; Writ Mem. at Pbs. 71-72, 74), thereby preserving my right for this Court to review them. Furthermore, I also presented these issues in the context of Judicial Bias, as following the courts erroneous logic, an expert on narcotics testing or ballistics would also have to be performed in the District Attorney's Office. As this conclusion by the trial court is not standard practice in New York State and no logical reasoning can be determined, the absurdity of this decision, for a lack of another logical inference, can only be considered to be a decision made with Judicial Bias which substantially contributed to my conviction (Arizona v. Fulminante, 499 U.S. 279 [1991]), and was an abuse of discretion that deprived me of my right to a fair trial, and also deprived me of my constitutional right to present a complete defense; expounded on fully in the next section to follow.

27

(ii) I Was Denied The Meaningful Opportunity To Present A Complete Defense

The trial court acted in a biased manner by taking on the role of an expert witness, and in an abuse of discretion prevented the scientific testing of evidence that would have irrevocably damaged the complainants credibility and created reasonable doubt to my guilt. Furthermore, trial counsels failure to object to these actions and to move for a trial order of dismissal on these grounds cannot be attributed to a tactical or strategic reason that could benefit me in any way, rendering him ineffective under the "Performance" and "Prejudice" Prongs of Strickland.

"The Constitution Guarantees criminal defendants a meaningful opportunity to present a complete defense" (Crane v. Kentucky, 476 US 683, 690 [1986] [Internal Quotations omitted]; see Wade v. Mantello, 333 F. 3d 51, 67 [2ⁿᵈ Cir. 2003] ["Supreme Court Precedent makes clear that a criminal defendant is entitled by the Constitution to a meaningful opportunity to present a complete defense"]). Indeed, "[t]he right to present a defense is one of the minimum essentials to a fair trial" (Rosario v. Kuhlman, 839 F. 2d 918, 924 [2ⁿᵈ Cir. 1988] [Internal Quotations omitted]).

When a trial court excludes evidence relevant to a defense theory, "[i]t is the materiality of the excluded evidence to the presentation of the defense that determines whether a defendant has been deprived of a fundamentally fair trial". Id. at 925. The materiality of excluded evidence, in turn, is determined by considering whether the evidence's admission could have "create[d] a reasonable doubt that did not otherwise exist" (Jones v. Stinson, 229 F. 3d 112, 120 [2ⁿᵈ Cir. 2000]). "In a close case, additional evidence of relatively minor importance might be sufficient to create reasonable doubt." Id. (Internal Quotations omitted).

When the trial court Prevented me from having the diary examined by administering a "water solubility test", it excluded evidence relevant to the defense theory that the charges were fabricated, as the test would have revealed all entries alleging sex crimes at the end of numerous dated entries over a 2½ month Period were written at same time.

When considering that this was a case entirely based upon credibility, this additional information was of major importance and was more than sufficient to create reasonable doubt of my guilt to the Petit Jury. The trial courts ruling not only undermined my affirmative presentation of the defense theory that the charges were fabricated by showing her falsification of the diary as a scientific certainty, it also greatly limited my ability to challenge the prosecutions case, which heavily relied on her credibility.

The Honorable District Court Judge Brian M. Cogan of this Court recently decided the case Spencer v. Capra, 2018 WL 3339521 (EDNY, July 6th, 2018), and held that the Petitioner was deprived of his right to present a defense. Like Spencer, my "case was essentially a he said, she said, so undermining Petitioners ability to call into question the prosecutions witnesses was a severe blow." Id. at #4 (internal quotation marks and citations omitted). I submit the facts of my case are indistinguishable and closely aligned to the same type of prejudice Spencer was subjected to, thereby allowing this court to reach the same conclusion; that there was "grave doubt that this error of federal law had a substantial and injurious effect or influence in determining the Jury's verdict." See Stinson, 229 F.3d at 120.

United States v. Agurs, 427 US 97 (1976) elaborated on the constitutional standard for materiality by stating that "It necessarily follows that if the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed" and that "This means that the omission must be evaluated in the context of the entire record." Finally, the Court noted, "if the verdict is already of questionable validity, additional evidence of relatively minor importance might be sufficient to create a reasonable doubt." Id. at 925.

When considering the entire record, including trial counsels errors including Prosecutorial Misconduct and Brady Violations (Point 1, I, A and D, infra) leading to Prejudicial Spillover (Point 1, I, B) and numerous other errors (Point 1, I, E and II, infra) including abuse of discretion by the trial court raised so far and during readback, Jury Selection and denying evidentiary hearing (Point 1, II, III, IV, infra); I was denied a meaningful opportunity to present a complete defense.

<u>(iii) Failure To Present Other Experts By Trial Counsel Was A Position Contrary To The Defense</u>

Trial counsel was ineffective under <u>Strickland</u> when he failed to present other experts about the diary at trial which I found myself and presented to him. Forensic Document Examiner Robert Baier examined the original diary with limited tools on the first day of trial, determining with a high probability that the entries alleging crimes on the last line of multiple dated entries over a 2½ month period were written at a noticably different angle, and were not made at the same time as the portions above them (440 Aff. at ¶¶ 390-400; 440 Mem. at Pgs. 62-64; Writ Aff. at ¶¶ 144-149; Writ Mem. at Pgs. 57-60).

Handwriting Personality Profiler Treyce d'Gabriel Montoya performed a forensic examination of the diary's handwriting to determine deception and accompanying personality factors, finding strong indications of deceptive and obsessive traits, bipolar disorder and anxiety (440 Aff. at ¶¶ 403-405; 440 Mem. at Pgs 64-65), but was never presented to the court to testify.

Mr. Baier drove down to court to testify, even though his mother was being buried the next day, but was told he was not needed any more because the District Attorney decided not to enter the diary into evidence. (440 Aff., Ex. "2-V", Pg. 3 at ¶ 8). In reality, trial counsel went against his own statements to the court on the first two days of trial, my express wishes and what he told the expert himself and never cross-examined the complainant about the diary so it could be entered into evidence. When I objected after he finished cross-examining the complainant, he stated "In my judgment it shouldn't have come in and no reference should have come in on the cross-examination and therefore we make the experts testimony irrelevant." The trial court responds "You've made your record. There's nothing for me to say." (440 Aff. at ¶¶ 506-516; 440 Mem. at Pgs. 79-81; Writ Aff. at ¶¶ 185-189; Writ Mem. at Pgs 70-71).

On Oct. 5th, 2010, about 1 week after trial ended, trial counsel made an illogical and inconsistent statement contrary to his position on the first day of trial when he stated "... my handwriting expert did... in fact examine the diary in the D.A.'s office... I feel he has evidence value and I intend to call him as an expert witness on behalf of the defense, offer his testimony, offer him as an expert" (440 Aff. at ¶ 509), by now stating "I mean the major thrust of my conduct at trial

30

(i.e. Trial Strategy) is my belief that if the use of the diary introduced a handwriting expert to impeach the diary would have been harmful" (440 Aff. at ¶ 515-516; Oct. 5th, 2010, Tr. Pg. 8 at ¶ 25, Pg. 9 at ¶ 1-4).

I responded to trial counsel on Oct. 5th, and started by stating that the expert was in court ready to testify. In my Article 440, I submitted Mr. Baiers notarized confirmation letter dated March 2nd, 2011, stating "I was told to be at court on Sept. 15th both by Mr. Rucano with confirmation the night before and by Attorney Eugene Lamb" (440 Aff. at ¶ 512, Ex. "2-U"), also confirmed with Mr. Baiers affidavit to the Assigned Counsel Plan (440 Aff., Ex. "2-V", Pg. 3 at ¶ 6); so why did trial counsel tell Mr. Baier to come to court to testify if impeaching the diary with an expert would be harmful? This illogical and contradictory position by trial counsel defeated the adversarial process, has no tactical reason or strategic purpose and was a position contrary to the defense.

The expert would have shown by comparing the handwriting in the diary that the complainant went back at a later time and maliciously added stuff to it (alleging sex crimes at the end of multiple dated entries) (440 Aff. at ¶ 565; Oct. 5th, Tr. Pg. 9 at ¶ 5-20), then showed it to ADA Katchen the day after she had me arrested, who using prosecutorial misconduct at the grand jury infected the entire trial process at great prejudice to me (see Point I, I, supra). Logically, a competent attorney would have recalled the complainant to cross-examine her about her testimony at the grand jury after the expert revealed this. As the complainant admitted to reading from the diary during her grand jury testimony, which the record reveals was never presented to her to "refresh her recollection", once the diary was impeached, her credibility as a whole would have been decimated, and most likely I would have been exonerated of guilt for all sex crimes.

After trial counsel admitted the expert was in court, the trial judge inappropriately threw trial counsel a lifeline by stating "For strategic reasons you decided not to call him". Trial Counsel jumped on the bandwagon and lied, stating I agreed with him "that at that point it was unwise as a trial strategy to introduce the existence of the diary" (440 Aff. at ¶ 515, Oct. 5th Tr. Pg. 10 at ¶ 10-17). The trial record as a whole with experts affidavits contradict this, and trial counsel introduced his own perjured testimony into the record (Nix v. Whiteside, 475 US 157 [1986]), and the bias and abuse of discretion of Judge Rooney deprived me of a fair trial) (Arizona v. Fulminante, supra).

31

## D. Brady Violations Involving The Diary Allowed Prejudice To Permeate My Entire Trial

The record as a whole reveals that ADA Katchen acted in an investigatory manner and became an unsworn witness when he met with Ms. Ramos, after my arrest but before I was arraigned almost 48 hours later, and took possession of material evidence, the diary, which he used against me at the Grand Jury to "stack the deck" and overcharge me, then failed to disclose his exclusive possession of it as Brady material in his reply to my Omnibus motion, and never turned it over to Detectives. Instead, he waited until 2 months before trial to release a poor black and white Xerox copy in a continuing effort to suppress the damaging aspects of it to his case, as one of the diary entries was in a different color pen at the end of entry, and was also the only entry to allege crimes that had no corresponding charges filed against me as this was the day me and complainant went to the Poconos for a romantic weekend. This amounts to a clear and blatant BRADY Violation (Kyles v. Whitley, 514 US 419 [1995]; See also Brady v. Maryland, 373 US 83 [1963]).

Any attempt by ADA Katchen to hold that the diary was not exculpatory would fail as its numerous inconsistencies and defects provided bountiful impeachment material. First, there is no distinction between "Impeachment" and "Exculpatory" information, especially in a case where the jury was hanging on the fence in a balancing act, and a tip in the direction of who was more credible would have decided the outcome of the case (U.S. v. Bagley, 473 US 667, 676 [1985]; Giglio v. U.S., 405 US 150, 154 [1972]).

Second, as ADA Katchen allowed Ms. Ramos to use the diary inappropriately without it being marked for identification or entered into evidence, and without a proper foundation being laid, and instead allowed her to read from it as the truth of the matter asserted during her Grand Jury testimony; it was not for him to guage portions of the diary's reliability, usefulness or believability, and to selectively use portions of it that were beneficial to him without disclosing it (DiSimone v. Phillips, 461 F.3d 181, 185 [2nd Cir. 2006]). All three components of a true Brady violation have been met (440 Mem. at Pgs 41-44), and under the Two-Step Analytical Process, Plain Error has occured (440 Mem. at Pgs. 44-48).

The failure of ADA Katchen to disclose the diary as Brady material in response to my Omnibus motion was intentional. His Questioning of Ms. Ramos at the Grand Jury was centered around the diary, and no other information about the crimes alleged within the diary existed. But why wasn't I charged for crimes allegedly occurring on Sept. 18th, 2009, the only 2 Page entry where it was alleged I repeatedly choked her throughout the entry _And_ accused me of rape on the last line (Just like most of the Previous entries), but only after switching to a different type of Pen? This indicates an afterthought by Ms. Ramos, and a return at a later time to add this entry, where she Picked up a different Pen.

I submit that ADA Katchen knew this entry to be so unquestionably false that he could not dare to "Fudge" it like he Planned to do with the rest of the diary. He saw this entry had Portions written in Past tense, and that he could not explain why Ms. Ramos had the need to identify me by my name in Parentheses (Anthony) in a diary that was her own Private Journal. Did she think she would forget who I was? ADA Katchen also knew me and Ms. Ramos went to the Poconos for a romantic weekend on Sept. 18th, 2009. It now becomes clear why he went to great lengths to conceal the diary's existence by by Passing the rules of evidence and hearsay, as its reliability was highly Questionable, and he desperately wanted to avoid turning it over in a timely fashion to Prevent it from being challenged and moving to dismiss the indictment.

Ms. Ramos identified me by name after formulating her Plan for revenge against me after I told her I was leaving her. Taking action on this Plan, which she first revealed to her doctor after Prompt outcry of assault (no sex crimes) on Sept. 21st, 2009 (440 Aff. at ¶ 371-373), she went back after careful thought about her Plan, and added 1 line alleging forced sex to multiple Previous entries over a 2½ month Period and backdated the entry of Sept. 18th, 2009 (explaining Past tense Portions) which not only repeatedly accused me of choking her, but also, after more thought to her Plan, at an even later time added one line at the end accusing me of forced sex. (see 440 Aff., Ex. "I-Q").

The Brady violations occuring were a necessary evil to obscure the Prosecutorial Misconduct that occured at the Grand Jury with the diary, when ADA Katchen allowed the complainant to read from it during her Grand Jury testimony without it ever being presented to her to "refresh her recollection." The diary was improperly used as evidence as it was hearsay that violated the rules of past recollection recorded, and was not competent and admissible under the law. ADA Katchen bypassed the rules of evidence safeguards to "stack the deck" and assert crimes that were fabricated in the diary with no basis in fact, which she had no independent recollection of. The fact that 11 of 21 sex crimes in the indictment were dismissed for lack of evidence in the charge conference because the complainant could not read from the diary during trial like she did at the Grand Jury to remember her fabricated crimes fully supports this claim (see subsection "I", "A", supra).

The Prosecutorial overreaching by ADA Katchen allowed the complainant to use the diary at the Grand Jury as the truth of the matter asserted without laying a foundation, which improperly bolstered his case and overcharged me, which in turn allowed prejudice to permeate my entire trial with Retroactive Misjoinder of Fabricated Crimes improperly placed in my Indictment supporting a Prosecution Theory of "Battered Womans Syndrome" that would have otherwise not been allowed and with Prejudicial Spillover at trial (see Subsection "I", "B", supra). ADA Katchen, by striking foul blows designed to infect my trial with unfairness, obtained a conviction that was the result of a denial of due process (Appendix "AA"; 440 Aff. at ¶¶ 198-205; 440 Mem. at Pgs. 3-8, 10-11, 16-23).

ADA Katchen violated my Due Process Rights to a fair and impartial trial worthy of confidence with the intentional suppression of known Brady material, which was a Flagrant Violation of his Professional and Ethical Obligations. This resulted in a conviction that was obtained as a result of Prosecutorial Misconduct (Darden v. Wainwright, 477 US 168 [1986]) (440 Aff. at ¶ 283-289; 440 Mem. At Pgs. 33-34), as evinced when applying the two step analytical process to determine its extent and whether it caused substantial Prejudice that constituted Plain error (U.S. v. Alano, 507 U.S. 725, 732 [1993]; U.S. v. Johnson, 529 F.3d 493, 502 [2nd Cir. 2008]; Shih Wei Su, 335 F.3d 119, 129 [2nd Cir. 2003])(440 Mem. at Pgs. 44-48).

34

E. Trial Counsels Errors of Omission And Commission Defeated The Adversarial Process

Handwriting Expert Robert Baier stated "I feel certain that the last sentence of Q4/Q5 [Sept.18th, 2009 Diary Entry] was added at a later date/time," And there was no logical reason to change Pens for last sentence unless it was running out of ink, which he could have determined (440 Aff. at ¶ 398-400). The actions of Ms. Ramos were done after careful thought of her Plan to fabricate sex crimes against me by bringing the diary to the District Attorney. This represents the same deceptive And obsessive behavior identified by Treyce d'Gabriel Montoyas Personality Profile of Ms. Ramos (440 Aff. at ¶ 403-405; 440 Mem. at Pbs. 64-65). This also explains why I never saw a Judge on Sept. 30th, 2009, as after ADA Katchen was shown diary by Ms. Ramos shortly after my arrest, he Post Poned Arraignment so he could "stack the deck" of charges against me and rush matter to the Grand Jury before I was arraigned.

Trial counsel failed to investigate and discover further misconduct by ADA Katchen with the Grand Jury notice, which I discovered when obtaining through FOIL after convicted. The date showing when it was served, 9/30/09 (when I did not have an attorney), looks altered, and the copy I had received had a date/time fax stamp on the top of the Page not visible on the copy Provided to the court and my attorney indicating it was faxed to my attorney 3 weeks before I was arrested! (440 Aff. at ¶ 134-143; 440 Mem. At Pg. 29). This stopped me from Presenting witnesses, including myself, to testify And negate the charges against me (440 Aff. at ¶ 129-133, 247-269; 440 Mem. at Pbs. 28-29, 31-33). ADA Katchen misrepresented material evidence And also Provided evidence known to be false (Grand Jury notice) to fraudulently obtain a conviction (Berger v. U.S., 295 US 78 [1935]; Miller v. Pate, 386 US 1 [1967]).

Trial counsels lack of investigation And basic trial skills described so far were compounded by his inability to cross-examine effectively. Trial Counsel failed to identify And object to voicemails on numerous grounds involving their independent authenticity And admissibility during cross-examination of Ms. Ramos (440 Aff. at ¶ 312-327; 440 Mem. at Pbs 55-61), who testified that she saved these voicemails used against me at trial onto a digital recorder which she kept at her job (Tr. Pg. 281 at ¶ 1-9), but Presented them to ADA Katchen on a

cd-rom October 1st, 2009 (Tr. Pg. 280 At ¶ 23-25); obstensibly with the diary the morning of October 1st, 2009, when ADA Hatchen presented the case to the Grand Jury.

The fact that on June 21st, 2010, trial counsel received a second supplement to Molineaux stating in a footnote that an edited disc (somehow now in cd-rom format) would be played with messages from SVU Det. Wasson omitted, raises a number of questions.

How did voicemails from Det. Wasson occuring the day I was arrested and before she attended the Grand Jury the morning of October 1st, 2009, get recorded onto the digital recorder she kept at work? (Tr. Pg. 281 At ¶ 1-9). The answer was, to fulfill her plan, she went to work on Sept. 30th, 2009, after allegedly being raped and in the hospital most of the previous day, and selectively recorded these voicemails without the date/time part that plays before each message (a conscious decision) onto her digital recorder, connected the recorder to her work computer and recorded them onto a cd-rom to give ADA Hatchen the next morning; continuing her deceptive and obsessive behavior to seek revenge against me, fulfilling her plan.

The failure of trial counsel to cross-examine Ms. Ramos about the voicemails was even more extensive than just previously described (440 Aff. At ¶ 420-431; 440 Mem. At Pgs. 67-68) but highlights his inability and failure to use cross-examination effectively as an impeachment tool to damage the credibility of Ms. Ramos and other witnesses in a case that was decided upon who was more credible and believable; especially as the foundation of the theory of the defense was that Ms. Ramos fabricated the charges against me.

Trial counsels failure to cross-examine P.O. Sharon Brown of the 70th Precinct, who had first contact with Ms. Ramos when she reported the alleged crime, by stipulating her testimony away (440 Aff. At ¶ 410-415), and his failure to investigate, discover and challenge inconsistencies in the hospital records and cross-examine hospital employee Rina Ganelas who had extensive contact with Ms. Ramos (440 Aff. At ¶ 416-419; 440 Mem. At Pgs. 65-67); considered cumulatively with his failure to cross-examine her effectively to impeach her illogical and inconsistent statements throughout the proceedings was inexcusable (440 Aff. At ¶ 420-450, 474-490).

36

When trial counsel conceded to my Guilt by not cross-examining Ms. Ramos About Sept. 25th, 2009 (440 Aff. at 91 463-473), 1 of the 2 dates I was found Guilty of crimes for, A cascading domino effect of errors depriving me of my Due Process right to Protect me from conviction except upon Proof beyond A reasonable doubt of every fact necessary to constitute the crimes charged (In re Winship, 397 US 358, 364 [1970]), which was not A "conscious, reasonable, informed decision made by an Attorney with an eye benefitting his client (Greiner v. Wells, 417 F.3d 305, 325 [2nd Cir, 2005]).

Trial counsels lack of focus, direction and inability to cross-examine witnesses in an effective manner defeated the Adversarial Process and Prevented him from impeaching them, A Necessary tool to Pursue his theory of the defense, that the charges were fabricated by Ms. Ramos. The totality of trial counsels errors of omission and commission caused A breakdown of the Adversarial Process, and considered cumulatively were "circumstances... so likely to PreJudice the Accused that the cost of litigating their effect in [my] Particular case Is unJustified" (United States v. Chronic, 466 US 648, 658 [1984]), And that Justify A Presumption of PreJudice and Allow an application of the Chronic exception to the Strickland requirement of A showing that the outcome of the trial would have been different but for counsels errors And/or omissions (440 Mem. At Pgs. 72-74, 104-109).

SuperImposed on top of this, the "straw that broke the camels back", was trial counsels inability to Perform arguably one of the most important Aspects of the Adversarial Process, contemporaneously obJecting to inadmissible, PreJudicial and speculative hearsay during cross-examination of Prosecution witness Ms. Mach, my downstairs neighbor for who English was A second language; About what was occuring in the Apartment Above her when she was not Present, during the never exactly specified time of "the end of September," And which was the subJect of the deliberating Jurys last request for A readback.

This critical error by trial counsel Prevented my exoneration of All sex crimes. When I tried to respond to constitutional claims involving "meaningful response" to A Jury note raised for the first time by Dist. Atty. in response to my Pro-Se Supp. Brief in my reply brief, the App. Div., Second Dept., would not Allow me. The next section Addresses this fatal readback issue.

## II. Direct Appeal Issues-Readback

Trial counsel effectively "fell to sleep" during the direct examination of Prosecution witness Ms. Mach, my downstairs neighbor, when he failed to contemporaneously object to her Prejudicial and speculative testimony until the deliberating Jury submitted a note requesting a readback. Appellate counsel failed to address the scope of trial counsels errors and abuse of discretion by the trial court concerning this readback (Appendix "A", App. Br. at Pgs. 39-51) to reveal the Prejudice I suffered, but I addressed it in my Pro-Se brief (Appendix "T"), my Supp. Criminal Leave Application (Appendix "LL"), and in the context of Ineffective Assistance of Appellate counsel (IAAC) in my Writ of Error Coram Nobis (Appendix "TT"; Writ Aff. at 9/ 212-219; Writ Mem. at Pgs. 67-70).

Only after the deliberating Jury requested a readback did trial counsel seek to retroactively strike the Prejudicial and speculative testimony of Ms. Mach suggesting a sex crime was occuring, after admitting he did not object during trial because he did not hear it, the exact reason to object! When the trial court refused to retroactively strike this Prejudicial and otherwise inadmissible testimony (under courts own ruling on similar testimony) that trial counsel failed to object to at trial; under the false guise of damage control he took a position contrary to the defense when he requested the court to retroactively remove objections to similar Prejudicial and speculative testimony that was objected to, sustained, stricken from the record and that the Jury was admonished (at trial counsels request during trial) that they could not use in their deliberations, The trial court abused its discretion by responding "He wants it in, I dont care... Normally when I sustain an objection it stays stricken," then had it read back without the objections and admonishments; even though it supported the Prosecution theory that the sex was forced. (Pro-Se Br. at 9/ 61-66).

The trial court refused to retroactively strike testimony that fell under his Previous ruling that Ms. Mach could not testify about what was allegedly occuring in a room she was not Present in, but in a biased manner abandoned its duty to insure a fair and impartial trial by Permitting the retroactive removal of objections to the same type of speculative and Prejudicial testimony ruled as being inadmissible during trial in response to a deliberating Jury's request for a readback. This abuse of discretion allowed inadmissible testimony to be heard by a deliberating Jury, unfairly Prejudicing my right to a fair trial.

This abuse of discretion by the trial court clearly amounted to a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings, especially considering that the N.Y. State Court of Appeals has recognized a jury's request for a readback as being crucial, and "may well be determinative of the outcome of the case, coming as they do in response to questions raised by jurors themselves" (People v. Ciaccio, 47 NY2d 431 [N.Y. 1979]).

In U.S. v. Parker, 903 F.2d 91 (2ⁿᵈ Cir. 2010), the evidence requested by the jury had been admitted without objection, and no argument the evidence was inadmissible was made. Id. at 102. As such, it was within the discretion of the court to permit the requested testimony to be reread to the jury. See U.S. v. Damsky, 740 F.2d 134, 138 (2ⁿᵈ Cir.), cert. denied 469 U.S. 918 (1984); see also U.S. v. Pollak, 474 F.2d 828, 832 (2ⁿᵈ Cir. 1973). In my case, the judge not only sustained objections multiple times to inadmissible testimony, he repeatedly instructed the jurors at the start of trial, during objections and before they deliberated to disregard testimony when an objection was sustained (Pro Se Br. at ¶ 67).

Compounding the prejudice from this abuse of discretion, this inadmissible testimony was readback without the objections or admonishments given that they could not use at trial, which inexplicably made it admissible, without sua sponte providing a curative instruction that would attempt to mitigate the prejudice and explain why this was occurring. This invaded the jury's province as exclusive finders of fact and caused confusion in their duties to consider only admissible evidence. So it came as no surprise that shortly after hearing this inadmissible, prejudicial and speculative testimony impermissibly suggesting that the sex was forced during the "end of September", that the jury convicted me of only the 3 alleged sex crimes directly related to this testimony. These were 2 crimes alleged on Sept. 25th 2009, that trial counsel never cross-examined complainant about, thereby conceding to my guilt; and one on Sept. 28th 2009, both of which were also the result of Retroactive Misjoinder, Prejudicial Spillover and IATC (see Point I, I, B, supra, and Point I, I, E, supra).

39

Considering the multitude of errors occuring including the trial courts abuse of discretion, including trial counsels errors of omission and commission; I am entitled to relief as there was a reasonable likelihood that the conflicting and confusing instructions they received in considering what evidence they could utilize and was admissible in deliberations caused them to misapply them in such a way that deprived me of my due process right to a fair trial (Jones v. United States, 527 US 373, 390 [1999]).

The Second Circuit has instructed that in determining an abuse of discretion in whether to provide read backs, courts may consider such factors as (i) whether re-reading certain testimony will unduly call attention to it; (ii) will it unduly delay the proceedings, and (iii) the difficulty in giving a readback. The 2nd + 3rd factors play no part as the readback occured in my case, but the unique facts of my case show that re-reading testimony stricken as inadmissible during trial to a deliberating jury violated the 1st factor by unduly calling attention to it, and more than likely prevented my complete exoneration of all sex crimes against me.

These errors and the ones previously described herein were fatal to my case, and my conviction of sex crimes was a result of state court errors that had a substantial and injurious affect and influence in determining the jury's verdict (Brecht, supra), but when you consider them cumulatively with the violations described below and in Point I, III and IV, infra, there is no doubt I was deprived of my due process right to a fair trial (Estelle v. McGuire, supra)

## A. Denial of State Created Right To File Pro-Se Supplemental Reply Brief

The App. Div, Second Dept, arbitrarily denied me a state created right to file a Pro Se Supp. Reply Brief (Appendix "Z", also "V-Y") to respond to claims of a constitutional dimension raised by the People in their response for the first time, and this arbitrary denial, applicable to criminal defendants, violated my Due Process Rights (Hicks v. Oklahoma, 477 US 343 [1980]).

I presented this claim to the New York State Court of Appeals in my Supp. Criminal Leave Application on August 11th, 2015, as a violation of my Due Process Rights (see Appendix "LL"; Supp. Lv. App. at Pgs 6, 14-17)

The Peoples Opposition to my Pro-se Supp. Brief took a position, not initially raised by me, that the trial courts response to inquiries from a deliberating Jury is governed by C.P.L. § 310.30, a doctrine recognized by the Federal Courts (see Rogers v. United States, 422 U.S. 35, 39 [1975]; U.S. v. Ronder, 639 F.2d 931, 934 [2nd Cir, 1981]), and well defined in New York State by People v. O'Rama, 78 NY2d 270 (1991) and its progeny.

This doctrine includes the requirement of the trial court to provide a "meaningful response" to requested information "as the court deems proper", aptly quoting the Peoples own words in their opposition brief (Resp. Opp. Supp. Br. at Pbs. 17-18). Under N.Y. law, the trial court has discretion in responding to the Jury's request for a read back, so long as "the court respond(s) meaningfully to the Jury's request for further instruction or information" (People v. Malloy, 55 NY2d 296 [N.Y. 1982]). (Resp. Opp. Supp. Br., Appendix "U").

The arbitrary denial of the state created right for a moving party to file a reply brief to distinguish the oppositions position from their own is indicative of the convoluted statutory and procedural scheme in New York State to prevents indigent defendants from vindicating their federal constitutional rights in the courts of this state. This resulted in preventing me from asserting a substantial argument on Federal grounds to one of the more important and highly contested issues, that the trial court violated its duty to provide a "meaningful response" to the Jury's request of a read back of Ms. Machs testimony. This arbitrary denial of my state created right to file a reply brief deprived me of a fair trial (Hicks v. Oklahoma, supra). Considering that Appellate Counsel, on leave to appeal to the New York State Court of Appeals, because of what I assert was his own ineffectiveness, failed to raise this issue fully in his direct appeal before the App. Div., Second Dept., he was limited to raising a weaker argument that stated "Does a Trial Court have the discretion to make new rulings regarding the admissibility of portions of the requested testimony", instead of the much stronger arguments raised within my Pro-se brief; he failed to effectively advocate for me and create an effective adversarial process which amounted to ineffective assistance of Appellate counsel.

When considering trial counsels numerous errors along with the trial courts abuse of dis-cretion described within, it is apparent that a "Chapman" error occured, as my conviction resulted from errors of constitutional dimensions which can not be described as harm-less beyond a reasonable doubt. Chapman v. California, 318 US 18 (1967).

Harmless error cannot be applied to any of the asserted non-constitutional errors occuring in my case. A reversal for evidentiary errors will only occur if they affect "substantial rights." Fed. R. Crim. P. 52(A); Fed. R. Evid 103(A); Yuri v. Garcia, 413 F.3d 201, 210 (2ⁿᵈ Cir. 2005).

Kottenkos v. United States, 328 U.S. 750, 764-65 (1946) sets forth the analysis for deter-mining whether a non-constitutional error is harmless. Furthermore, a non-constitutional error affects substantial rights if it had a "substantial and injurious effect or in-fluence" on the jurys verdict (U.S. v. Dukagjini, 326 F.3d 45, 62 [2ⁿᵈ Cir. 2003]).

To clarify, it is "not required to conclude that it could not have had any effect whatever, the error is harmless if [you] can conclude that the testimony was 'unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record'" U.S. v. Rea, 958 F.2d 1206, 1220 (2ⁿᵈ Cir. 1992) Quoting Yates v. Evatt, 500 US 391, 403 [1991]).

Every state court error within this Petition, especially those in Point I, II, supra, individually, were directly relevant to the defense theory and were extremely important "in relation to everything the jury considered on the issue [that the sex crimes were fabricated]" Rea, Yates, supra.

In conducting this inquiry, courts principally consider "(1) the overall strength of the Pros-ecutions case; (2) the prosecutors conduct with respect to the improperly admitted evidence, (3) the importance of the wrongly admitted testimony, and (4) whether such evidence was cumulative of other properly admitted evidence." Zapulla v. New York, 391 F.3d 462, 468 (2ⁿᵈ Cir. 2004).

As in my case (1) the prosecutors case was weak; (2) his conduct at the Grand Jury in "stacking the deck" and overcharging me so badly that 11 out of 21 sex crimes he fraudulently charged me with at the Grand Jury were dismissed for lack of evidence at charge conference ( suggesting Prejudice "may have" occured at Grand Jury, which led to prejudicial spillover); (3) the importance and centrality of wrongly admitted testimony and evidence to my case, and denial of right to

scientific testing by expert (Point I, I, C, i); And finally (4) that evidence and testimony was not cumulative of other properly admitted evidence, the case being one solely of credibility; I have satisfied the inquiry under ZAPULLA, And have successfully shown that each error, Alone And cumulatively, had a "substantial And injurious effect or influence "on the Jury's verdict (U.S.v. DukagjiNi, At 62, supra; Kotteakus, At 764, 765, supra).

Please note that the APP. Div., Second Dept., held that my claims of An abuse of discretion by the trial court And IATC concerning the readback And Jury selection issues that follow Next, were "unPreserved "And " in Any event, without merit."

As both of these claims were raised in the context of IATC for his failure to contem-peraneously object And Preserve my rights to a fair And impartial trial, And No tactical reason or strategic purpose existed where trial had behaved "reasonab[ly] considering All the circumstances " (Rompilla v. Beard, 545 US 374, 394 [2005]; Accord e.g. Wood v. Allen, 550 US 290 [2010]); the state courts denial of these claims raised in my Pro-Se Brief was an unreasonable determination of the facts in light of the evidence presented, made through the systemic, improper And inconsistent application of New York States convoluted statutory And Proc-edural laws and rules concerning the Proper venue to raise IATC.

This Provides a Pristine example of the way New York State uses the Inconsistent application of their Statutory And Procedural Laws And Rules as a shield to avoid And Prevent the enforcement of Federal Due Process And Equal Protection Rights to Effective Assistance of Counsel under Strickland, which has impaired my right to Present a clear defense, which can only be a complete defense under N.Y. State's Baldi standard of "representation as a whole" And "in totality" if allowed to have All my claims of IATC (record based, mixed and dehor the record claims) heard at the same time by one Appellate court (Holmes v. South Carolina, supra), And ultimately resulted in state court errors that deprived me of my due Process right to a fair And impartial trial that substantially Prejudiced me (Estelle v. McGuire, supra).

43

## III. Abuse of Discretion and IATC During Jury Selection Raised on Direct Appeal

Trial counsel lacked the basic trial skills necessary to protect my Due Process rights to a fair and impartial trial during Jury selection (Pro-Se Br. at ¶ 19-26), and was absent during the beginning of voir dire. This absence caused confusion during this critical stage of the Proceedings and led to the erroneous denial of a Preemptory challenge issued to exclude Juror #1, Brian Merrick (Pro-Se Br. at ¶ 27-35; Ross v. Oklahoma, 487 U.S. 81 [1988]).

I also argued that I was deprived of my non-waivable constitutional right to counsel during a critical Part of the trial, voir dire (Pro-Se Br. at ¶ 29). Contrary to the People's Position and belied by the record, trial counsels absence during voir dire could not be simply deemed as a "ministerial" portion of the trial (Resp. Supp. Br. at Pg. 7). This complete argument was presented in my Supplement to Criminal Leave Application to the New York State Court of Appeals, who denied leave (Supp. Lv. App. at Pgs 20-24).

My right to trial counsels assistance at every material phase of my trial was infringed upon (Illinois v. Allen, 397 U.S. 337 [1970]) and my conviction resulted from this and other state court errors which, taken together, denied me a fair trial (Estelle v. McGuire, supra), and which were of a constitutional dimension that was not shown to be harmless beyond a reasonable doubt (Chapman v. California, supra).

Following this were errors of state law allowing the violation of my Federal rights to a fair and impartial trial which occured when the trial court abused its discretion when it discharged a Juror selected for duty under C.P.L. § 270.15 (4) inappropriately, who was not immediately sworn like the rest of the selected Jurors were under C.P.L. § 270.15 (2). After it allowed this unsworn Juror to join the sworn Jurors in the Jury room after lunch without determining what, if anything, this Juror heard, in violation of C.P.L. § 270.15 (3); errors trial counsel never objected to because he lacked knowledge of the law involving Jury selection as it applied to my case, rendering him ineffective under Strickland.

C.P.L. § 270.15 (4) waives a cause challenge not made before a Juror is sworn except upon a ground not known at a time before a Juror is sworn. Assuming, arguendo, without

Accepting as true, the trial courts position that he was not sworn yet (only due to the trial court's own failure to swear immediately under C.P.L. § 270.15 [2]); the trial court abused its discretion in dismissing Alternate Juror #1 Mr. Beckett for cause after trial counsel revealed he may have overheard part of a conversation he was having with a correctional officer outside the court house right after the lunch break without ever inquiring if he actually heard anything. Without determining a valid ground to utilize a cause challenge to dismiss Mr. Beckett under C.P.L. § 270.15 (4), the court lacked statutory authority to dismiss Mr. Beckett, and as such it abused its discretion doing so.

The Peoples response incorrectly refers to the wrong Juror, and relies upon the position that the delay in swearing in this Juror was a "technical deviation" which was harmless (Resp. Supp. Br. at Pgs. 12-16). But as explained in my Supp. to Criminal Leave Application (as the App. Div., Second Dept, denied my state conferred right to file a reply Pro-se Supp. Brief), C.P.L. § 270.15 (4) was used in an abuse of discretion to circumvent the trial courts duty to swear a Juror immediately under C.P.L. § 270.15 (2), a purpose it was not designed for. Even the People highlight this impropriety when arguing denial of a cause challenge they asserted stating "A person [Mr. Beckett] was dismissed for cause based upon a conversation we couldn't know anything about outside" (J.S. Tr. Pg. 484 at ¶¶ 1-3).

As this Juror, using the Peoples own position in part, was "technically" sworn, the more stringent application for dismissal of a sworn Juror for reasons of "illness" or "incapacity" under C.P.L. § 270.35 (1) or (2)(A) should have been applied, which would have required a "reasonably thorough inquiry" before discharging Mr. Beckett (Supp. Lv. App. at Pgs. 24-27).

As Mr. Beckett was a Juror not sworn yet only because the trial court departed from procedure utilized to immediately swear the other Jurors with the second oath; an inquiry to determine if a ground existed for dismissal required by C.P.L. § 270.15 (4), would have protected my right to a Jury of my choosing by determining if he actually heard anything, and if he did, could he render an impartial verdict based upon the evidence and free from bias.

45

Instead, after the trial court was notified of this he asks trial counsel, "Your application is what?" And he replies "Would be to challenge him", to which the trial court suggests "For cause?" which trial counsel repeats and accepts as his course of action.

The trial court failed to consider that after Mr. Beckett allegedly overheard part of a conversation, which the trial court believed was enough to challenge him for cause, that Mr. Beckett on the court's own instructions, had joined the sworn jurors in the jury room after lunch in violation of C.P.L. § 270.15 (3) which <u>required</u> sworn jurors to be seated "seperate and apart from the unsworn members of the panel [in the courtroom] or may be removed to the jury room..."; nor did trial counsel object to this fatal error.

Yes, this was a fatal error because Mr. Beckett, who was never questioned in order to determine the substance of what he heard, was also never questioned about what if anything he shared about this conversation with all of the sworn jurors in the jury room after lunch, which would have infected and tainted the entire body of sworn jurors beyond repair, thereby depriving me of a fair trial by an impartial jury (Pro-Se Br. at ¶ 36-48). These issues were presented in full to the N.Y. State Court of Appeals (Supp. Lv. App. at Pgs. 24-28), who denied leave to appeal.

Fundamental to our constitutional heritage is an accused's right to a trial by an impartial jury (U.S. Const., <u>VI</u> and <u>XIV</u> Amendments; see also <u>Duncan v. Louisiana</u>, 391 U.S. 145, 151-154 [1968]; Pro-se Br. at ¶ 47). Any outside influences upon a jury raise a presumption of prejudice that imposes a heavy burden on the state to overcome by showing that those influences were harmless to the Petitioner (see <u>Remmer v. United States</u>, 347 U.S. 227 [1954]; see also <u>U.S. v. Schwartz</u>, 283 F.3d 76 [2ⁿᵈ Cir. 2002]). My conviction resulted from these state court errors and denied me my right to a fair trial (<u>Estelle v. McGuire</u>, supra), and were of a constitutional dimension which was not shown to be harmless beyond a reasonable doubt, which compounded the denial of my due process right to a fair trial (<u>Chapman v. California</u>, supra).

The final and equally serious prejudicial error by trial counsel during jury selection, that also deprived me of my right to a fair trial by an impartial jury, occured when he failed to object to the improper and inadequate examination of Sworn Juror #12 Jennifer Buoninincontro on the first day of trial when the trial court failed to apply the law correctly under C.P.L. § 270.35, which it did when determining whether to excuse Sworn Juror #4 Omar Pereyra (Pro-se Br. At ¶ 49-52).

Where Juror #4 was questioned and stated he was "anxious" and "stressed out", and went on to explain it was "about not being at work"; Juror #12 was questioned and stated she was "nervous", "dont feel right", "hands were shaking" and "I just didn't feel like I should be, like, part of this"; but despite this much stronger language about how she felt, she never went on to explain why she was feeling this way. This important distinction is well defined by C.P.L. § 270.35 and New York States highest Court in People v. Buford, 69 NY2d 290, 299 (1987); which states in relevant Parts that:

In a probing and tactful inquiry, the court should evaluate the nature of what the juror has seen, heard or acquired knowledge of, and assess it's importance and its bearing on the case. In this context, the court should carefully consider the juror's answer and demeanor to ascertain whether her state of mind will affect her deliberations. The trial court's rulings should be placed on the record... [Emphasis Added]

The response given by Juror Buonincontro cried out for the trial court to have her explain what she saw, heard or acquired knowledge of that was making her feel this way on the first day of trial, yet trial counsel failed to object to the trial courts abuse of discretion flying in the face of CPL § 270.35 and the decisional caselaw being regularly followed in New York State and allowed the court to disregard proper procedure in performing a "Probing and tactful inquiry" into the "unique facts of my case"; clearly not done in my case (Pro-se Br. At ¶ 55-60).

47

Furthermore, I was given an opportunity to decide whether to remove sworn Juror #4 Omar Pereyra when the trial court stated "Since [Mr. Pereyra] is sworn it's up to him, Mr. Rucano?" And I responded "I will agree with my lawyer" (J.S. Tr. Pg. 409 at 91 1-25, Pg. 410 at 91 1-3) (Pro-Se Br. at 9151); but I was denied the opportunity to participate and decide if I wanted to keep or remove sworn Juror #12, which was an equally important decision, especially in the unique facts and circumstances of Jury selection as a whole in my case (Pro-Se Br. at 9153-54).

   I expounded on these issues concerning Juror #12 in comprehensive detail in my Supplement to Criminal Leave Application presented to the New York State Court of Appeals by raising this point, "The People Conceded That Juror Buonincontro requested to be dismissed from Jury service [Resp. Supp. Br. at Pg. 13], and the Court Abused It's Discretion by Failing to Follow the Statutory Guidelines in C.P.L. § 270.35, Which it Followed, In Part, For Juror Pereyra" (Supp. Lv. App at Pgs. 28-34). I also argued that trial counsel was ineffective for failing to object to this abuse of discretion, who instead had agreed with it.

   Trial counsels lack of knowledge of the law involving all of the important aspects of Jury selection that he encountered in my case was indicative of his lack of basic trial skills combined with his failure to conduct reasonable research and investigation into the defense of the charges against me, and rendered him woefully ineffective (Wiggins v. Smith, 123 S.Ct. 2527 [2003]; See also Strickland, supra).

   In fact, trial counsel so utterly failed to defend me against the charges during Pre-trial Proceedings, Jury selection and trial, that my trial became the functional equivalent of a Guilty Plea, rendering counsel's representation presumptively inadequate because "circumstances that [were] so likely to prejudice [me] that the cost of litigating their effect in [my] Particular case is unjustified" (United States v. Chronic, 466 U.S. 648, 658 [1984]).

**IV.** The Trial Courts Failure To Hold A Mandatory Evidentiary Hearing Under C.P.L. §440.30(5) Violated My Right To Due Process, And Was A Decision Based on An Unreasonable Determination of The Facts In Light of The Evidence I Presented to The Trial Court And APP. Div, Second Dept.

The trial court decision to deny An Evidentiary Hearing, Made in My seperately filed Motion For An Evidentiary Hearing incorporating relevant and material exhibits submitted with my Motions To Vacate The Judgment and Assign Counsel (Appendix "AA"), And the APP. Div, Second Dept's decision to Deny Leave to Appeal This Decision (Appendix "DD"); were both Adjudications resulting in A decision that were based on An unreasonable determination of the facts in light of the evidence that I presented in these state court Proceedings (see Bell v. Cone, 535 U.S. at 694, supra).

In the interest of brevity I ask this Court to review my Argument presented clearly in my Affidavit in Support of Application For A Certificate Granting Leave to Appeal This Decision (Appendix "DD"), which Provided the APP. Div, Second Dept. notice of the Due Process violations occuring. This included An Argument that the denial of An evidentiary hearing was violative and contrary to clearly established Federal law (see Appendix "DD", Points 1+2).

Furthermore, I brought forward A challenge to the Unconstitutional and Convoluted Procedural Scheme in New York State That Moves IATC Claims Outside The Direct Appeal Process, and argued that it Prevents Defendants, including me, from having these Claims Determined Fully on Their Merits Under New York States Baldi standard, because in Practice (as in Trevino) it is impossible to reach; and will lead to the challenge of the constitutionality of these convoluted Procedural laws and rules via the Federal Adequacy Doctrine (see Appendix "DD", Point 4).

I submit that for a number of reasons, my motion to vacate the judgment was "rubber stamped" by the trial court, a fact proven by looking at the trial courts decision and findings in denying my motion as compared to multiple affidavits and supporting documents submitted as exhibits with said motion.

First, I ask this Court to take judicial notice of the multiple affidavits that I submitted from experts with their associated reports. This evidence was supplemented with documentary evidence received from the Connecticut Attorney Generals Office that tended to support and substantiate serious allegations of submitting falsified medical records under subpoena by licensed Clinical Social Worker Anna Lorusso-Moramarco; matters that under N.Y. State law constitute felonies (see Appendix "DD", Point 2)

This evidence was ignored by the trial court, which stated my claims were "conclusory allegations... not supported by any documentary evidence or affidavit", and that I was "not entitled to relief based on conclusory allegations." He also stated that additionally, I was procedurally barred under C.P.L. §440.10 (2)(b), as sufficient facts appear on the record to raise on direct appeal which was pending.

As I previously stated herein, under this Courts decisional caselaw in Garner v. Lee, 2016 WL 7223335 (E.D.N.Y., Dec. 13th, 2016) (see Pg. 10 of this Petition), this procedural bar is inapplicable for purposes of Federal Habeas review in my factually indistinguishable decision denying my motion to vacate the judgment.

Second, shortly after submitting my motion to vacate the judgment, the Eric Garner chokehold case was presented to a grand jury to indict the police officers that killed him. My trial judge Stephen J. Rooney facilitated and supervised grand jurts in Richmond County. The allegations of misconduct in presenting that case to the grand jury was in danger of increasing with my own allegations of widespread

Prosecutorial Misconduct and Abuse of discretion occuring when my case was put in front of the Grand Jury, as my Article 440 asserted these same claims right after the Eric Garner case was in the national spotlight. This unfortunate timing was a catalyst providing further reason for the "rubber stamping" of my motion by the trial court, partially for political reasons, and its denial of my motion was based upon the improper consideration of a factually inappropriate determination of the facts, which violated my Procedural Due Process rights.

Third, the Rich. Co. Dist. Att'y's Office, in responding to my Article 440 (Appendix "BB") conceded that I raised eight particular claims of IATC that dehors the record. Considering that I refuted their claim that I did not explain my failure to obtain an affidavit from my trial counsel, as I had attached copies of a letter sent to trial counsel via certified mail, with the envelope showing he refused to sign for it within my Article 440 and in my motion for an Evidentiary Hearing (see Appendix "AA", Aff. for Evid. Hearing, Pg. 4, Ex. "3-L"), the trial courts denial that my "conclusory allegations [were] not supported by any documentary evidence or affidavit" was an inappropriate holding and an Abuse of discretion under New York Criminal Procedure Law,

As my claims of Prosecutorial Misconduct and IATC were not conclusively refuted by unquestionable documentary proof in the form of a Prosecutors Affirmation in Opposition (Appendix "BB") or official court records to establish my claims were false or without merit, none of the subdivisions of C.P.L. § 440.30 (4)(b) applied, and under the definition of that statute and clearly established caselaw from the N.Y.S. Court of Appeals in People v. Baxley, 84 NY2d 208 (1994), I was entitled to a mandatory hearing under C.P.L. § 440.30 (5). By denying my hearing, the Trial Court and App. Div., Second Dept. who affirmed the denial, both improperly restricted my right to provide evidence of a significant probative value in my motion to vacate Judgment (Washington v. Texas, 388 U.S. 14 [1967])

The Judicial bias occuring within the trial courts decisions described herein Are highlighted when considering the following. When I filed AN Article 78 in Richmond County seeking ministerial records of the Grand Jury convened in my case, Judge Rooney was assigned. When I contacted the Administrative Judge And Judge Rooney himself to explain there was A conflict of interest because Judge Rooney was Also my trial Judge who was in charge of the Administration And supervision of Grand Jury's convened in Richmond County And asked for him to be recused, no action was taken.

Considered cumulatively, the totality of Judge Rooney's multiple erroneous decisions made during Jury selection, rendered before And during trial in his denial of the Ability to Perform scientific tests on evidence by expert witnesses, rendered during critical time of responding to A deliberating Juris request for a readback through A Jury note during deliberations; that were compounded by multiple errors in review of my Motion To Vacate the Judgment; the Judicial Bias that occured not only contributed to this Conviction, it also insured that I was denied Due Process with A fair And impartial review of that conviction upon Appeal (Arizona v. Fulminante, 499 U.S. 279 [1991]; see also Estelle v. McGuire, supra).

Furthermore, the totality of misconduct occuring in my case at the Grand Jury, during Jury selection, At trial, during deliberations And on Appeal both at the trial And Appellate court levels by both the District Attorney And the Courts, when considered cumulatively, Amounts to A conviction obtained Against me As A result of outrageous Government Misconduct (U.S. v. Russell, 411 U.S. 423 [1973]); And its Pervasiveness is indicative of the inconsistent Application of Procedural laws And rules in New York States Convoluted Statutory And Procedural Scheme that Allowed me to fall into the "Abyss" of A Procedural labyrinth only correctable by Adequacy Doctrine.

A. Records Obtained From AETNA BY The Connecticut Attorney General Supporting MY Claims of Criminal Conduct, That Eradicated MY Right To A Fair And Impartial Trial, Were Provided to the State Courts and No Action Was Taken

This aspect of my Petition deserves special attention, as the records obtained by AETNA, my health insurance Provider, by the Connecticut Attorney General show multiple inconsistencies with the session notes obtained by subpoena from Licensed Clinical Social Worker Anna Larusso-Moramarco; inconsistencies which show that these were falsified business records intended to conceal the commission of Health Care Fraud and Perjury.

The session note of July 28th, 2009 is labeled as a Couples Counseling Session and identifies the complainant as the Patient, with the session notes of August 11th and Sept. 22nd, 2009 labeled as individual sessions that also identify the complainant as the Patient.

Considering this, how do you reconcile that the complainant was the Patient when my AETNA Claims Report shows that these sessions were billed to my insurance, and my eligibility Database Printout verifies 100% that the complainant was never Part of my insurance?

Furthermore, in response to a malpractice lawsuit I filed against Ms. Moramarco, she submitted an affidavit attesting to her sworn statement that "at no time did she ever provide services to me in a couples counseling capacity or in any capacity", but she billed my insurance, so how did Ms. Moramarco obtain my Private health care insurance to bill me for services she swears she never provided? (440 Aff. at ¶ 541-555, See also 440 Aff. at ¶ 491-499; 440 Mem. at Pbs. 77-78). The trial court and APP. Div., Second Dept., never took any action to address or investigate these very serious improprieties that Eradicated my right to Due Process.

I Plead with this Court to review the Above claims Along with the submitted documentary evidence and exhibits that I submitted with my motion to vacate the judgment And consider assembling and convening a Federal Grand Jury investigation into the corrupt practices of the Richmond County District Attorney's Office which has failed to prosecute crimes which infected my criminal trial.

Despite sending detailed letters with supporting documents to multiple Richmond County District Attorney's in office since my mostly fraudulent conviction, D.A. Masters and D.A. McMahon (Exhibit "A"), requesting an investigation into these crimes And my conviction, their office continues to cover up this criminal conduct in an attempt to uphold and avoid overturning their already fraudulent conviction.

Trial counsels failure to investigate Ms. Moramarco before trial started, when I made him aware of the importance to do so almost 1 year before trial, forfeited a clear opportunity to shine light on the falsity of the charges by revealing the complainants plan for revenge against me and destroying her credibility. Combined with the multitude of other really fatal errors I've described in this Petition, the end result was a complete breakdown of the adversarial system that deprived me of my right to the effective assistance of counsel (see Wiggins, supra; Strickland, supra; U.S. v. Chronic, supra).

54

## Point 2

The Claims Presented In This Petition Have "Fell Into The Abyss" of Appellate Procedure Found In New York States Convoluted Statutory And Procedural Labyrinth, With The Only Way Out Through The Lost And Long Forgotten Door of Structural And Procedural Adequacy Doctrine

I have led this Court onto the Path I took into the Abyss of Appellate Procedure (Collateral Review) without a competent Guide (Assigned counsel), And together we have encountered one dead end after another. These dead ends have largely consisted of Catch-22 Procedural Rules (C.P.L. §440.10 [2] [b] And [c]), Inconsistently Applied dicta concerning the appropriate venue and Procedural Path to vindicate mixed And dehor the record claims of IATC (People v. Evans, supra), And the factually inappropriate denial of evidentiary hearings by trial courts and affirmations of those denials by the intermediary appellate courts of New York State.

### I. Only This Court Can Break Through The Shield Preventing The Vindication of My Federal Rights

The Prejudice That I And other indigent defendants suffer when encountering New York States Unbreakable And Convoluted Statutory And Procedural Shield Can be described As follows. While traveling the dark and deserted Path of the Appellate Procedural abyss, A Pro-se defendant finds himself entering a storm with flooding rain. Over his head, he climbs into a rowboat with holes that starts filling with water. Suddenly, he realizes that he is blindfolded (in N.Y. States Archaic Prison law libraries), And he is handed one oar And told to Paddle upstream to find the lost and long-forgotten door to freedom, the one labeled "Justice-Due Process And Equal Protection For All". The Problem is that this door is under 20 feet of raging And flooding waters (N.Y. States Convoluted Statutory and Procedural Labyrinth), And even if by some miracle he finds the door, he does not have the key (Assigned counsel) to unlock the door to the mystical land of Due Process And Equal Protection that is only known to him in dreams And fairy tales. Only this Court can lead us to this door and open it by Applying the Federal Doctrine of Structural And Procedural Adequacy.

A. The Domino Effect of Under-Qualified, Inexperienced And Poorly Compensated Counsel At Trial, Through A MisManaged Assigned Counsel Plan, Has Created Convoluted Practices Which Violate Due Process and Equal Protection

In Section 1 of my Article 440 I reveal the foundational deficiencies upon which New York States Convoluted Statutory and Procedural Scheme is built upon. I examine New York County Lawyers Ass'n v. State, 196 Misc. 2d 761 (N.Y. Sup. 2003), which resulted in raising the hourly rate for court appointed assigned counsels to $75 an hour for felonies, A rate that has not increased since then! As such, the same constitutionally infirm conditions that were in place in 2003 exist in today's system (440 Aff. at ¶¶ 19-30).

I revealed that the deficiencies in the design, operation and administration of that plan allowed and condoned pressure upon attorneys participating in the plan to rush cases through without effectively advocating for their clients, referred to as warehousing of cases. When attempting to provide zealous representation of their clients, the unsuspecting attorney soon finds that his vouchers, signed by the trial judge that he is in front of for his client, is reduced or not paid at all. If the attorney does not "get the message", he soon finds he has not been recertified to continue working for the Assigned Counsel Plan. This attorney has no available recourse to appeal this decision to the court appointed committee members who are appointed by judges in the corresponding Appellate Divisions and are mostly members of the Judiciary themselves (440 Aff. at ¶¶ 31-44). This leaves a system ripe for political interference, mismanagement and subterfuge.

The case of Hurrell-Harring v. State has recently brought to light the serious deficiencies and systemic problems of the Assigned Counsel Plans (440 Aff. at ¶¶ 45-59). These problems have existed for over a decade (440 Aff. at ¶¶ 60-67), and even though the N.Y. Bar Association has accepted standards to ensure Quality of Mandated Representation, indigent Assigned Counsel Plans like the ones expounded on within this Petition do not follow them (440 Aff. at ¶¶ 68-73).

I Proceeded to show that my right to constitutionally Adequate representation at trial was violated by Providing records including the Application and recertification records of my trial attorney Eugene Lamb to the Richmond County 18-B Assigned Counsel Plan (440 Aff. at ¶¶ 74-111), showing that upon his first recertification he received a waiver to Participate on the A-Felony Panel, even though on his initial application he was denied Participation (440 Aff. at ¶ 86-90).

I asserted that New York States mismanaged Assigned Counsel Plan structurally impedes an indigent defendants right to effective counsel, by failing to Provide an attorney for collateral review Proceedings only necessary because of the states own failure to assign competent trial Attorneys in the first Place that will Advocate zealously for their clients And Preserve Meritorious claims for further review by Proper trial Practice.

The lack of funding to Provide an Attorney for collateral review on what has effectively become an indigent defendants first Appeal As of right to raise the mixed And dehor the record claims, solely because of deficient trial counsel being Assigned in the First Place; violates Due Process And Equal Protection.

When the Government [New York State] is under a due Process obligation to Appoint trial counsel, As is the case in New Yorks Assigned Counsel Plans, it cannot do so in a way that structurally impedes the Ability of counsel to effectively represent their clients (Oplev. Meachum, 293 F. Supp. 647, 650 [D.C. Wyo 1968]). Furthermore, the United States Supreme Court has seperately emphasized the State's related obligation not to impair the effectiveness of counsel under the Sixth Amendment (See e.g. Cuyler v. Sullivan, 446 US 335 [1980]) (440 Mem. at Pgs. 1-2). The Domino effect of this mismanaged system at the trial level then spills over to harm And Prejudice an indigent defendant, like myself, on direct Appeal at the Appellate level with the Assigned Appellate Attorneys and their Institutional Firms, which I explain in more detail below.

B. The Convoluted Statutory And Procedural Labyrinth In New York State Also Structurally Impedes Appellate Counsel, Who Through Financial And Political Constraints Uses This Labyrinth As A Shield To Prevent The Vindication of Federal Rights, And Results In The Ineffective Assistance of Appellate Counsel

States like New York that Provide Appeals As of right must Appoint Counsel for indigent defendants like myself in those Appeals (Douglas v. California, 373 US 905 [1963]), And that due Process right is for effective counsel (Herring v. Estelle, 491 F. 2d 125, 127 [5ᵗʰ Cir. 1974]). The Appropriate test for determining whether the system for Appointed counsel is Adequate should be whether counsel so Appointed Are "reasonably likely to render... reasonably effective Assistance." Herring, 491 F. 2d At 127.

In my Supplemental Affidavit (Supp. Aff.) And Supplemental Memorandum of Law (Supp. Mem.) in support of Writ of Error Coram Nobis Relief And To Expand the Record (only necessary due to trial counsels failures) (Appendix "TT"), I challenged Appellate Counsels Failure to Assemble A Complete Record on Appeal in order to investigate, raise and utilize the Appropriate Appellate Procedures to advance claims of IATC And Prosecutorial misconduct (Supp. Aff. At ¶ 10-20), And sought expansion of the record with various material evidence not obtained or utilized correctly by my Appellate Attorney (Supp. Aff. At ¶ 21-46).

I Asked the App. Div., Second Dept. to consider my Previous Motions to enlarge the Judgment Roll, the motion to Resettle And Amend the Jan. 6ᵗʰ, 2014 Decision seeking Additional records And transcripts And my Motion to Withdraw Appellate Counsels Brief (Supp. Aff. At ¶ 4-9); All of which effectively put them on notice About the deficiencies of the Appellate Brief submitted by Warren Landau of Appellate Advocates, my Assigned Appellate Attorney. Appellate Advocates represents indigent defendants on their Appeals to the App. Div., Second Dept. who reside in Brooklyn, Queens And Staten Island; from A Pool of over Five Million citizens of those boroughs.

The Supp. Mem. of Law in Support of Writ of Error Coram Nobis Relief and to Expand the Record involved a challenge to N.Y. States Convoluted Statutory and Procedual Scheme in the context of how, in my case, it resulted in the Ineffective Assistance of Appellate Counsel which required a Discretionary Ruling to expand the record on Appeal (based on the holdings of Martinez and Trevino) so I could receive a full and fair review at my claims (Supp. Mem. At Pgs. 10-15; Appendix "TT").

The structural impediment to Appellate Counsels Ability to effectively represent me finds its foundation in the contractual and financial constraints found in the contract between the City of New York and Lynn Fahey of Appellate Advocates, the indigent defense Provider who represented me on Appeal. This contract, which I Provided to the N.Y.S. Court of Appeals in my Statement in Support of a Certificate Granting Leave to Appeal the denial of my Writ of Error Coram Nobis, does not Provide their firm with the Ability to Perform collateral review (IRCP or Article 440) motions. Furthermore, the direct Appeals they submit are found to have more than 50% of the claims raised within un Preserved in About 1 out of every 3 they file each year (Appendix "AAA", At Pgs. 11-16).

Appellate Advocates is one of the largest Appellate indigent defense Providers in New York State Performing approximately 350 Appeals per year for about 20 years, At least 7,000 Appeals, so the novel and substantial Question I am Presenting to this Court today, which I Presented in my Supplemental Statement in Support of Certificate Granting Leave From the denial of my Writ of Error Coram Nobis is:

Are Attorneys Within Appellate Advocates Incapable of Determining When A Claim Is Un Preserved and Unreviewable on Direct Appeal, or Do Financial [Contractual] And Time Constraints Foster An Environment That Places Cost Above The Effective And Meaningful Representation of Their Clients (Possibly Placing Appellate Advocates In Breach of Contract)? (Appendix "BBB" At Pg. 3)

I also challenged the various laws associated with the assignment of counsel and its funding (Portions of C.P.L. §440.30, County Law §722 and CPLR §§1101/1102) as being unconstitutional in a Declaratory Action Filed in Albany County Supreme Court (Index #1063-16), but it was dismissed without Prejudice to refile in the appropriate venue (New York County) with the City of New York as a Necessary Party. As I believe that there is a "Breach of Contract" by Appellate Advocates in fulfilling its contract with the City of New York, I am revising this Petition, seeking legal representation and preparing to file it on behalf of myself and all other similarly situated inmates as a class action, as the potential class members may number 1,000 or more indigent defendants that were represented by Appellate Advocates over the last decade alone.

I ask this Court to rewind and consider the Preemptive and Proactive Procedural steps I have taken through New Yorks Convoluted Statutory and Procedural Appellate Scheme as I have outlined in this Petition, and to review the next section "II, Reasons For Granting The Petition" with an open mind. I ask that this Court take Judicial Notice of the fact that, except for the minority of mostly unpreserved claims my Appellate Attorney raised and that I raised in my Pro-Se Brief (5% of claims), that no trial level (Article 440) or Appellate level (App. Div., Second Dept. and N.Y. State Court of Appeals) court has rendered a memorandum decision on the majority (95%) of the claims I raised in the myriad of applications expounded on within this Petition, nor has any reviewing Court took notice to grant Leave despite glaring oversights and/or abuse of discretion in relation to the facts and evidence presented to those courts.

The time is now to throw aside the desire for "business as usual", and for this Court to take a stand against the injustices that I have suffered, not just for myself but for all indigent defendants which have become lost in New York States abyss of Structural and Procedural Labyrinths over the years, and those destined to do so in the future; and to return New York State to its rightful place as leader in citizens rights. I ask this Court to invoke Structural and Procedural Adequacy Doctrine.

## II. REASONS FOR GRANTING THE PETITION

The combined effect of the convoluted statutory and procedural scheme in New York State is to bounce IATC claims out of state court without ever requiring the State to entertain them on the merits.

Underlying the four branches of Procedural Adequacy Doctrine (Due Process, Novelty, Inconsistency and Undue Burden) is a common concern that states should not be permitted to use procedural rules as a shield to avoid enforcing federal rights. I'm asking this court to declare the convoluted statutory and procedural rules in New York State as unfairly undermining litigants' their ability to vindicate their federal claims. The application of the Procedural Adequacy Doctrine in my case provides the perfect equitable tool and opportunity for this Court to do so by granting my petition.

A.   The Question As To Whether The Dicta in <u>Martinez v. Ryan</u>, 132 S.Ct. 1309 (2012), And The Statements in <u>Trevino v. Thaler</u>, 133 S.Ct. 1911 (2013) Renders State Statutes Like County Law § 722 and CPLR § 1101 Unconstitutional; As It Allows A Convoluted Statutory And Procedural Morass Violative Of Due Process And Equal Protection To Flourish In States Like New York, Requires This Courts Intervention To Answer

New York state has deliberately chosen to move IATC claims outside of the direct appeal process where counsel is guaranteed. However, this Court has held, in dicta, that under such circumstances the state is required to provide the same instruments (i.e. an attorney and other support services) as it would on appeal (*see* <u>Martinez v. Ryan</u>, 132 S.Ct. 1309, 1315, 1318 [2012]); an attorney.

But New York has no provisions in place to allow for assignment of counsel in the manner articulated in the dicta of <u>Martinez v. Ryan</u>, *supra*. Rather, County Law §

Rucano v. J, LaManna, Supt, Docket No. 2011-01960                                      61

722 (4) only has the provisions for the assignment of counsel after a CPL § 440.10 motion has been filed, and a hearing has been ordered.

CPLR §§ 1101/1102 has similar, if not greater defects in its assignment protocols. Conditional rather than mandatory requirements for the assignment of counsel require that I provide certification from an attorney that my action has merit. But tell me, how am I (or any other inmate) going to do this when very few attorneys will even look at an inmates case unless being provided upfront money, which we do not have?

Both County Law § 722 and CPLR § 1101's post submission assignment protocols are no longer workable under Martinez and Trevino. As many states have identical post conviction protocols which frustrate the meaningful review of IATC claims, this case is ripe for review by this court. There is little doubt that Trevino v. Thaler, *supra*, applies to states like New York when IATC claims – even those seemingly record based – must be raised in a post conviction motion (*see e.g.* People v. Stultz, 2 NY3d 277, 284 [2004]; *also see* People v. Freeman, 93 AD3d 805 [2nd Dept. 2012]).

But that's not all. The stringent evidentiary requirements of CPL § 440.30 implicate Equal Protection concerns because the wealthy can afford services which are necessary to meet the initial evidentiary requirements of CPL § 440.30 (1). To frustrate my presentation by constructing barriers which cannot be met because of my indigency is contrary to the minimum standards outlined in the concurring opinions of Case v. Nebraska, 381 US 336, 337 (1965).

I respectfully request that this court take a comprehensive look at these issues, and determine if its dicta in Martinez v. Ryan, *supra*, when applied to the convoluted

statutory and procedural scheme in New York State that prevents and/or frustrates the vindication of Federal Constitutional rights to the effective assistance of counsel, renders these state statutes (County Law § 722, CPLR § 1101) unconstitutional as they do not provide counsel for the investigation, preparation and submission of IRCP challenging IATC prior to submission of an IRCP and/or appeal.

Finally, because the federal system entrusts State courts with initial and primary responsibility for enforcing federal constitutional rights in the course of administering their criminal justice systems (see e.g. Brecht v. Abrahamson, 507 US 619, 635 [1993]), I am calling on this court to harmonize the dicta in Martinez v. Ryan, supra, with New York State's post-conviction review protocols for claims of IATC. In light of the history of cases decided by the Supreme Court making effective assistance of counsel a constitutionally protected right (see Gideon v. Wainwright, 372 US 335 [1963]; also see Strickland v. Washington. 466 US 668 [1984]), and the controlling case law in New York (People v. Baldi, 54 NY2d 137 [1981]; also see Hurell-Harring v. State, 15 NY3d 8 [2010]), these are questions of first impression with nationwide and statewide public interest which this court should be the first to entertain.

B.   This Court Should Take The "Proverbial Leap" And Find That The Unconstitutional and Convoluted Procedural Scheme In New York State That Moves IATC Claims Outside The Direct Appeal Process Without Counsel Prevents A Defendant From Vindicating Federal Constitutional Rights; Allowing The Challenge Of These Laws Via The Federal Adequacy Doctrine

In states such as New York where "defendants are de facto forced to raise their IATC claims in an IRCP without the aid of competent counsel, defendants could argue

that the states procedural scheme discriminates against their Sixth Amendment right to an effective trial attorney by failing to afford them a reasonable opportunity to ever challenge their trial attorneys performance." (*See* "Effective Trial Counsel after <u>Martinez v. Ryan</u>: Focusing on the Adequacy of State Procedures, 122 Yale L.J. 2604, June 2013.

I.     First-Tier Review By Counsel Is Critical To The Identification And Development Of Claims Based On Ineffective Assistance Of Trial Counsel

Pro-Se defendants face insurmountable difficulty in identifying and prosecuting claims of IATC. Counsel is critical for litigants to prove - and for courts to assess – both deficient trial counsel performance and resulting prejudice, as required by <u>Strickland</u>, 466 U.S. at 697. Generally speaking, to bring an IATC claim, a defendant must (a) identify instances where counsels performance fell below legally permissible standards; (b) conduct an investigation into facts concerning these issues; and (c) frame these issues in post-conviction briefing in a manner that is legally sufficient. These tasks, discussed below, present clear difficulties for Pro-Se defendants.

First, claims of IATC very often raise complicated legal issues that lay persons cannot be expected to identify and develop unaided by counsel. *See* <u>Kimmelman v. Morrison</u>, 477 US 365, 378 (1986) ("A layman will ordinarily be unable to recognize counsel's errors and to evaluate counsel's professional performance.")

Second, claims of IATC can require extensive post-trial investigation to supplement the trial record with evidence specific to a finding of ineffective assistance and resulting prejudice. *See* <u>Massaro v. United States</u>, 538 U.S. 500, 504-505 (2003)

("When an ineffective-assistance claim is brought on direct appeal, appellate counsel and the court must proceed on a trial record not developed precisely for the object of litigating or preserving the claim and thus often incomplete or inadequate for this purpose.") Criminal defendants must often identify experts and witnesses who can offer exculpatory affidavits or testimony. Furthermore, trial counsels tactical reasons or strategic purposes are virtually impossible to ascertain by an imprisoned *Pro-Se* litigant.

Third and most importantly, these claims must be presented in a way that is procedurally and substantially proper, a task that is difficult without the assistance of counsel. While "[a] prisoner not trained in law or familiar with legal process might reasonably suppose that a heartfelt avowal of his or her veracity, however generalized, is sufficient to secure an evidentiary hearing, Pham v. United States, 371 F.3d 178, 186-87 (2nd Cir. 2003)(Sotomayor, J., concurring), that is simply not the case." Criminal defendants proceeding Pro-Se are typically in no position to meet these demands.

The Supreme Court has recognized – in the federal system – that defendants often cannot reasonably expect to vindicate their right to effective trial counsel on direct appeal. In Massaro v. United States, 538 U.S. 500 (2003), the Court explained:

> The evidence introduced at trial [] will be devoted to issues of guilt or innocence, and the resulting record in many cases will not disclose facts necessary to decide either prong of the Strickland analysis. If the alleged error is one of commission, the record may reflect the action taken by counsel but not the reasons for it...The trial record may contain no evidence of alleged errors of omission, much less the reasons underlying them...Without additional factual development, moreover, an appellate court may not be able to ascertain whether the alleged error was prejudicial.
> Id. at 504-505 (internal citations omitted).

Rucano v. J. LA MANNA, Supt. Docket No. 2011-01960                    65

Massaro recognized that claims of IATC are uniquely complex and not easily resolved simply by reference to the trial record. Unless the error is plain on the facts of the record, or a court on direct review permits a defendant to fully supplement the record, the first meaningful forum to prosecute ineffectiveness claims will be in an IRCP, and not on direct appeal. The more recent cases of Martinez v. Ryan and Trevino v. Thaler has expanded the Supreme Courts view on these issues.

C.   Martinez v. Ryan and Trevino v. Thaler Opened The Door To A Challenge Via The Doctrine of Structural and Procedural Adequacy

In Martinez v. Ryan, the Supreme Court capitalized on its Coleman [5] dicta and held that "when a state requires defendants to raise ineffective assistance of trial counsel claims in initial-review collateral proceedings, a procedural default will not bar a federal habeas court from hearing a substantial claim of IATC if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective under Strickland" (Martinez, 132 S.Ct. at 1320).

Furthermore, many defendants like me, in the instant case, have IATC claims that involve a mix of on-the-record and off-the-record components. In this case, I am better off presenting all of my IATC claims in an IRCP (like I did in my criminal appeal), in the hopes that the cumulative prejudice from the record and extra-record claims will be sufficient to satisfy the Baldi standard of "Meaningful Representation as a Whole" and "In Totality", and Strickland's prejudice requirement.

---

[5] Coleman v. Thompson, 501 U.S. 1277 (1991)

Rucano v. J. LaManna, Supt.   Docket No. 2011-01960                    66

There is precedent to support adequacy doctrine challenges that were missed in Martinez, which are predicated on a state's failure to provide effective procedures for allowing defendants to raise IATC claims. Oklahoma's procedural rules, for example, require defendants to raise IATC on direct appeal and provide defendants with the opportunity to ask for an evidentiary hearing to expand the trial record to support their IATC claims when necessary. In practice, however, appellate courts (like the ones in New York) provide limited expansion ability (*see* Page 58, *supra*), and trial courts rarely grant hearings despite frequent requests, as occurred in my case (*see* Page 49, *supra*).

Federal courts have also struck down procedures in Idaho [6] and New Mexico [7] that required defendants to raise IATC claims on direct appeal. Although these adequacy challenges were raised in states that required defendants to present IATC claims on direct appeal, a similar challenge can be raised about the lack of a fair opportunity to present IATC claims in states like Texas and New York that do not have that requirement. Because the opportunity to raise these extra-record claims is illusory or non-existent on direct appeal in these states, the states procedures for raising IATC claims on direct appeal fail to give defendants a realistic opportunity to vindicate their Sixth Amendment rights to effective trial counsel and can be deemed inadequate.

As the Martinez court recognized, without an effective attorney, defendants will not be able to vindicate their IATC claims, because such claims often require extra-record investigation and an understanding of trial strategy (Martinez v. Ryan, 132 S.Ct.

---

6 *see* Hoffman v. Arave, 236 F.3d 523, 535-36 (9th Cir. 2001)
7 *see* Jackson v. Shanks, 143 F.3d 1313, 1319 (10th Cir. 1998)

1309, 1317 [2012]). As a result, states that make conscious choice to move IATC claims outside the direct appeal process (like in New York) – where counsel is constitutionally guaranteed – and then refuse to appoint counsel to aid defendants in raising the claims in IRCP, are significantly compromising defendants abilities to file IATC claims (id. at 1318) ("By deliberately choosing to move trial-ineffectiveness claims outside of the direct appeal process, where counsel is constitutionally guaranteed, the State significantly diminishes prisoners ability to file such claims").

Adequacy doctrine is designed to address state practices that place precisely this type of undue burden on the exercise of a federal right. Given that the right at issue is the fundamental right to effective counsel, which the Martinez court described as a "bedrock principle in our justice system" and the "foundation of our adversary system" (Id. at 1317), the federal courts should be particularly resistant to state procedures that prohibit enforcement of the right.

Where cause arguments tend to focus on the individual circumstances of a habeas petitioners case, adequacy challenges are often used to raise broad questions about the operation of a states procedural rules. In contrast, the focus under adequacy doctrine is on the states (New York's) procedures. As a result, a federal courts ruling on an adequacy challenge often has broader implications for the offending state that an individual finding of cause in a particular litigants case does not.

D.     The Holdings of Trevino v. Thaler Are Applicable To The Law in New York State

The Martinez court explicitly declined to address whether the right to counsel should be extended to collateral proceedings. [8] In its opinion in what would become Trevino, the Fifth Circuit had taken Martinez at its word, limiting its application to situations where ineffectiveness claims were explicitly delayed until the collateral stage – in contrast to Texas, where certain procedures exist for bringing ineffectiveness allegations on direct appeal. [9] But Texas law, while permitting ineffectiveness claims to be raised on direct appeal, "make[s] it 'virtually impossible' for an ineffective assistance claims to be presented on direct review." [10]

The question the Supreme Court faced in Trevino was: is there a significant difference between "impossible" and "virtually impossible?" The Court answered in the negative. Its opinion hinged in part on its conclusion that, "as a systematic matter, Texas [does not] afford [] meaningful review of a claim of ineffective assistance of trial counsel" on direct review. Texas, like New York, allows claims of ineffectiveness to be raised both on direct and collateral review. Because "the Texas procedural system…does not offer most defendants a meaningful opportunity to present a claim on ineffective assistance of trial counsel on direct appeal," it "precludes as a matter of course" what "Arizona law [in Martinez] prohibits by explicit terms." [11]

---

[8] Id. at 1315; see also Mary Dewey, Comment, Martinez v. Ryan: A Shift Toward Broadening Access To Federal Habeas Corpus, 90 Denv. U.L. Rev. 268, 270 (2012)
[9] Ibarra v. Thaler, 687 F.3d 222, 227 (5th Cir. 2012).
[10] Trevino v. Thaler, 133 S.Ct. 1911, 1915 (2013) (quoting Robinson v. State, 16 S.W.3d 808, 810-81 [Tex. Crim. App. 2000]).
[11] Id. at 1919-21

In New York defendants are theoretically permitted to raise IATC claims on direct appeal. As a practical matter, however, there is no realistic mechanism for expanding the record on direct appeal (*see* Page 58, *supra*) such that IATC claims that require extra-record development must be reserved for IRCP according to the holdings in People v. Evans, 16 N.Y.3d 571 (2011). [12]

Thus Trevino expanded Martinez and held that: "where, as here, state procedural framework, by reason of its design and operation, make it highly unlikely in a typical case that a defendant will have a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal. " This amounts to a holding by this court of structural and procedural inadequacy.

In New York, where the opportunity to raise IATC claims on direct appeal is illusory (See Appendix "MM" And "TT" [Writ. Supp. Mem]   ), the expanded holdings of Trevino apply with equal force. Adequacy, must like cause, is a doctrine rooted in equity. If equity concerns motivated the Martinez court to hold that states had to provide adequate post-conviction counsel to defendants who were forced to raise IATC in IRCP for their procedural defaults to be enforced in Federal courts, those same equity concerns will find a state procedural scheme that de facto forces defendants to raise IATC claims in an IRCP, without the assistance of effective counsel, inadequate.

The Supreme Court considered these procedural shell games unjust and inequitable. Because neither litigant raised the question of whether the structure of

---

[12] The New York State Court of Appeals has held that "This problem could have easily been remedied had the Appellate Division granted leave on the CPL 440.10 motion and consolidated it with the direct appeal—a solution we hope our appellate courts will consider in the future should this situation arise" (see Edelstein, Outside Counsel, *Ineffective Assistance of Counsel, N.Y. Collateral Review*, NYLJ, Mar. 3, 2008, at 4, col. 4),

Arizona's and Texas's procedural rules provided criminal defendants with an adequate opportunity to raise their Sixth Amendment claims, and instead focused exclusively on cause and prejudice as a means of excusing any procedural default,[13] the court did not declare these procedural rules structurally inadequate, even though the facts in these cases fully supported a holding of being structurally and procedurally inadequate.

Procedural adequacy and cause and prejudice are both equitable concepts with doctrines looking in different directions. Cause and prejudice asks with an individual defendant had a legitimate excuse for failing to comply with state procedural rules, while Adequacy doctrine asks whether the state rules are legitimate in the first place – whether they warrant the deference to justify a procedural default. I am asking this Court to render a finding of structural and procedural inadequacy in New York State.

E.     The Interaction Of Multiple Procedural Rules In New York State Has Created An Unworkable Procedural Labyrinth Made Up Of Convoluted Statutory And Procedural Laws That Have Unduly Burdened The Vindication Of Federal Rights, Rendering Them Structurally And Procedurally Inadequate Under The Adequacy Doctrine

State post-conviction review is attracting the attention of legal scholars across the United States. [14] The application of the Adequacy Doctrine being employed by the

---

[13] Trevino, 133 S.Ct. at 1921; Martinez, 132 S.Ct. at 1316. Counsel in Martinez did argue that there should be a constitutional right to an attorney at the initial review collateral stage under certain circumstances, but he did not raise any adequacy challenge to Arizona's procedures. Brief for Petitioner at 16, Martinez, 132 S.Ct. 1309 (No. 10-1001), 2011 WL 3467246, at 16. And Trevino's lawyer simply argued for an application of the Martinez cause and prejudice holding to his case without raising an adequacy challenge. Brief for Petitioner, Trevino, 133 S.Ct. 1911 (No. 11-10189), 2012 WL 6587438, at 34.

[14] E.g. Eric M. Freedman, State Post-Conviction Remedies in the Next Fifteen Years: How Synergy Between The State and Federal Government Can Improve The Criminal Justice System Nationally, 24 Fed, Sent'g Rep. 298, 298 (2012) ("[T]he Adequacy of State Post-Conviction Proceedings Will Be A Centrally Contested Issue in the Years Ahead."), Justin F. Marceau, Challenging the Habeas Process Rather Than The Result, 69 Wash. Lee. L. Rev. 85, 146-56, 166-76 (2011).

courts will create obligations that bind the state courts themselves; when a state-court litigant asserts a claim of a federal right that was denied by a state procedural rule. In other words, when the court holds a state procedural ground inadequate to bar direct review, the Court in effect holds, as a matter of federal common law, that the ground cannot validly be used by the state courts to bar a litigants assertion of a federal common law contention. [15] It follows then that if the state law ground is inadequate, the Federal Court can review the federal law issue and can vacate or reverse the judgment of the Court's disposition of the federal issue so requires.

The Court's holding of inadequacy, in effect, binds that state court, and as a matter of federal law cannot bar the vindication of the federal right either in the state court on remand. The vacature of the state court judgment indicates that the state high court's prior disposition of the case was incorrect, and indicates that the correct disposition would have been for the state court to ignore the inadequate procedural ground and reach the merits of the federal issue. Logically, it seems hard to confine such duty to the case in which the inadequacy ruling is announced; if the ground is inadequate to block the state courts duty to consider the federal law contention in one case, it ought to be equally inadequate in all similar cases[16] and weaken the presumption that state courts can condition the vindication of federal rights on a litigants compliance with state procedural rules.

---

[15] *E.g.* Daniel J. Meltzer, State Court Forfeitures of Federal Rights, 99 Harv. L. Rev. 1128, 1182 (1986) (arguing that "when state foreclosure rules…cannot be squared with federal purposes, state and federal courts should be free to exercise their authority to fashion federal common law in order to ensure the vindication of federal rights").
[16] *See* Meltzer, *supra*, note 13 at 1184 (making this point)

F.     The Combination Of Multiple Procedural Rules, Which Practically and
       Effectively Moves IATC Claims Outside the Direct Appeal Process, Has
       Frustrated and Prevented The Vindication of Federal Constitutional
       Rights, Rendering Them – As Applied – Unconstitutional In New York
       State

In the unique facts and circumstances of my case, I have revealed and brought

into the light the unconstitutionality of the statutory and procedural scheme in New

York State. This unworkable convoluted statutory and procedural labyrinth takes

Gideon's protections and nullifies them.

       The fact that the Second Dept. denied Leave to Appeal and Consolidation of the

denial of my IRCP (Article 440), denied my Motion to Withdraw Appellate Counsels

Brief and denied my Writ of Error Coram Nobis, preventing any state court from

reaching the merits of my IATC claims, should be noted by this Court. I have not had

one opportunity to fully vindicate my claims of IATC in any New York State Court.

       When I finally submitted my Writ of Error Coram Nobis to the Second Dept. and

highlighted the inconsistent and contradictory decision they made in my previous

applications, and incorporated as its foundational base the Motion to Withdraw

Appellate Counsels Brief, they still took no notice. This was important as it showed that

I tried to notify them of Appellate Counsels failure, preemptively, to acquire,

investigate and utilize a complete record on appeal in order to properly determine the

appropriate venue to raise my IATC claims.

       My trial represents the "cracked foundation" upon which the protections granted

under Gideon were built upon. Such a faulty and weak foundation can not support the

weight of the federal constitutional protections which have been placed upon it.

Rucano v. J. LAMANNA, SUPt. Docket No. 2011-01960                      73

My direct appeal represents the construction company [appellate attorney] which attempted to build a structure [appeal] upon this faulty and weak foundation. No matter how hard they try, the "reality" is that they were "frustrated and/or prevented" from building upon this foundation, because the foundation was built upon "convoluted statutory and procedural" building codes [rules], defeating the attempt to build a sturdy structure [appeal].

My IRCP and Leave Applications to the Second Dept. and the New York State Court of Appeals represents the builder [me, the appellant] taking the company which built the foundation [appellate attorney] to the highest court, and having that court hold that there are certain materials necessary to "prepare and submit" [build] a sturdy foundation, but failed to issue An ORDER to insure that the procedure and materials were made available to me in a clear and efficient manner.

The Court explained that the "Procedure" and "Materials" [Evidentiary Protocols] required by N.Y. State building codes [IRCP, i.e. Article 440], are the only effective way to build a sturdy foundation in N.Y. State. But, once again, the critical processes and guidelines which the court has "consistently dictated" how foundations are to be built [dicta directing where mixed and dehor the record claims of IATC should be heard] are not being "consistently applied or enforced" by the construction company's [courts] of this State.

My case represents the "Perfect Storm" of prejudice all indigent defendants in New York State suffer, and shows how these Due Process and Equal Protection Rights are trampled on, so this Court can examine and correct them.

Rucano v. J. LAMANNA, Supt.   Docket No. 2011-01960                    74

The truth of the matter staring us in the face, the "Elephant in the Room", was first revealed when this Court, in not so many words, rendered a decision in Trevino v. Thaler, holding that the Texas procedural scheme was inadequate.

Within the four corners of this Petition I provide a glimpse of the injustices I have suffered, but only if this Court grants me leave and most importantly, assigns me counsel, can the true depth and prejudice I have suffered be fully revealed for this Court to consider.

Ironically, the same right I now seek, the right to counsel, is the same federal right this petition asserts was never provided to me by New York State to vindicate my Federal IATC claims, effective counsel. I only seek to be permitted a chance to vindicate my federal rights to the effective assistance of counsel, but cannot do so without this Court granting this Petition and assigning me counsel, another obstacle or "catch-22."

As a Pro-Se litigant with no formal training in the law,  I have painstakingly trudged my way through the convoluted statutory and procedural scheme that exists in New York State, developing and focusing every appellate motion I have filed in New York State in an attempt to vindicate my Federal constitutional rights to the effective assistance of counsel. I submit that if this court grants this petition and assigns me counsel, that they will be able to fully brief this matter in a much more artful, professional and revealing manner.

Only this Honorable Court, with the application of its knowledge and wisdom, can apply the federal doctrine of Structural and Procedural Adequacy to the Laws in New York State as I have presented them, and reach the decision required to once again

make New York State a leader in the provision of the protection and enforcement of constitutional rights for the citizens of this great State.

Using the thoughts and wisdom Pope Francis shared with us during his trip to the United States a few years ago, a just society should never give up on hope and rehabilitation for criminals. People caught in a cycle of poverty must be raised up.

Taking those words to heart and in light of his heavenly message of equality, Pope Francis also gave us the following wisdom, which applies perfectly to the issues of nationwide importance presented to this Court today. "Let us use the same yardstick of opportunity for others as we use for ourselves."

Let these words of wisdom guide this Honorable Court in addressing the claims I have raised herein today, why cry out for justice in the form of due process and equal protection of all citizens of this great nation; regardless of their income, social status, race or religion. God Bless this Honorable Court.

WHEREFORE, the Petitioner asks that this Court Find That Retroactive Misjoinder occuring at the Grand Jury due to Prosecutorial Misconduct, and/or the Prejudicial spillover that occured when 11 Felony counts were dismissed At charge conference for lach of evidence infected the counts I was Found Guilty for on Sept. 25th, 2009 and Sept. 28th, 2009, for which trial counsel was ineffective for not raising at trial in an Appropriate Motion under Strichland; or in the Alternative that A reversal be granted and a new trial ordered on Any of the numerous grounds raised in this Petition, finding that the challenged state court decision, unconstitutional conduct or procedure was contrary to or an unreasonable Application of clearly established Federal Law as decided by the U.S. Supreme Court; or in the Alternative that the Adjudication in the state court resulted in a decision based on an unreasonable determination of the facts in light of the evidence Presented in the state court Proceedings; and for such other and further relief to which Petitioner may be entitled that this court deems Just, Proper and equitable under the unique facts and circumstances of this case.

I declare under the Penalty of Perjury that the foregoing is true and correct, on this 3rd DAY of August, 2018

Respectfully Submitted,

Anthony Rucano

Anthony Rucano, 11A0528
Green Haven Correctional Facility
P.O. Box 4000
Stormville, N.Y. 12582-4000

# Exhibit "A"

Letters to Various Richmond County District Attorneys About Criminal Conduct

Anthony Rucano 11A0528
Upstate Correctional Facility
P.O. Box 2001
Malone, N.Y. 12853
April 4th 2016

Acting District Attorney Daniel L. Masters Jr.
Richmond County District Attorney's Office
130 Stuyvesant Place
Staten Island, N.Y. 10301

To Daniel L. Masters Jr.

    I am writing to you today about records submitted, under subpoena, by Anna Lorusso-Moramarco, Licensed Clinical Social Worker in my trial, which were misleading and represent obstruction of justice and numerous other crimes under Penal Law.

    Attached is a letter, with exhibits, mailed to Supervising Investigator Caran Thomas of the N.Y. State Education Dept. Office of Professional Discipline, concerning an investigation of this Provider, Ms. Moramarco L.C.S.W.

    With the help of the Connecticut Attorney General, I have obtained records from AETNA, my health care insurance Provider at the time, which substantiates not only Professional misconduct but violations of various Penal Code Statutes (see attached).

    Combined with the above material are portions of transcripts of my criminal trial (Ind. No. 270/09) for context. This trial was in front of Judge Rooney, who had the subpoena served on Ms. Moramarco who then provided fraudulent progress notes that indicated the complainant (Ms. Ramos) my fiancee at the time, was the patient, which records attached show is impossible. My trial was based on credibility, and as 11 felonys were thrown out by Judge Rooney before the jury deliberated, and I was found not guilty of 8 of the remaining 12, this fraudulent submission represents the disruption of a delicate balance which may have altered the outcome of my trial. The finding by the Court and the jury also discounted ADA Katchens theory of the Prosecution "Battered Womans Syndrome" with Judge Rooney erroneously allowing an expert to testify against me

<u>Page 2</u>

These crimes, which occurred between July → September 2009, erroneously allowed the complainant and my attorney to represent these sessions as being for Ms. Ramos during trial. The fact is I was actually the patient, which the enclosed records and my testimony at trial prove. This greatly changed how my attorney utilized them, thereby giving the jury the false impression the sessions were for her benefit. These 3 individual psychotherapy sessions exclusively talked about me, and were all billed to my insurance, and the enclosed records prove she was <u>never a beneficiary</u>! <u>Please see enclosed letter</u> to Investigator Caran Thomas, with <u>exhibits</u>, for more detailed explanation.

The Provider Ms. Moramarco submitted an affidavit to Judge Minardo (Index # 102435-12) on January 10th 2013, stating I was never her patient. The records enclosed clearly contradict the sworn affidavit, as well as common sense. Question : If I was never a patient, who provided my private AETNA billing information to Ms. Moramarco, and why did she bill me for <u>services never provided</u>? Considering the 1st session of 7-28-09 was billed as 90801 - PSY DX Interview-Individual psychotherapy, and talked <u>exclusively</u> about me, just like the sessions of 8-11-09 and 9-22-09, also billed as individual psychotherapy, 45-50 minutes, HOW is <u>DUANE RAMOS</u> (complainant) listed <u>As patient</u>? When the subpoena was issued on July 8th 2010 (Ex "G"), Ms. Moramarco knew she could not treat both of us seperately and in couples counseling and/or knew she was not qualified under Education law to provide the service of couples counseling, so she altered the records to reflect Ms. Ramos as patient. Look at the printouts of the session / progress notes, all dated by hand on 7-13-2010, <u>5 days after the subpoena was issued</u>. One simple thing can 100% prove she altered these records right after the subpoena.

A subpoena for her computer, not to <u>confiscate it or read records</u>. The only thing that needs to be done is to right click on each electronic session note, click properties, and record the "Date Created" and "Last Date modified" for each record. It will show either (A) She newly created those documents (altered completely, context and patient name) <u>After</u> subpoena was issued, 9 months to 1 year after sessions were performed or (B) that the files

Page 3

were created contemperaneously on or relatively close to the date of each session, then modified right before the subpoena (indicating she altered records 9-12 months after sessions occured) This will take 5 minutes, and no patient records confidentiality would be in danger. ADA Masters, the evidence and common sense show the only rational explanation, she altered records and I was clearly the patient! As my letter to Supv. Inv. Caran Thomas shows, she is guilty of multiple crimes, as your office can determine appropriately.

Mr. Masters, I'm sure its not every day that a defendant reaches out to you for Justice, but if anything God has shown me these past 5 years is You have to have faith. I still struggle with it. I always try to see the best in People, like I did for Ms. Ramos. I knew she grew up in a Group Home and had a bad childhood. I did not know she was raped by her uncle repeatedly for almost a year whe she was 13 years old, then signed over as a ward of the state until she was 21. Why, after only together 4 months, would I seek couples counseling? Everyone told me to run, even her family, but I knew everyone gave up on her, so I tried to help her. Ms Ramos could not open a door without me opening it. In retrospect, she could not accept she could be happy, and I was not mature enough, or capable enough, to understand it... I hung on so long we started to be physically abusive to each other, I never denied that. I thought that telling all this to Ms. Moramarco would help. Look at the session notes, especially the 9-22-09 one, 1 week before she had me arrested. It matches 100% to the last voicemail played at trial, that I would help her move out.

So, now my common law wife Diane has congestive heart failure. When I made bail on this case, she forgave me, took me back and moved in with me and the kids until 1 year later when convicted at trial. I gave her what little 401k money I had, my tax return 6 months later, and settlements from 2 §1983 lawsuits I settled, I still havent paid my surcharges, because they are my life. My wife Diane, will not live another 4½ years, I know if I had good attorney I would not be here. So please, I come to you with faith that

Page 4

If you review whats here, and in context of what Also occured in the Grand Jury, which I will Attach As an Appendix, you will see there has been A very serious injustice that your office should rectify.

Consider my history. I've been a productive citizen for Almost 20 years up until this incarceration. I worked hard to overcome my criminal history, completed Samaritan Village, got a job with Unisys, a global computer company, and tried to be a good father and husband. Still, my wife and children have suffered from my immaturity, selfishness and poor decisions, which I will spend the rest of my life trying to make up for.

I respectfully request you read the enclosed synopsis of who I am and how I arrived to where I am today; it will provide valuable context. I hope and pray this information is considered and received with an open mind and an open heart. I am at your service if you need anything else. God Bless You

## Question About Computers Seized Under Subpoena

On May 5th, 2010, Judge Meyers signed Search Warrant R063/2010 to seize my electronic equipment, which was executed on May 12th 2010 by Detective Christopher Donnolly DT3, Command 216, Tax Reg # 922143. Nothing was found as a result. My daughter is in John Jay College Now and I would like her to get this equipment, its Quite Alot as I am a computer technician by trade. Can you please inform me what I need to do, that way I can get this equipment released to her, Please? I look forward to your response. God Bless You and thank you for your consideration

Respectfully Submitted

Anthony Rucano

Anthony Lorusso 09-A-1260
Upstate Correctional Facility
P.O. Box 2001
Malone, N.Y. 12953
May 3rd, 2016

To Daniel L. Masters Jr,

Good Morning. I wrote you on 4-4 in regards to possible criminal conduct of Anna Lorusso-Moramarco LCSW, asking you to review documents in support of my allegations. I also provided my Grand Jury Minutes (Ind. No. 270/09), with ADA Katchen, to review for improprieties.

Finally, I asked how to have my computer equipment returned to my family taken via search warrant. If you are in the process of reviewing these requests, please let me know. A few things about Grand Jury:

1st: the transcript show it was morning when convened on 10-1-09, and only complainant, Duane Ramos (ex-fiancée) testified, File 09-069.

2nd: it is clear she was allowed to take the stand in physical possession of her diary (7 entries over 3 months, more like logbook). The diary was not pre-marked for identification, only pictures were.

3rd: Testimony shows she could not answer any questions without reading from her "book", as she first identified it.

4th: Twice, stenographer recorded non-verbal cues. First time, complainant asked about 1st charge and states "can I look at my book to refresh?"

A. ADA Katchen recorded response was (no verbal response) in transcript, to which complainant answers "yes!" yes to what, head nod?

Question: How many other non-verbal cues were not recorded because not seen? It is not stenographers job to record nor were non-verbal responses authorized. There were 2 ADA's present that day.

B. Complainant seems to be concealing the fact she has her diary in her hand, calling it book and later, refusing to give it any name out loud at all (Grand Jury Minutes, Page 7).

To move on

P.118

C. Other then legal Professionals, And even that Group, do not say "Let me look at my book to refresh" This indicates (strongly) she was coached on how to testify from diary on stand.

⑤ It is at this point it is established she is testifying from the diary As "the truth of the matter Asserted" (no independent recollection), to which no foundation testimony was laid to justify hearsay exception And most importantly, would have required diary to be entered into evidence!

This is crucial And central Problem At Grand Jury, which also ultimately resulted in 11 of 19 felonies, extracted from this falsified "book" being dismissed by Judge Rooney Prior to Giving case to Jury And Not Guilty finding on All other 8 charges, by Petit Jury, extracted from diary.

There is much more impropriety, fully outlined, with supporting exhibits, in 440 Aff. in support, Pgs 27-69, filed with Your Office on 7-9-14.

If I did not erroneously interpret the Contemperaneous objection rule (470.05) I would have submitted in my Pro-Se Brief.

These issues will shortly be submitted in a Writ of Error Coram Nobis. Will Your office seek Justice in responding to this future Application, or simply ignore the truth using slick legal maneuvering while at the same time taking full advantage of the fact that; under the convoluted rules in this state, Just like in my Article 440; I will not have trained legal counsel to present my meritorious Arguments in the Proper context or format? This is A very important Questions.

In response to my Article 440, Your office (And I give credit for this to You) Admitted I Presented 8 claims of ineffective Assistance of counsel that dehor the record.

Yet, Judge Rooney, smack dab in the middle of the Eric Garner Grand Jury Actions/Accusations of improper conduct; would not dare touch my case with so many blatant Grand Jury issues in Plain sight .. Does that make me a martyr for Political reasons?                    next Page

PAGE 3

I was procedurally barred (could have raised on direct appeal with said appeal pending) and told I had not presented anything other then conclusions (the affidavit was notarized) although partial evidentiary matters supported "mixed claims," properly presented in trial court and I provided proof (certified mail/return receipt) that Eugene Lamb refused to sign for detailed questions about his tactical reasons and/or strategic purposes for his actions and/or inactions. He made $13,000 for doing nothing from Assigned Counsel Plan, should he not be compelled to answer questions about his decision making?

I have just filed a declaratory action in Albany County Sup. Ct. (Index # 1063-16) on behalf of myself and all others similarly situated, challenging various laws as applied unconstitutional. If you are interested, it is basically a transformed copy of my leave to appeal my May 19th, 2014 order just denied as unappealable by Judge Leslie Stein, Court of Appeals.

I also submitted, ironically, a motion for assignment of counsel (Judge I'm sure will see irony in this). I have contacted the National Prison Project of the ACLU, the NYCLU and Center for Constitutional rights for representation on this matter.

So I challenge you Mr. Masters, as a prosecutor who has a dual role to the citizens of N.Y. State not just to convict, but to see justice is served, Pelchat at 105. The Grand Jury should not be used for un-founded prosecutions, Lancaster at 25, as it was by ADA Hatchen in my case. His conduct will eventually be reversed to meet that "prejudice to the defendant may result." CPL § 210.35(5), DiFalco at 487.

Although I have failed, through no fault of my own, to present these matters in proper context and format, it is only a matter of time before I do. I have an IQ of 137, college level reading and math since 6th grade, and I live in law library 60 hours a week.

Turn over

Page 4

MY common law wife of 31+ years has congestive heart falure and will not live much lonber. Once she passes, and especially before Justice is served in this matter; I will dedicate the rest of my life to uncoveribg the corrupt acts of ADA Katchen and the Grand Jury system in S.I. I will continue to learn the law and legally, within the system which all of this operates, I will apply that law to insure the truth is revealed and Guilty parties are prosecuted to the fullest extent of the law.

MY life has been torn apart by ADA Katchens underhanded actions and by the Presentation and submission of falsified documents, under subpoena, by Anna Lorusso-Moramarco LCSW. Will your office step up and fairly represent me in these matters?

On a final note, Mr. Masters, I ask you once again. Is this office prepared to act in the manner our forefathers desibned it to operate? Will you seek Justice to be served and act with intebrity to insure the matters I have presented to you on April, 4th, 2016 and today, are investibated, and fulfill your prosecutorial duties?

God Bless you and thank you for takinb the time to fully consider the issues I have brought to you today.

Respectfully Yours,

Anthony Ruceno + Family

Anthony Rucano 11A0528
Upstate Correctional Facility
P.O. Box 2001
Malone, N.Y. 12953
March 24th, 2016

Re: File No. 3401990 - Anna A. Lorusso-Moramarco L.C.S.W.

To: Supervising Investigator Caran Thomas,

Good Afternoon. I received your letter dated March 16th, 2016. Thank you for explaining your findings. I want to be sure, for the record, that you have received and considered All of the following documents provided to you previously. This is because I believe these documents provide ample basis not only for the INVESTIGATION of professional misconduct, but for multiple violations of the PENAL LAW in N.Y. State involving criminal acts. Those documents are listed below by Exhibit # which I use for tracking purposes.

1) Ex "B" - Sworn Affidavit from Ms. Moramarco stating "Plaintiff (me) was never a client of mine" dated January 10th 2013

2) Ex "C" - Progress Notes dated 7-28-09; 8-11-09 and 9-22-09, billed to MY INSURANCE for INDIVIDUAL Psychotherapy sessions with DUANE RAMOS, listed as Patient; never of MY INSURANCE (7-21-09 billed to Ms Ramos)

3) Ex "K" - Aetna Claims Report received from Connecticut Attorney General, showing sessions in EX "C" billed to MY INSURANCE.

4) Ex "J" - Summary of INSURANCE from Aetna, received from Connecticut Attorney General, 100% conclusively showing DUANE RAMOS was Never on MY INSURANCE. Also establishes codes 90801, 90806 and 90807 are All billing codes for INDIVIDUAL Psychotherapy sessions.

5) Ex "G" - Subpoena from Judge Rooney issued July 8th 2010 to Produce "All notes and records pertaining to your treatment of Ms. DUANE RAMOS."

6) Ex "H" - Complaint to INSURANCE FRAUD BUREAU (never responded)

<u>Page 2</u>

<u>NOTE</u> : <u>Ex "C"</u> - Progress Note dated 7-28-09 is labled as "Couples Session" but billed As 90801 - Individual Psychotherapy Interview with Duane Ramos As Patient, but is clearly interview of me (see <u>Ex "K"</u> to verify billing)
   Submitting False Progress Notes <u>under subpoena</u> in Supreme Court that reflect Duane Ramos, <u>instead of me</u>, as being Patient, amounts to:

1) Submitting False Documents in the 1<u>st</u> Degree <u>P.L. § 175.35</u>
   A) My insurance billed 3 times for Individual Psychotherapy, <u>if I was not the Patient</u> (As she claims) this is <u>Health Care Fraud §177.05</u> E-felony
   B) If Ms. Moramarco claims I was Patient, she is Guilty of P.L. § 175.35 <u>Plus</u> <u>Obstruction of Justice</u> - Which <u>Altered Outcome of my Criminal Trial</u>!

2) Falsifying Business Records in the First Degree § 175.10 of Penal Law, by
   A) Committing Falsifying Business Records in 2<u>nd</u> degree by making or creating false entry in a business record...
   B) With intent to defraud to commit a crime <u>or</u> to conceal a crime
   Ⓝ By changing Patient name she committed obstruction of Justice which Altered the context of the Progress Notes that Duane Ramos was seeking treatment <u>only</u> when actually, <u>I sought treatment As well</u>.

3) Health Care Fraud in the Fifth Degree, P.L. § 177.05 is:
   "with intent to defraud a Health Care Plan, he or she knowingly or willfully Provides materially false information or omits material information for the Purpose of requesting Payment from a Health Care Plan for a healthcare...service And, as a result of such information or ommission, he or she or another Person receives Payment in an amount that he, she or other Person is Not entiled to under the circumstances."
   <u>People v. Khan</u> , 916 N.Y.S. 2d 28, 82 A.d.3d 44 (1<u>st</u> Dept. 2001)

Page 3

Considering her Affidavit, Improper Billing Practices and false information Provided during a criminal trial, an investigation into these matters is fully warranted, especially considering the Education Law Sections outlined below:

## Couples Counseling

The session note of 7-28-09, billed to my insurance for 90801 - PSY DX Interview - Individual Psychotherapy, is not a billing code recognized for "couples counseling", two people. Ms. Moramarco clearly states in her Affidavit (Ex "B") that I was never a patient of hers, individually or in couples session. The Progress note of 7-28-09 clearly states "Couples Session." Note: My fiancee's 7-21-09 Individual Session billed to her insurance, has billing code 90806 on top, yet it is omitted on all my session notes, including 7-28-09. This is because she knew she could not legally or professionally perform this service, and was not Qualified.

⊛ How could Ms. Moramarco protect the best interest of Duane Ramos in individual psychotherapy while at same time serve my best interest in couples counseling with Ms Ramos? She could not Conflict of Interest! This is why she Altered Progress notes; Patient name and what occurred.

Ms. Moramarco, listed as an MSW in Aetnas Database (see Ex. "K") was not Qualified to perform in the capacity of a couples counselor because:

   A) She had not taken electives specializing in couples counseling or received comparable training or experience that would enable her to perform the duties of couples counseling.

   B) Therefore, she had reason to know she was not Qualified to Provide services for couples Counseling.

* Under 8 NYCRR § 29.1 (B)(9) she was negligent and guilty of unprofessional conduct, in that she was "practicing... beyond the scope permitted by law, or [was] Accepting or Performing Professional responsibilities which the licensee knows or has reason to know that he or she is not competent to perform."

Page 4

Consider these facts: Omitting Billing Code from the session notes <u>only</u> billed to my insurance, her Knowledge she could not perform couples sessions while individually treating one patient, her lack of training, and her falsified billing records, <u>AN INVESTIGATION IS warranted</u>. ✴ <u>Under</u> 8 NYCRR § 29.2 "Unprofessional Conduct shall also include in the Profession of Social Work"(subd. 3) "Failing to maintain a record for each patient which accurately reflects the evaluation and treatment of each patient."

Ultimately, even looking at the records of Ms. Ramos on 7-9-09 and 7-21-09 (by herself and billed to her insurance) the following sessions with me present, 7-28-09, 8-11-09 and 9-22-09, and the numerous sessions Ms Ramos had in August and September (without me present and billed to her insurance), I am 100% positive this office will find Ms. Moramarco's failure to treat her/us under the Guidelines of Article 154 of Education Law Amounted to Unprofessional Misconduct Permitting Discipline.

<u>Education Law</u>, Article 154, § 7701 (2) (A) states in relevant parts "The Practice of Clinical Social work...includes the diagnosis of mental, emotional, behavioral, Addictive and developmental disorders and impairment undertaken within a psychosocial framework, <u>Administration</u> and <u>interpretation</u> of tests to measure psychosocial functioning, development and <u>implementation</u> of appropriate Assessment based <u>treatment</u> plans... All undertaken for the Purpose... Goal of maintaining... well being of individuals and couples".

Your office is publicly funded to investigate first, then initiate disciplinary proceedings if validated. Do your records really reflect an investigation discounting any action considering the information and documents that are provided to you today? Because, many lives hang in the balance...

Investigator Thomas, I believe you and your current staff did not do the Actual investigation done a few years ago, can you 100% say, after reviewing the facts and documents today, that something was not overlooked or not considered in the Proper context?  <u>Consider the following</u>

Next Page

Page 5

Shouldnt Your office Inspect: 1) All the billing and session files for Ms. Ramos and me of Ms. Moramarco? 2) Inquire into Ms. Moramarcos school record to discern if she had necessary electives, training or experience to provide the service of couples counseling 3) She if she ever performed couples sessions in the past 4) At least, in the context of Ms. Ramos, determine if she acted within the Guidelines of Article 154 §7701 (A) - (O)?

I went to Ms. Moramarco seeking help for me in my relationship, not the other way around. What she did with the Patient Name, billing and misrepresentation to the court was criminal, and very likely was the slight push to make Ms. Ramos look more credible then me. 17 of 21 felony charges were dismissed or not Guilty. The Jury did not believe her.

My family has hired an attorney, who does not see why this office has not done anything. I am writing to you today in the hopes and prayers that your office be an active Advocate and give this investigation what it deserves. I am only asking for a real and thorough investigation for the truth. Please...

I left my common law wife in 2008 then met Ms. Ramos. When I realized my mistake, I told her I was going back to my common law wife, and would help her find an apartment, pay for expenses etc. (see 9-22-09 Session Note) 1 week later she had me arrested with false charges of rape. My common law wife Diane forgave me, took me back and stands by me today with our eight children and 4 grandchildren. She has congestive heart failure and will not live much longer. I deserve to be there for her, she should not be alone. Please help. May God Bless You and everyone involved, I deeply appreciate your help.

cc: Michael Cassidy ESQ.
    24 Margaret St. Suite 9
    Plattsborgh, N.Y. 12901-0456
    (518) 561-3088

Most Respectfully Yours,

Anthony Rucano + Family

P.S. 6 Page Legal Memo Providing details (for Your review) Also Attached

Anthony Rucano 11A0528
Clinton Correctional Facility
P.O. Box 2001
Dannemora, N.Y. 12929
May 29th, 2014
App. Div. Case No. 2011-01960



State of New York

Office of the Attorney General

Deputy Solicitor General for Criminal Matters

Att: Nikki Kowalski

120 Broadway

New York, New York, 10271-0332

To Ms. Kowalski,

Good Morning. I received your response dated April 30th, 2014 explaining your office will not intervene Pursuant to Executive Law § 71 or C.P.L.R. § 1012(a)(1) at this time.

I feel it prudent to notify all parties involved that I have sent packages alleging criminal conduct by Anna Lorusso-Moramarco, L.C.S.W. to the New York State Attorney Generals Office, Division of Criminal Justice, Chief, Investigations Bureau, Dominick Zarrella, The Capitol, Albany, N.Y. 12224-0341, Telephone # 212-416-6328, Email: dominick.zarrella@ag.ny..gov, who has not responded, and alternate contact: Division of Economic Justice, Chief of Consumer Frauds Bureau, Jane Azia, 120 Broadway, New York, N.Y., 10271, Tel # 212-416-8727, Email: jane.azia@ag.ny.gov, who has deferred to other agencies. This criminal conduct concerns falsifying medical records submitted under subpoena to the Honorable Judge Stephen J. Rooney of Richmond County Supreme Court during my criminal trial on indictment No, 270/09, the matter which is the subject of my pending appeal.

I have attached a copy of a follow-up letter to Director Frank Orlando, N.Y. State Dept. of Financial Services, Insurance Frauds Bureau, which outline the details concerning this misconduct. The exhibits and other paperwork mentioned within will be the subject of an Article 440 proceeding to be submitted very shortly. (Exhibit "A")

Furthermore, I have attached copies of two (2) letters to The New York State Department of Education addressed to Chancellor Tisch, Board of Regents, concerning complaints filed with the Department's Office of Professional Discipline. Chancellor Tisch had Deputy Commissioner Douglas E. Lentivech, Office of the Professions, order an investigation into the billing practices of this provider, Ms. Moramarco, and I am providing the supervising investigator in charge with detailed documentation to provide context to the matter. (Exhibit "B" & "C")

To reiterate and provide a brief synopsis, this provider submitted a sworn affidavit to Judge Phillip Minardi of Staten Island Supreme Court, Civil Term, in a malpractice lawsuit that I initiated, that she **never** provided services to me **in any fashion**, either individually or in couples counseling sessions.

The question remains, ***How did this provider obtain my private health insurance information and bill for 3 sessions, with said dates corresponding to the 3 sessions notes submitted under subpoena to the Honorable Judge Stephen Rooney and*** **listing my fiancée (complainant) as the patient,** *when my fiancée was* ***Never a covered member on my private insurance (AETNA), and the session notes talk exclusively about me?*** (Documentary proof received with help of Connecticut Attorney General, Antitrust and Government Program, Fraud Department, Exhibit "D")

I respectfully request that your office, the Appellate Court and The Richmond County District Attorney's Office to seriously investigate these matters of which certified documentary proof is readily available and easily verifiable.

I have contacted various news investigative agencies and am in the process of developing a detailed and comprehensive package outlining the history of the agencies I have been contacting along with supporting documentary proof that show how these allegations have gone largely uninvestigated and ignored. This is upon, information and belief, due to the fact that I am an indigent defendant currently incarcerated.

I would specifically like to state to all parties involved that this letter and supporting documents has been presented **solely** as an effort to **prevent** further waste of judicial resources and to **prevent** further delay, as the Honorable ADA Paul Tarr has so eloquently pointed out.

2

The circumstances involving the presentation and prosecution of this case by the Richmond County District Attorney's office to the Grand jury was, upon information and belief, unethical, unprofessional and the cause of considerable waste of judicial resources, as this defendant has been forced to initiate multiple Article 78 proceedings, appeals and numerous other collateral proceedings to uncover the underlying facts in this matter.

On a personal note, I beat my drug addiction and graduated Samaritan Village (with the help of the Honorable Judge Leventhal, then a Brooklyn Supreme Court Judge, who gave this defendant the opportunity for treatment and probation to keep me on a straight path), and have recently been gainfully employed by Unisys Corp., a multinational computer company, and assigned to the NYC Transit Authority account at 2 Broadway as one of 3 senior field technicians on a team of 30, managing the infrastructure of the computer network and systems that help keep NYC Transit buses and trains running.

Before that I was employed with Meridian Technology, where I performed contract work for the Attorney Generals Office at 120 Broadway replacing defective Hewlett Packard computer parts. I performed contract work at the Organized Crime Task Force in White Plains and serviced computers at North Shore and Jacobi Hospital in the Bronx.

This case was nothing more then a domestic dispute that escalated into minor violence between me and the complainant, involving biting, kicking and punching. Once I told her I wanted to return to my sick common law wife of 25 years, mother of my 7 children, she sought revenge, planned it and then executed it with the help of ADA Anthony Katchen.

The session notes released by the Honorable Judge Rooney, specifically the one dated 1 week before my arrest, clearly show I offered to help complainant move out, and the voice mail recorded by the complainant onto a digital recorder (played at my trial), transferred onto her pc at work the day after my arrest along with voice mail from Detective Wasson, then recorded onto cd-rom and provided to ADA Katchen at the grand jury the next morning, also support this claim that I offered to help her move out.

As my motion to withdraw counsels brief states, assigned 18-B trial counsel Mr. Lamb, destroyed my defense and created a perfect storm of un-reviewable errors for my

3

direct appeal. As such, the laws in N.Y. State, which do not provide counsel as of right on collateral review proceedings, effectively deny me the right to counsel on my first cognizable appeal (*Gideon v. Wainwright*), which in my narrowly defined and specific facts and circumstances can only happen in an Article 440 proceeding to fully develop the record.

The Federal Courts, starting with *Massaro v. United States*, and continuing recently with *Martinez v. Ryan* and *Trevino v. Thaler*, have recognized the importance of providing an attorney in these narrowly defined circumstances.

With this application to withdraw appellate counsels motion, I seek to bring attention to the fact that Court appointed firms like Appellate Advocates, faced with the lack of funding by the legislature to properly address ineffective assistance of counsel claims as egregious as mine which lay outside the record or in mostly "mixed-claims", are ill-suited to provided constitutionally adequate representation, especially in cases like mine.

I respectfully request that all parties involved take notice of these facts and circumstances, and return this great State of New York to it's former pride and glory as a leader for the rights of indigent defendants, and as a leader in this great nation that prides itself on the saying "Truth and Justice For All."

## CONCLUSION

The Deputy Solicitor General for Criminal Matters of the New York State Attorney Generals Office has declined to respond to my challenge to the constitutionality of various statutes; the Richmond County Attorney General has decided to lay silent on the issue and the Appellate Division, Second Department has issued a Decision and Order which denies my application **without** providing a written decision based on the merits of my claim; I will pursue this matter in the Federal Courts.

Furthermore, as I am forced to submit an Article 440 application without the help of an attorney, that submission will be made pro-se by the end of June to the Richmond County Supreme Court.

4

God Bless You and Thank You for Your Time and Consideration Concerning This Matter.

Respectfully Yours,

*Anthony Rucano*

Anthony Rucano & Family

CC;
Aprilanne Agostino, Clerk, Appellate Division, 2nd Dept.
Paul M. Tarr, Richmond County District Attorney
William Loeb Esq., Appellate Advocates.
New York State Civil Liberties Union
Erin Moriarity, CBS News, 48 Hours
John Mancowitz, Date Line
Staten Island Advance
New York Times
New York Daily News

5