1    SUPREME COURT OF THE STATE OF NEW YORK

2    COUNTY OF RICHMOND - CRIMINAL TERM - PART: 5
     ----------------------------------------------X
3    THE PEOPLE OF THE STATE OF NEW YORK,

4                        -against-

5    ANTHONY RUCANO,

6                                    Defendant.
     ----------------------------------------------X
7
     Indict. No. 270/2009        18 Richmond Terrace
8                                Staten Island, New York
                                 September 8, 9, 10, 2010
9


10
     B E F O R E:

11
          HONORABLE STEPHEN J. ROONEY, Justice
12

13

14
     A P P E A R A N C E S:
15

16           DANIEL M. DONOVAN
             DISTRICT ATTORNEY, RICHMOND COUNTY
17               Attorney for the People
             BY:  ANTHONY KATCHEN, ESQ.,
18                RAJA RAJESWARI, ESQ.,
                  Assistant District Attorneys
19


20           EUGENE LAMB, ESQ.
21               18B Attorney for the Defendant

22

23

24

25                   ELAINE FORLENZA, RPR
                     OFFICIAL COURT REPORTER

EF

```
 1                    THE CLERK:  Calendar Number 3, step up,
 2      Anthony Rucano.  Appearances please.
 3                    MR. KATCHEN:  Anthony Katchen, Raja
 4      Rajeswari for the People.
 5                    MR. LAMB:  Eugene Lamb for the defendant.
 6                    THE COURT:  I guess we have some
 7      preliminary matters to deal with.
 8                    THE CLERK:  Take seats.
 9                    THE COURT: Can I have the consent of both
10      sides to swear the panel collectively when we get
11      them over here?
12                    MR. KATCHEN:  Yes.
13                    THE COURT:  Rather than individually?
14                    MR. KATCHEN:  Yes.
15                    MR. LAMB:  Yes.
16                    THE COURT:  For my portion of the voir
17      dire do you want me to say anything to the panel
18      they may draw no inference unfavorable to the
19      defendant if he does not testify?
20                    MR. LAMB:  I'm sorry?
21                    THE COURT:  If you want me to but only if
22      you want me to, I will say to the jury if the
23      defendant does not testify in a criminal case that
24      is not a factor from which any inference
25      unfavorable to the defendant may be drawn.  If you
```

EF

1              want me to say that I will.

2                        MR. LAMB:  I would appreciate that, yes.

3                        THE COURT:  Give me your best estimate

4              counsels as to how long this trial is going to

5              last.  It looks like we are going to start picking

6              this afternoon today.  I assume we'll have a jury

7              by some point tomorrow.

8                        When do you think the case will go to the

9              jury?  I have to tell them something.

10                       MR. KATCHEN:  I expect the People will be

11             resting either next Wednesday or Thursday.  I

12             would say more toward Wednesday.

13                       THE COURT:  Do you anticipate a case?

14                       MR. LAMB:  Well, Judge, as I indicated in

15             chambers we only have one possible witness other

16             than the defendant himself and that would be

17             Dr. Brustein, our battered woman syndrome expert,

18             who indicated to me the only good day next week

19             would be Wednesday.  Perhaps if we get to that

20             point perhaps we can take him out of order.

21                       THE COURT:  We could go out of order if

22             the People consent.

23                       MR. KATCHEN:  That's fine.

24                       MS. RAJESWARI:  That's fine.

25                       MR. LAMB:  Okay.

1              (Discussion held off the record between

2        the defendant and Mr. Lamb.)

3              MR. LAMB:  Defendant is indicating he may

4        have two additional witnesses he would like to

5        call.  So that I guess that would be a total of

6        four potential defense witnesses, that is

7        including the defendant.

8              THE COURT:  Maybe I should give the panel

9        a two-week date then just to be safe.  Today is

10       the 8th.  I will tell them if it's acceptable to

11       everybody the case will go to the jury no later

12       than the 22nd.  That would be two weeks from

13       today.  Probably before then, but not later than

14       that.  Does that sound safe?

15             MR. KATCHEN:  Yes.

16             THE COURT:  I have the People's

17       witnesses.  Mr. Lamb, do you want to hand one up?

18             MR. LAMB:  I'm sorry, Judge?

19             THE COURT:  Witness list.

20             MR. LAMB:  At this very moment --

21             THE COURT:  You want to give me the names

22       I will write them onto the People's list.

23             MR. LAMB:  Let me just have a second.

24             (Short pause.)

25             MR. LAMB:  Dr. Michael Brustein

1        B R U S T E I N.

2                    THE COURT:  Brustein?

3                    MR. LAMB:  Yes.

4                    THE COURT:  You don't need Dr. Brustein's

5        date of birth, do you?

6                    MR. KATCHEN:  No.

7                    THE COURT:  You indicated there might be

8        two other witnesses?

9                    MR. LAMB:  Steve Frankl F R A N K L.  And

10       Frank Ortiz O R T I Z.

11                   THE COURT:  Ortiz.

12                   THE DEFENDANT:  I am not sure if it's I Z

13       or E Z.

14                   THE COURT:  Get the dates of birth so it

15       will save time.

16                   Do you want to deal with the Antommarchi

17       issue? We are going to hand out a waiver -- I

18       guess we already did.  You can discuss that with

19       your client.

20                   (Discussion held off the record between

21       the defendant and Mr. Lamb.)

22                   MR. LAMB:  We have discussed the

23       Antommarchi issue.  The defendant is prepared to

24       waive.

25                   THE COURT:  Okay.  Can you both sign off

EF

1       on that?

2                       MR. LAMB:  Yes.

3                       (Short pause in proceedings.)

4                       THE COURT:  Let's get your client on the

5           record with regard to Antommarchi if you don't

6           mind.

7                       MR. LAMB:  Sure.

8                       THE COURT:  Mr. Rucano, I am sure your

9           lawyer just explained this to you.  You have a

10          right to be present during all the essential and

11          critical stages of the trial right from jury

12          selection through the verdict.

13                      During jury selection undoubtedly the

14          lawyers and I will be having sidebar conferences

15          with potential jurors in an effort to determine

16          whether they could be fair.  You have a right to

17          be present at these sidebar conferences if you

18          want, but you can waive that right and have your

19          lawyer represent you at these conferences.

20                      I gather from the written waiver having

21          discussed this with your lawyer you are waiving

22          your right to be present at these sidebar

23          conferences; is that right?

24                      THE DEFENDANT:  Yes, your Honor.

25                      THE COURT:  He explained the situation to

EF

1           you?

2                           THE DEFENDANT:  Yes, your Honor.

3                           THE COURT:  Did you sign this waiver?

4                           THE DEFENDANT:  Yes, I did, your Honor.

5                           THE COURT:  Mr. Lamb, would you

6           acknowledge you explained it to your client and

7           signed it as well?

8                           MR. LAMB:  Yes.

9                           THE COURT:  I will sign the Antommarchi

10          as approved.  I will make it part of the court

11          file.  And, Mr. Rucano, if you change your mind

12          tell your lawyer.  You can change your mind at any

13          time.  If you decide at any point you want to be

14          present at those sidebar conferences just tell

15          Mr. Lamb and we'll arrange for that.

16                          MR. LAMB:  The defendant indicates he

17          wishes to address the Court.  I am advising him

18          anything he says will be taken down by the court

19          stenographer and can be used against him.

20                          THE COURT:  I prefer to speak to the

21          lawyers.  It's a lot better for you that way, but

22          if you have something you want to say go ahead.

23                          THE DEFENDANT:  Your Honor, I just wanted

24          to be on the record that I still as you've said on

25          the stand on our last date in court, that given my

1              opportunity for my attorney to have a handwriting

2              expert come to the District Attorney's Office

3              because he was unwilling to let this diary that

4              was only seen by the District Attorney, and only

5              after he saw it was this indictment included to

6              include 19 counts.  No other investigation on this

7              specific piece of paper that's called a diary has

8              been made.

9                          I mean, in other words, I was charged

10             with three single counts, days before the Grand

11             Jury.  Catherine comes to the District Attorney

12             with this diary which is a falsified document and

13             then all these charges are against my account.  No

14             other investigation was done on this piece of

15             paper.

16                         The District Attorney took it upon

17             himself look at this and he said, okay, we're

18             going to add 16 counts on the indictment.  I

19             believe that this piece of paper needs to be

20             investigated by somebody at his office.

21                         My attorney just told me just now he was

22             unable to get somebody to come to the office.  I

23             would like to at my own expense and my family's

24             expense get a handwriting expert to come to the

25             District Attorney's Office to investigate the

EF

1      document to prove that there were falsified

2      statements written in on different dates at the

3      same time. In other words, she went back and

4      added in stuff on multiple dates at the same time

5      concerning these charges and then presented that

6      to the District Attorney as proof what all these

7      previous charges were. There was -- nobody else

8      saw this diary except the District Attorney

9      technically making him a potential witness for

10     being the only one to see that.

11             I feel it's an important part of the case

12     and I ask your Honor to give me the chance to

13     defend myself and to get a handwriting expert to

14     come into the District Attorney's Office and look

15     at this piece of paper so that we can prove that

16     this was a falsified document used to prevent.

17             THE COURT: Okay. Let me say first based

18     on the record the last time and also in chambers,

19     the DA does not intend to introduce the diary on

20     their direct case; am I correct?

21             MR. KATCHEN: That's correct.

22             THE COURT: One never knows during the

23     hurly-burly of trial somebody might cause them to

24     make an application contrary to that. For the

25     moment they don't have any intention of

1           introducing this diary.

2                   THE DEFENDANT:  They informed my attorney

3           that this conversation happened on the last court

4           date and after the court, my lawyer called the

5           District Attorney, and the District Attorney told

6           him that he may be bringing it in on cross

7           reference for her to stipulate the dates.  How

8           could she remember these dates?

9                   THE COURT:  That would depend on the

10          prosecution.  For now the DA's position they're

11          not going to get into this diary on direct

12          examination.  What happens on cross is up to you

13          and your lawyer.  We have to go question by

14          question.  Doors can be opened.  That's my first

15          observation.

16                  Second observation is what I said on the

17          last date several weeks ago was that the

18          handwriting expert you were dealing with would not

19          go to the DA's Office to look at the original

20          diary, I understand he has a copy, then you can

21          get another expert who would.

22                  I said I would appoint one.  You

23          indicated you might want to hire one.  You can

24          still do that.  It's not going to slow us down.

25                  THE DEFENDANT:  I am not trying to, but I

1           would like to have all the options available to

2           me.   And if your Honor would still provide to have

3           somebody to investigate this I would appreciate

4           that.

5                     THE COURT:   The offer still stands.   I am

6           perfectly willing to let a handwriting expert --

7                     THE DEFENDANT:   He can't find anyone.

8                     MR. LAMB:   Just for the record, Judge, I

9           contacted quite awhile ago, I don't know exactly

10          when but well over a month ago I believe, the

11          assigned counsel plan gave me a very short list of

12          the people that are on the plan that hold

13          themselves out as forensic document experts.

14                    I contacted -- of the three that -- I

15          believe there were three.   Out of the three that I

16          contacted only one would do it and he would do it

17          pro bono but he would not take his equipment,

18          which he claims is very difficult equipment to

19          move and very expensive equipment, he would not

20          bring that equipment to the DA's Office.   That the

21          subject matter, in this case the diary, would have

22          to be brought to him and then he would be happy to

23          examine it.

24                    THE COURT:   This is the man from New

25          Jersey?

1                MR. LAMB:  Yes.  And if the Court would

2        recall I did make an application to the Court.  As

3        a matter of fact, I submitted a proposed order

4        ordering the District Attorney to hand deliver the

5        diary or requesting that or indicating that the

6        person from DA's Office that was bringing the

7        diary would be able to stay during the examination

8        and be given the diary back as soon as the

9        examination was completed.  So that there would be

10       no question about the compromise as to the safety

11       of this document.

12                THE DEFENDANT:  If it's not planned to be

13       brought into evidence there is no reason why the

14       District Attorney shouldn't allow it to be

15       examined.

16                THE COURT:  It's not going to be in

17       evidence.  There is no reason to talk about it.

18                MR. LAMB:  Those are the only experts

19       that I was provided with -- the names provided

20       with by the assigned counsel plan.  Of course the

21       Court did not sign that order.

22                THE COURT:  You opposed it.  Are you

23       still opposing it?

24                MR. KATCHEN:  Bringing it to New Jersey?

25       Yes.

```
1              THE COURT:  The DA does not want to send
2      an original document to New Jersey for an expert
3      to examine in his office rather than come here.  I
4      indicated you could find someone else and that
5      offer still stands.  We will start picking today,
6      but you will have several days.
7              MR. LAMB:  I have exhausted all of the
8      people, potential experts that were provided to me
9      by the assigned counsel plan.
10             THE COURT:  All right.
11             MR. KATCHEN:  I will just say as far as
12     the diary is concerned, I think Mr. Lamb did just
13     point this out if not on the record then in
14     chambers, after the last court date he did come to
15     my office and he reviewed the original diary.
16             THE COURT:  He what?
17             MR. KATCHEN:  He reviewed the original
18     diary.
19             THE COURT:  Who did?
20             MR. KATCHEN:  Mr. Lamb.
21             MR. LAMB:  I did.
22             THE COURT:  Okay.  Well, they're not
23     going to offer it at least at this point.  We
24     talked in chambers about the defense offering it.
25     I don't know what your plan is in that regard.  I
```

1        don't know if the DA has any opposition if you

2        wanted to get into it.

3                If you can find an expert in the

4        immediate future go ahead, we'll take a break and

5        let him go over and look at it if that becomes

6        necessary.  We discussed this several weeks ago

7        and I don't want it to slow us up.

8                Sandoval.

9                MR. KATCHEN:  Yes, Judge.  Before we even

10       get to that, I'm submitting to the Court an order

11       of protection as to one of the witnesses named on

12       my witness list.

13               THE COURT:  We discussed that in

14       chambers.  I will sign a temporary order directing

15       the defendant to have no contact with whom I am

16       told is a neighbor.

17               You could discuss that with your client

18       at your leisure, Mr. Lamb.

19               (Short pause in proceedings.)

20               THE DEFENDANT:  We live in the same

21       building.

22               MR. LAMB:  I would ask there be a limited

23       order of preotection.

24               MR. KATCHEN:  I wrote on the order of

25       protection that unintentional contact with the

EF

```
 1                witness at that home the order would be subject to

 2                that.

 3                     THE COURT:  Do whatever is acceptable to

 4                both sides.

 5                     MR. KATCHEN:  I am not saying he should

 6                move out of the house.

 7                     THE COURT:  You still don't talk to this

 8                person about the case.  This doesn't mean you

 9                can't go home.  Doesn't mean that person can't go

10                home either.  Don't talk to the person about the

11                case.  Is that satisfactory?

12                     MR. KATCHEN:  Yes.

13                     THE CLERK:  Make it thirty days.

14                     THE COURT:  The clerk says we'll make it

15                thirty days.

16                     Sandoval.

17                     MR. KATCHEN:  Okay.  First, Judge, People

18                would -- if the defendant does testify there are a

19                few -- People have made a Molineau application

20                relating to phone calls, voice mails that the

21                defendant left, rules that were given to the

22                complainant in a form of two index cards.  The

23                complainant being kicked out a hotel room Memorial

24                Day weekend for refusing to perform oral sex.

25                Repeated arguments with the defendant as to phone
```

1           use which she was beaten with.  The defendant

2           stealing and reading journals that the complainant

3           kept.  The defendant contacting the complainant's

4           therapist and insisting that he attend therapy

5           sessions with the complainant and a key logger

6           program on the complainant's computer.

7                   As to all those what the People intend on

8           introducing those facts on their direct case, we

9           would also seek to question the defendant about

10          should he testify.

11                  With regard to the installation of the

12          key logger program and phone use, as pointed out

13          by the Court's decision those can constitute, I

14          guess, prior criminal conduct.  They are uncharged

15          at this point.  And it does paint a picture as to

16          the defendant's credibility as well as again it

17          deals with the narrative, the background of their

18          relationship.

19                  THE COURT:  He wants to use Molineaux

20          evidence as Sandoval on this as well.  You want to

21          be heard on that?

22                  (Discussion held off the record between

23          the defendant and Mr. Lamb.)

24                  MR. LAMB:  Defendant consents.

25                  THE COURT:  Okay.

EF

1           MR. LAMB:  He's indicating that as long

2      as he's given an ample opportunity to rebut and

3      explain, and I am advising him that of course he

4      has the right certainly not only to answer the

5      questions in cross-examination put to him, but

6      also he has a right to continue his testimony in

7      redirect relevant to challenge the issues that he

8      was cross-examined on that have just been

9      mentioned.

10          THE COURT:  That sounds like the law to

11     me.  I think I am not going to prohibit you from

12     conducting a thorough direct and redirect of your

13     client.  So there is a consent then, you can cross

14     on those Molineau issues.  Of course having

15     excluded the one former /PEU trend or something

16     like that.  You are not going to get into that,

17     right?

18          MR. KATCHEN:  Yes.

19          THE COURT:  What about prior convictions?

20          MR. KATCHEN:  There are three convictions

21     People would want to question him about just the

22     convictions themselves on the underlying facts.

23     Beginning with the 1999, 5/11/01 conviction,

24     driving with suspended license, 1998 Kings County

25     conviction, convicted by plea of guilty to petit

1      larceny, and 1994 conviction again from Kings, two

2      unauthorized use of a computer.

3              Prior to that the defendant was convicted

4      of multiple larceny offenses dating back to the

5      '80s.  The People are not seeking to question him

6      on the convictions prior to that 1994 conviction.

7      But the conviction that the People did mention, I

8      mean they do show -- the jury should hear them to

9      better judge the credibility of the defendant when

10     he does testify if he does testify.

11             THE COURT:  Okay.  Go ahead.

12             MR. KATCHEN:  I'm sorry.

13             THE COURT:  I was going to say I went

14     through the NYSIID sheet.  There appear to be

15     eight prior convictions dating back to 1985 and

16     prior to that there were three YO adjudications

17     dating back to '84.  Your application is the three

18     most recent convictions?

19             MR. KATCHEN:  Yes, Judge.

20             THE COURT:  Mr. Lamb.

21             MR. LAMB:  My argument would be still the

22     remoteness with regard to those items.  1999, 1998

23     and '94 are well over a decade ago.  I would ask

24     that if the Court does not preclude the People

25     from cross-examining him as those items, that the

1            Court at least strike a compromise and only ask if

2            the defendant -- be able to ask if the defendant

3            had previously been convicted of a crime on those

4            dates.

5                    THE COURT:  Okay.  What I will do is

6            this:  I am going to Sandoval out the June 9th,

7            1994, unauthorized use conviction in Kings County.

8            It's a misdemeanor, it's fifteen years old and I

9            agree I think that's remote.

10                   The latter two, though, I don't think are

11           remote.  One is December 14th, 1999, that's

12           aggravated unlicensed operation of a motor vehicle

13           in the third degree, in violation of Penal Law

14           Section 511 Subdivision 1.

15                   Counsels, that's a misdemeanor; is that

16           right?

17                   MR. KATCHEN:  Yes.

18                   MR. LAMB:  Yes.

19                   THE COURT:  You're sure because I haven't

20           dealt with a 511 in fifteen years.

21                   MR. KATCHEN:  Yes.

22                   THE COURT:  So that's a misdemeanor.  The

23           second one is February 9th, 1998, petit larceny

24           conviction from Kings County.

25                   I don't think these are remote.  There is

1              no bright line in terms of remoteness.  I have

2              seen cases where 17, 18 year old convictions have

3              been permitted and affirmed.  I don't think these

4              are remote, and so I will permit an inquiry.  And

5              I will put my reasoning on the record.

6                         I have to balance the probative value on

7              the issue of credibility versus prejudice.  I

8              think aggravated unlicensed operation indicates a

9              willingness to put one's interests ahead of

10             society and hence is probative on the issue of

11             credibility.  I think the prejudice of such

12             conviction is binding. So I think the probative

13             value outweighs the prejudice and I don't think

14             it's remote, so I will permit an inquiry as to

15             December of 1999 conviction.

16                        Mr. Lamb proposed a compromise.  I will

17             adopt this compromise and permit the DA to inquire

18             should the defendant testify whether he was

19             convicted on December 14th, 1999 of a misdemeanor.

20             Withdrawn of a crime is your proposal, right,

21             Mr. Lamb?

22                        MR. LAMB:  Yes.

23                        THE COURT:  So of a crime.  Same rational

24             applies to the other conviction.  This is

25             February 9th, 1998, petit larceny conviction.

 1          Larceny, of course, is founded in theft.  It goes

 2          to the heart of credibility and honesty and I

 3          think, again, the probative value on the issue of

 4          credibility outweighs any prejudice which would be

 5          minor in my view in regard to petit larceny.  I

 6          don't think that's remote either.  So should the

 7          defendant testify I will permit the DA to inquire

 8          whether on February 9th, 1998 he was convicted of

 9          a crime, again, adopting Mr. Lamb's proposed

10          compromise.

11                    Is that it for Sandoval?

12                    MR. KATCHEN:  Two more things, Judge.  In

13          his criminal contact the defendant was arrested

14          under the following names and he used aliases I

15          would like to question him about that.  Some of

16          them may be attributable to just spelling mistakes

17          by whoever was inputting.  Some of them clearly

18          are not.

19                    The names that he's used are Anthony T.

20          Rucano, Anthony F. Rucano, Anthony Smith, Anthony

21          Rucan, Bucky Rucano, Vincent Rucano.  In addition

22          to some names that looking at his rap sheets it

23          indicates they were just spelling mistakes.

24                    In addition to that he used the following

25          dates of birth:  July 9th of 1966, July 9th of

1       1967, and July 15th of 1967.

2                   Again, with the aliases and the dates of

3       birth defendant is showing he is not a trustworthy

4       source of information and the jury should know

5       that upon assessing his credibility should he

6       testify.

7                   MR. LAMB:  Judge, I'm sorry --

8                   THE COURT:  I didn't say anything until I

9       hear you.

10                  MR. LAMB:  First of all, remoteness

11      applies to that as it applies to the actual acts

12      themselves.

13                  Secondly, I think we're all familiar with

14      the ministerial mistakes that are frequently made

15      by the NYSIID system.  Fingerprint records

16      frequently have misspellings and it certainly

17      cannot be said dispositively that the defendant

18      represented -- overtly represented these names to

19      the arresting officers.  We don't know anything

20      about the circumstances of the arrests, and it

21      appears all of them end with the name Rucano.

22                  I don't even know whether if they may

23      have asked him do you have a nickname or street

24      name.  He may have said Bucky.  That frequently

25      occurs.  I think the Court is aware of that.

EF

```
 1              Again, I stress the remoteness of this.
 2                   THE COURT:  I think I agree with the
 3         defense here.  Mistakes are often made on entries.
 4         We're all familiar with that.  It's hard to know
 5         without going deep into these matters and speaking
 6         to the people involved whether or not we're
 7         dealing with simple error or some intent to
 8         misrepresent.
 9                   I just don't have enough information to
10         rule favorably as far as the People are concerned.
11         I will deny your application.  I will not permit
12         any inquiry as to dates of birth or aliases.
13                   MR. KATCHEN:  I think that's it, Judge.
14                   THE COURT:  Well, I guess we're ready.
15         Then I have a couple of more cases I would like to
16         call before lunch.  It's ten after twelve.
17                   MR. KATCHEN:  Judge, prior to the case
18         being called I turned over some additional
19         Rosario.  I turned over some additional Rosario.
20                   It's DD5s that were completed by
21         Detective Christopher Connolly of the NY computer
22         crime squad.  I am just handing a copy of the
23         cover sheet.
24                   MR. LAMB:  Acknowledge receipt.
25                   THE COURT:  By the time we got a panel
```

```
 1            over here it would take 20, 30 minutes.  I suggest

 2            we start at two.  Is that acceptable?

 3                      MR. KATCHEN:  Yes.

 4                      MR. LAMB:  Yes.

 5                      THE COURT:  Two o'clock.

 6                      Mr. Rucano, let me give you what are

 7            called Parker Warnings.  You are not incarcerated.

 8            You are out on bail, I understand.  And I am sure

 9            you are going to show up throughout the pendency

10            of the trial.  You haven't missed any dates, in my

11            part anyway, so I expect you to be here.  But I am

12            required to warn you that since you are not

13            incarcerated it's up to you make sure you get

14            yourself here every adjourned date and recess

15            date.

16                      First would be at 2 p.m. this afternoon

17            and then probably start up tomorrow morning at ten

18            and proceed until the trial is finished.  You have

19            to make sure you are here at every appointed time.

20            If you fail to appear at any juncture of your own

21            volition then we'll proceed without you.  That's

22            called trying a person in absentia.  That's not a

23            good thing for you to do.  You have to make sure

24            you are here.

25                      THE DEFENDANT:  What did I just sign that
```

EF

```
1                 paper for?

2                     THE COURT:   What paper?

3                     THE DEFENDANT:   The paper stating my

4          lawyer --

5                     THE COURT:   That's the Antommarchi

6          issues.   That's where you could be present at

7          sidebar conferences.

8                     THE DEFENDANT:   So I still have to be

9          here today this afternoon?

10                    THE COURT:   You have to make sure you

11         show up for the trial.   First, for example, the

12         next time is 2 p.m. this afternoon.   We are going

13         to break for lunch, but you have to be here at

14         two.   We are going to start jury selection.

15                    Then you have to be here tomorrow morning

16         at ten and then 2 p.m. tomorrow afternoon and so

17         on until the trial is finished.   You have to make

18         sure you are here.   You look confused.   What don't

19         you understand?

20                    THE DEFENDANT:   I thought by signing that

21         paper that my lawyer was going to be taking care

22         of this.   I didn't have to come back until the

23         trial started.

24                    THE COURT:   Today is the date we're

25         starting.   We're starting at 2 p.m.   I am just
```

EF

```
 1                 telling you make sure you are here.

 2                      THE DEFENDANT:  I have to be here at two.

 3                      THE COURT:  Correct.  And then tomorrow.

 4            We're going to break at the end of the afternoon

 5            and resume tomorrow morning and we are going to

 6            proceed that way until the trial is finished.

 7                 You have to make sure you are here.  If

 8            you fail to appear at any time of your own

 9            volition then I take that as a waiver on your part

10            of your right to be present and we will continue

11            the trial without you.  Now I don't expect this to

12            be a problem.  You are going to do.

13                      THE DEFENDANT:  If you are telling me to,

14            yes.

15                      THE COURT:  I am.  I have to advise you

16            if you fail to appear at any time of your own

17            volition I will take that as a waiver of your

18            right to be present and we will continue the trial

19            without you and that's not a good thing.  Your

20            lawyer will tell you that.  I have to advise you

21            of this since you are not incarcerated.  Do you

22            understand these Parker Warnings?

23                      THE DEFENDANT:  Yes.

24                      THE CLERK:   Mr. Rucano, sign the bottom

25            of the order of protection.  Stay away from the
```

1           witness.

2                       (Pause in proceedings.)

3                       THE DEFENDANT:  Is this the only witness

4           that's being called by the District Attorney then?

5                       THE COURT:  No, they have a witness list

6           of several names, but this is one apparently you

7           will be seeing and they want to make sure you have

8           no -- you don't discuss the case with that person.

9           How do we limit this order?  What does it say?

10                      (Handed to the Court.)

11                      THE COURT:  The Court's written in the

12          order shall be subject to unintentional contact at

13          40 something terrace.

14                      MR. KATCHEN:  Silverton.

15                      THE COURT:  Silverton Terrace.  So if you

16          run into this person inadvertently that's not a

17          violation of the order, but you can't speak to the

18          person about the case.

19                      THE DEFENDANT:  Well, she is my neighbor

20          and we talk every day.  She asked me to take out

21          the garbage.  This is news to me.

22                      THE COURT:  That's all right.

23                      THE DEFENDANT:  We get along fine.

24                      THE COURT:  Just don't talk to her about

25          the case.

1                     Is that satisfactory to the DA?

2                     MR. KATCHEN:  That's fine.

3                     THE COURT:  I will add that in.

4                     (Short pause.)

5                     THE COURT:  I am just adding in not to

6         discuss the case.

7                     THE CLERK:  I will add it in?

8                     THE COURT:  Yes.

9                     (Pause in proceedings.)

10                    THE CLERK:   Take this.  Step out.

11                    THE COURT:  One other thing for the

12        record.  I handed out a piece of paper from a

13        certified social worker, Ms. Angela Russo

14        Moromarco, licensed certified social worker who

15        interviewed the complainant at various times

16        during the time period in question.  I believe she

17        also interviewed the defendant at various times.

18                    I have been through it.  Mr. Lamb

19        subpoenaed it for in camera inspection.  There is

20        a confidential social worker privilege that is

21        codified in Section 45.08 of the CPLR.  And having

22        been through this I am satisfied there is nothing

23        for me to turn over except the one piece of paper

24        I did turn over which I think is arguably Brady

25        material.  I gave both sides a copy.  So you can

```
 1              certainly read that.

 2                   THE DEFENDANT:  Your Honor, that

 3              Ms. Russo Moromarco, is the lady that she and her

 4              were going to couples counselling together.  I

 5              paid for the session.

 6                   So there was a couple session.  She also

 7              went to the same therapist on her own for

 8              individual counselling, actually on her -- first

 9              interview was the date of my birthday actually

10              last year.

11                   THE COURT:  She is not on the People's

12              witness list.  They don't intend to call her and

13              she is not on your witness list.  So I gather she

14              is not a witness in this case.  Okay.  2 p.m.

15                   THE CLERK:   Step out.

16                   Trial is second called.

17                   (Matter later recalled.)

18                   AFTERNOON SESSION.

19                   (Prospective jurors entered courtroom.)

20                   THE CLERK:  Jurors please stand.  Raise

21              your right hand to be sworn as prospective jurors.

22                   Do you and each of you solemnly swear

23              that you will answer truthfully all questions put

24              to you relative to your qualifications to serve in

25              this action so help you God?
```

1           ALL JURORS:  I do.

2                THE CLERK:  Thank you.  Be seated.  Turn

3           off your cell phones.

4                THE COURT:  Good afternoon.  Welcome to

5           Supreme Court Richmond County.  I'm sorry we

6           couldn't get you over here this morning.  I was

7           working on other cases, not this one, and we got

8           you over here as fast as we could.  I apologize

9           for the delay.

10                We are about to begin jury selection in a

11           criminal case.  This case is called People of the

12           State of New York against Anthony Rucano.

13           Mr. Rucano is known as the defendant in the case.

14           The indictment in this matter involves charges of

15           rape in the first degree, attempted rape in the

16           first degree, criminal sexual act in the first

17           degree, assault in the second degree, tampering

18           with physical evidence, menacing in the second

19           degree, criminal possession of a weapon in the

20           third degree, assault in the third degree, and

21           criminal mischief in the fourth degree.

22                The trial is the process by which we'll

23           determine if any of the charges are proven by

24           sufficient evidence, and I will talk to you about

25           that shortly.

EF

1           The first thing I want to do is give you

2    an idea of our schedule.  We anticipate selecting

3    the jury this afternoon and probably into

4    tomorrow.  The process takes a little bit of time.

5    After that we will begin the trial with testimony

6    and continue until we're finished.  We anticipate

7    that this will be about a week and a half trial.

8    I am going to add some time in case something

9    unforeseen delays us.

10          So what I am going to tell you is the

11   case will be at most a two-week trial.  When I say

12   that the proof will be closed and the case will go

13   to the jury so they can begin deliberating in an

14   effort to reach a final unanimous verdict or

15   verdicts.  No later than September 22, that will

16   be two weeks from today.  Probably earlier than

17   that, but no later than that.  So that's the

18   anticipated duration of the case.

19          In terms of our day-to-day operations we

20   generally work from 9:30 or ten depending on our

21   schedule in the morning until about five in the

22   afternoon with our jurors.  We take an hour off

23   for lunch usually between one and two.

24   Occasionally we go past five for scheduling

25   reasons.  If that happens and it's rare, but if it

1          happens it will not be long past five and I will

2          give the jury as much advance notice.  But you can

3          count on being out of the courthouse at by p.m.

4          during the trial itself.

5                    This is not a particularly lengthy trial

6          by our schedule.  I am not sure how you are going

7          to going to feel about it.  But what I will say to

8          you at this point is that I am permitted to

9          consider three categories when it comes to

10         excusing people immediately.

11                   The first category is health problems.

12         The second category is pressing business

13         obligations.  I emphasize the word pressing and I

14         have to say if you work for a large entity, a

15         large corporation, the City, the State, something

16         of that sort, it's difficult for me to let you go

17         immediately on that basis.  Not to say I won't

18         listen to you, but keep that in mind.  The third

19         category deals with pressing personal reasons.

20         You will be the judge of what they are if you have

21         any such reasons.

22                   So I hope you can stay with us through

23         this selection process during which I and the

24         lawyers will be talking to you in an effort to

25         determine if you could be fair jurors.  But if you

1           feel you fit into one of those three categories I

2           just mentioned and you would like to speak to me

3           and the lawyers right now about being excused,

4           would you raise your hand please?

5                      (Hands raised.)

6                      THE COURT:  Okay.  What I am going to do

7           is ask those of you who raised your hand to form a

8           line at the corner of the rail where the sergeant

9           is and we will speak to you one at a time.

10                     THE CLERK:  Single file.

11                     THE COURT:  I'm going to cut this line

12          off.  Line is formed.  This won't take long.

13          Thanks for your patience.

14                     THE CLERK:  Sergeant, line is closed.

15          Counsels, step over please.

16                     (The following took place at the sidebar

17          on the record:)

18                     THE CLERK:  First juror step up.

19                     (Prospective juror approached.)

20                     THE CLERK:  Stand there.  Tell the judge

21          your name.

22                     PROSPECTIVE JUROR:  Laurie Trochetta.

23          It's a Jewish holiday and I am Jewish.  It starts

24          tonight and the holiday.  I brought my birth

25          certificate.

EF

```
 1                          THE COURT:  I will take your word for it.

 2                          PROSPECTIVE JUROR:  It starts tonight.

 3              It starts at sundown tonight but tomorrow you

 4              don't travel at all.

 5                          THE COURT:  Tomorrow is Thursday.  What

 6              about Friday?

 7                          PROSPECTIVE JUROR:  No.  Right after this

 8              starts another holiday.

 9                          THE COURT:  Counsels?

10                          MR. KATCHEN:  No problem.  Like she said

11              there is another holiday next week.

12                          MS. RAJESWARI:  Consent.

13                          MR. LAMB:  I have no objection to

14              excusing the juror.

15                          THE COURT:  Consenting?

16                          MR. LAMB:  Consent.

17                          THE COURT:  Excuse me?

18                          MR. LAMB:  Yes.

19                          THE COURT:  You are excused.  Thank you.

20                          (Prospective juror excused.)

21                          THE CLERK:  Next.

22                          (Juror approached.)

23                          THE CLERK:  Please stand there and tell

24              the judge your name.

25                          PROSPECTIVE JUROR:  Kim Enmuschovic.  I
```

```
 1              was asked by my employer to say if I got to this
 2              point to postpone this because two secretaries in
 3              my office are away from Friday until the following
 4              Monday.
 5                        THE COURT:  Who do you work for?
 6                        PROSPECTIVE JUROR:  Peter Calvanico,
 7              engineer in Staten Island.
 8                        THE COURT:  Do they pay you while you're
 9              here?
10                        PROSPECTIVE JUROR:  Not that I know of.
11              They didn't say.
12                        THE COURT:  Counsellors.
13                        PROSPECTIVE JUROR:  I would say no
14              because I work by the hour.
15                        THE COURT:  You work by the hour.
16                        MR. LAMB:  So you feel if you were
17              selected you would be worried about --
18                        PROSPECTIVE JUROR:  Somebody not being in
19              the office.
20                        MR. LAMB:  -- somebody covering rather
21              than listening to the trial.
22                        PROSPECTIVE JUROR:  That's my job.
23                        MR. LAMB:  I would consent.
24                        MR. KATCHEN:  Yes.
25                        THE COURT:  You're excused.
```

```
 1                    (Prospective juror excused.)

 2                    THE CLERK:   Take this back to central

 3          jury.  Next.

 4                    (Prospective juror approached.)

 5                    THE CLERK:   Stand here.  Tell the judge

 6          your name.

 7                    PROSPECTIVE JUROR:   Megan Teagen.   My

 8          friend was brutally raped and murdered two years

 9          ago and I just started a new job back in July.

10                    THE COURT:   In terms of your friend is

11          this the kind of thing that would affect your

12          ability to be fair?

13                    PROSPECTIVE JUROR:   Yes.

14                    THE COURT:   Counsels?

15                    MR. LAMB:   I consent.

16                    MR. KATCHEN:   Consent.

17                    THE COURT:   You are excused.

18                    THE CLERK:   Back to central jury.

19                    Next.

20                    (Prospective juror excused.)

21                    (Prospective juror approached.)

22                    THE CLERK:   Tell the judge your name.

23                    PROSPECTIVE JUROR:   Andrew Guido.  I have

24          a business matter.  The company I work for was

25          taken public and I was sort of the point person.
```

```
 1                          THE COURT:  Do they pay you while you're
 2             here?
 3                          PROSPECTIVE JUROR:  Yes.
 4                          THE COURT:  That's the problem.  I can't
 5             really let you go at this point.  It doesn't mean
 6             you're on the jury but I am going to ask you to
 7             stick around.
 8                          PROSPECTIVE JUROR:  That's fine.
 9                          THE CLERK:  Please have a seat.  Juror
10             not excused.
11                          (Prospective juror approached.)
12                          THE CLERK:  Tell the judge your name.
13                          PROSPECTIVE JUROR:  My name is Joe Robert
14             and I am a journalist.  I am working for a Chinese
15             newspaper with the China press located in midtown
16             Manhattan.
17                          THE COURT:  Is that going to prevent you
18             from being able to serve on this juror?
19                          PROSPECTIVE JUROR:  I can't say.  Each
20             time I served many times but each time when I say
21             I am journalist they don't want me.
22                          THE COURT:  That doesn't disqualify you.
23             The lawyers may want to make a note and may want
24             to talk to you a little later.  We will let you
25             have a seat and talk to you later.
```

EF

```
 1                    (Prospective juror not excused.)

 2                    (Prospective juror approached.)

 3                    THE CLERK:  Please tell the judge your

 4          name.

 5                    PROSPECTIVE JUROR:  Joe Charlemagne.  Two

 6          things.  I have a wedding on Friday.  Also I work

 7          for the Staten Island Advance.  As it is we are

 8          really understaffed and I am falling behind.

 9                    THE COURT:  What time would you have to

10          be out of here on Friday if you were on this jury?

11                    PROSPECTIVE JUROR:  It's an all day

12          event.  We are taking -- at eleven taking

13          pictures.

14                    THE COURT:  In the morning?

15                    PROSPECTIVE JUROR:  Yes.

16                    THE COURT:  Your wedding?

17                    MR. LAMB:  Your wedding?

18                    PROSPECTIVE JUROR:  No.  It's actually my

19          girlfriend's sister and she is in the wedding.

20                    THE COURT:  Travel?

21                    PROSPECTIVE JUROR:  Yes, to Jersey.

22                    THE COURT:  Well, in terms of the

23          Advance, they pay you while you are here?

24                    PROSPECTIVE JUROR:  Yes.

25                    THE COURT:  I think I will ask this
```

```
 1                gentleman to stay with us for now and see what
 2                happens.  I mean if you feel differently.
 3                         MR. KATCHEN:  Did you say you can't be
 4                here at all?
 5                         MS. RAJESWARI:  If we finish early?
 6                         PROSPECTIVE JUROR:  Just complicates
 7                things.  They want me there.  I want to be there.
 8                         THE COURT:  Sure.
 9                         MR. LAMB:  I would consent to his
10                excusal.
11                         MR. KATCHEN:  Yes.
12                         THE COURT:  You are excused. Next please.
13                         (Prospective juror excused.)
14                         (Prospective juror approached.)
15                         THE CLERK:  Please tell the judge your
16                name.
17                         PROSPECTIVE JUROR:  Ray Catan.  I am the
18                owner of a custom store in New York.  I am the
19                sole proprietor and I work seven days a week.
20                Without me being there my business has a good
21                chance of failing.
22                         THE COURT:  You are putting a guilt trip
23                on me.
24                         PROSPECTIVE JUROR:  I work seven days a
25                week, 80 hours a week.
```

EF

1          MS. RAJESWARI:  We'll consent.

2          MR. LAMB:  I will consent.

3          THE COURT:  We'll excuse you.  Thank you.

4          (Prospective juror excused.)

5          THE CLERK:   Next.  Tell the judge your

6     name.

7          PROSPECTIVE JUROR:  Rafael Masui.  I am

8     in business, a restaurant.  I work in the kitchen.

9          MR. LAMB:  I am having a hard time

10    hearing.

11         PROSPECTIVE JUROR:  I have a restaurant,

12    work in the kitchen.  I work in the kitchen.  Two

13    weeks I cannot keep the place.

14         THE COURT:  This is your restaurant?

15         PROSPECTIVE JUROR:  Yes.

16         MR. LAMB:  I would consent.

17         MR. KATCHEN:  Yes.

18         THE COURT:  You are excused.  Thank you.

19         (Prospective juror excused.)

20         (Prospective juror approached.)

21         THE CLERK:   Tell the judge your name.

22         PROSPECTIVE JUROR:  Diane Facaro.  Your

23    Honor, I have a small child.

24         THE COURT:  Counsels?

25         MR. KATCHEN:  Consent.

EF

1              MR. LAMB:  Consent.

2              THE COURT:  You are excused.  Thank you.

3              (Prospective juror excused.)

4              (Prospective juror approached.)

5              THE CLERK:  Please tell the judge your

6         name.

7              PROSPECTIVE JUROR:  My name is Omar

8         Wilfredo.  I work for the New York City Department

9         of Education.  I am an operations director and

10        we've just recently reorganized and in the process

11        of moving our office.  So long story short, I am

12        in the process of training people to do what I do.

13        So if I were to serve on a jury most likely I

14        would be going to work another three or four or

15        five hours.  And school is opening so there is a

16        lot of things going on.  I work on the operations

17        side.

18             THE COURT:  You talk about the Department

19        of Education.  I am inclined to ask this man to

20        stay with us but I don't know how you feel about

21        it.  We'll do that.  I mean you are a Board of Ed

22        employee.  I can't let you go right now.  This

23        doesn't mean you are on the jury but we are going

24        to question you a little later.

25             (Prospective juror not excused.)

```
1                    THE CLERK:   Next.   Please tell the judge

2          your name.

3                    PROSPECTIVE JUROR:  My name is Mario

4          Canal. I no go to school.  I no read, no write.

5                    THE COURT:  Counsellors.

6                    MR. KATCHEN:  Consent if he doesn't

7          understand.

8                    THE COURT:  English problem.

9                    MR. LAMB:   I would consent.

10                   THE COURT:  You are excused.   Thank you.

11                   (Prospective juror excused.)

12                   (Prospective juror approached.)

13                   THE CLERK:   Tell the judge your name.

14                   PROSPECTIVE JUROR:  My name is Paolo

15         Aresti.  I own two restaurants.  I got to make a

16         schedule.

17                   THE COURT:  Counsellors?

18                   MR. LAMB:   Consent.

19                   MR. KATCHEN:  Consent.

20                   THE COURT:  You are excused.   Thank you.

21                   (Prospective juror excused.)

22                   (Prospective juror approached.)

23                   THE COURT:  Tell the judge your name.

24                   PROSPECTIVE JUROR:  Patrice Sing.  I

25         recently left my house Sunday, residing in Yonkers
```

EF

```
 1            temporarily.  I am out of work, not receiving any
 2            unemployment and I have a job interview on
 3            Tuesday.
 4                      THE COURT:  Counsellors?
 5                      MR. KATCHEN:  Consent.
 6                      MR. LAMB:  On consent.  You are excused.
 7            Next please.
 8                      (Prospective juror excused.)
 9                      (Prospective juror approached.)
10                      THE CLERK:  Tell the judge your name.
11                      THE CLERK:  My name is Debra Dunce.  I
12            don't get paid for my time off from my job.  Not
13            only that I got bad anxiety and I feel I am going
14            to pass out right now.
15                      THE COURT:  Don't pass out.
16                      PROSPECTIVE JUROR:  I am just afraid it's
17            going to take away from me paying attention to
18            what's going on at the trial.  I am trying to keep
19            myself calm.
20                      THE COURT:  You don't get paid while
21            you're here?
22                      PROSPECTIVE JUROR:  Not at all.
23                      THE COURT:  Counsels?
24                      MR. LAMB:  Consent.
25                      MR. KATCHEN:  Consent.
```

```
 1                  THE COURT:  You are excused.

 2                  (Prospective juror excused.)

 3                  (Prospective juror approached.)

 4                  THE CLERK:  Please tell the judge your

 5           name.

 6                  THE COURT:  My name is Ivan Farrick.  I

 7           am a physician.  They call me when they have to

 8           put them to sleep to get the specimen out from the

 9           vagina.  I would be -- I am not going to be a fair

10           juror.  I also see the victim side.  I see how

11           much damage happen.  I am not going to be --

12                  MS. RAJESWARI:  What kind of doctor?

13                  PROSPECTIVE JUROR:  I am a pediatrician.

14                  MS. RAJESWARI:  Always on the victim's

15           side?

16                  PROSPECTIVE JUROR:  That's my job.

17                  MR. LAMB:  On consent.

18                  MR. KATCHEN:  Consent.

19                  THE COURT:  You are excused.  Next

20           please.

21                  (Prospective juror excused.)

22                  (Prospective juror approached.)

23                  THE CLERK:  Tell the judge your name.

24                  PROSPECTIVE JUROR:  My name is Christina

25           Marco.  I am in a dance company and we have
```

```
 1              rehearsals and touring and I cannot miss work

 2              because I have to be there.  There are only six of

 3              us and I have to be with them to tour.  It's a

 4              dance company.  You can look it up on the

 5              Internet.

 6                        THE COURT:  Counsellors?

 7                        MR. KATCHEN:  No problem, consent.

 8                        THE COURT:  Consent?

 9                        MR. LAMB:  Consent.

10                        (Prospective juror excused.)

11                        (Prospective juror approached.)

12                        THE CLERK:  Tell the judge your name.

13                        PROSPECTIVE JUROR:  Charles Arobo.  I

14              have a series of meetings scheduled from the 20th

15              to the 24th and I have colleagues coming from

16              Germany.  I have to set up meetings before then.

17                        THE COURT:  Counsellors?

18                        MR. LAMB:  I'm sorry, I didn't hear.

19                        PROSPECTIVE JUROR:  I have meetings

20              scheduled from the 20th to the 24th with

21              colleagues coming from Germany and before then I

22              have to prepare pre-meetings, all of that other

23              stuff to make that meeting happen before this job.

24                        MS. RAJESWARI:  What are you?

25                        PROSPECTIVE JUROR:  I am a tech manager.
```

EF

```
 1              Head Germany and work with subsidiary in New York.
 2                   MR. LAMB:  You would be thinking of that
 3              more than paying attention to the trial, is what
 4              you're saying?  We might be finished.
 5                   PROSPECTIVE JUROR:  If you go before then
 6              then my job might need me.  I'm sorry for the
 7              language.  I am compromised because I am hosting
 8              the meeting.
 9                   MR. LAMB:  Consent.
10                   MR. KATCHEN:  Consent.
11                   THE COURT:  You are excused.
12                   (Prospective juror excused.)
13                   (Prospective juror approached.)
14                   THE CLERK:   Tell the judge your name.
15                   PROSPECTIVE JUROR:  Jennifer Luseeka.  I
16              manage the advertising for professional
17              associates.  No one else does my job.
18                   THE COURT:  What kind of association?
19                   PROSPECTIVE JUROR:  Association for
20              computing.
21                   THE COURT:  Do they pay you while you're
22              here?
23                   PROSPECTIVE JUROR:  Yes.
24                   THE COURT:  That's the problem.  I can't
25              really let you go at this point.  It doesn't mean
```

```
 1            you're on the jury but I have to ask you to stick

 2            around, ask you a few questions later.  You can

 3            have a seat.

 4                      (Prospective juror not excused.)

 5                      (Prospective juror approached.)

 6                      THE CLERK:  Please tell the judge your

 7            name.

 8                      PROSPECTIVE JUROR:  Juanita Abdul.

 9                      THE COURT:  What's the problem?

10                      PROSPECTIVE JUROR:  I don't know if I

11            could be on a jury right now.  I am a little shaky

12            because I am diabetic.  I didn't have enough to

13            eat today.

14                      THE COURT:  You are not feeling well now?

15                      PROSPECTIVE JUROR:  No, because I'm a

16            little shaky.  I didn't have enough to eat.  I

17            wasn't prepared.

18                      THE COURT:  Counsellors?

19                      PROSPECTIVE JUROR:  I would have to sit

20            for you.

21                      MR. LAMB:  Consent.

22                      MR. KATCHEN:  Consent.

23                      THE COURT:  You are excused.

24                      PROSPECTIVE JUROR:  For today?

25                      THE COURT:  You go back to central jury.
```

```
 1                  You have to deal with them, where you came from.

 2                       PROSPECTIVE JUROR:  Thank you.

 3                       (Prospective juror excused.)

 4                       (Prospective juror approached.)

 5                       THE CLERK:  Tell the Judge your name.

 6                       PROSPECTIVE JUROR:  Rodney Gonzalez.  I

 7       have a couple of situations.  One of them is

 8       medical treatment next week.  I had an accident.

 9       Was run down by a bicyclist and my collarbone and

10       also I have to move from my place.  I have been

11       evicted and am looking for a place to live.

12                       THE COURT:  Counsellors?

13                       MR. KATCHEN:  Consent.

14                       MR. LAMB:  Consent.

15                       THE COURT:  Consent?

16                       MR. LAMB:  Yes.

17                       THE COURT:  You are excused.

18                       (Prospective juror excused.)

19                       (Prospective juror approached.)

20                       THE CLERK:   Tell the judge your name.

21                       PROSPECTIVE JUROR:  My name is Mia

22       Santos.  I have a seven-year-old and it was hard

23       to find somebody to pick him up.  I have a son

24       seven years old after school.

25                       THE COURT:  It's a child care issue
```

EF

```
 1            counsels.
 2                         MR. LAMB:   Consent.
 3                         MR. KATCHEN:   Consent.
 4                         THE COURT:   You are excused.
 5                         (Prospective juror excused.)
 6                         (Prospective juror approached.)
 7                         THE CLERK:   Tell the judge your name.
 8                         PROSPECTIVE JUROR:   My name is Stan
 9            Marino.   I have a two-year-old at home and I am a
10            primary baby-sitter.
11                         THE COURT:   There is nobody else who
12            could do it?
13                         PROSPECTIVE JUROR:   No.   I wish there
14            was.
15                         THE COURT:   Counsellors?
16                         MR. LAMB:   Consent.
17                         MR. KATCHEN:   Consent.
18                         THE COURT:   You are excused.
19                         (Prospective juror excused.)
20                         (Prospective juror approached.)
21                         THE CLERK:   Please tell the judge your
22            name.
23                         PROSPECTIVE JUROR:   Matt Catalano.   About
24            two to three weeks ago my daughter went out on the
25            island, went to a club, came home that night with
```

```
 1              heavy bleeding from the vagina.  My wife had to
 2              take her to the doctor.  Doctor told her there was
 3              some penetration.  Maybe forced.  I feel I heard
 4              what this case is about.  You are not going to
 5              have the right kind of guy.
 6                        THE COURT:  You don't think you could be
 7              fair?
 8                        PROSPECTIVE JUROR:  No, not at all.  If I
 9              had a bat I would bash -- never mind.
10                        THE COURT:  Counsellors?
11                        MR. LAMB:  Consent.
12                        MR. KATCHEN:  Consent.
13                        (Prospective juror excused.)
14                        (The following took place in open court:)
15                        THE COURT:  Thank you for staying with
16              us.  I told a few of you I couldn't excuse you at
17              this point.  I'm sorry about that.  I don't enjoy
18              that part of my job but I have certain guidelines
19              I have to follow, so I hope you can appreciate
20              that.
21                        I am going to give you a few preliminary
22              remarks.  Then we will fill the jury box and begin
23              questioning people.
24                        As I said earlier the trial process by
25              which we'll determine if any of the charges are
```

EF

1          proven by sufficient evidence.  And in that

2          process those of you selected as jurors and I as

3          the judge in the case perform separate functions.

4          Jurors are called upon to determine whether or not

5          the evidence they hear and see in the case

6          establishes the defendant's guilty of the charges.

7                 In order to do this the jury will have to

8          evaluate all the evidence at the end of the trial

9          in order to determine whether what they've heard

10         from witnesses and seen as exhibits is true and if

11         so what it all means.  This is called finding the

12         facts.  That's the jurors's job alone.  The judge

13         finds no facts at a jury trial.

14                The jury's ultimate decision is called a

15         verdict.  The verdict will be either guilty or not

16         guilty, or after hearing all of the evidence the

17         jury may find the defendant guilty of some charges

18         and not guilty of others.

19                The attorneys present the evidence.  They

20         usually do this by calling witnesses and they may

21         suggest that the jury draw certain conclusions

22         from the evidence.  But only the jury can decide

23         what really happened and the verdict as to each of

24         the counts submitted will remain the jury's

25         decision alone.  The judge makes no determination

1          of guilt or lack of guilt at a jury trial.  My

2          role at the trial is to simply ensure the jury

3          reaches its verdict or verdicts in accordance with

4          the law.  I will explain the law as to all the

5          issues in this trial.  You don't have to know any

6          law in order to be a juror.

7                    In order for both sides to receive a fair

8          trial I may have to rule on questions concerning

9          the conduct of the trial.  Those rulings have

10         nothing to do with whether this defendant is

11         guilty or not guilty.

12                   I may also rule on questions concerning

13         what evidence may be considered and if so for what

14         purpose.  When I do make a ruling whether the jury

15         may hear testimony or see an exhibit which is

16         offered as evidence, I will be ruling on whether

17         or not they be permitted to hear or see this as

18         permitted by the law.

19                   Should the jury be instructed to

20         disregard something that he may have heard it will

21         be because that's the law.  None of my rulings

22         during this trial or during this jury selection if

23         I have to make any should be taken by you as

24         indicating whether all or part of what's

25         eventually offered as evidence should be believed

```
 1              or whether the defendant is guilty or not guilty.

 2              Again, that's solely the jury's job to determine.

 3                   You do have to, however, except the law

 4              as it is given to you if both sides are to receive

 5              the fair trial to which they are entitled.  And in

 6              that regard I will be discussing some fundamental

 7              legal issues with you shortly.

 8                   The People of the State of New York

 9              Richmond County are represented by the District

10              Attorney Daniel Donovan.  Mr. Donovan is

11              represented at this trial by Assistant District

12              Attorneys Anthony Katchen and Raja Rajeswari.

13              They are seated at this table.

14                   MS. RAJESWARI:  Good afternoon.

15                   THE COURT:  The defendant as I have

16              already said is Anthony Rucano and Mr. Rucano is

17              represented by his lawyer Mr. Eugene Lamb and they

18              are seated at this table.

19                   MR. LAMB:  Good afternoon.

20                   THE DEFENDANT:  Good afternoon.

21                   THE COURT:  The fact that this action is

22              brought by the name of the people, that the

23              evidence is presented by public officials, does

24              not in any way indicate the public wants a

25              specific verdict.  The People of this state are
```

1           served by whatever verdict is justified by the

2           evidence.

3                   Serving on a jury is a vital function for

4           citizens under our system of law and also a great

5           responsibility which is to accord both sides a

6           fair trial.  In order to do this the jury must be

7           free from any preconceived notions or any

8           sympathies or prejudices which might prevent them

9           from returning a fair and just verdict based

10          solely on the evidence or the lack of evidence.

11                  And to help insure this our first order

12          of business is to conduct an examination of

13          prospective jurors.  I am going to ask some

14          questions and lawyers will ask some questions.

15          The purpose of this questioning is simply to

16          determine whether or not you are qualified to sit

17          as a juror in this particular case.

18                  A number of you will not be selected.

19          Some of you will be excused because you are not

20          qualified to sit as a matter of law.  And these

21          people will be excused for cause.  Others amongst

22          you will be excused peremptory which means by one

23          of the attorneys without any cause being given.

24                  I want to emphasize at this point if you

25          are excused it's not a reflection on you as a

1                person, a citizen.  It has nothing to do with

2                honesty or integrity.  Please don't feel insulted

3                if you are excused.  If you excused it is simply a

4                result of a determination by the lawyers or by me

5                that you are not to sit as a juror in this

6                particular case.

7                        Should I or the lawyers ask you any

8                questions you would rather not answer in open

9                court, just raise your hand and tell us and we

10               will step to the side and discuss these issues

11               privately.

12                       So the clerk is now going to pull sixteen

13               names randomly from the drum.  If you hear your

14               name called, step up and have a seat where the

15               officer directs you.

16                       THE CLERK:    Seat Number 1, step up,

17               Brian Merrick.  M E R R I C K.  Seat Number 1.

18                       Seat two, Robert Schlaeger.

19               S C H L A E G E R.

20                       Seat three, Patricia Comerford.

21               C O M E R F O R D.

22                       THE CLERK:    Mr. Lamb, the lineup so far

23               is Merrick one, Schlaeger two, Comerford three.

24                       Number 4, step up, Benjamin Santlofer.

25               Could you spell your last name?

```
 1                  PROSPECTIVE JUROR:  S A N T L O F E R.
 2              THE CLERK:  Seat four, S A N T L O F E R.
 3              Seat five, Amy Scaravaggio.
 4      S C A R A V A G G I O.  Seat five.
 5              Seat six, Matthew Santoro S A N T O R O.
 6              Seat seven, Angelo Paolino P A O L I N O.
 7              Seat eight, James Sisti S I S T I.
 8              Seat nine, step up, Brian Ritchie.
 9      R I T C H I E.  Seat nine.
10              Seat ten, Melissa Rippa.  R I P P A.
11              Seat eleven, Matthew Rand.  R A N D.
12              Twelve, Joan Santore S A N T O R E.
13              Thirteen, Aramis Ramirez R A M I R E Z.
14              Fourteen, Caroline Ferreri F E R R E R I.
15              Fifteen, Omar Pereyra P E R E Y R A.
16              Sixteen, David Maxwell M A X W E L L.
17              Sixteen prospective jurors seated.
18              THE COURT:  I'll be directing my
19      questions to the people in the jury box.  It would
20      help if everybody listened.  We'll probably speak
21      to most of you before this process is finished and
22      things go quicker when you know the questions.
23      But for now I am talking to people in the jury
24      box.
25              I told you the nature of the charges in
```

EF

```
 1              this case.  The complaining witness in the case is
 2              a woman named Duane Ramos.  D U A N E.  Last name
 3              R A M O S.  I know this is not a lot of
 4              information at this point, but my question is
 5              based on what you've heard so far.
 6                       Do any of you think you know anything
 7              about this case, think you've heard anything about
 8              it, talked to anybody about it, perhaps read
 9              anything about it?  I don't know if the Advance
10              wrote anything about it or not.  Nobody on this.
11                       I've introduced the lawyers and the
12              defendant to you.  Do any of you know any of them?
13                       Let me read to you a list of potential
14              witnesses in this case.  My reading these names
15              does not impose on anyone the burden of calling
16              these people but these are people who may testify
17              at this trial and I'd like to know if you
18              recognize any of the names.  I will read them all
19              and then you can tell me.
20                       Duane Ramos.  Detective William Wasson.
21              W A S S O N.  Police Officer Albert Lloyd.
22              Jennifer King, a criminalist from the medical
23              examiner's office.  Dr. Nancy Needell.  That's
24              N E E D E L L.  Stefania Mach.  M A C H.
25              Detective Investigator Margaret Eng-Wallace.  Last
```

```
 1              name is hyphenated, E N G hyphen Wallace.  PA

 2              physician's assistant by the name of Rina Ganeles.

 3              G A N E L E S.  Court clerk by the name of Steven

 4              Paradiso.  Police Officer Sharon Brown.  Detective

 5              Christopher Connolly.  Dr. Michael Brustein

 6              B R U S T E I N.  Steve Frankl.  Last name

 7              F R A N K L and Frank Ortiz.

 8                      Anyone recognize any of those names?

 9              Good.

10                      MR. LAMB:  Judge, may we approach?

11                      THE COURT:  Yes.

12                      (Discussion held off the record at the

13              bench.)

14                      THE COURT:  I have just been given two

15              more names of potential witnesses.  Diane Smith

16              and a police officer Monkai Lewis.  First name is

17              M O N K A I.  Last name Lewis L E W I S.  Does

18              anyone recognize either of those names?

19                      I am going to put another series of

20              questions to all of you. Just raise your hand if

21              you have an affirmative answer.  I will get to you

22              probably in no particular order but I will get to

23              you.

24                      First question, are any of you or anyone

25              close to you and when I say close to you I mean
```

```
 1              close friends or relatives involved in law

 2              enforcement in any way or have you or have they

 3              been so involved?

 4                   Ms. Comeford, who do you know?

 5                   PROSPECTIVE JUROR:  My dad. He has since

 6              passed away.  He was a police officer and my

 7              brother-in-law is a retired detective.

 8                   THE COURT:  Okay.  Is there anything

 9              about their former occupations, any discussions

10              you may have had with them, what they did which

11              would prevent you from being a fair juror?

12                   PROSPECTIVE JUROR:  Yes.

13                   THE COURT:  Talking about war stories.

14              You think that would prevent you from being fair?

15                   PROSPECTIVE JUROR:  Yes.

16                   THE COURT:  Okay.  The lawyers might want

17              to talk to you further about that.  I will leave

18              that up to them.

19                   Mr. Schlaeger?

20                   PROSPECTIVE JUROR:  My nephew was a

21              policeman.

22                   THE COURT:  He's retired?

23                   PROSPECTIVE JUROR:  Retired now.

24                   THE COURT:  Anything about his former

25              occupation that would have any bearing on your
```

```
 1                ability to be fair?
 2                        PROSPECTIVE JUROR:  I don't think so.
 3                        THE COURT:  Thank you.
 4                        Mr. Santlofer, did you have your hand up?
 5                        PROSPECTIVE JUROR:  Yes.  My current
 6                roommate's best friend is a police officer.
 7                        THE COURT:  Anything about that that
 8                would prevent you from being fair?
 9                        PROSPECTIVE JUROR:  I don't think so.
10                        THE COURT:  Anyone else in the first row?
11                        Mr. Pereyra?
12                        PROSPECTIVE JUROR:  Yes.  My girlfriend's
13                brother-in-law, he is a retired detective and her
14                niece is an Assistant District Attorney in
15                Brooklyn.
16                        THE COURT:  Well, it could be considered
17                -- is this a friend?
18                        PROSPECTIVE JUROR:  My girlfriend's
19                brother-in-law is a retired detective and her
20                niece is an Assistant District Attorney.
21                        THE COURT:  Okay.  In Brooklyn you said?
22                        PROSPECTIVE JUROR:  I believe so.
23                        THE COURT:  Anything about these
24                acquaintanceships which would prevent you from
25                being fair and impartial?
```

```
 1                    PROSPECTIVE JUROR:  No, your Honor.

 2                    THE COURT:  Thank you.

 3                    Other hands?  Ms. Rippa.

 4                    PROSPECTIVE JUROR:  My mother-in-law is a

 5          principal in the 69th Precinct.

 6                    MR. LAMB:  I am having a hard time

 7          hearing.

 8                    THE COURT:  Could you speak up just a

 9          little?

10                    PROSPECTIVE JUROR:  My mother-in-law is a

11          principal in the 69th Precinct in Canarsie.

12                    THE COURT:  She's a principal? What does

13          that mean?

14                    PROSPECTIVE JUROR:  Higher up secretary.

15                    THE COURT:  Okay.

16                    PROSPECTIVE JUROR:  My husband's aunt is

17          retired from the task force.

18                    THE COURT:  Task force. Anything about

19          these friendships, acquaintanceships which would

20          prevent you from being fair?

21                    PROSPECTIVE JUROR:  No.

22                    THE COURT:  Ms. Santore?

23                    PROSPECTIVE JUROR:  Yes.  My ex-husband

24          is a retired policeman and my daughter-in-law's

25          brother is a policeman.
```

EF

```
 1                    THE COURT:  Same question.  Anything

 2         about these acquaintanceships that would prevent

 3         you from being fair?

 4                    PROSPECTIVE JUROR:  No.

 5                    THE COURT:  Okay, thank you.

 6                    Anyone else on this question?

 7                    Mr. Ramirez?

 8                    PROSPECTIVE JUROR:  My dad was a

 9         detective.

10                    THE COURT:  He's left the job, retired?

11                    PROSPECTIVE JUROR:  He left the job.

12                    THE COURT:  Anything about his former

13         occupation which would prevent you from being

14         fair?

15                    PROSPECTIVE JUROR:  I don't think so.

16                    THE COURT:  Anyone else?

17                    Next question.  Are any of you or anyone

18         close to you involved in the legal field in any

19         way as a lawyer, paralegal, employee of a law firm

20         or prosecutor's office?  Anything of that sort?

21                    Ms. Scaravaggio?

22                    PROSPECTIVE JUROR:  I work in a law firm.

23                    THE COURT:  Does the firm practice any

24         criminal law to your knowledge?

25                    PROSPECTIVE JUROR:  No.  Corporate.  It's
```

1          in the city.

2                    THE COURT:  What do you do?

3                    MR. LAMB:  Legal assistant.

4                    THE COURT:  Anything about your

5          occupation that would prevent you from being fair?

6                    PROSPECTIVE JUROR:  No.

7                    THE COURT:  Anyone else on this question?

8                    Ms. Santore?

9                    PROSPECTIVE JUROR:  Yes.  I deal with a

10         lot of different lawyers in my job.

11                   THE COURT:  What do you do?

12                   PROSPECTIVE JUROR:  I am a branch manager

13         for a bank.  I deal with a lot of attorneys so I

14         know a lot of them.

15                   THE COURT:  I would imagine more real

16         estate than anything else or am I wrong?

17                   PROSPECTIVE JUROR:  Everything.  The bank

18         accounts.

19                   THE COURT:  Okay.

20                   PROSPECTIVE JUROR:  But not really into

21         delving into their business.

22                   THE COURT:  Anything about these

23         relationships that would prevent you from being

24         fair?

25                   PROSPECTIVE JUROR:  No.

1                    THE COURT:  Anyone else on this question?

2              Have any of you or anyone close to you to

3         your knowledge ever been the victim of a crime?

4                    Mr. Paolino, could you tell me a little

5         bit about it?

6                    PROSPECTIVE JUROR:  My nephew.

7                    THE COURT:  What kind of crime?

8                    PROSPECTIVE JUROR:  Locked up for murder.

9                    THE COURT:  He was locked up.  I am going

10        to ask you a few questions about that.  We could

11        talk about it privately if you would prefer. Would

12        you rather do that?

13                    PROSPECTIVE JUROR:  Yes.

14                    THE COURT:  We'll get to you in a little

15        while.

16                    The question is have any of you or anyone

17        close to you ever been the victim of a crime?

18                    Mr. Pereyra?

19                    PROSPECTIVE JUROR:  Yes, I have been

20        mugged.

21                    THE COURT:  How long ago, sir?

22                    PROSPECTIVE JUROR:  Oh, gees, about

23        fourteen years ago.

24                    THE COURT:  Anyone arrested?

25                    PROSPECTIVE JUROR:  On that day, yes.

```
 1                    THE COURT:  Did you go to court?
 2                    PROSPECTIVE JUROR:  No, sir.
 3                    THE COURT:  Is there anything about that
 4            experience that would prevent you from being a
 5            fair juror in this case?
 6                    PROSPECTIVE JUROR:  No.
 7                    THE COURT:  Anyone else?
 8                    Ms. Santore?
 9                    PROSPECTIVE JUROR:  My niece was killed
10            out in Tottenville about ten years ago and I have
11            also been in two bank robberies.
12                    THE COURT:  You've been involved in two
13            bank robberies.  You don't mean you've been
14            involved.
15                    PROSPECTIVE JUROR:  I was in the bank
16            when they were robbed.
17                    THE COURT:  Let's do the bank robberies
18            first.  Anything about those experiences which
19            would prevent you from being a fair juror in this
20            case?
21                    PROSPECTIVE JUROR:  No.
22                    THE COURT:  Did you go to court in either
23            of those cases?
24                    PROSPECTIVE JUROR:  No.
25                    THE COURT:  And your niece, I'm sorry to
```

```
 1               hear what you had to say.  Was that a result of a
 2               criminal act?
 3                         PROSPECTIVE JUROR:  Yes.
 4                         THE COURT:  Was anybody arrested?
 5                         PROSPECTIVE JUROR:  Yes.
 6                         THE COURT:  How long ago was that?
 7                         PROSPECTIVE JUROR:  That was ten years
 8               ago.
 9                         THE COURT:  Did you go to any court
10               proceedings?
11                         PROSPECTIVE JUROR:  No.
12                         THE COURT:  Is there anything about that
13               experience that would prevent you from being a
14               fair juror in this case?
15                         PROSPECTIVE JUROR:  I don't think so.
16                         THE COURT:  Thank you.  Anyone else on
17               this question?
18                         Ms. Ferreri?
19                         PROSPECTIVE JUROR:  My husband was held
20               up at gunpoint at his office and handcuffed and
21               robbed.
22                         THE COURT:  How long ago was this?
23                         PROSPECTIVE JUROR:  About twenty years
24               ago.
25                         THE COURT:  Was anybody arrested?
```

```
 1                    PROSPECTIVE JUROR:  Not really.

 2                    THE COURT:  Did you go to any kind of

 3            court proceeding at all?

 4                    PROSPECTIVE JUROR:  No.

 5                    THE COURT:  Anything about that event

 6            that would prevent you from being fair in this

 7            case?

 8                    PROSPECTIVE JUROR:  Not with this, no.

 9                    THE COURT:  Anyone else?

10                    Mr. Santlofer?

11                    PROSPECTIVE JUROR:  When I was manager of

12            a store they got shoplifted a lot of times.  I

13            called the cops.

14                    THE COURT:  Did you ever go to any court

15            proceedings?

16                    PROSPECTIVE JUROR:  I talked to a lawyer

17            once and handed over security tapes, but no

18            proceedings.

19                    THE COURT:  You never testified?

20                    PROSPECTIVE JUROR:  No.

21                    THE COURT:  Anything about these

22            experiences that would prevent you from being a

23            fair juror?

24                    PROSPECTIVE JUROR:  No.

25                    THE COURT:  Anyone else?
```

EF

1              Mr. Rand?

2                   PROSPECTIVE JUROR:  I remember I was hit

3          in the head when I was trying to break up an

4          altercation but nothing ever came of it.

5                   THE COURT:  Nothing came of it?  Nobody

6          was arrested?

7                   PROSPECTIVE JUROR:  No.

8                   THE COURT:  Did you call the police?

9                   PROSPECTIVE JUROR:  Well, the police --

10         you know the police had come.  Somebody else had

11         called the police.

12                  THE COURT:  You never went to any court

13         proceedings?

14                  PROSPECTIVE JUROR:  No, no.

15                  THE COURT:  How long ago was that?

16                  PROSPECTIVE JUROR:  That was 2003 or

17         2004.

18                  THE COURT:  Anything about that

19         experience that would prevent you from being fair?

20                  PROSPECTIVE JUROR:  No.

21                  THE COURT:  Anyone else on this question?

22                  My next question, Mr. Paolino has already

23         answered it and I will remind you if you want to

24         discuss anything privately we will do that.  The

25         question is have you or anyone close to you, close

 1              friend or relative ever been a defendant in any

 2              kind of a criminal proceeding?

 3                       Mr. Pereyra, you want to talk privately

 4              about that?

 5                       PROSPECTIVE JUROR:  Yes.

 6                       THE COURT:  We'll get to you shortly.

 7                       Anyone else?  Nobody.

 8                       Mr. Ramirez?

 9                       PROSPECTIVE JUROR:  I will talk to you

10              privately.

11                       THE COURT:  Privately, fine. We'll do

12              that after I am finished with the general

13              questioning.

14                       Anyone else?

15                       Have any of you ever been a witness in

16              any kind of a courtroom proceeding or Grand Jury

17              proceeding?

18                       Mr. Schlaeger, can you tell me a little

19              bit about it?

20                       PROSPECTIVE JUROR:  Well, when I worked

21              for the bank they called me in for the bank's

22              position on a particular check cashing situation.

23                       THE COURT:  That was in a courtroom?

24                       PROSPECTIVE JUROR:  Correct.

25                       THE COURT:  Was it a trial?

```
 1                    PROSPECTIVE JUROR:  Correct.

 2              THE COURT:  Was it a criminal case?

 3                    PROSPECTIVE JUROR:  Correct.

 4              THE COURT:  How long ago was this?

 5                    PROSPECTIVE JUROR:  It's got to be twenty

 6         years ago.

 7              THE COURT:  Is there anything about that

 8         experience as a witness that would prevent you

 9         from being a fair juror?

10                    PROSPECTIVE JUROR:  No.

11              THE COURT:  Thank you.

12              Anyone else?

13              Have any of you ever been a litigant,

14         that is a plaintiff or a defendant, in any kind of

15         a civil lawsuit or civil action?

16              Mr. Schlaeger?

17                    PROSPECTIVE JUROR:  When I was a child I

18         was hit by a car and that went to court and there

19         was a settlement.

20              THE COURT:  You didn't testify.

21                    PROSPECTIVE JUROR:  I was a child.

22              THE COURT:  Anything about that event as

23         much as you can remember of it that would prevent

24         you from being fair?

25                    PROSPECTIVE JUROR:  No.
```

EF

1            THE COURT:  Thank you.

2            Anyone else?

3            Have any of you been on a jury before,

4      served on a trial jury?

5            Mr. Merrick, when please?

6            PROSPECTIVE JUROR:  In 2000.

7            THE COURT:  Was it a criminal or civil

8      case?

9            PROSPECTIVE JUROR:  Criminal.

10            THE COURT:  And don't tell us how it

11      ended up, but did the jury reach a verdict?

12            PROSPECTIVE JUROR:  Yes.

13            THE COURT:  Was there anything in that

14      experience that would prevent you from being able

15      to do it again?

16            PROSPECTIVE JUROR:  No.

17            THE COURT:  Anyone else?

18            Mr. Schlaeger?

19            PROSPECTIVE JUROR:  I was on Grand Jury

20      probably 30 years ago.

21            THE COURT:  Richmond County?

22            PROSPECTIVE JUROR:  Yes. And I sat on a

23      case up in I guess it was in Forest Avenue at the

24      time.  It was a non-criminal case, but it was

25      settled before the jury.

```
 1                    THE COURT:  Could that have been
 2         Castleton?
 3                    PROSPECTIVE JUROR:  Castleton.
 4                    THE COURT:  Anything about either of
 5         these experiences that would prevent you from
 6         being a fair juror?
 7                    PROSPECTIVE JUROR:  No.
 8                    THE COURT:  If you were selected as a
 9         juror in this case could you promise me and the
10         lawyers you would forget whatever -- what you may
11         remember from the Grand Jury and accept the law as
12         I give it to the trial jury in this case?
13                    PROSPECTIVE JUROR:  Yes.
14                    THE COURT:  Anyone else with any prior
15         jury experience?
16                    Anybody beside Mr. Schlaeger ever sit on
17         a Grand Jury?
18                    What I'd like to do at this point is go
19         down the list here from one through sixteen and
20         ask you what you do for a living.  If you are
21         retired what you used to do for a living.  If you
22         are not employed just tell me that.  I don't need
23         to know for whom you worked.  I need to know what
24         type.  Sometimes occupations help us decide on
25         jury section.
```

EF

1              Mr. Merrick, are you employed?

2              PROSPECTIVE JUROR:  Computer programmer.

3              THE COURT:  Mr. Schlaeger?

4              PROSPECTIVE JUROR:  I am retired now but

5     I was at Citibanker for thirty-five years, school

6     bus driver for fourteen years.

7              THE COURT:  Thank you.

8              Ms. Comerford?

9              PROSPECTIVE JUROR:  X-ray technologist

10    Staten Island Hospital.

11             THE COURT:  Mr. Santlofer?

12             PROSPECTIVE JUROR:  Manager.

13             THE COURT:  Ms. Scaravaggio?

14             PROSPECTIVE JUROR:  Legal assistant.

15             THE COURT:  Right, you told me.

16             Mr. Santoro?

17             PROSPECTIVE JUROR:  Dock worker.

18             THE COURT:  Mr. Paolino?

19             PROSPECTIVE JUROR:  Auto dismantler.

20             THE COURT:  Mr. Sisti?

21             PROSPECTIVE JUROR:  Mechanic.

22             THE COURT:  Mr. Maxwell?

23             PROSPECTIVE JUROR:  Retired.

24             THE COURT:  From what, sir?

25             PROSPECTIVE JUROR:  Retired.

```
 1                    THE COURT:  What did you use to do?

 2                    PROSPECTIVE JUROR:  I was a manager for a

 3          company for model railroads.

 4                    THE COURT:  Thanks.

 5                    Mr. Pereyra?

 6                    PROSPECTIVE JUROR:  I am an operations

 7          manager, operations director.

 8                    THE COURT:  Thank you.

 9                    Ms. Ferreri?

10                    PROSPECTIVE JUROR:  Retired school

11          teacher.

12                    THE COURT:  And Mr. Ramirez?

13                    PROSPECTIVE JUROR:  On disability now.  I

14          worked for 18 years as a construction laborer.

15                    THE COURT:  Ms. Santore?

16                    PROSPECTIVE JUROR:  Branch manager, bank

17          manager.

18                    THE COURT:  Mr. Rand?

19                    PROSPECTIVE JUROR:  Unemployed.

20                    THE COURT:  Thank you.

21                    Ms. Rippa?

22                    PROSPECTIVE JUROR:  Clinical dental

23          assistant.

24                    THE COURT:  Mr. Ritchie?

25                    PROSPECTIVE JUROR:  Investment relations
```

1              for health care companies.

2                         THE COURT:  What I am going to do at this

3              point is discuss several fundamental principles of

4              law that apply in all criminal cases.  As I said

5              before you don't have to know any law in order to

6              be a juror. It is my job to explain the law to

7              juries.  You do, however, have to agree to accept

8              the law if both sides are to have a fair trial to

9              which they are entitled.

10                        I am going to discuss the fundamental

11             principles that apply in all criminal cases and

12             ask you if can promise you can accept and follow

13             these rules.  If you cannot accept any of them

14             please tell me.  It's important we know how you

15             feel.

16                        You heard me mention at the outset the

17             indictment and the charges contained therein.  The

18             indictment is not evidence.  The mere fact that a

19             defendant has been indicted is not evidence of

20             anything and in particular it's not evidence of

21             guilt.

22                        Should you be chosen to serve as a trial

23             juror our law requires you decide the case wholly

24             and solely on the evidence and since it is our law

25             an indictment is evidence of nothing, I ask you if

1          you could promise us that you will follow and

2          accept this rule in our law.  Anyone amongst you

3          who cannot accept that proposition?

4                    Our law requires the final verdict or

5          verdicts in a criminal case must be unanimous.

6          Twelve jurors seldom agree immediately and you

7          will therefore if selected as a juror in this case

8          be called upon to deliberate at the end of the

9          trial in an effort to reach a final unanimous

10          verdict or verdicts.  You and eleven other people

11          will go to the jury room to discuss the case in a

12          effort to arrive at a final unanimous verdict.

13                    Do any of you feel you could not

14          deliberate with eleven other people in a jury room

15          if called upon to do so?

16                    Under our law everyone accused of a crime

17          and brought to trial is presumed innocent unless

18          or until he was proved guilty beyond a reasonable

19          doubt.  The defendant in this case is presumed

20          innocent and to put this another way a defendant

21          is never required to prove his innocence.

22                    On the contrary the People represented by

23          the District Attorney, having accused the

24          defendant of the crimes charged, have the burden

25          of proving him guilty beyond a reasonable doubt.

 1              The People carry this burden of proof throughout

 2          the trial.  It never shifts.  It always remains on

 3          the People and the presumption of innocence

 4          remains with every defendant throughout every

 5          criminal trial.

 6                  Is there anyone amongst you who cannot

 7          now in your own mind grant the defendant this

 8          presumption of innocence?

 9                  As I said in a criminal trial the burden

10          of proof is entirely on the People, that is on the

11          District Attorney, and it remains on them

12          throughout the trial.  A defendant is not required

13          to prove anything nor is a defendant required to

14          disprove anything.  As I said the entire burden of

15          proof is on the People and remains on them

16          throughout the trial.

17                  Is there anyone amongst you who cannot

18          accept that rule in our criminal law?

19                  If a defendant does not testify in a

20          criminal trial, that is not a factor from which

21          any inference unfavorable to such defendant may be

22          drawn.

23                  Is there anyone who cannot accept this

24          rule in our law?

25                  What I am going to do at this time is

1          define for you the standard of proof required for

2          conviction in every criminal case.  That standard

3          of proof is called proof of guilt beyond a

4          reasonable doubt.  That standard does not require

5          the People to prove the defendant guilty beyond

6          all possibility of a doubt or beyond a shadow of a

7          doubt.  It does require them to establish the

8          defendant's guilt beyond a reasonable doubt.

9              Our law, therefore, requires that before

10         a jury may convict a defendant each juror must be

11         satisfied that the credible evidence is sufficient

12         to convince him or her beyond a reasonable doubt

13         that the defendant is in fact guilty.  The

14         evidence must satisfy the jury beyond a reasonable

15         doubt that the defendant is in fact the person who

16         committed the crime or crimes charged and the

17         evidence must also establish beyond a reasonable

18         doubt each and every essential element of a

19         charged crime.  I will define the elements at the

20         end of the trial.

21             Now what does our law mean when it

22         requires proof of guilt beyond a reasonable doubt?

23         A doubt of a defendant's guilt to be a reasonable

24         doubt must be a doubt for which some reason can be

25         given.  The doubt to be reasonable must therefore

1          arise because of the nature and quality of the

2          evidence or from the lack or insufficiency of the

3          evidence.

4                   The doubt to be a reasonable doubt should

5          be one which a reasonable person acting in a

6          matter of this importance can be likely to

7          entertain because of the evidence or because of

8          the lack or insufficiency of the evidence.  A

9          doubt of guilt is not reasonable if instead of

10         being based on the nature and quality of the

11         evidence or insufficiency of the evidence, it's

12         based on some guess or whim or speculation

13         unrelated to the evidence.

14                  Also a doubt of guilt is not a reasonable

15         doubt if it's based merely on sympathy for a

16         defendant or from a mere desire by a juror to

17         avoid a disagreeable duty.  I repeat a doubt of a

18         defendant's guilt to be a reasonable doubt must

19         arise either from the nature and quality of the

20         evidence or from the lack or insufficiency of the

21         evidence.

22                  Therefore, the first duty of each juror

23         is to consider and weigh all the evidence and

24         decide what evidence you believe is credible and

25         worthy of your consideration.  The next duty each

EF

1      juror is to determine whether that juror has in

2      fact a reasonable doubt of the defendant's guilt

3      as that term is defined in our law.

4           A reasonable doubt our law says is an

5      actual doubt, one which you're conscious of having

6      in your mind after you've considered all the

7      evidence.  If after doing so you then feel

8      uncertain and not fully convinced of the

9      defendant's guilt and you are also satisfied that

10     in entertaining such a doubt you are acting as a

11     reasonable person should act in a matter of this

12     importance, than that's a reasonable doubt of

13     which every defendant is entitled to the benefit.

14          I repeat the duty of each juror is

15     carefully to review, weigh and consider all the

16     evidence.  If after doing this you find that the

17     People have not found the defendant's guilt beyond

18     a reasonable doubt as I defined that term, then

19     you must find the defendant not guilty.

20          On the other hand if you are satisfied

21     that the People have proved the defendant's guilt

22     beyond a reasonable doubt as I have defined the

23     term, then you must find the defendant guilty.

24          Will you promise us now if you are

25     selected as a juror in this case you will in your

 1              final deliberations follow and apply the standard

 2              of proof that I have defined for you, proof beyond

 3              a reasonable doubt?  Anyone who cannot make us

 4              that promise?

 5                      I am required to advise you with respect

 6              to if you are selected, you may not during

 7              deliberations consider the subject of punishment.

 8              The sentencing if there is to be any following a

 9              verdict lies solely within the exclusive province

10            ' of the Court.  The jury has no role to play in

11              that.  The jury is not permitted to consider the

12              possibility of punishment or penalty in their

13              deliberations and the jury may not include any

14              sentencing recommendation in their verdict.

15                      The trial jury is the sole and exclusive

16              judge of the facts and the facts only.  The Court

17              is the sole and exclusive judge of the law and of

18              any sentence to be imposed following a verdict.

19                      Will you promise us if selected you will

20              render your verdict free from fear, favor or

21              sympathy, and without considering any possibility

22              of sentence or punishment?  Anybody who cannot

23              make us that promise?

24                      Okay.  The last issue I will discuss with

25              you has to do with police officer testimony.  As

1           you know from the witness list I read earlier it's

2           likely that the jury in this case will hear police

3           witnesses.  They take the same oath as anyone

4           else.  The mere fact the witness is a police

5           officer does not make that witness any more or any

6           less credible.

7                   Is there anyone amongst you who has any

8           feelings about the police or who has had any

9           experiences with the police which would lead you

10          in your judgment to give a police officer's

11          testimony greater or lesser weight than anyone

12          else's merely because of the officer's occupation?

13          Anyone have that feeling one way or the other?

14                  Good.  Thank you very much.  We're going

15          to step to the side and talk to a couple of people

16          privately and then I will let the lawyers talk to

17          you.

18                  (The following took place at the sidebar

19          on the record:)

20                  THE COURT:  Mr. Paolino, would you step

21          over please?

22                  (Prospective juror approached the

23          sidebar.)

24                  THE COURT:  I think you said your nephew

25          had a murder charge.  How long ago was this?

```
 1                    PROSPECTIVE JUROR:  Last year I don't

 2           remember exactly.

 3                    THE COURT:  Did he go to trial?

 4                    PROSPECTIVE JUROR:  Yes, he was sentenced

 5           to 21 years.

 6                    THE COURT:  Is this here in Richmond

 7           County?

 8                    PROSPECTIVE JUROR:  Yes.

 9                    THE COURT:  In this building?

10                    PROSPECTIVE JUROR:  I don't know what

11           sentence.  This is in Jersey, I'm sorry.

12                    THE COURT:  Did you go to any court

13           proceedings?

14                    PROSPECTIVE JUROR:  Yes, a lot of them.

15                    THE COURT:  Anything about that

16           experience?

17                    PROSPECTIVE JUROR:  Yes, it sucked.

18                    THE COURT:  That's your nephew, I

19           understand.  Would that prevent you from being

20           fair in this case?

21                    PROSPECTIVE JUROR:  I guess, yeah.  I

22           have had a lot of bad thoughts about it so I

23           guess.

24                    THE COURT:  You think you could be fair?

25                    PROSPECTIVE JUROR:  Yes.
```

```
 1              THE COURT:  So, in other words, that

 2         experience would not prevent you?

 3              PROSPECTIVE JUROR:  Well, there is a a

 4         lot of turmoil involved.  I lost a brother in the

 5         interim, my nephew's father.  My brother's kid got

 6         put away for life.  He winds up dropping dead.  So

 7         it's been a big thing.

 8              THE COURT:  The bottom line you think if

 9         you were selected here --

10              PROSPECTIVE JUROR:  Honestly I don't want

11         to but I got bad feelings.  I got a lot of

12         different emotions about it.

13              THE COURT:  Maybe I will let the lawyers

14         ask you some questions.

15              MR. KATCHEN:  When you say you have bad

16         feelings could you tell us what you mean?

17              PROSPECTIVE JUROR:  I was in the

18         situation with my nephew, went through a lot of

19         bad experiences.  I really don't want to get into

20         it again.  It upset the whole damn family.  Upset

21         everybody.  It's only recent.

22              MR. KATCHEN:  Let me ask you sort of

23         question about the way he was treated.  Do you

24         think that --

25              THE COURT:  The way who was treated?
```

```
 1                    MR. KATCHEN:  Your nephew.  Do you think
 2              he was treated fairly?
 3                    PROSPECTIVE JUROR:  As far as what?
 4                    MS. RAJESWARI:  The police, the DA.
 5                    PROSPECTIVE JUROR:  I don't know how to
 6              answer that question.  For what I seen, yeah, I
 7              guess so.  But what went behind the scenes I can't
 8              decide.
 9                    MR. LAMB:  Did you go away with any bad
10              feelings about his defense attorney?
11                    PROSPECTIVE JUROR:  No, not really.  No.
12              It's just the whole thing was just a horrible
13              something that got out of whack, something that
14              shouldn't have happened.
15                    MR. LAMB:  If I may ask, was there
16              anything of a sexual nature about the charges?
17                    PROSPECTIVE JUROR:  No.  Just boyfriend
18              girlfriend type thing and just got out of control.
19                    MR. LAMB:  There was a relationship?
20              There was a relationship.
21                    PROSPECTIVE JUROR:  Boyfriend girlfriend
22              thing and boy going after the girl, girl going
23              after the boy. It's a different world today with
24              these kids.  They're crazy, crazy.  We went
25              through a lot of bad crap with it.  Knocked the
```

EF

```
 1              shit out of half of the family.  Excuse my French.
 2                   THE COURT:  We'll talk about it later.
 3                   MS. RAJESWARI:  You think that would
 4              affect you?
 5                   PROSPECTIVE JUROR:  Yes.
 6                   MR. LAMB:  Unless you want to consent.
 7                   THE COURT:  I'd rather do it later not
 8              now.  If you don't want to ask anymore questions
 9              go ahead.
10                   MR. LAMB:  Well, okay.  So your
11              understanding of this case that it rose out of a
12              boyfriend girlfriend relationship?
13                   PROSPECTIVE JUROR:  Yes.
14                   MR. LAMB:  Alleged victim was his
15              girlfriend?
16                   PROSPECTIVE JUROR:  Right, his
17              girlfriend.
18                   MR. LAMB:  They had been living together?
19                   PROSPECTIVE JUROR:  No, no, no.  Young
20              kids.  Only 18, 19 years old.  19 years old.  He's
21              got -- he is in someplace in Jersey and he has to
22              go there until he's 28 and after he's 28 they're
23              shipping him somewhere else.  It's a hardship.
24                   THE COURT:  Thank you, sir.  I will let
25              you resume your seat.  We will talk to you later.
```

```
 1                    (Prospective juror left the sidebar.)
 2              THE COURT:  I don't like to excuse people
 3         at this point.  If you are going to get challenge
 4         whether it's cause or consent on this one I don't
 5         know.
 6              Mr. Ramirez, could you step over please?
 7                    (Prospective juror approached.)
 8              THE COURT:  Hi.
 9              PROSPECTIVE JUROR:  My brother-in-law was
10         accused of having sex with a thirteen-year-old.  I
11         don't think -- I will be honest, I don't know all
12         the details.  No one talks about it.  He ain't in
13         jail and he had one of those where they tell you a
14         guy lives in your neighborhood.
15              MR. LAMB:  Registered sex offender.
16              PROSPECTIVE JUROR:  It's my wife's
17         brother.
18              THE COURT:  Is this in Staten Island?
19              PROSPECTIVE JUROR:  No.
20              THE COURT:  Did you go to any court
21         proceedings?
22              PROSPECTIVE JUROR:  No.
23              THE COURT:  Anything about that that
24         would prevent you from being fair?
25              PROSPECTIVE JUROR:  No.
```

EF

```
 1                    THE COURT:  Counsellors, any questions?
 2                    MR. KATCHEN:  Did say he is not on that
 3          registry?
 4                    PROSPECTIVE JUROR:  He ain't on this.
 5                    MR. KATCHEN:  When did this happen?
 6                    PROSPECTIVE JUROR:  It was before I got
 7          married so it had to be maybe 2002, 2003.
 8                    MR. KATCHEN:  I mean I am sure you have
 9          thought about it aside from today.  Did you think
10          he was unfairly accused of a crime?
11                    PROSPECTIVE JUROR:  I really don't know.
12          I seen the girl.  She don't look like she was
13          thirteen.  That's the only thought I had about it.
14          She only looked like a woman you know.
15                    MR. LAMB:  Did he ever talk to you?
16                    MR. KATCHEN:  Did he ever talk to you
17          about it?
18                    PROSPECTIVE JUROR:  No.  I never brought
19          it up.
20                    MS. RAJESWARI:  Do you know what happened
21          to the case?  Did he plead?  Did it get dismissed?
22                    PROSPECTIVE JUROR:  I don't know.  They
23          don't talk about so what am I going to bring it
24          up.
25                    MR. LAMB:  As far as you're concerned any
```

```
 1              knowledge you have about that or what little
 2              knowledge you have, would it have any affect on
 3              your thinking in this particular proceedings?
 4                        PROSPECTIVE JUROR:  I don't think so.
 5                        THE COURT:  Thank you.  I will let you
 6              resume your chair.
 7                        Mr. Pereyra, would you step over please?
 8                        (Prospective juror approached.)
 9                        PROSPECTIVE JUROR:  Just to give you a
10              little background my girlfriend who had I twenty
11              years my senior that's why her niece was about a
12              little older than me, you know, because my
13              girlfriend having a niece that is a District
14              Attorney.  You may think it's weird.  So that's
15              it. Her name is Jackie Starsella.
16                        Anyway her father is retired detective
17              but any way Hylan Boulevard about a year ago.  And
18              I wound up getting arrested for driving with a
19              suspended license.  I didn't know my license was
20              suspended.  You know, I had like twelve tickets
21              the year before.  Not twelve, six to eight.  I did
22              a lot of traveling talking on the cell phone.  I
23              didn't pay.  So I got the suspension and then I
24              don't know the cops said suspended for two reasons
25              but it wasn't.  It was just one suspension and
```

EF

1        scofflaw or something like.  Does that make any --

2                    MR. KATCHEN:  That's what you were

3        suspended for?

4                    PROSPECTIVE JUROR:  The reason I was

5        pulled over 9 o'clock in the morning, I was on my

6        way to a doctor's appointment.  The police officer

7        said he saw me reaching like this (indicating).

8        Well, as I said my phone is on like that and I had

9        blue tooth 2010.  I explained to the officer he

10       said all right.  I will run your plates.  Of

11       course he ran my plates.  Than I got three, two

12       other cars pull up arrest, process me the same

13       day.  They got me out of that quick so I was happy

14       about that.

15                    I am a little upset that I have never had

16       on my phone.  That's why I got pulled over.  Thank

17       God I did get pulled over if I was driving in

18       Jersey someone driving with a suspended license I

19       probably --

20                    MR. LAMB:  Would spend the night in jail.

21                    PROSPECTIVE JUROR:  Right.  Right.

22       Exactly.  That's what happened to me.  CSI,

23       Criminal Minds, there are good cops, bad cops.  It

24       doesn't affect my ability to make a determination.

25       But when you asked me a question I just wanted to

```
 1              answer that, yes, I was arrested.

 2                       THE COURT:  So the bottom line is it

 3              wouldn't affect your ability to be fair.

 4                       PROSPECTIVE JUROR:  No, sir.

 5                       THE COURT:  Counsels, anything else?

 6                       MR. LAMB:  I have no further questions.

 7                       MR. KATCHEN:  Do you know what cop it

 8              was, the cop who gave you the ticket?  Very off

 9              chance it wasn't one of the names the judge said.

10                       PROSPECTIVE JUROR:  No, I wouldn't

11              recognize the name.  It was Hispanic American

12              working out of the precinct on Hylan Boulevard.

13                       MR. LAMB:  122.

14                       MR. KATCHEN:  122.

15                       PROSPECTIVE JUROR:  And that's where my

16              -- yeah, I will leave it at that.

17                       MS. RAJESWARI:  You wouldn't hold it

18              against my -- our police officers?

19                       PROSPECTIVE JUROR:  Of course not.  I

20              have police officers in my family I respect and I

21              respect they protect my safety.  That's the cops.

22              There are good cops and bad cops.

23                       THE COURT:  Thank you.

24                       (Prospective juror resumed seat.)

25                       MR. LAMB:  Would it be fair to ask
```

EF

1            Mr. Paolino?

2                    THE COURT:  The first guy?  What are you

3       going to ask him?

4                    MR. LAMB:  I forgot whether it was asked.

5                    THE COURT:  What?

6                    MR. LAMB:  If he could be.

7                    THE COURT:  I asked him twice and I never

8       got a clear answer.  That's why I turned to you

9       guys and said, counsels, you want to ask.

10                   MS. RAJESWARI:  He couldn't give us an

11      answer.

12                   THE COURT:  Frankly at this point I think

13      he is a cause challenge.  Maybe you both agree.

14                   MS. RAJESWARI:  I think we can agree.

15                   MR. LAMB:  All right.

16              I would ask him that question without

17      going into the detail he stated here.

18                   THE COURT:  He never answered.

19                   MR. LAMB:  Based on his answer do you

20      feel.

21                   THE COURT:  He never gave a flat out

22      answer.  I asked him twice.  That's why I think he

23      is a cause challenge.  I never got an unequivocal

24      response.

25                   MR. LAMB:  That's what I thought, we

```
 1                 never got an unequivocal response.

 2                      THE COURT:  Never did.

 3                      MR. LAMB:  That's it.

 4                      (The following took place in open court:)

 5                      THE COURT:  The lawyers are going to talk

 6      to you in a little while starting with the DA.  If

 7      they ask you any questions you would like to

 8      answer or discuss privately just tell him.

 9                      MR. KATCHEN:  Thank you, your Honor.

10                 Ladies and gentlemen, like the judge said

11      I am Assistant District Attorney Anthony Katchen.

12      I am prosecuting this case with Assistant District

13      Attorney Raja Rajeswari.

14                 Now before I get into very specific

15      directed questions I just want to start with one

16      more round of general questions.  I will ask that

17      we start down here at one and work our way around.

18      I have three questions, if you could just state

19      whether you're married, single, divorced, or

20      other; if you have any children; and whether or

21      not you live in a private home or an apartment.

22                      Mr. Merrick, if you can answer.

23                      PROSPECTIVE JUROR:  I am married, I have

24      two children and I live in a private home.

25                      MR. KATCHEN:  Mr. Schlaeger.
```

1           PROSPECTIVE JUROR:  I am married, two

2      children.  Married.

3           PROSPECTIVE JUROR:  Married With

4      children, private home.

5           PROSPECTIVE JUROR:  Single, no children,

6      private home.

7           PROSPECTIVE JUROR:  Married, private

8      home, three children.

9           PROSPECTIVE JUROR:  Single, private home,

10      no children.

11           PROSPECTIVE JUROR:  Married, three

12      children, private home.

13           PROSPECTIVE JUROR:  Married, one boy,

14      private home.

15           PROSPECTIVE JUROR:  Married, private

16      home, little boy and baby girl.

17           PROSPECTIVE JUROR:  Engaged, no children.

18           MR. KATCHEN:  Congratulations.

19           PROSPECTIVE JUROR:  No children, private

20      house.

21           PROSPECTIVE JUROR:  Domestic partnership

22      and I have two children.

23           PROSPECTIVE JUROR:  Married, private

24      home, three children.

25           PROSPECTIVE JUROR:  Married, private

1          home, no kids.

2                    PROSPECTIVE JUROR:  Married, three

3          daughters, private home.

4                    PROSPECTIVE JUROR:  I live with my

5          girlfriend.  She has two kids, private home.

6                    PROSPECTIVE JUROR:  Divorced, no kids,

7          private home.

8                    MR. KATCHEN:  Obviously for those of you

9          who remain in the box while we sat over there if

10         there is anything that I ask you or I will speak

11         for defense counsel now as well, if there is

12         anything anybody asked you that you feel should be

13         discussed privately don't be afraid to say that.

14         We're not here to embarrass anybody and we are not

15         here to pry too deeply into your lives.

16                   The judge when we started I guess you

17         guys may have all been sitting out there, gave

18         you a general description what this case is about.

19         There are charges that involve domestic violence

20         and rape.

21                   Now other than you don't want to hear

22         about those types of things, nobody really wants

23         to hear about it and that it doesn't sound like a

24         fun way of spending the next week, does that alone

25         -- is there anybody that thinks that alone -- you

```
 1              know maybe you have the ability to sit on a

 2              criminal jury but maybe this case isn't for you?

 3              Just by a show of hands anybody feel that way?

 4                        THE COURT:  What is your question?  Are

 5              you asking if the nature of the charges would

 6              prevent them being able to be fair and impartial?

 7                        MR. KATCHEN:  Yes.

 8                        THE COURT:  So that's the question.

 9                        MR. KATCHEN: Ma'am.

10                        PROSPECTIVE JUROR:  Patricia Comerford.

11              I work in x-ray and I've been involved in x-raying

12              women and it really --

13                        MR. LAMB:  I'm sorry, I am having trouble

14              hearing.

15                        PROSPECTIVE JUROR:  I work in x-ray and I

16              have been involved in x-raying sometimes a couple

17              of those cases in the past and I found it very

18              very disturbing.  And I mean I'm sure as a woman I

19              found it very disturbing.

20                        MR. KATCHEN:  You found it disturbing to

21              hear those questions?

22                        PROSPECTIVE JUROR:  And on taking care of

23              these women.

24                        MR. KATCHEN:  Okay.

25                        PROSPECTIVE JUROR:  I found it very
```

EF

1        upsetting.  I did.

2                MR. KATCHEN:  Okay.  There are a few

3        people with hands up.

4                Sir?

5                PROSPECTIVE JUROR:  Brian Ritchie.  Two

6        months ago I would have answered your question no.

7        I just had a baby girl.  Those charges stir up

8        something.

9                MR. KATCHEN:  If I were to tell you there

10       are no children involved in this case does that

11       change your opinion?

12               PROSPECTIVE JUROR:  No.  My daughter will

13       eventually be an adult so.

14               MR. KATCHEN:  Okay.

15               THE COURT:  You are going to have to

16       follow this up.  I don't know what Mr. Ritchie's

17       position is.  Can he be fair or not?

18               MR. KATCHEN:  Mr. Ritchie, do you think

19       that -- explain how it's going to affect your

20       ability to be able to sit on the jury.

21               THE COURT:  I don't know that it will. He

22       didn't say that yet.

23               MR. KATCHEN:  Do you think the fact that

24       you have a daughter that's going to impact the way

25       in which you view the evidence that's presented to

```
 1          you?
 2                    PROSPECTIVE JUROR:  If I get selected I
 3          would need to rid myself of preconceived notions
 4          before being impartial.
 5                    MR. KATCHEN:  Thank you.
 6                    THE COURT:  If selected he'd rid himself
 7          of preconceived notions.
 8                    MR. KATCHEN:  You would be able to do
 9          that?
10                    PROSPECTIVE JUROR:  Yes.
11                    PROSPECTIVE JUROR:  Amy Scaravaggio.  I
12          have an 18-year-old daughter and that whole notion
13          of charges upset me.
14                    MR. KATCHEN:  Well, again --
15                    PROSPECTIVE JUROR:  Could I be impartial?
16          I don't know.
17                    MR. KATCHEN:  This isn't a response to
18          you.  I am not trying to -- the evidence is going
19          to sort of be contained by what you hear from the
20          witness stand.  Do you have the ability to sort of
21          ignore for a moment while you're deliberating
22          thinking about the evidence?
23                    PROSPECTIVE JUROR:  Yes.
24                    MR. KATCHEN:  Ma'am.
25                    PROSPECTIVE JUROR:  That was my -- I am
```

```
 1            Caroline Ferreri.  That was my first thought.  I
 2            said, My God, I have three daughters age 22, 29,
 3            37 and that just flashed in front of my face.  In
 4            the beginning I got a little nervous.  But I would
 5            love to think that I could be a great juror and do
 6            my job.  I just don't know once I hear everything.
 7            I don't know.
 8                 MR. KATCHEN:  Okay.  Did anybody else
 9            have their hands raised?
10                 PROSPECTIVE JUROR:  I also have daughters
11            and granddaughters that age so it is disturbing.
12            I think I could just look at the evidence.
13                 MR. KATCHEN:  Okay.  You are going to be
14            able to put that aside?
15                 PROSPECTIVE JUROR:  I think I could, yes.
16                 MR. KATCHEN:   I am going to move past
17            that sort of general questioning.
18                 And you had mentioned preconceived
19            notions before and a lot of us have preconceived
20            notions of the concept of rape.  It's not
21            something that many people think about.  And even
22            so we have firm beliefs as to what it is.
23                 And when I say rape there is a good
24            chance of a picture is formed in your mind that
25            involves like a stranger dragging somebody into an
```

```
 1          alley.

 2                    Is that -- just by a show of hands, is

 3          that what people think of when they hear rape or

 4          no?  Show of hands if that's a yes.

 5                    PROSPECTIVE JUROR:  That's part of it.  I

 6          would think you don't know your assailant and

 7          domestication you know your assailant.  Is that

 8          rape or non-consensual sex.

 9                    MR. KATCHEN:  That's the question.  Do

10          you believe you can be raped in a domestic

11          relationship as you put it?

12                    PROSPECTIVE JUROR:  Yes.

13                    PROSPECTIVE JUROR:  Yes.

14                    MR. KATCHEN:  Does anybody disagree with

15          that?  I see a lot of people shaking their head

16          now.  Why do you believe that?

17                    PROSPECTIVE JUROR:  Caroline Ferreri.

18          Well, as a woman if I said to my husband, no, I

19          mean no.  And if he insists that it's just -- it's

20          a fine line between rape and non-consensual sex

21          especially because it's your partner.  If somebody

22          pulls you off the street to me that's out and out

23          rape.  Somebody you don't know at the bar, you

24          have a drink and you think you are going to have a

25          good time and he takes advantage, that's rape.
```

EF

1          Now I don't know the full case, domestic

2     case where you knew the woman or it was a

3     stranger.  I don't know the full -- you know, full

4     charge.

5          MR. KATCHEN:  If you are picked for the

6     jury you are going to hear the evidence.  But for

7     now you mentioned that this is a fine line between

8     rape and non-consensual sex.  I am not going to

9     get into what the definitions of rape are now.

10    That's for the judge to do.

11         But tell me what you mean by that.  What

12    is your -- how do you differentiate the two?

13         PROSPECTIVE JUROR:  Like I said if you're

14    in a situation with a fellow and he wants to make

15    a move on you, you have a relationship and you say

16    no, he thinks yes, and you fight him off, still

17    insists with going through with it, that to me is

18    rape.

19         MR. KATCHEN:  And what would you say

20    would be non-consensual sex?  Did I hear you

21    incorrectly before?

22         PROSPECTIVE JUROR:  Well, rape is

23    performed on a woman who does not want to have

24    sex.  Non-consensual sex is I don't want to have

25    sex, but yet the fellow in the situation does it

```
 1              to you anyway.  That's still rape.
 2                     MR. KATCHEN:  Oh, okay.  I'm sorry, I
 3              thought you were differentiating between the two.
 4                     Did you want to say something?
 5                     PROSPECTIVE JUROR:  I was going to try to
 6              say I thought she was saying that rape and
 7              non-consensual sex were the same.
 8                     PROSPECTIVE JUROR:  He's forcing himself
 9              on her.
10                     PROSPECTIVE JUROR:  That's the same
11              thing.
12                     PROSPECTIVE JUROR:  Yes.  Same thing
13              doing it to the woman or pulling a woman and doing
14              it, that to me is still rape.
15                     MR. KATCHEN:  Does anybody think
16              differently?  Does anybody think that we have to
17              take -- you know, we take a situation where people
18              may be dating, may be in a domestic relationship
19              and we have to analyze that differently?
20                     Mr. Santlofer, did I pronounce your name
21              correct? What do you think about that?
22                     PROSPECTIVE JUROR:  Anything that's
23              unwanted to me is wrong.
24                     THE COURT:  So whether it's somebody
25              that's been dating for a long time, a short time
```

EF

 1              or a total stranger, they say, no, it's no.

 2                      PROSPECTIVE JUROR:  It's no.  It's no.

 3                      MR. KATCHEN:  Now in the context of a

 4              domestic relationship or just any relationship,

 5              living together, boyfriend/girlfriend, I want to

 6              talk a little bit about the reaction you would

 7              expect from somebody that was saying they were

 8              raped.

 9                      By a show of hands -- and I know this may

10              be a little difficult so I am going to try to make

11              it as sort of neutral as possible.  Just by a show

12              of hands who thinks if they were abused, if they

13              knew somebody who was abused by their significant

14              other they would leave that relationship?

15                      PROSPECTIVE JUROR:  What's the question?

16                      MR. KATCHEN:  If they were abused or knew

17              somebody that was abused by their partner if they

18              would leave that relationship just by a show of

19              hands?

20                      PROSPECTIVE JUROR:  I don't understand.

21                      MR. LAMB:  Sexually abused?

22                      MR. KATCHEN:  Physically abused.

23                      PROSPECTIVE JUROR:  So if we know

24              somebody who was abused in whatever way, do we

25              think that person would leave their partner?

1          MR. KATCHEN:  Do you think that person

2     should?

3               (Hands raised.)

4          MR. KATCHEN:  Pretty much everybody

5     raised their hands right off the bat with that.

6               I imagine that a lot of people feel that

7     way and there is nothing wrong with thinking that

8     way.

9               By the same sort of questioning let's

10    apply it to real life.  How many people think that

11    every woman that is abused, physically, sexually

12    by their significant other leaves the

13    relationship?

14         PROSPECTIVE JUROR:  Are you saying how

15    many in reality leave?

16         MR. KATCHEN:  Do you think that in

17    reality every woman is going to leave?

18         ALL JURORS:  No.

19         MR. KATCHEN:  Now I want to really

20    discuss that in a little bit more depth.  Now I

21    realize that you think everybody should leave.

22    But nobody seemed to think that every women does

23    leave.

24              And, Mr. Merrick, I will start with you.

25    I apologize for calling you out.  Could you think

```
 1                of a reason why somebody wouldn't leave?

 2                       MR. LAMB:  I am going to object.

 3                       THE COURT:  Sustained.

 4                       MR. KATCHEN:  All of you indicated that

 5                you believed a woman should leave.  I am not going

 6                to repeat that a million times.  Would you keep an

 7                open mind if you hear evidence from somebody that

 8                didn't leave?

 9                       PROSPECTIVE JUROR:  Yes.

10                       MR. KATCHEN:  And you'll consider --

11                you'll consider the reason why a person wouldn't

12                leave that relationship.

13                       Is there any reason that -- I guess,

14                Mr. Sisti, is there a reason you could think of

15                why somebody wouldn't leave?

16                       MR. LAMB:  Objection.

17                       THE COURT:  Sustained.

18                       MR. KATCHEN:  Ma'am, do you think that

19                the fact that somebody doesn't immediately leave

20                an abusive situation is indicative of whether or

21                not a crime was committed?

22                       PROSPECTIVE JUROR:  Scaravaggio.  Could

23                you rephrase that a little bit for me?

24                       MR. KATCHEN:  Okay.  If somebody -- if

25                somebody accuses let's say their boyfriend, that
```

```
 1            they abused me and this happened months ago, I

 2            have stayed with him, what impact if any does that

 3            have as to whether you would analyze whether or

 4            not a crime actually took place?

 5                      THE COURT:  I don't understand the

 6            question.

 7                      MR. LAMB:  I don't understand the

 8            question.

 9                      THE COURT:  Sustained.

10                      MR. KATCHEN:  I don't think I did either.

11            I am going to do my best to rephrase.

12                      If somebody doesn't leave an abusive

13            situation and then you hear that person tell you

14            about the abuse that they had suffered, how does

15            the fact that they stayed affect whether or not

16            you believe them?

17                      MR. LAMB:  Again, objection.

18                      THE COURT:  Sustained.  I think we have

19            to pick a fair jury, not to get an advisory

20            verdict.

21                      MR. KATCHEN:  Okay.  We're going to move

22            off that topic.

23                      Ms. Comerford, did I pronounce that

24            right?

25                      PROSPECTIVE JUROR:  Yes.  Comerford.
```

EF

1                    MR. KATCHEN:  Do you expect to find

2           injury to the vaginal area of a woman who had been

3           raped?

4                    MR. LAMB:  Again, I am going to object.

5                    THE COURT:  You can rephrase that.  I

6           will sustain the objection to the form would you

7           expect to find.  If you want to ask the jurors if

8           they can keep an open mind as to whether a rape

9           occurred or did not regardless of physical injury,

10          that's a fair question.

11                   MR. KATCHEN:  Okay.  The way in which the

12          judge stated that question, did you hear what the

13          judge said?

14                   PROSPECTIVE JUROR:  No.

15                   MR. KATCHEN:  Would you be able to keep

16          an open mind as to whether or not a rape took

17          place if there was no presentation of injury to a

18          woman's vagina?

19                   PROSPECTIVE JUROR:  Yes.

20                   MR. KATCHEN:  You would?

21                   PROSPECTIVE JUROR:  Yes.

22                   MR. KATCHEN:  Is there anybody that has a

23          problem with that, if you didn't hear about an

24          injury?

25                   Mr. Ritchie?

```
 1                      PROSPECTIVE JUROR:   Do I have a problem

 2           with it?

 3                      MR. KATCHEN:   Would you have a problem

 4           with assessing the evidence?   Does that make it

 5           more difficult for you in assessing the evidence?

 6                      PROSPECTIVE JUROR:   I would think that

 7           the prosecution would need to work that much

 8           harder to prove that a crime did occur if there is

 9           no physical evidence.

10                      MR. KATCHEN:   As the case progressed

11           would you keep an open mind and hear what the

12           prosecution had to say, what the witnesses had to

13           say about reasons or the lack thereof for any type

14           of an injury?

15                      PROSPECTIVE JUROR:   Beyond the physical

16           evidence?

17                      MR. KATCHEN:   Right.

18                      PROSPECTIVE JUROR:   Yes.

19                      MR. KATCHEN:   When we think of evidence,

20           witness testimony evidence you are going to hear

21           from -- the judge gave you a list of I think

22           thirteen or fourteen names.   You are not going to

23           hear from everybody I'm sure.   But you're going to

24           be put in a position where you have to assess the

25           credibility of witnesses.
```

1                    Now, Mr. Rand, how do we assess

2          credibility?

3                    PROSPECTIVE JUROR:  I guess basically

4          assess credibility I guess by supporting evidence

5          and sometimes people bring character witnesses to

6          vouch for I guess a person's --

7                    MR. KATCHEN:  You know what?  Let me make

8          this a little bit easier for you.  Forget about

9          the courtroom.  We have to judge credibility every

10         day.

11                   PROSPECTIVE JUROR:  Right.

12                   MR. KATCHEN:  Somebody tells you

13         something, you have to decide whether or not that

14         person is telling the truth.

15                   PROSPECTIVE JUROR:  Right.

16                   MR. KATCHEN:  Usually this is just like

17         an instant decision.  It just happens in your

18         head.  But I want to really break down that

19         process.

20                   PROSPECTIVE JUROR:  I guess breaking it

21         down it would have to sound reasonable.

22                   MR. KATCHEN:  Okay.

23                   PROSPECTIVE JUROR:  If somebody said

24         something that didn't sound reasonable then I

25         question their credibility.  But if someone said

1           something and it was plausible then I would assume

2           that they're telling the truth.

3                    MR. KATCHEN:  Okay.

4                    Mr. Schlaeger, what about you?  How do

5           you tell whether somebody is telling you the

6           truth?

7                    PROSPECTIVE JUROR:  Well, it would depend

8           if they're experts in the field of what they're

9           actually saying, you know, whether it be medical

10          records or anything along those lines, I would

11          feel that it's credible.

12                   MR. KATCHEN:  Let's say it's not an

13          expert, it's just a regular person.  It's you or

14          me that's telling you, you know, the sky's blue,

15          it's raining outside, how do you assess whether

16          that person is telling you the truth?

17                   PROSPECTIVE JUROR: How would I assess it?

18          I guess that would be hard for me to do.

19                   MR. KATCHEN:  Okay.  In all cases you

20          would need more than just I guess trusting your

21          own assessment of that person.

22                   I understand you'll be presented with

23          other factors, but I mean let me ask you this,

24          would it be important to you to consider whether

25          or not a person has a reason to lie?

1          PROSPECTIVE JUROR:  Would it be important

2     to me?  Yes.

3          MR. KATCHEN:  You would want to know

4     that.

5          PROSPECTIVE JUROR:  Yes.

6          MR. KATCHEN:  Mr. Santlofer, were you

7     nodding your head?

8          PROSPECTIVE JUROR:  I would want to know

9     if somebody had a reason to lie.

10         MR. KATCHEN:  And could you think of a

11    reason why a victim of a rape would lie?

12         PROSPECTIVE JUROR:  Without knowing the

13    situation I can't really.

14         MR. KATCHEN:  Okay.

15         PROSPECTIVE JUROR:  Maybe she needed

16    money.  Who the hell knows.

17         MR. KATCHEN:  Shame?

18         PROSPECTIVE JUROR:  Shame.  Maybe that's

19    money like extort them like Tyson, something like

20    that.

21         PROSPECTIVE JUROR:  It would be many

22    reasons.  Jealousies.

23         MR. KATCHEN:  So people have reasons to

24    lie about things.

25         PROSPECTIVE JUROR:  Sure.

```
 1                    MR. KATCHEN:  Bring it back together
 2          whether it's about rape or it's about anything, if
 3          somebody has a reason to lie that's going to be a
 4          factor.
 5                    PROSPECTIVE JUROR:  Yes.
 6                    MR. KATCHEN:  Thank you.
 7                    THE COURT:  Mr. Lamb.
 8                    MR. LAMB:  Thank you, Judge.
 9                    Good afternoon, ladies and gentlemen.
10          One of the nice things about being the defense
11          attorney is that by the time it's my turn most of
12          the important questions have already been asked.
13          My job is relatively easy.
14                    First of all, I want to apologize.  You
15          will see me reaching into my pocket and taking out
16          dirty tissues constantly.  I am suffering from
17          allergies and I apologize in advance if that's
18          kind of a disgusting thing to watch, I'm sure.  I
19          just have no choice.
20                    I guess by now you've gotten a little bit
21          of an idea what this case is about.  You heard the
22          term rape, and you know now that we're not talking
23          about the traditional quote-unquote traditional
24          rape situation or the stranger that jumps out of
25          the bushes and drags the female jogger into the
```

EF

1            bushes and rapes her.  We are not talking about

2            the pervert that goes down to the playground and

3            snatches little kids.

4                    We're talking right now, right now we're

5            talking about a couple who had a relationship and

6            lived together for a period of four or five months

7            and the accusation -- the allegations here are

8            that during that period of time he, on numerous

9            occasions, forced himself on her.  That is

10           basically the picture of this trial.

11                   What the evidence shows it will show.  If

12           you're selected as a juror at the close of the

13           entire case you will have all of the evidence and

14           as a juror you'll make a decision one way or the

15           other whether my client is guilty or whether he's

16           innocent.

17                   My concern right now is whether any of

18           you have any preconceptions, any experiences in

19           your life that would make it impossible for you to

20           be objective.  All we're asking for at this point

21           is a fair trial from twelve jurors who because of

22           prior experiences in their life wouldn't be able

23           to give my client a fair trial.

24                   So let me ask you this:  Is there anybody

25           here -- and, again, I echo the words of my

1          adversary, we're not asking any of these questions

2          to be nosy or to embarrass anybody, but we have to

3          know a certain amount of information from you in

4          order to know whether we feel you could be fair.

5                    Is there anybody here who has ever been

6          in a relationship, an extremely painful

7          relationship where they feel that they perhaps

8          were wronged or been victimized to the point where

9          they may feel that they might side with one side

10         or the other before they even hear the evidence?

11                   Is there anybody here who's been in a

12         particularly bad, dysfunctional or painful

13         relationship?

14                   PROSPECTIVE JUROR:  Amy Scaravaggio.

15                   MR. LAMB:  Yes.

16                   PROSPECTIVE JUROR:  To your last

17         question, yes.

18                   MR. LAMB:  Okay.  And it was a

19         relationship you were in personally?

20                   PROSPECTIVE JUROR:  Yes.

21                   MR. LAMB:  And as a result of that do you

22         think that you could keep an open mind when you

23         are listening to the testimony in this case?

24                   PROSPECTIVE JUROR:  No.

25                   MR. LAMB:  Thank you for your candor.

1            Anybody else that feels that they've been

2       in a relationship which was so painful, so

3       traumatic that it would make it difficult for them

4       to hear the testimony about an admittedly

5       dysfunctional relationship and keep an open mind

6       as to whether my client committed the acts that

7       he's charged with?

8            Now, Mr. Schlaeger, just to touch on

9       something that sort of came out during one

10      question that was asked of you.  You had mentioned

11      something about experts.  If an expert --

12           PROSPECTIVE JUROR:  Well, if you have a

13      witness here and they're experts and they're

14      saying that there was some showing that this

15      individual had sexual intercourse, of course, I

16      don't know how they would be able to tell if that

17      was forced on them or not.  But they must have

18      some information that would be --

19           MR. LAMB:  Well, I don't want to get into

20      the details of what kind of expert we may have in

21      this particular case.  But just experts in general

22      do you accept the proposition that experts are

23      after all human and just suffer the same human

24      frailties as all other people?  They are just as

25      capable be of making mistakes?

```
 1                  PROSPECTIVE JUROR:  Absolutely.
 2                  MR. LAMB:  So you will not automatically
 3          take at face value anything that an expert tells
 4          you.  You would listen just as carefully to his
 5          testimony just as you would with any other
 6          witness.
 7                  PROSPECTIVE JUROR:  Exactly.
 8                  MR. LAMB:  Do I have your assurance of
 9          that?
10                  PROSPECTIVE JUROR:  Yes.
11                  MR. LAMB:  Do I have that assurance of
12          all of you? When experts testify you will listen
13          as carefully to their testimony, will not take
14          what they say at face value?
15                  Now my role here is obviously I am a
16          defense attorney.  I am here to defend my client.
17          Most of the witnesses that will be called will be
18          called by the District Attorney.  After they've
19          testified for the District Attorney I get an
20          opportunity to cross-examine them, to ask them
21          questions in an effort to show that they are not
22          as believable as the District Attorney would like
23          you to believe they are.
24                  Does anybody find, believe or feel that
25          that is kind of like badgering or picking on
```

1      somebody for cross-examining a witness?  When I

2      cross-examine the witness will you listen just as

3      carefully to my cross-examination as you listened

4      to the direct examination when the District

5      Attorney was questioning that witness?  Do I have

6      that assurance from all of you?

7              ALL JURORS:  Yes.

8              MR. LAMB:  Now there may come times when

9      I object.  There may come times when the District

10     Attorney objects.  Objection, your Honor.  Do you

11     understand that this is just our argument about

12     an item of law and not something that we're trying

13     -- we're trying to hide something from you.  You

14     promise -- do all of you promise that you will not

15     hold it against either one of us if we object to

16     something?

17             Now you've heard briefly the judge

18     describe proof beyond a reasonable doubt.  Burden

19     of proof being on the District Attorney and that

20     the defendant is entitled to a presumption of

21     innocence.  We in most our endeavors in society

22     believe in what you might call fair play, a level

23     playing field, even sides.

24             Is there anybody here that feels that

25     somehow this burden of proof on the DA, this

```
 1              presumption of innocence that the defendant is

 2              entitled to somehow gives him some sort of an

 3              unfair advantage?

 4                   Do you all except the proposition that

 5              the People have the burden of proving guilt beyond

 6              a reasonable doubt and that the defendant has a

 7              right to be presumed innocent unless or until he

 8              is proven guilty?

 9                   PROSPECTIVE JUROR:  Can I ask a question?

10                   MR. LAMB:  Yes, Mr. Ritchie.

11                   PROSPECTIVE JUROR: There already was an

12              indictment or there was not.

13                   MR. LAMB:  There has been an indictment

14              but the indictment -- as his Honor explained to

15              you, the indictment is no evidence whatsoever.

16              It's only a piece of paper. A piece of paper that

17              says I accuse you of committing a crime.

18                   Can you accept that or do you believe

19              that where there is smoke there is fire?  If he

20              got indicted maybe he did something wrong.

21                   PROSPECTIVE JUROR:  That seems to make

22              sense, but I understand the judicial process

23              that's not the case.

24                   MR. LAMB:  If I accuse you of robbing me

25              on the street and I put it down on a piece of
```

EF

1           paper, does it make it any more true?

2                   PROSPECTIVE JUROR:  No.

3                   MR. LAMB:  Okay.  I still have to prove

4           that you robbed me.  You think that's fair?  You

5           think that's the way it should be?

6                   PROSPECTIVE JUROR:  Yes.

7                   MR. LAMB:  You accept that?

8                   PROSPECTIVE JUROR:  Yes.

9                   MR. LAMB:  Do all of you accept that?

10                  My last question is if you're selected as

11          jurors here today do I have the assurance of each

12          and every one of you that you will give my client

13          the same kind of trial, the same kind of fairness

14          that you would expect if you were sitting where he

15          is sitting now?

16                  MS. RAJESWARI:  Objection.

17                  THE COURT:  Overruled.  You can answer

18          that.

19                  MR. LAMB:  Do I have that assurance?

20                  ALL JURORS:  Yes.

21                  MR. LAMB:  Thank you.

22                  THE COURT:  Okay.  We'll give the lawyers

23          a few minutes to go over their notes.  It's

24          probably going to take about ten minutes.  If you

25          would like to step out go right ahead or you can

1      stay where you are.

2                  The rule at this point is don't discuss

3      the case with each other or anyone else.  Thank

4      you for your patience.

5                  (The following took place at the sidebar

6      with the defendant present on the record:)

7                  THE COURT:  Just for the record we are at

8      a sidebar with the lawyers and the defendant is

9      also present at the sidebar.

10                 Does this change your position in terms

11     of the sidebar conferences?

12                 MR. LAMB:  Just for the challenges.

13                 THE COURT:  That's fine.  Whatever you

14     like.  We're going to go one at a time.  I am a

15     little confused how this is going to work out.

16                 Seat Number 1, Mr. Merrick.  Cause

17     People?

18                 MR. KATCHEN:  No.

19                 THE COURT:  Defense?

20                 MR. LAMB:  No.

21                 THE COURT:  Peremptory People?

22                 MR. KATCHEN:  No.

23                 THE COURT:  Defense?

24                 MR. LAMB:  Yes.

25                 THE COURT:  Number 2 is Mr. Schlaeger.

```
 1              Cause People?
 2                   MR. KATCHEN:  No.
 3                   THE COURT:  Defense?
 4                   MR. LAMB:  Comerford you said number one.
 5                   THE COURT:  No cause.  No cause.  No
 6              preemptory. You asked for peremptory.
 7                   MR. LAMB:  I thought we had moved to
 8              Number 2.
 9                   MS. RAJESWARI:  We never did number one.
10                   THE COURT:  You want one?
11                   MR. LAMB:  I do want one.
12                   THE COURT:  Are you withdrawing your
13              peremptory to number one?
14                   MR. LAMB:  I thought it was Number 2 was
15              going to be seated number -- as Juror Number 1.
16                   MR. LAMB:  Yes.
17                   THE COURT:  Carmine, that's number one.
18                   Next is Schlaeger.  Cause People?
19                   MR. KATCHEN:  No cause.
20                   THE COURT:  Defense?
21                   MR. LAMB:  No.
22                   THE COURT:  Peremptory People?
23                   MR. LAMB:  No.
24                   THE COURT:  Defense?
25                   MR. LAMB:  Yes.
```

```
 1                    THE COURT:  Next Ms. Comerford.  Cause
 2          People?
 3                    MR. KATCHEN:  No cause.
 4                    THE COURT:  No cause.  Defense?
 5                    MR. LAMB:  She did say -- I don't think
 6          she was rehabilitated as an x-ray technician.  She
 7          frequently sees rape victims.  She said that it
 8          would be difficult for her to be fair, so I
 9          challenge her for cause.
10                    THE COURT:  You want to be heard?
11                    MR. KATCHEN:  She did say that.
12                    MS. RAJESWARI:  We will consent.
13                    THE COURT:  She also said that the police
14          relatives wouldn't prevent her from being fair.  I
15          talked about war stories.
16                    In any event that's cause on consent.
17                    Next is Santlofer.  Cause People?
18                    MR. KATCHEN:  No challenge.
19                    THE COURT:  Defense?
20                    MR. LAMB:  No cause.
21                    THE COURT:  Peremptory People?
22                    MR. KATCHEN:  No.
23                    THE COURT:  Defense?
24                    MR. LAMB:  Yes.
25                    THE COURT:  Next is Scaravaggio.  Cause
```

```
 1              People?
 2                   MR. KATCHEN:  No.
 3                   THE COURT:  Defense?
 4                   MR. LAMB:  Yes.  She indicated there was
 5              a relationship that would make her unable to be
 6              fair.
 7                   MS. RAJESWARI:  She did.  We'll consent.
 8                   THE COURT:  Cause on consent.
 9                   Next is Santoro.  Cause People?
10                   MR. KATCHEN:  No.
11                   THE COURT:  Defense?
12                   MR. LAMB:  No.
13                   THE COURT:  Peremptory People?
14                   MR. KATCHEN:  No.
15                   THE COURT:  Defense?
16                   MR. LAMB:  No.
17                   THE COURT:  So that's Juror Number 2,
18              Carmine.
19                   THE CLERK:  Yes, sir.
20                   THE COURT:  Next is Paolino.  Cause
21              People?
22                   MR. KATCHEN:  At the sidebar -- yes.
23                   THE COURT:  Cause.
24                   MR. LAMB:  My client likes him.  So I
25              would say I have no cause.
```

EF

```
 1                    MR. KATCHEN:  I will make my record.  We
 2       were discussing at sidebar he never gave a
 3       straight answer.  He didn't know if he can be fair
 4       with his experience with his nephew's case in New
 5       Jersey.  He said it would be emotionally difficult
 6       for him.  He never gave the Court an answer.
 7                    MS. RAJESWARI:  He couldn't say.
 8                    THE COURT:  You want to be heard further?
 9                    MR. LAMB:  No.
10                    THE COURT:  I agree with the DA.  He just
11       would not give me an unequivocal response and
12       indicated it was a very emotional time for him and
13       his family.  I can't say he has the proper state
14       of mind.  I will grant the cause challenge.
15                    Next is Mr. Sisti.  Cause People?
16                    MR. KATCHEN:  No.
17                    THE COURT:  Cause?
18                    MR. LAMB:  No.
19                    THE COURT:  Perempt People?
20                    MR. KATCHEN:  No.
21                    THE COURT:  Defense?
22                    MR. LAMB:  No.
23                    THE COURT:  So that's Juror Number 3.
24                    Next is Mr. Ritchie.  Cause People?
25                    MR. KATCHEN:  No.
```

```
 1                    THE CLERK:   Defense?

 2                    MR. LAMB:  No.

 3                    THE COURT:  Perempt People?

 4                    MR. KATCHEN:  No.

 5                    THE COURT:  Defense?

 6                    MR. LAMB:  Yes.

 7                    THE COURT:  Yes.

 8                    Next is Ms. Rippa.  Cause People?

 9                    MR. KATCHEN:  No.

10                    THE COURT:  Defense?

11                    MR. LAMB:  No.

12                    THE COURT:  Perempt People?

13                    MR. KATCHEN:  No.

14                    THE COURT:  Defense?

15                    MR. LAMB:  No.

16                    THE COURT:  So, Carmine, that's Juror 4.

17                    THE CLERK:   Yes, sir.

18                    THE COURT:  Next is Mr. Rand.  Cause

19         People?

20                    MR. KATCHEN:  No, Judge.

21                    THE COURT:  Defense?

22                    MR. LAMB:  No.

23                    THE COURT:  Perempt People?

24                    MR. KATCHEN:  Yes, Judge.

25                    THE COURT:  Next is Santore.  Cause
```

1        People?

2                    MR. KATCHEN:  No.

3                    THE COURT:  Cause defense.  Ms. Santore.

4        People have no cause as to her.  The question is

5        do you?

6                    MR. LAMB:  I'm sorry, Judge.  I am

7        thinking of some of her answers.  I think she said

8        nothing.  For a cause challenge no cause.

9                    THE COURT:  Perempt People?

10                   MR. KATCHEN:  No.

11                   THE COURT:  Defense?

12                   MR. LAMB:  Yes.

13                   THE COURT:  Next is Mr. Ramirez.  Cause

14       People?

15                   MR. KATCHEN:  Your Honor, he also at

16       sidebar discussed he knew somebody that had been

17       alleged to have engaged in some sort of conduct.

18       While he sort of gave an answer, he put that

19       aside.  It was never really clear that he would be

20       able to remain impartial because of his knowledge

21       of that.  Based on that I don't think he would be

22       impartial.

23                   THE COURT:  That's a cause?

24                   MR. KATCHEN:  Yes.

25                   THE COURT:  Mr. Lamb, you want to be

EF

```
 1            heard?
 2                      MR. LAMB:  I'm sorry.  I think I
 3            rehabilitated him.  I asked him some point-blank.
 4                      THE COURT:  I don't know that he needed
 5            rehabilitating.  He didn't say anything that I
 6            heard that indicated he would support a cause
 7            challenge.  You are opposing?
 8                      MR. LAMB:  Yes.
 9                      THE COURT:  I will deny that cause
10            challenge.  You don't have a cause obviously.
11                      MR. LAMB:  Yes.
12                      THE COURT:  Peremptory?
13                      MR. KATCHEN:  Yes.
14                      THE COURT:  Next is Ms. Ferreri.  Cause
15            People?
16                      MR. KATCHEN:  No cause.
17                      THE COURT:  Defense?
18                      MR. LAMB:  Yes.
19                      THE COURT:  Cause challenge.  Are you
20            consenting or not?
21                      MR. KATCHEN:  No.
22                      THE COURT:  You want to make your case?
23                      You want me to make it?
24                      MR. LAMB:  Yes.
25                      THE COURT:  She said I'd like to think I
```

```
 1              can be fair but I don't know if I can.  So that's

 2              a cause challenge.  I will grant that.  That's

 3              defense cause granted.

 4                      Next is Mr. Pereyra.  Cause People?

 5                      MR. KATCHEN:  No.

 6                      THE COURT:  Defense?

 7                      MR. LAMB:  No.

 8                      THE COURT:  Peremptory People?

 9                      MR. KATCHEN:  No.

10                      THE COURT:  Defense?

11                      MR. LAMB:  No.

12                      THE COURT:  That's Juror Number 5,

13         Carmine.

14                      THE CLERK:  Yes, sir.

15                      THE COURT:  Lastly, Mr. Maxwell.  Cause

16         People?

17                      MR. KATCHEN:  No.

18                      THE COURT:  Defense?

19                      MR. LAMB:  No.

20                      THE COURT:  Peremptory People?

21                      MR. KATCHEN:  Yes.

22                      THE COURT:  Where do we stand on

23         challenges?

24                      THE CLERK:  People used three.  Defense

25         used four.
```

EF

```
 1                    THE COURT:  What do you want me to tell

 2           these five we are about to swear in?  Tomorrow

 3           afternoon?

 4                    MR. LAMB:  I'd rather have them.

 5                    THE COURT:  You want to have them in the

 6           courtroom?

 7                    MR. LAMB:  I would rather.

 8                    THE COURT:  If you want.  That's your

 9           privilege.  We're going to be breaking for the day

10           and we're going to resume 10 a.m.  We'll have the

11           sworn jurors in?

12                    MR. LAMB:  Yes.

13                    MS. RAJESWARI:  You want them to hear the

14           other questions?

15                    MR. LAMB:  Yes.

16                    (The following took place in open court:)

17                    THE CLERK:  The following jurors have

18           been selected for this case:  Brian Merrick, you

19           are Juror Number 1.  Matthew Santoro, you are

20           Juror Number 2.  James Sisti, you are Juror

21           Number 3.  Melissa Rippa, you are Juror Number 4.

22           And Omar Pereyra, you are Juror Number 5.  If I

23           called your name remain seated.

24                    If I did not, you are excused from this

25           case with the thanks of the Court.  Return now
```

1          across the street to central jury for your next

2          trial.  Thank you.  If I did not call your name

3          please stand, go across the street.

4                    (Prospective jurors not selected left the

5          courtroom.)

6                    THE CLERK:   Will the five jurors in the

7          box stand and raise your right hand to be sworn as

8          trial jurors?

9                    Do you and each of you solemnly swear

10         that you will try this action in a just and

11         impartial manner and to the best of your judgment

12         render a verdict according to the law and the

13         evidence so help you God?

14                    ALL JURORS:  Yes.

15                    THE COURT:  Thank you.  You can have a

16         seat.  It's 4:30.  I have another case I have to

17         handle.  I can't adjourn it.  I have to deal with

18         it.  So we're going to break for the afternoon.

19         We're going to resume tomorrow morning.

20                    What I'd like to do is this:  I'd like to

21         have the sworn jurors, five of you who were just

22         sworn, be in the jury room right across the hall.

23         The officers will show you where it is when you go

24         out, quarter to ten.

25                    I would like everyone in the audience

1    talk to you tomorrow.  We'd like you to be back in

2    central jury where you were this morning at

3    quarter to ten and I will send an officer over to

4    bring you back, to bring you over here.

5                So that's quarter to ten for everybody.

6    Sworn jurors in the jury room.  Those of you we

7    haven't talked to yet central jury and we'll bring

8    you over.

9                Before I let you go I have to advise you

10    as follows:  You must not discuss this case with

11    each other or anyone else.  Do not prior to being

12    discharged from this matter speak with anyone

13    about taking anything, any payment or benefit in

14    return for supplying information concerning this

15    trial.  You must promptly report directly to me

16    any incident within your knowledge involving an

17    attempt by any person to improperly influence you

18    or any other member of the panel or of the jury.

19    Don't visit or view the premises or place where

20    the charged crime is alleged to be committed.  I

21    don't believe you've heard a location yet.  If you

22    did, stay away from it.

23                Do not read or listen to any media

24    accounts, that includes newspaper, television

25    media or any other newspaper.  Don't attempt to

1           research any fact, issue or law related to this

2           case whether by discussion with others, or by

3           research, library or Internet or by any other

4           means.

5                      And, finally, as to our sworn jurors,

6           please keep an open mind, don't form any opinion

7           until all the evidence is in and you begin

8           deliberations.

9                      Those of you in the audience if you had

10          an open mind please keep it.  If you don't, we'll

11          find out tomorrow.

12                     We'll take the sworn jurors out first.

13          We'll let the sworn jurors step out first.

14                     (Five sworn jurors left the courtroom.)

15                     (Prospective jurors left the courtroom.)

16                     THE COURT:  9:45.

17                     MS. RAJESWARI:  Yes.

18                     THE CLERK:   Court's in recess.

19                     (Matter adjourned to Thursday,

20          September 9, 2010, at 9:45 a.m.)

21

22

23

24

25

EF