1  SUPREME COURT OF THE STATE OF NEW YORK
   COUNTY OF RICHMOND - CRIMINAL TERM - PART: 5
2  -------------------------------------------X
   THE PEOPLE OF THE STATE OF NEW YORK,
3
                   -against-
4
   ANTHONY RUCANO,
5
                               Defendant.
6  -------------------------------------------X
   Indict. No. 270/2009          18 Richmond Terrace
7                                Staten Island, New York
                                 September 9, 2010
8

9  B E F O R E:

10      HONORABLE STEPHEN J. ROONEY,

11                      Justice, and a jury.

12      (Appearances same as previously noted.)

13                      ELAINE FORLENZA, RPR
                        OFFICIAL COURT REPORTER
14

15              _ _ _ _ _ _ _

16                  THE CLERK:   Case on trial, People versus

17          Rucano.  All parties entered the well.

18                  THE COURT:   Are all the five sworn jurors

19          present?

20                  THE CLERK:   Yes. Same appearances as

21          yesterday.

22                  (Discussion held off the record at the

23          bench.)

24                  THE CLERK:   Defendant's present.  The

25          attorneys are present.

```
 1                    THE COURT:  I am told that Juror Number 4
 2          is feeling ill.  She's here.  She went to the
 3          doctor this morning; is that right?
 4                    THE CLERK:  Yes, sir.
 5                    THE COURT:  Some kind of stomach virus.
 6          She saw a doctor but she is here.  You want me to
 7          bring her in?
 8                    What's going on?
 9                    MR. LAMB:  I'm sorry, I have asked -- for
10          the record the defendant's wife was just added as
11          a possible witness to the witness list yesterday
12          afternoon.  She is in the courtroom.
13                    I have not had an opportunity to explain
14          to her as a witness she can no longer remain in
15          the courtroom.  The defendant was just giving her
16          some lunch money and I was passing that to her if
17          I could have one second.
18                    (Short pause.)
19                    THE COURT:  You want me to bring in
20          Number 4?
21                    MS. RAJESWARI:  Yes.
22                    THE COURT:  Mr. Lamb, shall I bring her
23          in?
24                    MR. LAMB:  Sure.
25                    THE COURT:  Bring in Number 4.  See how
```

EF

1           she is feeling.

2                       (Short pause.)

3                       THE COURT OFFICER:  Ready, your Honor?

4                       THE COURT:  Yes.

5                       (Juror Number 4 entered courtroom.)

6                       THE COURT:  This is Ms. Rippa, right?

7           You could just stop right there.  I was asking --

8           I am told you weren't feeling well.

9                       JUROR NO. 4:  Much better.

10                      THE COURT:  If you feel ill and you want

11          to go home.

12                      JUROR NO. 4:  Just a few times when I got

13          up I had a feeling a little bit nauseous.

14                      THE COURT:  Are you okay now?

15                      JUROR NO. 4:  So far okay.  I had some

16          tea so maybe it was something.  So far so good.

17                      THE COURT:  Thank you.  I will let you go

18          back to the jury room.  We are going to bring the

19          other panel members over and then we'll bring the

20          sworn jurors in and resume.

21                      JUROR NO. 4:  Thank you very much.

22                      THE COURT:  Okay, get the panel over and

23          we are going to have to seat the sworn jurors

24          separate.

25                      THE CLERK:  Sergeant, there are 39

EF

 1           prospective jurors across the street.

 2                   THE COURT:  Bring them over please.

 3                   (Pause in proceedings.)

 4                   THE COURT:  The sworn jurors have been in

 5           there for over an hour.  They want a break.  When

 6           they're finished with their break, we'll start up.

 7                   (Pause in proceedings.)

 8                   THE CLERK:  Prospective panel entering.

 9                   COURT OFFICER:  Are you ready for the

10           sworn jurors?

11                   THE CLERK:  Yes.

12                   (Sworn jurors entered.)

13                   THE CLERK:  Case on trial continues.  Do

14           both sides stipulate the presence of the first

15           five sworn jurors are present in the gallery front

16           row in order?  People?

17                   MR. KATCHEN:  So stipulated.

18                   THE CLERK:   Defense?

19                   MR. LAMB:  So stipulated.

20                   THE COURT:  Good morning, welcome back. I

21           want to apologize for this delay.  It had to do

22           with other cases on my calendar.  It is my fault.

23           I miscalculated.  But I want to stress it is not

24           the fault of the parties in this case that is the

25           delay.  So don't hold it against them.  It is my

EF

```
 1              fault.  I apologize and thank you for your

 2              patience.

 3                      So when you hear your name called, step

 4              up, have a seat where directed and we'll resume

 5              selection.

 6                      THE CLERK:   Seat Number 1, step up

 7              Renata Basman.  B A S M A N.

 8                      Seat two, Janice Longo.  L O N G O.

 9                      Seat three, Rita Delapena.

10              D E L A P E N A.

11                      Seat four, Anthony Dambrosio.

12              D A M B R O S I O.

13                      Five, Thomas Mani.  M A N I.

14                      Six, Sandra Valenta.  V A L E N T A.

15                      Seven, Theodore Horlevein.

16              H O R L E V E I N.

17                      PROSPECTIVE JUROR:   It's Valenti with an

18              i. V A L E N T I.

19                      THE COURT:   He did say A.

20                      Seat eight, Edmund Orlando.

21              O R L A N D O.

22                      Seat nine, Jennifer Ruzicka.

23              R U Z I C K A.

24                      Ten, Linda Villafana.  V I L L A F A N A.

25              Villafana.  That's seat ten.
```

EF

1              Seat eleven, Daniel Donadio.

2        D O N A D I O.

3              Twelve, Andrew Guido. G U I D O.

4              Thirteen, Stanley Wojnowski.

5        W O J N O W S K I.

6              Fourteen, Richard Derleth. D E R L E T H.

7        Derleth.

8              Fifteen, Patricia Totaram.

9        T O T A R A M.

10             Sixteen, Lucille Fuchs.  F U C H S.

11             Sixteen prospective jurors seated.

12             THE COURT:  Okay.  My questions don't

13        change so things usually go a little quicker the

14        second time through.

15             Do any of you know the lawyers or the

16        defendant?

17             Yes, sir.  Mr. Dambrosio.

18             PROSPECTIVE JUROR:  Yes.  In the

19        courtroom there was an attorney Manny Ortega. He

20        is my next door neighbor, good friend.  I thought

21        I would have to mention that.

22             THE COURT:  Mr. Ortega has nothing to do

23        with this particular case.  Is there anything

24        about your friendship with Mr. Ortega that would

25        prevent you from being a fair juror?

EF

```
 1                    PROSPECTIVE JUROR:  No.
 2                    THE COURT:  Do any of you know the
 3          lawyers or the defendant?  I got no answer on
 4          that.
 5                    I read a list of potential witnesses
 6          yesterday.  I will read it again if anybody wants
 7          me to.  The question is did you recognize any of
 8          the names?  Anybody want to hear the names read
 9          again?  Nobody.  Okay.
10                    Do any of you think you know anything
11          about this case apart from what you've heard here
12          yesterday?
13                    Are any of you or anyone close to you,
14          again what I mean by that is close friends or
15          relatives involved in law enforcement in any
16          capacity?
17                    I will just skip around here.
18                    Ms. Ruzicka.
19                    PROSPECTIVE JUROR:  My brother was a
20          police officer.  My uncle as well.  My two
21          neighbors and a good friend.
22                    THE COURT:  You know the question.  Is
23          there anything about these relationships,
24          friendships that would prevent you in terms of
25          your ability to be fair?
```

```
 1                       PROSPECTIVE JUROR:  I'd have to say, yes.
 2                       THE COURT:  Based on discussions I guess
 3            you've had with them about what they do?
 4                       PROSPECTIVE JUROR:  Um-hum.
 5                       MR. LAMB:  I'm sorry.  The answer was
 6            yes?
 7                       THE COURT:  She thinks it might affect
 8            her ability to be fair.  You could pursue that if
 9            you want to.
10                       Anyone else on this question?
11                       Ms. Delapena.
12                       PROSPECTIVE JUROR:  My father was a
13            police officer and my brother was a police
14            officer.
15                       THE COURT:  Same question.  Anything
16            about that that would affect you in terms of your
17            ability to be fair?
18                       PROSPECTIVE JUROR:  I don't think so.
19                       THE COURT:  Thank you.
20                       Mr. Dambrosio.
21                       PROSPECTIVE JUROR:  My cousin is a police
22            officer and father-in-law is a retired police
23            officer.
24                       THE COURT:  Is that going to have any
25            affect on your ability to be fair?
```

1              PROSPECTIVE JUROR:  No, sir.

2              THE COURT:  Anyone else in first row?

3              Ms. Valenti.

4              PROSPECTIVE JUROR:  Two cousins that are

5        cops and a detective.

6              THE COURT:  Is that going to have any

7        bearing here in terms of your ability to be a fair

8        juror?

9              PROSPECTIVE JUROR:  I don't think so.

10             THE COURT:  Mr. Horlevein?

11             PROSPECTIVE JUROR:  My son police

12        officer.

13             THE COURT:  NYPD?

14             PROSPECTIVE JUROR:  Yes.

15             THE COURT:  Is that going to affect your

16        ability to be fair and impartial?

17             PROSPECTIVE JUROR:  I don't think so.

18             THE COURT:  Is that it in the first row?

19             I will go to the back row.

20             Ms. Fuchs.

21             PROSPECTIVE JUROR:  I have a cousin

22        that's a court officer in Long Island.

23             THE COURT:  You know if he works or she

24        -- he or she works in criminal term or civil term?

25             PROSPECTIVE JUROR:  I am not sure.

1          THE COURT:  You are not sure.  Is there

2    anything about that that would affect your ability

3    to be fair or impartial?

4          PROSPECTIVE JUROR:  No.

5          THE COURT:  Other hands?

6          Mr. Derleth.

7          PROSPECTIVE JUROR:  I am a New York City

8    Correction Officer.

9          THE COURT:  You are. How long have you

10   been a correction officer?

11         PROSPECTIVE JUROR:  28 years.

12         THE COURT:  Okay.  Are you working in a

13   City facility?

14         PROSPECTIVE JUROR:  Riker's Island.

15         THE COURT:  Is there anything about your

16   job, your background, your training, your

17   experience that would prevent you from being a

18   fair juror in a criminal case, fair to both sides?

19         PROSPECTIVE JUROR:  I believe so.

20         THE COURT:  You think it would?

21         PROSPECTIVE JUROR:  Yes.

22         THE COURT:  I will let the lawyers pursue

23   that if they want to.

24         PROSPECTIVE JUROR:  Yes, sir.

25         THE COURT:  Anyone else?

```
 1                   Mr. Guido.

 2                   PROSPECTIVE JUROR:  Aunt and best friend

 3        cops, NYPD.

 4                   THE COURT:  Same question.  Would that

 5        have any affect here?

 6                   PROSPECTIVE JUROR:  No.

 7                   THE COURT:  Ms. Longo.

 8                   PROSPECTIVE JUROR:  My son's best friend

 9        is a District Attorney.

10                   THE COURT:  In Richmond County?

11                   PROSPECTIVE JUROR:  Yes.

12                   THE COURT:  Here in Staten Island?

13                   PROSPECTIVE JUROR:  Yes.

14                   THE COURT:  May I ask this person's name?

15                   PROSPECTIVE JUROR:  Yes.

16                   THE COURT:  You know the last name?

17                   PROSPECTIVE JUROR:  Curiale.

18                   THE COURT:  Jeff Curiale.  Do you know

19        him personally?

20                   PROSPECTIVE JUROR:  Yes.

21                   THE COURT:  Is there anything about that

22        that would affect your ability to be fair and

23        impartial?

24                   PROSPECTIVE JUROR:  I don't think so.

25                   THE COURT:  He works for the same
```

```
 1              District Attorney's Office as these two who are
 2              sitting here.  Knowing that would that have any
 3              bearing on your ability to be fair and impartial?
 4                   PROSPECTIVE JUROR:  I am not sure.
 5                   THE COURT:  You are not sure.  I will let
 6              the lawyers talk to you about that if they want.
 7                   THE COURT:  Any other hands?
 8                   Mr. Donadio.
 9                   PROSPECTIVE JUROR:  Yes, I am a police
10              officer.
11                   THE COURT:  How long have you been a
12              police officer?
13                   PROSPECTIVE JUROR:  Four years.
14                   THE COURT:  Okay.  Police officers are no
15              longer exempt from jury duty.  Nobody is anymore.
16              I have been called for jury duty.  Nobody is
17              exempt anymore so you are disqualified.  But the
18              question is if you were selected as a juror do you
19              think you could be fair and impartial?
20                   PROSPECTIVE JUROR:  Absolutely.
21                   THE COURT:  Thank you.  Anyone else?
22                   Are any of you or anyone close to you
23              involved in the legal field in any way as a
24              lawyer, paralegal, employee of a law firm or
25              prosecutor's office?  Anything of that sort?
```

```
 1                      Have any of you or anyone close to your

 2           knowledge ever been the victim of a crime?

 3                      Ms. Delapena, could you tell me a little

 4           bit about it?

 5                      PROSPECTIVE JUROR:  Very close friend's

 6           mother was raped in her own house.

 7                      THE COURT:  How long ago was this?

 8                      PROSPECTIVE JUROR:  I think about 16, 17

 9           years ago.

10                      THE COURT:  Was anybody arrested in

11           connection with that?

12                      PROSPECTIVE JUROR:  Yes.

13                      THE COURT:  Did you go to any court

14           proceedings?

15                      PROSPECTIVE JUROR:  No.

16                      THE COURT:  Keeping in mind the nature of

17           the charges in this case do you think that would

18           affect your ability to be fair?

19                      PROSPECTIVE JUROR:  I am not really sure.

20           I think not.  I couldn't really say for sure.

21                      THE COURT:  Other hands on this, crime

22           victim?

23                      Mr. Dambrosio.

24                      PROSPECTIVE JUROR:  My sister was held up

25           at gunpoint while she worked at a register at a
```

```
 1              grocery store.  My father was brutally mugged
 2              pretty bad and my mom was date raped when she
 3              was 16.
 4                        THE COURT:  How long ago were these
 5              incidents approximately?
 6                        PROSPECTIVE JUROR:  It would have been
 7              when I was a teenager with my sister and my dad.
 8              My mom was 16 at the time but she had told us the
 9              story what happened.
10                        THE COURT:  Was anybody arrested in
11              connection with any of these incidents?
12                        PROSPECTIVE JUROR:  No.  But my mom, it
13              happened to another young lady and he was
14              eventually arrested for the same type of crime.
15                        THE COURT:  Did you go to any court
16              proceedings?
17                        PROSPECTIVE JUROR:  No.
18                        THE COURT:  Anything about these events
19              individually or collectively that would prevent
20              you from being a fair juror in this case?
21                        PROSPECTIVE JUROR:  It might.
22                        THE COURT:  It might.
23                        PROSPECTIVE JUROR:  Yes, hearing what we
24              heard yesterday.
25                        THE COURT:  Okay.  Other hands on this,
```

```
1              crime victims?

2                    Ms. Longo.

3                    PROSPECTIVE JUROR:  My niece was attacked

4         by her boyfriend.

5                    THE COURT:  Attacked?

6                    PROSPECTIVE JUROR:  By her boyfriend.

7                    THE COURT:  How long ago was this?

8                    PROSPECTIVE JUROR:  23 years ago.

9                    THE COURT:  Was he arrested?

10                   MR. LAMB:  Yes.

11                   THE COURT:  Did you go to any court

12        proceedings?

13                   PROSPECTIVE JUROR:  Once.

14                   THE COURT:  Is there anything about that

15        event that would have any bearing here on your

16        ability to be fair?

17                   PROSPECTIVE JUROR:  Yes.

18                   THE COURT:  Thank you.

19                   Other hands.  Mr. Donadio.

20                   PROSPECTIVE JUROR:  I have an uncle that

21        was murdered.

22                   THE COURT:  Pardon?

23                   PROSPECTIVE JUROR:  I have an uncle that

24        was murdered.

25                   THE COURT:  How long ago was that?
```

EF

```
 1                    PROSPECTIVE JUROR:  About twenty years
 2          ago.
 3                    THE COURT:  Was anybody arrested?
 4                    PROSPECTIVE JUROR:  Yes.
 5                    THE COURT:  Did you go to any court
 6          proceedings?
 7                    PROSPECTIVE JUROR:  A few.
 8                    THE COURT:  Anything about that event
 9          that would have any bearing here in terms of your
10          ability to be fair as a juror in this case?
11                    PROSPECTIVE JUROR:  No.
12                    THE COURT:  Thank you.
13                    Anyone else?  Ms. Villafana.
14                    PROSPECTIVE JUROR:  Yes.  My niece was a
15          victim of domestic abuse.
16                    THE COURT:  How long ago was this?
17                    PROSPECTIVE JUROR:  Five years.
18                    THE COURT:  Was there an arrest made in
19          that case?
20                    PROSPECTIVE JUROR:  Yes.
21                    THE COURT:  Did you go to any court
22          proceedings?
23                    PROSPECTIVE JUROR:  No.
24                    THE COURT:  Anything about that event
25          that would have any bearing in terms of your
```

1              ability to be fair?

2                        PROSPECTIVE JUROR:  I think so.

3                        THE COURT:  Anyone else on this question?

4              Crime victims?  I will remind you we can talk

5              privately about anything.

6                        The question is have you or anyone close

7              to you ever been a defendant in any kind of a

8              criminal proceeding?  Nobody on this.

9                        Ms. Villafana, you want to talk privately

10             about that?

11                       PROSPECTIVE JUROR:  My brother was

12             arrested and convicted.

13                       THE COURT:  Arrested?

14                       PROSPECTIVE JUROR:  Burglary.

15                       THE COURT:  How long ago was this?

16                       PROSPECTIVE JUROR:  Maybe 25 years ago.

17                       THE COURT:  Okay.  Did you go to any

18             court proceedings?

19                       PROSPECTIVE JUROR:  Yes.

20                       THE COURT:  Is there anything about that

21             event or experience that would have any bearing

22             here in terms of your ability to be fair?

23                       PROSPECTIVE JUROR:  Probably not.

24                       THE COURT:  Thank you.

25                       Other hands.  Mr. Guido.

```
 1                    PROSPECTIVE JUROR:  My brother was

 2       arrested several years ago for prescription drugs.

 3                    THE COURT:  Did you go to any court --

 4       Richmond County?

 5                    PROSPECTIVE JUROR:  Yes.

 6                    THE COURT:  Anything about that's going

 7       to have any affect on your ability to be fair?

 8                    PROSPECTIVE JUROR:  Yes.

 9                    THE COURT:  Anyone else?

10                    Ms. Totaram.

11                    PROSPECTIVE JUROR:  Can I speak privately

12       please?

13                    THE COURT:  Sure.  We'll talk a little

14       later.  Thank you.

15                    Anyone else?

16                    Have any of you ever been a witness in

17       any kind of a courtroom proceeding or Grand Jury

18       proceeding?

19                    Have any of you ever been a litigant,

20       that is a plaintiff or a defendant in any kind of

21       a civil lawsuit, civil action?

22                    Mr. Guido.

23                    PROSPECTIVE JUROR:  I was sued earlier

24       this year.  An accident.  It was in Brooklyn

25       dismissed.
```

```
 1                    THE COURT:  It's over with now?

 2                    PROSPECTIVE JUROR:  Yes.

 3                    THE COURT:  Anything about that

 4          litigation that would have any bearing here?

 5                    PROSPECTIVE JUROR:  No.

 6                    THE COURT:  Anyone else?

 7                    Mr. Dambrosio.

 8                    PROSPECTIVE JUROR:  I was a plaintiff

 9          workmen compensation case.  That's over with.

10                    THE COURT:  How long ago was that?

11                    PROSPECTIVE JUROR:  Couple of years ago.

12                    THE COURT:  Anything about that

13          experience that would have any bearing here?

14                    PROSPECTIVE JUROR:  No.

15                    THE COURT:  Thank you.

16                    Anyone else?  Ms. Fuchs.

17                    PROSPECTIVE JUROR:  I was a witness to --

18          I'm a nurse and one of my patients was killed.

19          She was a baby four years old was killed by her

20          parents and I was called in to testify.

21                    THE COURT:  Was that a criminal matter?

22                    PROSPECTIVE JUROR:  Yes.

23                    THE COURT:  It was.  How long ago was

24          this?

25                    PROSPECTIVE JUROR:  Maybe six, seven
```

```
 1              years ago.

 2                        THE COURT:  Was that here in Richmond

 3              County?

 4                        PROSPECTIVE JUROR:  It was right in this

 5              courtroom.

 6                        THE COURT:  In this courtroom?

 7                        PROSPECTIVE JUROR:  Yes.

 8                        THE COURT:  Is there anything about that

 9              experience you had as a witness that would prevent

10              you from being a fair juror?

11                        PROSPECTIVE JUROR:  No.

12                        THE COURT:  Thank you.

13                        Anyone else?

14                        Has anyone ever served on a jury before?

15                        Mr. Orlando.

16                        PROSPECTIVE JUROR:  Yes.  Right here in

17              this courtroom actually.

18                        THE COURT:  How long ago?

19                        PROSPECTIVE JUROR:  About seven years

20              ago.

21                        THE COURT:  Right here in this courtroom?

22                        PROSPECTIVE JUROR:  Yes.

23                        THE COURT:  I was the judge?

24                        PROSPECTIVE JUROR:  Yes.

25                        THE COURT:  I was better looking and I
```

```
 1                had darker hair.  Is there anything about that

 2                experience as a juror that would prevent you from

 3                being able to sit as a juror in this one?

 4                      PROSPECTIVE JUROR:  No, sir.

 5                      THE COURT:  Other hands on this?

 6                      Ms. Delapena.

 7                      PROSPECTIVE JUROR:  I served on the Grand

 8                Jury and also on a civil case.

 9                      THE COURT:  Grand Jury and civil case.

10                Did the jury reach a verdict on the civil case?

11                      PROSPECTIVE JUROR:  They settled before

12                we could.

13                      THE COURT:  Anything about those

14                experiences that would prevent you from sitting as

15                a trial juror in this case?

16                      PROSPECTIVE JUROR:  I don't think so.

17                      THE COURT:  Thank you.

18                      Other hands.  Prior jury experience?

19                      Mr. Wojnowski.

20                      PROSPECTIVE JUROR:  Yes.  I served on a

21                criminal case, Grand Jury and civil case.

22                      THE COURT:  How long ago?

23                      PROSPECTIVE JUROR:  Anywhere from about

24                30 to 10 years ago.

25                      THE COURT:  Don't tell me how it ended up
```

```
 1              but did the jury reach a verdict?

 2                    PROSPECTIVE JUROR:  Yes.

 3                    THE COURT:  If you were selected as a

 4         juror in this case could you assure me and the

 5         lawyers that you would keep out of your mind any

 6         law you may have gotten in the Grand Jury and

 7         apply the law as I give it to the jury in this

 8         case?

 9                    PROSPECTIVE JUROR:  I think so.

10                    THE COURT:  Thanks.

11                    Anyone else?

12                    Ms. Fuchs, when?

13                    PROSPECTIVE JUROR:  It was about six,

14         seven years ago, across the street in a civil

15         case.

16                    THE COURT:  Did the jury reach a verdict?

17                    PROSPECTIVE JUROR:  Two days later they

18         settled out of court.

19                    THE COURT:  Anything about that

20         experience that would prevent you from being able

21         to sit here in this case?

22                    PROSPECTIVE JUROR:  No.

23                    THE COURT:  Thank you.  Mr. Orlando.

24                    PROSPECTIVE JUROR:  Civil case and we

25         reached a verdict.
```

EF

```
 1                    THE COURT:  How long ago was that?

 2                    PROSPECTIVE JUROR:  About maybe six years

 3          ago.

 4                    THE COURT:  Was there anything about that

 5          experience that would prevent you from being able

 6          to sit in this case?

 7                    PROSPECTIVE JUROR:  No.

 8                    THE COURT:  Anyone else?  Anybody with

 9          any Grand Jury experience?  Anyone else with any

10          Grand Jury experience?

11                    Okay.  Ms. Basman, are you employed?

12                    PROSPECTIVE JUROR:  Yes.

13                    THE COURT:  What type of work do you do?

14                    PROSPECTIVE JUROR:  Computer programmer.

15                    THE COURT:  Thank you. Ms. Longo?

16                    PROSPECTIVE JUROR:  Sales associate.

17                    THE COURT:  Thank you.  Ms. Delapena?

18                    PROSPECTIVE JUROR:  Letter carrier.

19                    THE COURT:  Thank you. Mr. Dambrosio?

20                    PROSPECTIVE JUROR:  Sales.

21                    THE COURT:  Thank you. Mr. Mani?

22                    PROSPECTIVE JUROR:  Drive a bus.

23                    THE COURT:  Thank you. Ms. Valenti?

24                    PROSPECTIVE JUROR:  Manager of a

25              restaurant.
```

EF

1           THE COURT:  Thank you. Mr. Horlevein?

2           PROSPECTIVE JUROR:  Engineer.

3           THE COURT:  Thank you. Mr. Orlando?

4           PROSPECTIVE JUROR:  Emergency

5    acquisitions for a private bank.

6           THE COURT:  Thank you. Ms. Fuchs?

7           PROSPECTIVE JUROR:  I am a registered

8    nurse.

9           THE COURT:  Thank you. Ms. Totaram.

10          PROSPECTIVE JUROR:  Operations manager in

11   retail.

12          THE COURT:  Thank you.  Mr. Derleth?

13          PROSPECTIVE JUROR:  Correction officer.

14          THE COURT:  Right, you told me.  Thanks.

15          Mr. Wojnowski?

16          PROSPECTIVE JUROR:  Engineer.

17          THE COURT:  Thank you.  Mr. Guido?

18          PROSPECTIVE JUROR:  Court analyst.

19          THE COURT:  Thank you. Mr. Donadio?

20          PROSPECTIVE JUROR:  Police officer.

21          THE COURT:  Right.  You told me.  Thanks.

22          Ms. Villafana?

23          PROSPECTIVE JUROR:  Bookkeeping.

24          THE COURT:  Thank you.  And Ms. Ruzicka.

25          PROSPECTIVE JUROR:  Advertising manager.

```
 1                THE COURT:  Thank you for that

 2       information.  I am going to finish up with these

 3       principles of law that I discussed with the panel

 4       yesterday.

 5                Just to remind you the idea here is to

 6       find out if you could promise us if you will

 7       follow and accept these fundamental principles

 8       that apply in all criminal cases.

 9                As you now know if you didn't before an

10       indictment is not evidence.  The mere fact a

11       defendant has been indicted is evidence of nothing

12       and in particular it's not evidence of guilt.

13       Should you be chosen to serve as a juror in this

14       case, the law requires that you should decide the

15       case wholly and solely on the evidence.  And since

16       it is our rule of law an indictment is evidence of

17       nothing, I ask if you can assure us that you can

18       follow and accept that principle in our law.  Is

19       there anyone who cannot give us that assurance?

20                If called upon -- if selected as a juror

21       you would be called upon to deliberate at the end

22       of the trial in an effort to reach a final

23       unanimous verdict or verdicts.  Those of you who

24       served as jurors before know what this involves.

25       You will be going to the jury room to discuss the
```

1              case with eleven other people in an effort to

2              reason together arriving at a final unanimous

3              verdict or verdicts.

4                        Do any of you feel you could not

5              deliberate with eleven other people if called upon

6              to do so?

7                        Under our law everyone accused of a crime

8              if brought to trial is presumed innocent unless or

9              until he was proved guilty beyond a reasonable

10             doubt.  The defendant in this case is presumed

11             innocent and to put this another way a defendant

12             is never required to prove his innocence.  On the

13             contrary, the People represented by the District

14             Attorney, having accused the defendant of the

15             crimes charged, have the burden of proving him

16             guilty beyond a reasonable doubt.

17                       The People carry this burden of proof

18             throughout the trial.  It never shifts.  It always

19             remains on the People and the presumption of

20             innocence remains with every defendant throughout

21             every criminal trial.

22                       Is there anyone amongst you that could

23             now in your own mind grant the defendant this

24             presumption of innocence?

25                       As I said in a criminal case the burden

```
 1              of proof is entirely on the People and remains on

 2              them throughout the trial.  A defendant is not

 3              required to prove anything nor is a defendant

 4              required to disprove anything.  As I say the

 5              entire burden of proof is on the People and

 6              remains on them throughout the trial.

 7                      Is there anyone amongst you who cannot

 8              accept this rule in our criminal law?

 9                      If a defendant does not testify in a

10              criminal trial that is not a factor from which any

11              inference unfavorable to such defendant may be

12              drawn.

13                      Is there anybody who cannot accept this

14              fundamental rule in our criminal law?

15                      Okay.  I defined yesterday the standard

16              of proof required for a conviction in every

17              criminal case.  That standard as you now know if

18              you before is called proof of guilt beyond a

19              reasonable doubt.  Did you all hear that

20              definition when I gave it yesterday?  I am happy

21              to read it again if anyone wants.  I get no

22              takers.  Keep that definition in mind.

23                      Let me remind you that it is the duty of

24              each juror carefully to review, weigh and consider

25              all the evidence.  If after doing so you find that
```

1          the People have not proved the defendant's guilt

2          beyond a reasonable doubt as I have defined the

3          term, then you must find the defendant not guilty.

4          On the other hand, if you are satisfied that the

5          People have proved the defendant's guilt beyond a

6          reasonable doubt as I have defined the term, then

7          you must find the defendant guilty.

8                    Will you promise us that if selected as a

9          juror in this case you will in your final

10         deliberations follow and apply this standard of

11         proof that's required here, that is proof beyond a

12         reasonable doubt?  Is there anybody who cannot

13         make us that promise?

14                   I will remind you that a deliberating

15         jury is not permitted to consider the subject of

16         punishment.  If there is to be any sentencing

17         after a verdict that's for the Court and the Court

18         alone to deal with. The jury has no role to play

19         in that and the jury must not discuss sentencing

20         or punishment in their deliberations.

21                   Will you promise us that if you are

22         selected as a juror in this case you will render

23         your verdict free from fear, favor or sympathy and

24         without considering any possibility of sentencing

25         or punishment?  Is there anybody who cannot make

 1          us that promise?

 2                    And, lastly, you know from the witness

 3          list I read earlier that police officers will

 4          testify in this case.  They take the same oath as

 5          anyone else.  The mere fact that a witness is a

 6          police officer does not make that witness anymore

 7          or any less credible.

 8                    Is there anyone amongst you who has any

 9          feelings about the police or who have had any

10          experiences with the police which would lead you

11          in your judgment to give a police officer's

12          testimony greater or lesser weight than anyone

13          else's merely because of the officer's occupation?

14                    Does anybody feel that way one way or the

15          other?

16                    Mr. Donadio, could you evaluate a police

17          witness as you would anyone else?

18                    PROSPECTIVE JUROR:  Absolutely.

19                    THE COURT:  I am going to step to the

20          side and talk to Ms. Totaram for a moment and then

21          I will let the lawyers speak to you.

22                    (The following took place at the

23          sidebar:)

24                    MR. LAMB:  I believe the defendant wants

25          to come over.

EF

```
 1                    THE COURT:  You can step next to your
 2         lawyer.
 3                    THE DEFENDANT:  Thank you, your Honor.
 4                    THE COURT:  We are at a sidebar with the
 5         lawyers, the defendant and Ms. Totaram.  What were
 6         you going to talk about?
 7                    PROSPECTIVE JUROR:  My --
 8                    THE COURT:  Take your time.
 9                    PROSPECTIVE JUROR:  My mother died.  My
10         father is very abusive.  So he was charged with
11         manslaughter and my child who saw my stepmother
12         being abused, I don't want to be part of this
13         case.
14                    THE COURT:  You don't think you could be
15         a fair juror in this case.
16                    PROSPECTIVE JUROR:  No.
17                    MR. LAMB:  Consent.
18                    THE COURT:  Consent People?
19                    MS. RAJESWARI:  Yes.
20                    THE COURT:  We are going to excuse you,
21         Ms. Totaram.  You can go back across the street
22         and you can talk to the clerk over there.
23                    (The following took place in open court:)
24                    MS. RAJESWARI:  Good morning, ladies and
25         gentlemen of the jury.  Welcome back.  By now you
```

```
 1              already heard from Mr. Katchen.  As you know

 2              Anthony Katchen and myself Raja Rajeswari,

 3              together we represent the People of the State of

 4              New York.  We are going to be presenting the case

 5              to you.

 6                        The purpose again as Mr. Lamb and

 7              Mr. Katchen told you is not to pry or embarrass

 8              you. It is to make sure we have twelve fair

 9              jurors, fair to the People and to the defense, and

10              who are going to be fair and impartial and well

11              suited to sit in this case.  By now I think you

12              know pretty much the questions that are coming but

13              I couldn't hear very well.

14                        Ms. Villafana, what do you do for a

15              living?

16                        PROSPECTIVE JUROR:  Bookkeeper.

17                        MR. LAMB:  I still didn't hear.

18                        MS. RAJESWARI:  Bookkeeper.

19                        And you, Mr. Mani?

20                        PROSPECTIVE JUROR:  Bus maintenance.

21                        MS. RAJESWARI:  I am just going to ask a

22              few questions of the jurors.  I am not going to

23              get to all of you.

24                        Ms. Basman, are you married or single,

25              ma'am?
```

```
 1                    PROSPECTIVE JUROR:  Married.

 2                    MS. RAJESWARI:  Do you have any children?

 3                    PROSPECTIVE JUROR:  Yes, two.

 4                    THE COURT:  What about you, sir,

 5          Mr. Mani?

 6                    PROSPECTIVE JUROR:  Married.

 7                    MS. RAJESWARI:  And you have children?

 8                    PROSPECTIVE JUROR:  Two children.

 9                    MS. RAJESWARI:  What about you,

10          Ms. Valenti?

11                    PROSPECTIVE JUROR:  Single.

12                    MS. RAJESWARI:  Ms. Fuchs?  Married?

13                    PROSPECTIVE JUROR:  Married, three

14          children.

15                    MS. RAJESWARI:  What about you,

16          Mr. Horlevein?

17                    PROSPECTIVE JUROR:  Married, one son.

18                    MS. RAJESWARI:  What about you,

19          Mr. Orlando?

20                    PROSPECTIVE JUROR:  Single, no children.

21                    MS. RAJESWARI:  Mr. Wojnowski?

22                    PROSPECTIVE JUROR:  Divorced.

23                    MS. RAJESWARI:  Do you have any children?

24                    PROSPECTIVE JUROR:  No.

25                    MS. RAJESWARI:  Mr. Donadio.
```

```
 1                    PROSPECTIVE JUROR:  Married, no children.
 2               MS. RAJESWARI:  Now by now you already
 3          know what the charges are.  The allegations in
 4          this case are allegations of rape and various
 5          other charges.
 6                    As Mr. Katchen had mentioned yesterday
 7          will everybody here agree with me that in order
 8          for us to prove rape it doesn't have to be in a
 9          stranger situation?  Rape could occur between two
10          people who know each other who are in a domestic
11          relationship.  Can everybody agree with me?
12                    What do you think, Ms. Villafana?  Do you
13          think rape could occur with two people either
14          married, engaged or living together?
15               PROSPECTIVE JUROR:  I don't understand.
16               MS. RAJESWARI:  Are you having trouble
17          understanding what I am saying?
18               MR. LAMB:  I am having a hard time
19          hearing.
20               MS. RAJESWARI:  You have to speak up so
21          they can take it down.
22                    If it's a boyfriend/girlfriend or
23          husband/wife can rape still occur if they both are
24          not strangers in that relationship?  What do you
25          think?  I am not in particular picking on you.
```

EF

1     Just want to know your opinions.  If you are well

2     suited to sit on this case.

3               PROSPECTIVE JUROR:  Valenti. It shouldn't

4     occur.

5               MS. RAJESWARI:  It doesn't have to be

6     strangers, that's my issue.  Can the man and the

7     woman and they know each other, can it happen?

8               PROSPECTIVE JUROR:  You're saying it did

9     then obviously it did.

10              MS. RAJESWARI:  So you would think if

11    allegations of rape is generally strangers, is

12    that it?

13              PROSPECTIVE JUROR:  I don't know the

14    situation, the complete situation so I can't tell

15    you.

16              MS. RAJESWARI:  You haven't heard any

17    evidence in the case.  I understand you are all

18    getting questions in a vacuum.  If I tell you

19    there was rape but the parties were known to each

20    other, does that --

21              PROSPECTIVE JUROR:  There needs to be

22    more to it then knowing each other what happened.

23              MS. RAJESWARI:  I understand that but can

24    people in a relationship get -- even though

25    they're known to each other can she still say no?

1               PROSPECTIVE JUROR:  Yes, of course.

2               MS. RAJESWARI:  Does everybody here agree

3       with Ms. Valenti?

4               What about you, sir, Mr. Horlevein?

5               PROSPECTIVE JUROR:  Yes.

6               MS. RAJESWARI:  Even if they're married

7       or engaged or living together.

8               PROSPECTIVE JUROR:  The way the world is

9       today if you say no it should be no.

10              MS. RAJESWARI:  Does everybody here agree

11      with both Ms. Valenti and Mr. Horlevein?  Anybody

12      feel differently?

13              PROSPECTIVE JUROR:  Yes, it could be and

14      maybe very well be in the relationship because the

15      man feels he already owns the woman and he can --

16      it's his right to do what he wants.

17              MS. RAJESWARI:  But does she have a right

18      to say no?

19              PROSPECTIVE JUROR:  Yes, she does.

20              MS. RAJESWARI:  Does everybody here agree

21      with Ms. Basman?  Mr. Wojnowski?

22              PROSPECTIVE JUROR:  I would agree.

23              MS. RAJESWARI:  You would agree with

24      that?

25              PROSPECTIVE JUROR:  Yes.

EF

1              MS. RAJESWARI:  What about you,

2         Mr.  Donadio?

3              PROSPECTIVE JUROR:  Yes.

4              MS. RAJESWARI:  Now if you hear

5         allegations of physical and sexual abuse and if

6         you also hear that the victim of the case did not

7         immediately leave the situation or tell someone,

8         can I have your assurance that if any one of you

9         are picked as a juror you will keep an open mind

10        and listen to the reasons as to why she did that?

11             Can I have that assurance, Mr. Orlando?

12             PROSPECTIVE JUROR:  Yes.

13             MS. RAJESWARI:  And Ms. Fuchs?

14             PROSPECTIVE JUROR:  Yes.

15             MS. RAJESWARI:  What about you,

16        Ms. Valenti?

17             PROSPECTIVE JUROR: Yes.

18             MS. RAJESWARI:  What about Mr. Mani,

19        would you listen to her?

20             PROSPECTIVE JUROR:  Yes.

21             MS. RAJESWARI:  Sir?

22             PROSPECTIVE JUROR:  Yes.

23             MS. RAJESWARI:  What about you,

24        Mr. Donadio?

25             PROSPECTIVE JUROR:  Yes.

1          MS. RAJESWARI:  And you are going to hear

2     from several witnesses in the case.  Justice

3     Rooney read several names.  Some of them are going

4     to be experts, doctors and such.

5          When you hear expert testimony can I have

6     your assurance that you will pay attention to the

7     experts, listen to their expertise and put that

8     together with all the other witnesses who are not

9     experts, who are common or lay witnesses and

10    listen to that and come to a conclusion?  Can you

11    do that for us, sir?

12          PROSPECTIVE JUROR:  Yes.

13          MS. RAJESWARI:  And you also will hear

14    the judge will define the law for you as to what

15    we have to do.  Now the burden of proof rests with

16    the People.  It never shifts.  We have to prove

17    the case because we are the ones who brought the

18    charges against Mr. Rucano.

19          But the judge will tell you what the

20    burden of proof is.  It's proof beyond a

21    reasonable doubt.  It's not proof beyond any and

22    all doubt.  It's not proof beyond a shadow of a

23    doubt.

24          So, Ms. Valenti, if I prove this case to

25    you with Mr. Katchen beyond a reasonable doubt

```
 1              which is what I need to prove, are you going to

 2              hold me to a higher standard because it's a rape

 3              case?

 4                       PROSPECTIVE JUROR:  Reword that please.

 5                       MS. RAJESWARI:  I have to prove the case

 6              beyond a reasonable doubt.  Not beyond a shadow of

 7              a doubt.  So if I prove the case to you beyond a

 8              reasonable doubt, are you going to hold me to a

 9              higher standard just because it's a -- the case

10              involves allegations of rape?

11                       PROSPECTIVE JUROR:  I am going to do what

12              I think is right.  I have to give my opinion what

13              I think it should be.

14                       MS. RAJESWARI:  If the judge gives you a

15              standard to follow would you follow the judge's

16              instructions?

17                       PROSPECTIVE JUROR:  I have no choice.

18                       MS. RAJESWARI:  You have to.  You are

19              going to take an oath.

20                       Does everybody agree if you are picked as

21              a juror would you follow Justice Rooney's

22              instructions on burden of proof beyond a

23              reasonable doubt and not hold the People to a

24              higher standard?  Can I have that assurance?

25                       PROSPECTIVE JUROR:  Yes.
```

```
 1                      MS. RAJESWARI:  What about you, sir?
 2                 PROSPECTIVE JUROR:  I will try.
 3                 MS. RAJESWARI:  You are going to try.
 4                 PROSPECTIVE JUROR:  I have to listen and
 5       find out.
 6                 MS. RAJESWARI:  Of course.  You haven't
 7       listened to anything at this point.
 8                 PROSPECTIVE JUROR:  Right.
 9                 MS. RAJESWARI:  But can I have your
10       assurance you will not hold the People to a much
11       higher burden than what we have to do?
12                 PROSPECTIVE JUROR:  Yes.
13                 MS. RAJESWARI:  Can everybody here give
14       me that assurance?  Is there anybody here who
15       feels that they cannot give me that assurance?
16                 What about you, sir?  Everybody can do
17       that?
18                 PROSPECTIVE JUROR:  Yes.
19                 MS. RAJESWARI:  Now you also will hear
20       that in this particular case there are no injuries
21       to the vaginal area.  Now the Judge will tell you
22       what we need to prove, what we don't need to
23       prove.  If we don't need to prove physical injury
24       to prove forcible rape, if that's the charge the
25       judge gives, will everybody follow that law and
```

1          just hold us to what we need to prove?

2                    Mr. Wojnowski, what about you?

3                    PROSPECTIVE JUROR:  Yes.

4                    MS. RAJESWARI:  There is no problem?

5                    PROSPECTIVE JUROR:  I don't think so.

6                    MS. RAJESWARI:  If there is a problem

7          please tell me.  This is the only chance we get to

8          speak to you.  Once we pick you as a juror it is

9          going to be too late to say, by the way, this is

10         not something that I can be fair and impartial

11         with.

12                   So if there is anything I haven't asked

13         that you think will affect your ability to be fair

14         please stop me.

15                   PROSPECTIVE JUROR:  So you're saying if

16         there is no proof of force it's still rape?

17                   MS. RAJESWARI:  If we are not required to

18         prove force in order to prove rape --

19                   MR. LAMB:  I am going to object.

20                   THE COURT:  I will sustain the objection

21         to the last statement.  You want to rephrase it.

22                   MS. RAJESWARI:  Yes. The judge will

23         define the standard what we need to prove and we

24         will prove that beyond a reasonable doubt.

25                   My question is just based on the nature

1        of the charges that it is rape, will you require

2        additional proof or hold us to a higher standard?

3                    PROSPECTIVE JUROR:   I thought that was

4        the previous question.

5                    MS. RAJESWARI:   Right.  And if he tells

6        you we don't need to prove physical injury to show

7        force will you accept that?

8                    PROSPECTIVE JUROR:   Yes.

9                    MS. RAJESWARI:   Will you accept the law

10       as the judge gives it to you?  That's essentially

11       the question.  Did you have a question?

12                   PROSPECTIVE JUROR:   Physical injury,

13       specific body part or just in general?

14                   MS. RAJESWARI:   In general or specific

15       part as he defines the law.  If he tells we don't

16       need to actually prove physical injury to prove

17       forcible rape, if he gives you the law that way

18       will you follow that?

19                   PROSPECTIVE JUROR:   I think so.

20                   THE COURT:   Anybody here who cannot

21       follow the law as Justice Rooney will define it?

22                   Ms. Basman?

23                   PROSPECTIVE JUROR:   I will discuss this

24       in private.  I don't think I can be fair when I

25       hear rape.

1                    MS. RAJESWARI:  Okay.

2                    Now there are jurors who for a variety of

3          reasons whether it's personal, political,

4          religious, social, have a hesitation to convict no

5          matter what the prosecutor does.

6                    I have a friend who told me no matter

7          what the proof is I can't say guilty, I can't

8          convict, that's my belief.  Well, that is fine.

9          We need to know if anyone here feels this way even

10         if Mr. Katchen and myself prove this case to you

11         beyond a reasonable doubt.

12                   Does anybody here feel, I just can't

13         convict another person, just can't do it?  Anybody

14         here have that?

15                   So if I prove the case beyond a

16         reasonable doubt according to the law that Justice

17         Rooney gives, can I have everybody's assurance

18         that you will convict the defendant?

19                   PROSPECTIVE JUROR:  I would feel bad.

20         What if I was wrong and made the wrong decision

21         sending an innocent --

22                   MS. RAJESWARI:  That's the hesitation to

23         convict.

24                   PROSPECTIVE JUROR:  Yes.  I would feel,

25         yeah, God forbid, I make the wrong decision, I

```
 1              send an innocent person away.  It would bother me.

 2                        MS. RAJESWARI:  Obviously that is going

 3              to go through everybody's mind.  That's not what

 4              anybody wants to do.  But if I prove it to you

 5              beyond a reasonable doubt would you still have a

 6              hesitation to convict?

 7                        PROSPECTIVE JUROR:  I don't know.

 8                        MS. RAJESWARI:  You don't know.  Thank

 9              you for your candor.

10                        Is there anybody here who feels even if

11              she proves it beyond a reasonable doubt, I can't

12              say guilty, I can't convict?  Anybody here feels

13              that way?

14                        And Justice Rooney had already told you

15              punishment or sympathy cannot be part of your

16              evaluation.  You are going to listen to witnesses,

17              you are going to hear evidence, the judge will

18              give you the law.  Just like our juror said, You

19              know what I feel bad.  I sympathize with him or I

20              feel bad.  I don't want somebody to go to jail.  I

21              don't know what he is going to get.

22                        You can't consider punishment or sympathy

23              in your deliberations.

24                        MR. LAMB:  Objection.

25                        THE COURT:  Sustained.  I have been over
```

EF

1          this.

2                     MS. RAJESWARI:  All right.  Everybody

3          here who can give me that assurance that if you

4          are picked as a juror you will listen to the judge

5          and not consider punishment or sympathy?

6                     Ma'am.

7                     PROSPECTIVE JUROR:  Yes.  I am sorry, say

8          it again.

9                     MS. RAJESWARI:  If you are picked as a

10         juror you will not consider punishment or sympathy

11         as the judge will tell you you can't.

12                    PROSPECTIVE JUROR:  I will follow that

13         instruction.

14                    MS. RAJESWARI:  Can you?

15                    PROSPECTIVE JUROR:  Yes.

16                    MS. RAJESWARI:  Sir, what about you?

17                    PROSPECTIVE JUROR:  Yes.

18                    PROSPECTIVE JUROR:  Yes.

19                    MS. RAJESWARI:  Anybody else here?

20                    Ms. Basman?

21                    PROSPECTIVE JUROR:  I cannot be

22         unsympathetic.  I cannot.

23                    MS. RAJESWARI:  Ma'am, same issue?

24                    Ms. Longo?

25                    PROSPECTIVE JUROR:  Yes.

 1                    MS. RAJESWARI:  Ms. Ruzicka?

 2                    PROSPECTIVE JUROR:   Yes.

 3                    MS. RAJESWARI:   Thank you for your

 4          candor.

 5                    Ladies and gentlemen, is there anything

 6          that I have not asked you that you think you want

 7          to speak in private that will affect you being a

 8          fair juror in this case?  You want to speak in

 9          private I understand.

10                    PROSPECTIVE JUROR:   Yes.

11                    MS. RAJESWARI:  Anything that I haven't

12          touched upon?  If there is nothing else I am going

13          thank you for your time and your attention.

14                    THE COURT:  All right, Mr. Lamb.

15                    MR. LAMB:  Good afternoon, ladies and

16          gentlemen.  Perhaps we've been a little unfair

17          with you because we've been asking you questions

18          based on little snippets of the case that we've

19          been feeding to you and then asking you to try to

20          decide how you would answer, how you would handle

21          a situation without really having all of the

22          facts.

23                    So my question to you is can I have the

24          assurance of all of you that you will listen to

25          all of the evidence, the entire case before

 1                arriving at a decision as to the guilt or

 2                innocence?

 3                      In other words, quite frequently what we

 4                just tend to do is when we hear something that

 5                sounds very damning or bad, we draw a conclusion

 6                at that point and start to close our minds

 7                afterward and we don't hear what happens after

 8                which might be something that counteracts what you

 9                originally heard.

10                      So the bottom line of this is that you

11                have to be extremely patient and listen to all of

12                the evidence.  And then after you've heard all of

13                the evidence, you have to endure hearing both of

14                us, both attorneys tell what we think the evidence

15                proved, and then you have the honor of listening

16                to Judge Rooney give you the law, and then and

17                only then can you make a decision as to the guilt

18                or innocence of the defendant.

19                      That's a tall order to fill.  Do I have

20                the assurance that each and every one of you, that

21                you can do that?  That you can keep an open mind

22                no matter how bad some particular part of the case

23                is until you've heard both sides, you've heard

24                everything?  Can I get that assurance from all of

25                you?

```
 1                PROSPECTIVE JUROR:  Personally I could
 2        say it depends on the situation because the type
 3        of person I am, I hear one wrong thing and I jump
 4        the gun.  I am going to be honest.  That's who I
 5        am.
 6                MR. LAMB:  You tend to be that way?
 7                PROSPECTIVE JUROR:  I am being honest.
 8                MR. LAMB:  I thank you for that.  It's
 9        not an easy task to do but it's something that you
10        have to do in order to be a fair juror.
11                You see the proceedings in a trial are
12        the District Attorney goes first.  He must go
13        first.  He has the obligation to prove a case to
14        you so he has the lead.  Somebody always has to
15        lead and then somebody has to follow.  Somebody
16        has to lead in like a dance.  Otherwise you both
17        step all over each other's feet.  Somebody has to
18        lead and somebody as to follow.
19                The DA goes first.  Then the defendant.
20        If you have already closed your mind during the
21        DA's case the defendant doesn't even get a chance
22        to even -- you don't even give him a chance to
23        answer.  So you sort -- it may take days, a day or
24        two during the DA's case so you still have to keep
25        your mind open.  Just something you have to do if
```

```
 1              you are going to be a fair juror.  And it may be a

 2              difficult task to do.

 3                      Do all of you feel up to it?  Anybody who

 4              can't?

 5                      PROSPECTIVE JUROR:  I can't do that.

 6                      MR. LAMB:  Ms. Longo.

 7                      PROSPECTIVE JUROR:  Yes.

 8                      MR. LAMB:  Thank you for your candor.

 9                      Ms. Basman?

10                      PROSPECTIVE JUROR:  In this particular

11              case I couldn't do it.

12                      MR. LAMB:  My client has pled not guilty

13              in the case.  So he is saying through that plea he

14              didn't commit the crimes that he's charged with.

15              DA is accusing him --

16                      MS. RAJESWARI:  Objection.

17                      MR. KATCHEN:  Objection.

18                      THE COURT:  Well, he pled not guilty

19              that's clear.  What's your question?

20                      MR. LAMB:  So we're at odds as to whether

21              the defendant is guilty or innocent.  My client

22              says he's innocent.  They say he's guilty.  But

23              there is one thing I think both of us agree on in

24              this particular case and that is that there was a

25              relationship between the complainant and the
```

```
 1                defendant.  A living relationship for a number of
 2                months.  But they lived together in a romantic
 3                relationship for a number of months.
 4                        And the evidence will show I think
 5                uncontroverted on both sides that this
 6                relationship was a very dysfunctional
 7                relationship.  It was just a relationship with
 8                disaster written all over it.
 9                        MR. KATCHEN:  Objection.
10                        THE COURT:  You are really making an
11                argument now.  What's the question?
12                        MR. LAMB:  Does anybody here feel as if
13                they might be affected by this based on their own
14                experiences, their own past experiences of perhaps
15                a painful or traumatic relationship that they
16                might have had?
17                        We all probably have had a relationship
18                or two that didn't work in our lives.  But is
19                there anybody here who has had a relationship that
20                was so painful, so traumatic that they don't feel
21                that they could in all fairness be fair to both
22                sides in this case?
23                        (Hands raised.)
24                        MR. LAMB:  Ms. Basman and Mr. Guido.
25                        PROSPECTIVE JUROR:  Yes.
```

EF

 1            MR. LAMB:  And you both feel that your

 2       past, without going into detail, you had a

 3       relationship that was very painful and would make

 4       it very difficult for you to listen objectively to

 5       another person's dysfunctional relations or bad

 6       relationship; is that correct?

 7            Thank you for your candor.

 8            Now you've heard the judge indicate that

 9       in a criminal case the defendant does not have to

10       testify and if he chooses not to testify that you

11       are not to hold that against him because he didn't

12       have to prove anything.  The burden of proof is

13       not on him, it's on the DA.

14            If he chooses not to testify do I have

15       the assurance of all of you that you will follow

16       the judge's ruling and not hold it against him and

17       not say, oh, he must be hiding something, he must

18       be guilty because an innocent person would speak

19       out?  Is there anybody here that feels that an

20       innocent person should speak out and should

21       testify?

22            Ms. Ruzicka and Villafana. You both feel

23       an innocent person should speak out?

24            PROSPECTIVE JUROR:  Absolutely.

25            MR. LAMB:  You all feel that way?

1                    PROSPECTIVE JUROR:  Yes.

2                    PROSPECTIVE JUROR:  It makes the case

3         harder because it's a relationship.

4                    MR. LAMB:  If the judge instructs you as

5         a matter of law that you must not hold it against

6         the defendant if he chooses not to exercise his

7         right to testify, if he -- in other words, if he

8         feels that the DA has not proven their case and so

9         why should he testify, you would still hold that

10        against him, still feel he should get on the stand

11        and deny the charges?

12                   PROSPECTIVE JUROR:  Ms. Villafana.

13        Absolutely.

14                   PROSPECTIVE JUROR:  I would think he

15        would want to.  It's a difficult situation where

16        you have two people involved and there are a lot

17        of issues between them.  How would you understand?

18                   MR. LAMB:  You understand this is a

19        factual issue superimposed on a legal issue.  This

20        is -- people lived a real life and things really

21        happened.  But we are now in a courtroom which is

22        kind of an unofficial thing and artificial thing

23        and there are rules in this courtroom.  Can you

24        accept that and do you accept one of the rules is

25        that the People have the burden of proving guilt

```
 1            to you.  Would you accept that if the People if

 2            it's our position as the defense that the People

 3            have failed to do that, that they have not proven

 4            that he is guilty, why should he bother to

 5            testify?  And the judge will instruct you as to

 6            that. The judge will tell you.

 7                   THE COURT:  I wouldn't give them the

 8            instruction the way you just phrased it.  The law

 9            is quite clear if the defendant does not testify

10            in a criminal trial it is not factor from which

11            any inference unfavorable to the defendant may be

12            drawn.  Is there anybody who cannot accept that

13            fundamental principle in our criminal law?

14                   MR. LAMB:  You ladies in the back there.

15            Maybe it was the way I put it.

16                   PROSPECTIVE JUROR:  We would have to

17            accept it because it's the written law.

18                   PROSPECTIVE JUROR:  Thats' not how I

19            feel.

20                   PROSPECTIVE JUROR:  If you're innocent

21            you want your name cleared and you want your story

22            heard, you would speak out.  But, yeah, obviously

23            if you're sworn as a juror you have to follow the

24            law of the land.

25                   PROSPECTIVE JUROR:  But it's difficult.
```

1              PROSPECTIVE JUROR:  But that's difficult.

2              MR. LAMB:  You would do it very

3       reluctantly?

4              PROSPECTIVE JUROR:  I would probably say

5       reluctantly.  If you are innocent you want your

6       story heard and you want your name cleared.

7              MR. LAMB:  Okay.

8              PROSPECTIVE JUROR:  And you would put

9       yourself out there to get it known, I would think.

10      I would.

11             MR. LAMB:  You feel the same way?

12             PROSPECTIVE JUROR:  It would be what the

13      evidence shows.

14             MR. LAMB:  How about the rest of you?

15             PROSPECTIVE JUROR:  You've made the

16      statement about a relationship.  If they're doing

17      this through her side of the relationship, I would

18      think that he should be able even if he's innocent

19      tell his side of the story.

20             MR. LAMB:  What if we feel --

21             THE COURT:  Would you step up just a

22      moment please?

23             (Discussion held off the record at the

24      bench.)

25             THE COURT:  Go ahead.

1              MR. LAMB:  Let's try the flip side of

2       that.  If the defendant does testify, if he

3       chooses to testify, will you listen to him as

4       carefully and as patiently and as carefully as you

5       did every other witness, or would you just close

6       your mind, the defendant he has something to lose

7       or I didn't believe a word he says?  Do I have the

8       assurance of every one of you that you will listen

9       to him carefully if he does choose to testify and

10      give him the same -- his testimony the same degree

11      of consideration as you do every other witness?

12              PROSPECTIVE JUROR:  I would be too

13      sympathetic to the woman.

14              MR. LAMB:  To the woman?

15              PROSPECTIVE JUROR:  To the woman.

16              MR. LAMB:  That's fair enough.

17              PROSPECTIVE JUROR:  Ms. Valenti.  Like I

18      said before I am not open-minded.  I'm being

19      honest.

20              MR. LAMB:  Well, I thank you for your

21      time, ladies and gentlemen.

22              THE COURT:  Would you step up just a

23      moment again please?

24              (Discussion held off the record at the

25      bench.)

```
 1              THE COURT:  I am going to give the
 2     lawyers a few minutes to go over their notes and
 3     step to the side.
 4              MR. KATCHEN:  I believe one of the
 5     prospective jurors wanted to speak to us.
 6              THE COURT:  Ms. Basman, you can come
 7     right across here and we will talk at the sidebar.
 8              (The following took place at the
 9     sidebar:)
10              (Prospective Juror Number 1 approached.)
11              THE COURT:  Okay.  We are at the sidebar
12     with Ms. Basman, the lawyers and the defendant.
13              What did you want to say?
14              PROSPECTIVE JUROR:  26 years ago when I
15     was thirteen back in Russia I spent a month with
16     my mother and my uncle and my uncle molested me.
17     I was too afraid, too upset.  My mom, I didn't say
18     anything.  Now I know what rape is.
19              THE COURT:  Thank you.  Anything else?
20     Any questions?
21              MR. LAMB:  No.
22              MS. RAJESWARI:  No.
23              THE COURT:  Thank you, Ms. Basman.  I
24     will let you resume your seat.
25              When you're all ready let me know.
```

EF

1              (The following took place in open court:)

2              THE COURT:  I am going to give the

3         lawyers a few minutes.  If you want to step out or

4         you can stay, don't discuss the case with each

5         other or anyone else.

6              (Short recess taken.)

7              (The following took place at the

8         sidebar:)

9              THE COURT:  We're at a sidebar with the

10        defendant and the lawyers.  For challenges it

11        seems to me there are a number of challenges,

12        cause challenges.  If you want to consent and you

13        don't want to argue it out, just say so.  We will

14        go one at a time.

15             Number one, Ms. Basman.  Cause People?

16             MR. KATCHEN:  Yes.

17             THE COURT:  Mr. Lamb, you consent?

18             MR. LAMB:  Yes.

19             THE COURT:  On consent.

20             Ms. Longo.  Cause People?

21             MR. KATCHEN:  Yes.

22             THE COURT:  Mr. Lamb?

23             MR. LAMB:  Yes.

24             THE COURT:  Cause on consent.

25             Number 3, Ms. Delapena.  Cause People?

1          MR. KATCHEN:  Yes.

2          THE COURT:  Mr. Lamb?

3          MR. LAMB:  Yes.

4          THE COURT:  For cause on consent.

5          Number 4, Mr. Dambrosio.  Cause People?

6          MR. KATCHEN:  Yes.

7          THE COURT:  Mr. Lamb?

8          MR. LAMB:  Yes.

9          THE COURT:  For cause on consent.

10         Number 5, Mr. Mani.  Cause People?

11         MS. RAJESWARI:  Yes.  His English, I

12    don't think he understands.  We couldn't

13    understand a word he was saying.  There was a

14    serious language issue.

15         MR. KATCHEN:  Based on the voir dire

16    there doesn't seem any possible way he would be

17    able to deliberate with other jurors.  He wouldn't

18    be responsive to questions.

19         MS. RAJESWARI:  What anybody said.

20         THE COURT:  Mr. Lamb?

21         MR. LAMB:  I would oppose that.  I

22    thought he answered questions.

23         THE COURT:  We'll have to get him over.

24         MS. RAJESWARI:  He didn't say anything.

25         THE COURT:  Mr. Mani, could you step over

```
1                    here a moment please?

2                           Wayne, can we get him around here please?

3                           (Prospective Juror Number 5 approached

4                    the sidebar.)

5                           THE COURT:  Mr. Mani, we just wanted to

6                    ask you about your English.  Have you understood?

7                           PROSPECTIVE JUROR:  Yes.  I understand

8                    some.

9                           THE COURT:  I beg your pardon?

10                          PROSPECTIVE JUROR:  Some words.

11                          THE COURT:  Some words you have trouble

12                   with?

13                          PROSPECTIVE JUROR:  Yes.

14                          THE COURT:  How much do you think you've

15                   understood if you could give me a percentage?

16                   Half of it, three quarters of it? What do you

17                   think?

18                          How much do you think you've understood

19                   of what we've said today?  Most of it, some of it?

20                          PROSPECTIVE JUROR:  Some of it.

21                          THE COURT:  Some of it.  Okay.  Any

22                   questions?

23                          MR. LAMB:  No.

24                          THE COURT:  Thank you, sir.  I will let

25                   you resume your seat.  Thank you.
```

EF

```
1               MR. LAMB:  I rest your case.

2               THE COURT:  You consent?

3               MR. LAMB:  Yes.

4               THE COURT:  For cause on consent.

5               Ms. Valenti.  Cause People?

6               MR. LAMB:  Clearly she couldn't be fair.

7               MR. KATCHEN:  We are not going to argue

8          with that.

9               THE COURT:  This is a cause challenge by

10         the People?

11              MR. KATCHEN:  Consent.

12              THE COURT:  You know we're talking with

13         Ms. Valenti.

14              MR. KATCHEN:  Yes.

15              MR. LAMB:  Yes.

16              THE COURT:  Cause on consent?

17              MR. LAMB:  Yes.

18              THE COURT:  Mr. Horlevein.  Cause People?

19              MS. RAJESWARI:  No.

20              THE COURT:  Cause defense?

21              MR. LAMB:  Yes.

22              THE COURT:  People are consenting or not?

23              MS. RAJESWARI:  We'll consent.

24              THE COURT:  For cause on consent.

25              Next is Mr. Orlando.  Cause People?
```

EF

1                    MS. RAJESWARI:  No.

2                    THE COURT:  Defense?

3                    MR. LAMB:  Yes.  I just looked at him

4          what was your response?

5                    MS. RAJESWARI:  No cause.

6                    MR. LAMB:  No cause.

7                    THE COURT:  Peremptory People?

8                    MS. RAJESWARI:  No.

9                    THE COURT:  Defense?

10                   MR. LAMB:  No.

11                   THE COURT:  So, Carmine, that's Juror

12         Number 6.

13                   THE CLERK:  Yes, sir.

14                   THE COURT:  Next is Ms. Ruzicka.  Cause

15         People?

16                   MS. RAJESWARI:  Yes.

17                   THE COURT:  Mr. Lamb?

18                   MR. LAMB:  Consent.

19                   THE COURT:  For cause on consent.

20                   Next is Ms. Villafana.  Cause People?

21                   MR. KATCHEN:  Yes.

22                   MR. LAMB:  Consent.

23                   THE COURT:  For cause on consent.

24                   Next is Mr. Donadio.  Cause People?

25                   MS. RAJESWARI:  No.

```
 1                   MR. KATCHEN:  No.

 2                   THE COURT:  Cause?

 3                   MR. LAMB:  No.

 4                   THE COURT:  Peremptory People?

 5                   MS. RAJESWARI:  No.

 6                   THE COURT:  Defense?

 7                   MR. LAMB:  Yes.

 8                   THE COURT:  Next Mr. Guido.  Cause

 9         People?

10                   MR. KATCHEN:  Absolutely.

11                   MS. RAJESWARI:  Yes.

12                   THE COURT:  Defense?

13                   MR. LAMB:  Consent.

14                   THE COURT:  For cause on consent.

15                   Wojnowski.  Cause People?

16                   MS. RAJESWARI:  No.

17                   MR. LAMB:  Yes.  He continued to indicate

18         that he would insist that the defendant testify.

19                   THE COURT:  People?

20                   MS. RAJESWARI:  We'll consent.

21                   THE COURT:  For cause on consent.

22                   Next is Mr. Derleth.  Cause People?

23                   MS. RAJESWARI:  Yes.

24                   THE COURT:  Mr. Lamb?

25                   MR. LAMB:  Yes.
```

```
 1                  THE COURT:  For cause on consent.  And
 2         last is Ms. Fuchs.  Cause People?
 3                  MR. KATCHEN:  No.
 4                  THE COURT:  Defense?
 5                  MR. LAMB:  No.
 6                  THE COURT:  Peremptory?
 7                  MS. RAJESWARI:  No.
 8                  THE COURT:  Defense?
 9                  MR. LAMB:  Yes.
10                  THE COURT:  For the record we will also
11         excuse Number 15, Ms. Totaram.
12                  Carmine says we have 22 bodies left and
13         that's all we can get today.  I can get another
14         fifty tomorrow.  You want to do this at two or you
15         want me to do my part now or break for lunch?  I
16         don't care.
17                  MR. LAMB:  However you want to do it.
18                  THE COURT:  I will do my voir dire.  Then
19         we'll break for lunch so you can voir dire.
20         We're going to do 22 now.
21                  THE CLERK:  People used three, defense
22         used six.
23                  MR. LAMB:  That's the total out of both
24         rounds?
25                  THE COURT:  Right. Listen you still want
```

```
 1              to keep the sworns around?  Why don't we tell them
 2              to come back tomorrow?
 3                        MR. LAMB:  Okay.
 4                        THE COURT:  You consent to that?
 5                        MR. LAMB:  Okay.
 6                        THE COURT:  What I will do is do my voir
 7              dire and then I will send the panel out and tell
 8              the sworns they can come back tomorrow.
 9                        (The following took place in open court:)
10                        THE CLERK:  The following juror has been
11              selected for this case:  Edmund Orlando, you are
12              Juror Number 6.  Just remain seated.  Only
13              Mr. Orlando remain seated.
14                        Everybody else please stand, go out in
15              the hallway.  You have to return to central jury
16              for your next trial.  Thank you.
17                        (All unselected prospective jurors left
18              the courtroom and returned to central jury.)
19                        THE CLERK:  Mr. Orlando, just take the
20              jury box, remain standing, raise your right hand.
21                        Do you solemnly swear that you will try
22              this action in a just and impartial manner and to
23              the best of your judgment render a verdict
24              according to the law and the evidence so help you
25              God?
```

1            JUROR NO. SIX:  I do.

2            THE CLERK:    Thank you.

3            THE COURT:   Mr. Orlando, you can have a

4       seat in the audience with the sworns.

5            THE CLERK:  Juror Number 6 can have a

6       seat with the other five.

7            THE COURT:  I am going to do this at

8       2 o'clock.

9            MS. RAJESWARI:  Yes, your Honor.

10           MR. LAMB:  Okay.

11           THE COURT:  I understand there are 22

12      people left we haven't talked to.  We are going to

13      do all of you in one round so we can finish up

14      with this panel and it's about 12:35.  This is

15      really not enough time before lunch to get into

16      this.  We are going to break until two and at two

17      we'll interview the remaining 22 people and we'll

18      know your faith well before the end of the

19      afternoon.  Thank you very much for your patience

20      and ask you all to step out.

21           Please go to central jury at two o'clock

22      and an officer will bring you over.  I am going to

23      ask our sworn jurors to stay with us for a minute.

24           (Prospective jurors left the courtroom.)

25           THE COURT:  Counsels, can you step up for

1        one moment please?

2                    (Discussion held off the record at the

3        bench.)

4                    THE COURT:  We've just been deciding

5        whether to keep you around longer.  Things are

6        going a little slower than we thought they would.

7        We're going to continue selection this afternoon

8        but the lawyers and I have decided there is really

9        no need to keep you around this afternoon because

10       we're not going to get started until tomorrow.

11                   We'd like you to be back tomorrow in the

12       jury room and I am going to say noon.  I think by

13       then we should have a jury hopefully and we'll

14       start up then.  So thanks very much for your

15       patience and attention.  I'm sorry for the delay

16       but it's not going to hold us up in terms of our

17       initial schedule.

18                   Let me remind you before you leave you

19       must not discuss the case with each other or

20       anyone else.  You must not speak with anyone prior

21       to being discharged about taking anything, any

22       payment or benefit in return for supplying

23       information concerning this trial.  Report

24       directly to me please any attempt to your

25       knowledge involving an attempt by anyone to

1           improperly influence you or any member of the

2           jury.  Do not visit or view the premise where any

3           charged crime was allegedly committed.  I don't

4           believe you've heard a location yet.  You will.

5                   Don't read, view or listen to any media

6           accounts involving this case should be there be

7           any.  That includes the Internet.  Don't research

8           any fact, issue or law.  Don't form any opinion.

9           Keep an open mind until all the evidence is in and

10          you begin your deliberations.

11                  Thank you again.  Have a good afternoon.

12          I don't think Mr. Orlando has seen the jury room.

13                  PROSPECTIVE JUROR:  I know where it is.

14                  THE COURT:  You were here before.  So

15          we'll see you again at noon.  Have a good day.

16                  (The sworn jurors left the courtroom.)

17                  THE COURT:  The sworn jurors have left.

18          Do you want to make a record?

19                  MR. LAMB:  Yes, Judge.  As the Court had

20          indicated we've had some discussions in the past

21          sessions regarding handwriting expert with regard

22          to an alleged diary in possession of the DA and

23          the defendant has indicated to me that he has

24          secured a handwriting expert.

25                  He has provided me with a copy of the CV

```
 1              and I have in turn provided a copy of the CV to

 2              the DA.

 3                       It is your request that prior -- that

 4              this expert be allowed to examine the diary prior

 5              to the testimony of the complaining witness

 6              because it pertains to very crucial portions.

 7                       THE COURT:  When do you anticipate

 8              calling the defendant?

 9                       MR. KATCHEN:  Either tomorrow or Monday

10              depending when we start.

11                       MR. LAMB:  We're trying to make every

12              effort to get this expert in tomorrow.

13                       THE COURT:  Okay.

14                       MR. LAMB:  So I would hope that we could

15              do this:  That the People would allow the expert

16              to examine the diary and what he has to do before

17              the complaining witness is called.

18                       THE COURT:  All right.  We should be able

19              to work that out.

20                       MS. RAJESWARI:  Yes.

21                       THE COURT:  Okay.  This is an expert who

22              will go to the DA's office?

23                       THE DEFENDANT:  Yes, your Honor, he will.

24                       THE COURT:  Good.

25                       MR. LAMB:  Thank you.
```

```
 1                     THE COURT:  2 o'clock.

 2                     MS. RAJESWARI:  Thank you.

 3                     THE CLERK:   Court's in recess for lunch,

 4           two o'clock.

 5                     (Court stood in recess for lunch.)

 6                     AFTERNOON SESSION.

 7                     THE CLERK:  Case on trial continues.  All

 8           parties present.

 9                     THE COURT:  Sworn Juror Number 2 told the

10           sergeant he has some problems.

11                     MR. LAMB:  I'm sorry?

12                     THE COURT:  Sworn Juror Number 2 has told

13           the sergeant he has some family problems.  So he's

14           here.  Let's bring him in and see what's on his

15           mind.

16                     THE CLERK:   Matthew Santoro.

17                     (Short pause in proceedings.)

18                     COURT OFFICER:  Are you ready?

19                     THE COURT:  Yes.

20                     (Juror Number 2 entered courtroom.)

21                     THE SERGEANT:  Juror Number 2 entering.

22                     THE COURT:  Mr. Santoro, the sergeant

23           says you wanted to speak to us.  What's on your

24           mind?

25                     JUROR NO. 2:  I was under the
```

1              understanding --

2                      THE COURT:  I beg your pardon?

3                      JUROR NO. 2:  I had a misunderstanding

4              what went on yesterday with the selection of the

5              jury.  I didn't know that I was permanently

6              selected to sit and it's not going to work out for

7              me to be able to stay the length of the case

8              because financially I can't afford to stay here

9              for the remainder of the case.

10                     THE COURT:  What do you do for a living?

11                     JUROR NO. 2:  I am a longshoreman.

12                     THE COURT:  Are they paying you while

13             you're here?

14                     JUROR NO. 2:  No.  They did the past two

15             days but they are not going to be able to pay me

16             the remainder of the trial.

17                     THE COURT:  You want to step up?

18                     (Discussion held off the record at the

19             bench.)

20                     THE COURT:  Mr. Santoro, could you just

21             step out of the courtroom?  We'll make a brief

22             record and we'll bring you back in.

23                     (Juror Number 2 left the courtroom.)

24                     THE COURT:  Okay, the juror has left the

25             courtroom.  How should we proceed?

```
 1                     MR. LAMB:  Judge, it is my feeling that
 2            based on what the juror said his attention --
 3            there is a danger his attention might very well be
 4            on his ability to pay bills rather than what's
 5            transpiring in the courtroom.  I would consent to
 6            excusing him and my client is agreeing with that.
 7                     THE COURT:  Is that right, Mr. Rucano?
 8                     THE DEFENDANT:  I have no problem with
 9            that.
10                     MR. KATCHEN:  People consent as well.
11                     THE COURT:  Bring him back in and we'll
12            excuse him.
13                     THE SERGEANT:  Sworn Juror Number 2
14            reentering the courtroom.
15                     THE COURT:  Okay.  Mr. Santoro, the
16            lawyers have consented to excusing you from this
17            matter.  You are excused.  I guess he goes back to
18            central jury.  You have to go back to central jury
19            to check out.
20                     JUROR NO. 2:  Thank you.
21                     THE COURT:  I think they are going to
22            give you his card.  They got it.
23                     JUROR NO. 2:  Thank you.
24                     THE COURT:  He was Number 2.  Shall we
25            simply move numbers three, four, five and six up a
```

EF

1          seat?

2                    MR. KATCHEN:  That's fine.

3                    MR. LAMB:  Yes, Judge.

4                    THE COURT:  So, in other words, three

5          becomes two, four becomes three and so on.  Let's

6          get the panel over here and finish up with this

7          group.

8                    THE CLERK:  22 jurors.

9                    THE COURT:  I can't get anymore this

10         afternoon.  It's tomorrow?

11                   THE CLERK:  Yes, Judge.

12                   (Pause in proceedings.)

13                   MR. LAMB:  Judge, can we approach

14         briefly?

15                   THE COURT:  Sure.

16                   (Discussion held off the record at the

17         bench.)

18                   THE COURT OFFICER:  Ready for the panel?

19                   THE COURT:  Yes.

20                   (Prospective jurors entered the

21         courtroom.)

22                   THE CLERK:  As your name is called take

23         your belongings and have a seat as directed.

24                   Seat one, Kathy Ortiz.  O R T I Z.

25                   Seat two, Michael Palazzolo.

EF

1           P A L A Z Z O L O.

2                       Three, Joseph Nochella.  N O C H E L L A.

3                       Four, Nadine Brown.  B R O W N.

4                       Nadine Brown.

5                       No response, Judge, we'll call across the

6           street.

7                       THE COURT:  All right.

8                       THE CLERK:  Seat four, Richard Nelson.

9           N E L S O N.

10                      Seat five, Lynn Ann Zakrzewski.

11          Z A K R Z E W S K I.

12                      Six, James Aymil.  A Y M I L.

13                      Seven, Christopher Nieves.  N I E V E S.

14                      Seat eight, Richard Agnello.

15          A G N E L L O.

16                      Seat nine, Robert Mirabella.

17          M I R A B E L L A.

18                      Ten, Debra McCarter.  M C C A R T E R.

19                      Eleven, Michael Philip.  P H I L I P.

20                      Twelve, George Finger.  F I N G E R.

21                      Thirteen, Dara Keating.  K E A T I N G.

22                      Fourteen, Maria Huertas.  H U E R T A S.

23                      Fifteen, Maryann Perry.  P E R R Y.

24                      Sixteen, Robert Shu.  S H U.

25                      Seat seventeen, will be in the front row

```
 1            closest to the windows.  Step up, Preston Sharkey.
 2            S H A R K E Y.  That's seat 17.
 3                      Eighteen, is Vanna Stoyko.  S T O Y K O.
 4                      Seat nineteen, step up Angela Caleca.
 5            C A L E C A.
 6                      Twenty, Jeffrey Sclafani S C L A F A N I.
 7            Sclafani.
 8                      Twenty-one, Robert Taylor. T A Y L O R.
 9                      Seat twenty-two, Ronald Lewis L E W I S.
10                      Twenty-two prospective jurors seated.
11                      THE COURT:  I will ask those of you in
12            the front row to keep your voice up so we can all
13            hear you.  And I will just launch into this.
14                      Do any of you know the lawyers or the
15            defendant?
16                      Ms. Keating?
17                      PROSPECTIVE JUROR:  Yes.
18                      THE COURT:  Who do you know?
19                      PROSPECTIVE JUROR:  I saw ADA a couple of
20            times in his office.
21                      THE COURT:  Excuse me?
22                      PROSPECTIVE JUROR:  I seen ADA in their
23            office a couple of times.
24                      THE COURT:  These two?
25                      PROSPECTIVE JUROR:  Yes.
```

```
 1                 THE COURT:  Job related in connection

 2          with another case.

 3                 PROSPECTIVE JUROR:  Cases that I had.

 4                 THE COURT:  Okay.

 5                 You know what we're talking about,

 6          counsellors?

 7                 PROSPECTIVE JUROR:  No.  I am a police

 8          officer.

 9                 THE COURT:  Oh, I see.

10                 PROSPECTIVE JUROR:  So every time I have

11          a case I go to ADA's.

12                 THE COURT:  If you were selected as a

13          juror in this case could you be fair and

14          impartial, fair to both sides?

15                 PROSPECTIVE JUROR:  Yes.

16                 THE COURT:  I will let the lawyers talk

17          to you further about that if you want to.

18                 Anybody else?

19                 I read a list of potential witnesses

20          earlier in this case.  And the question is did any

21          of you recognize any of those names?

22                 Any of you want me to read the names

23          again?

24                 Do any of you think you know anything

25          about this case apart from what you've heard in
```

```
 1            court here yesterday and today?
 2                    Are any of you or anyone close to you
 3            involved in law enforcement in any capacity?  I
 4            will talk with the jury box and then I will go out
 5            to the front row.
 6                    Mr. Palazzolo, who do you know?
 7                    PROSPECTIVE JUROR:  I have a lot of
 8            friends that are newly cops and one of my really,
 9            really close friends is.
10                    THE COURT:  New cops is that what you
11            said?
12                    PROSPECTIVE JUROR:  Yes.
13                    THE COURT:  Anything about those
14            friendships that would have any bearing in your
15            mind in terms of being fair?
16                    PROSPECTIVE JUROR:  No.
17                    THE COURT:  Front row.
18                    Mr. Aymil.
19                    PROSPECTIVE JUROR:  Yes, several friends.
20                    THE COURT:  Same question.  Is that going
21            to have any bearing here in terms of your ability
22            to be fair?
23                    PROSPECTIVE JUROR:  No, sir.
24                    THE COURT:  Thank you.
25                    Anyone else in the front row?
```

EF

```
 1                    Ms. Zakrzewski?
 2                    PROSPECTIVE JUROR:  My brother-in-law is
 3              a detective.
 4                    THE COURT:  Is it detective, New York
 5              City police detective?  Is that going to have any
 6              affect on your ability to be fair?
 7                    PROSPECTIVE JUROR:  No.
 8                    THE COURT:  Ms. Ortiz.
 9                    PROSPECTIVE JUROR:  Neighbors, cousins
10              all detectives and one judge good friend in
11              Manhattan Supreme Court.
12                    THE COURT:  Who is the judge?
13                    PROSPECTIVE JUROR:  Susan Cohan.
14                    THE COURT:  Do you think is there
15              anything about these friendships, relationships
16              that would affect your ability to be fair?
17                    PROSPECTIVE JUROR:  No.
18                    THE COURT:  Back row.  One, two, three,
19              four.  Mr. Finger.
20                    PROSPECTIVE JUROR:  My stepson is a
21              police officer.
22                    THE COURT:  Is that going to have any
23              affect on your ability to be a fair juror?
24                    PROSPECTIVE JUROR:  No.
25                    THE COURT:  Thank you.
```

EF

```
 1                    Ms. Keating, you are in law enforcement.

 2          How long have you been a police officer?

 3                    PROSPECTIVE JUROR:  Six years.  My

 4          husband is also a police officer.

 5                    THE COURT:  Your husband also.  You think

 6          you could be a fair juror in a criminal case, fair

 7          to both sides?

 8                    PROSPECTIVE JUROR:  I am not sure.

 9                    THE COURT:  You are not sure.

10          Mr. Shu.

11                    PROSPECTIVE JUROR:  I know Mr. Humel.  He

12          was the top ranked in the NYPD newest attorney.

13                    THE COURT:  Newest attorney?

14                    PROSPECTIVE JUROR:  Yes.

15                    THE COURT:  Is your friendship with this

16          going to affect your ability to be a fair juror?

17                    PROSPECTIVE JUROR:  No.

18                    THE COURT:  Could you be fair?

19                    PROSPECTIVE JUROR:  Yes.

20                    THE COURT:  Anyone else in the jury box?

21          Did you raise your hand?

22                    PROSPECTIVE JUROR:  Yes.  Maria Huertas.

23          My sister-in-law is in enforcement and close

24          friend and family.

25                    THE COURT:  What does your sister do in
```

1              law enforcement?

2                       PROSPECTIVE JUROR:  She is a school

3              safety and now she is taking the test for

4              policeman.

5                       THE COURT:  Is there anything about her

6              job and your friend's jobs that would affect your

7              ability to be fair?

8                       PROSPECTIVE JUROR:  I don't think so.

9                       THE COURT:  Thank you.

10                      Did I get everyone in the jury box?

11                      Let me go out to the audience.  I think

12             there were some hands for law enforcement.

13                      Ms. Caleca.

14                      PROSPECTIVE JUROR:  Yes.  My cousin was

15             deputy warden in Riker's.

16                      THE COURT:  Okay.  Is that going to have

17             any affect on your ability to be a fair juror?

18                      PROSPECTIVE JUROR:  No.

19                      THE COURT:  Thank you.

20                      Was there more or did I cut you off?

21                      Mr. Sclafani.

22                      PROSPECTIVE JUROR:  Yes.  My cousin is a

23             lieutenant in NYPD.  I have a couple of friends

24             who work in corrections in Riker's.

25                      THE COURT:  Same question.  Will these

```
 1              friendships, relationships have any affect on your

 2              ability to be fair?

 3                        PROSPECTIVE JUROR:  No.

 4                        THE COURT:  Thank you.

 5                        Mr. Taylor, did you have your hand up?

 6                        PROSPECTIVE JUROR:  Yes, I have an uncle

 7              who is a retired correction officer.

 8                        THE COURT:  Would that affect your

 9              ability to be a fair juror?

10                        PROSPECTIVE JUROR:  No, Judge.

11                        THE COURT:  Thank you.  Did I get

12              everybody?

13                        Next question, are any of you or anyone

14              close to you involved in the legal field in any

15              way, shape or form, lawyer, paralegal, employee,

16              prosecutor's office?

17                        Ms. Perry?

18                        PROSPECTIVE JUROR:  My sister,

19              brother-in-law and nephew are lawyers in Staten

20              Island.

21                        THE COURT:  Do any of them practice in

22              criminal law to your knowledge?

23                        PROSPECTIVE JUROR:  Very, very little.

24                        THE COURT:  Have you ever discussed cases

25              with them?
```

```
 1                    PROSPECTIVE JUROR:  No.

 2                    THE COURT:  Is there anything about these

 3           relationships that would prevent you from being

 4           fair?

 5                    PROSPECTIVE JUROR:  No.

 6                    THE COURT:  Thank you.  Did I see another

 7           hand in the jury box?

 8                    Ms. Huertas.

 9                    PROSPECTIVE JUROR:  My brother,

10           paralegal.

11                    THE COURT:  Does he work for a law firm?

12                    PROSPECTIVE JUROR:  Yes.

13                    THE COURT:  Do you know if the firm

14           practices any criminal law?

15                    PROSPECTIVE JUROR:  No, I don't think so.

16                    THE COURT:  Anything about that that will

17           affect your ability to be a fair juror?

18                    PROSPECTIVE JUROR:  Not sure.

19                    THE COURT:  Not sure.  How so?  What is

20           it?

21                    PROSPECTIVE JUROR:  We go through a lot

22           of conversations.  I hope it doesn't.  I don't

23           think it would.

24                    THE COURT:  You don't think it would,

25           okay.
```

```
 1                    Anyone else in the jury box on this

 2         question?

 3                    Anybody in the front row?

 4                    Have any of you or anyone close to you to

 5         your knowledge ever been the victim of a crime?

 6                    Ms. Caleca, can you tell me a little bit

 7         it?

 8                    PROSPECTIVE JUROR:  My father was held up

 9         in his own garage and my husband and I were tried

10         to get into the car with a gun but there was no

11         case because he ran away and my father didn't

12         recognize him because he had covered his face.

13                    THE COURT:  How long ago were these

14         events?

15                    PROSPECTIVE JUROR:  Quite a few years.

16                    THE COURT:  Anything about any of these

17         events that would prevent you from being a fair

18         juror in this case?

19                    PROSPECTIVE JUROR:  No.

20                    THE COURT:  Thank you.

21                    Anyone else in the front row?

22                    Let me get the back row.

23                    Ms. Huertas.

24                    PROSPECTIVE JUROR:  I was robbed inside

25         the apartment when I was sleeping and I woke up to
```

```
 1            the robbery.  And they fled as I came out of the
 2            bedroom.
 3                    THE COURT:  Was anybody caught, arrested?
 4                    PROSPECTIVE JUROR:  Not to my knowledge,
 5            no.
 6                    THE COURT:  How long ago was this?
 7                    PROSPECTIVE JUROR:  About ten years ago.
 8                    THE COURT:  Would this have any affect on
 9            your ability to be fair in this case?
10                    PROSPECTIVE JUROR:  I don't know.  I have
11            a lot of anxiety from that.
12                    THE COURT:  I can imagine.  And obviously
13            it's something that's going to be with you forever
14            in your mind.  But the question is would it affect
15            your ability to be fair as a juror in this case?
16                    PROSPECTIVE JUROR:  No.
17                    THE COURT:  Okay.  Thank you.
18                    Other hands on this question.
19                    Ms. Ortiz.
20                    PROSPECTIVE JUROR:  My sister.  Domestic
21            violence well over twenty years ago.
22                    THE COURT:  Was there an arrest in the
23            case?
24                    PROSPECTIVE JUROR:  No.
25                    THE COURT:  Anything about that that
```

```
 1              would affect your ability to be a fair juror here?

 2                        PROSPECTIVE JUROR:  I would hope not.

 3                        THE COURT:  I am supposed to try to push

 4              people if I can to get an unequivocal response.

 5                        PROSPECTIVE JUROR:  I am not sure.

 6                        THE COURT:  You are not sure.  I will

 7              leave you alone.  If the lawyers want to talk to

 8              you they can do that.

 9                        Other hands.  Mr. Shu.

10                        PROSPECTIVE JUROR:  Yes.  My wife was

11              robbed three years ago and I was robbed five years

12              ago and also last when we were on vacation our

13              house was broken into and we lost a lot.

14                        THE COURT:  Okay.  Anybody arrested on

15              any of those occasions?

16                        PROSPECTIVE JURORS:  Not yet.

17                        THE COURT:  Not yet.  Is there anything

18              about any or all of these events that would

19              prevent you from being a fair juror in this case?

20                        PROSPECTIVE JUROR:  I would try my best.

21                        THE COURT:  Could you assure us if

22              selected you would be fair and impartial?

23                        PROSPECTIVE JUROR:  Yes.

24                        THE COURT:  Okay.  Other hands.

25                        Ms. Perry.
```

1           PROSPECTIVE JUROR:  My husband was

2     assaulted many years ago but it did come to trial.

3               THE COURT:  It did.

4           PROSPECTIVE JUROR:  Yes.

5               THE COURT:  Did you go to court?

6           PROSPECTIVE JUROR:  Yes.

7               THE COURT:  Is there anything about that

8     experience that would prevent you from being fair

9     here?

10          PROSPECTIVE JUROR:  No.

11              THE COURT:  Thank you.  Other hands.

12          Mr. Agnello.

13          PROSPECTIVE JUROR:  Yes.  My cousin was

14    beat up and died from it.

15              THE COURT:  Beat up and?

16          PROSPECTIVE JUROR:  He died.

17              THE COURT:  How long ago was this?

18          PROSPECTIVE JUROR:  About ten years.

19              THE COURT:  Was anybody arrested?

20          PROSPECTIVE JUROR:  Yes.

21              THE COURT:  Did you go to court at all?

22          PROSPECTIVE JUROR:  No.

23              THE COURT:  Anything about that that

24    would prevent you from being a fair juror in this

25    case?

1           PROSPECTIVE JUROR:  I don't think so.

2           THE COURT:  Okay.

3           Anyone else?  Mr. Aymil.

4           PROSPECTIVE JUROR:  My grandmother was

5     mugged about 25 years ago in front of my house in

6     Brooklyn.

7           THE COURT:  You know if anybody was

8     arrested?

9           PROSPECTIVE JUROR:  No.

10          THE COURT:  Was there anything about that

11    that would prevent you from being fair here?

12          PROSPECTIVE JUROR:  No, sir.

13          THE COURT:  Thank you.

14          Anyone else?

15          Anybody in the front row on this?  Again

16    we can speak privately if you prefer.  The

17    question is any of you -- Ms. Caleca, what

18    question are you answering?

19          PROSPECTIVE JUROR:  I don't want to say.

20    I have to speak to you privately.

21          THE COURT:  We'll get to you shortly.

22          PROSPECTIVE JUROR:  Maria Huertas.  Me

23    also.

24          THE COURT:  This is Mr. Palazzolo and Mr.

25    Agnello.  I don't know if you are raising your

```
 1              hand to the question I was about to ask and
 2              didn't.  Just so I'm clear this is Ms. Perry also.
 3                      PROSPECTIVE JUROR:  Yes.
 4                      THE COURT:  I'm putting a check next to
 5              all your names.  We'll talk to you when I am
 6              finished and the question some of you are
 7              confused.  Have any of you, anyone close to you
 8              ever been a defendant in a criminal proceeding?
 9                      This is Mr. Nochella.
10                      PROSPECTIVE JUROR:  Yes.
11                      THE COURT:  You want to talk privately?
12                      PROSPECTIVE JUROR:  Yes.
13                      THE COURT:  Anyone else?
14                      Have any of you ever been a witness in
15              any kind of a courtroom proceeding?
16                      Ms. Perry, can you tell me what it was
17              about?
18                      PROSPECTIVE JUROR:  It was southern
19              district federal.  It was a labor law.
20                      THE COURT:  Labor Law case.
21                      PROSPECTIVE JUROR:  Labor Law.  I was a
22              witness.
23                      THE COURT:  You were a witness?
24                      PROSPECTIVE JUROR:  Yes.
25                      THE COURT:  Was there anything about that
```

1          experience on the witness stand that would prevent

2          you from being a fair juror?

3                    PROSPECTIVE JUROR:  No.

4                    THE COURT:  Thank you.

5                    Anyone else?  Mr. Palazzolo.

6                    PROSPECTIVE JUROR:  More than likely I

7          will talk to you in private.

8                    THE COURT:  Okay.  Anyone else?

9                    Has anyone ever been a litigant in a

10         civil action or proceeding?  By litigant I mean a

11         plaintiff or a defendant.  Any kind of civil

12         matter?

13                   Mr. Lewis.

14                   PROSPECTIVE JUROR:  Yes.  I was working

15         on Wall Street and my company was being -- Bear

16         Sterns was being sued by a bank in Chicago and I

17         had to give a deposition to a lawyer and that was

18         it.  Just a deposition.  That's all.  I never went

19         to court.

20                   THE COURT:  Never went to court.  Is that

21         matter finished now?

22                   PROSPECTIVE JUROR:  Yes, it is.  Bear

23         Sterns is out of business so.

24                   THE COURT:  I'm sorry.

25                   PROSPECTIVE JUROR:  Front page of the

```
 1              paper.
 2                        THE COURT:  Is there anything about that
 3              experience in that deposition that would prevent
 4              you from being a fair juror in a criminal case?
 5                        PROSPECTIVE JUROR:  No.
 6                        THE COURT:  Anyone else?
 7                        Mr. Finger.
 8                        PROSPECTIVE JUROR:  Just a preliminary
 9              hearing that didn't go anywhere.  Real estate
10              dispute and I was the plaintiff I guess and I just
11              dropped it.
12                        THE COURT:  So it's over now?
13                        PROSPECTIVE JUROR:  Yes.
14                        THE COURT:  Anything about that
15              experience as a litigant that would prevent you
16              from being a fair juror?
17                        PROSPECTIVE JUROR: No.
18                        THE COURT:  Anyone else?
19                        Did you have something you wanted to say?
20                        PROSPECTIVE JUROR:  Zakrzeski.  My
21              company is in the middle of an FBI investigation
22              right now.
23                        THE COURT:  Currently?
24                        PROSPECTIVE JUROR:  We were raided three
25              years ago by the FBI and held at gunpoint and now
```

1       we have to wait and we all have to give -- we're

2       all being questioned over -- most of us have been

3       questioned.  My turn didn't come up yet in

4       criminal.

5               THE COURT:  I see.  Is there anything

6       about this pending matter that would prevent you

7       from being a fair juror in this case?

8               PROSPECTIVE JUROR:  I don't think so.

9               THE COURT:  Okay.  Anyone else?

10              Juror experience.  Have any of you ever

11      served on a jury before?

12              Mr. Aymil, can you tell me when?

13              PROSPECTIVE JUROR:  Murder rape trial in

14      1999.

15              THE COURT:  Richmond County.

16              PROSPECTIVE JUROR:  No.  It was -- I was

17      out in Suffolk.

18              THE COURT:  Don't tell us how it ended

19      up.  The question is did you the jury reach a

20      verdict?

21              PROSPECTIVE JUROR:  Yes.

22              THE COURT:  Is there anything about that

23      experience that would prevent you from being able

24      to serve as a juror in this case?

25              PROSPECTIVE JUROR:  No.

 1                    THE COURT:  Thank you.

 2                    Jury experience.

 3                    Ms. Perry, when?

 4                    PROSPECTIVE JUROR:  Four years ago

 5          criminal court in Brooklyn.

 6                    THE COURT:  Okay.

 7                    PROSPECTIVE JUROR:  Robbery.

 8                    THE COURT:  It was a trial.

 9                    PROSPECTIVE JUROR:  It was a trial and

10          there was a verdict.

11                    THE COURT:  And you reached a verdict?

12                    PROSPECTIVE JUROR:  Yes.

13                    THE COURT:  Was there anything about that

14          experience that would prevent you from sitting in

15          this case?

16                    PROSPECTIVE JUROR:  No.

17                    THE COURT:  Thank you.

18                    Ms. Huertas, did you have your hand up?

19                    PROSPECTIVE JUROR:  Yes.  Six years ago

20          in Queens Court.  It was a robbery.

21                    THE COURT:  Did the jury reach a verdict?

22                    PROSPECTIVE JUROR:  Yes.

23                    THE COURT:  Was there anything about that

24          experience which would prevent you from sitting as

25          a juror in this case?

```
 1                    PROSPECTIVE JUROR:  No.

 2                    THE COURT:  Thank you.

 3                    Anyone else?  Nobody.

 4                    Have any of you ever served on a Grand

 5        Jury?  Nobody.

 6                    Okay.  Ms. Ortiz, are you employed?

 7                    PROSPECTIVE JUROR:  No.  I have not been

 8        for the last three years.

 9                    THE COURT:  Mr. Palazzolo, are you

10        employed?

11                    PROSPECTIVE JUROR:  Not for the last two

12        days.

13                    THE COURT:  Two days.  What did you do?

14                    PROSPECTIVE JUROR:  Life guard.

15                    THE COURT:  Mr. Nochella, are you

16        employed?

17                    PROSPECTIVE JUROR:  Yes, I am a ship

18        agent.

19                    THE COURT:  Mr. Nelson?

20                    PROSPECTIVE JUROR:  Retired.

21                    THE COURT:  From what, sir?

22                    PROSPECTIVE JUROR:  Firefighter.

23                    THE COURT:  Ms. Zakrzewski, what kind of

24        company is it you work for?

25                    PROSPECTIVE JUROR:  International
```

EF

1          engineering company.

2                    THE COURT:  Thank you.

3                    Mr. Aymil?

4                    PROSPECTIVE JUROR:  Yes.

5                    THE COURT:  What do you do?

6                    PROSPECTIVE JUROR:  MTA Metro North.

7                    THE COURT:  Thank you. Mr. Nieves?

8                    PROSPECTIVE JUROR:  Unemployed.

9                    THE COURT:  Thank you. Mr. Agnello.

10                   PROSPECTIVE JUROR:  Yes, truck driver.

11                   THE COURT:  Thank you.  Mr. Lewis, are

12         you employed?

13                   PROSPECTIVE JUROR:  Unemployed Wall

14         Street.

15                   THE COURT:  Bear Sterns. Thanks.

16                   Mr. Taylor?

17                   PROSPECTIVE JUROR:  Bus operator Transit

18         Authority.

19                   THE COURT:  Thank you. Mr. Sclafani?

20                   PROSPECTIVE JUROR:  Firefighter.

21                   THE COURT:  Thank you.  Ms. Caleca?

22                   PROSPECTIVE JUROR:  School bus for

23         special children.

24                   THE COURT:  Thank you.  Ms. Stoyko?

25                   PROSPECTIVE JUROR:  Internal medicine

1                 training for oncology.

2                           THE COURT:  I see.  Thank you.

3                           Mr. Sharkey?

4                           PROSPECTIVE JUROR:  Lawyer.

5                           THE COURT:  Thank you.

6                           Mr. Shu, what do you, sir?

7                           PROSPECTIVE JUROR:  Chinese newsstand,

8           newspaper.

9                           THE COURT:  Thank you. Ms. Perry?

10                          PROSPECTIVE JUROR:  Retired.  I was a

11          teacher, then union officer.

12                          THE COURT:  Thank you.

13                          Ms. Huertas.

14                          PROSPECTIVE JUROR:  Director of Sheraton

15          Hotel JFK.

16                          THE COURT:  Ms. Keating, we know what you

17          do.

18                          Mr. Finger?

19                          PROSPECTIVE JUROR:  Church worker.

20                          MR. LAMB:  Could you repeat that?

21                          PROSPECTIVE JUROR:  Church worker.

22          Christian worker.

23                          THE COURT:  Mr. Philip?

24                          PROSPECTIVE JUROR:  Manager of One Hour

25          Photo Lab.

1                    THE COURT:  Ms. McCarthy.

2                    PROSPECTIVE JUROR:  I am retired

3          disability.  I was a developmental aide for Staten

4          Island Developmental Center.

5                    THE COURT:  Thank you.

6                    And Mr. Mirabella.

7                    PROSPECTIVE JUROR:  Construction

8          management.

9                    THE COURT:  Thank you all for that

10         information.  Let me go through these principles

11         of law again.  You heard me do this twice so I am

12         going to paraphrase where I can.

13                   As you now know if you didn't know before

14         this process, an indictment is evidence of

15         nothing.  In particular it's not evidence of

16         guilt.

17                   Is there anybody who cannot accept this

18         proposition in our law?

19                   If selected as a juror in this case you

20         would be called upon at the end of the trial to

21         deliberate with eleven other people in an effort

22         to reason together and reach a final unanimous

23         verdict or verdicts.  Those of you who served on

24         juries before clearly know what this involves.

25                   The question is do any of you feel you

1          could not deliberate with eleven other people if

2          called upon to do so?

3                     Under our law everyone accused of a crime

4          and brought to trial is presumed innocent unless

5          or until he is proved guilty beyond a reasonable

6          doubt.  The defendant in this case is presumed

7          innocent and to put this another way a defendant

8          is never required to prove his innocence.

9                     On the contrary, the People having

10         accused the defendant of the crimes charged have

11         the burden of proving him guilty beyond a

12         reasonable doubt.  The People carry this burden of

13         proof throughout the trial.  It never shifts.  It

14         always remains on the People.  And the presumption

15         of innocence remains with every defendant

16         throughout every criminal trial.

17                    Is there anyone amongst you who cannot

18         now in your own mind grant the defendant this

19         presumption of innocence?

20                    Ms. Caleca, you don't think you can do

21         that?

22                    PROSPECTIVE JUROR:  No.

23                    THE COURT:  I am not going to

24         cross-examine you. The lawyers might, but I won't.

25                    Anyone else on that?

EF

1              As to the burden of proof issue, again,

2       as I said in a criminal case the burden of proof

3       is entirely on the People and remains on them

4       throughout the trial.  A defendant not required to

5       prove anything nor is a defendant required to

6       disprove anything.  The entire burden of proof is

7       on the People and remains on them throughout the

8       trial.

9              Is there anyone amongst you who cannot

10      accept this rule in our criminal law?

11             If a defendant does not testify in a

12      criminal trial that is not a factor from which any

13      inference unfavorable to such defendant may be

14      drawn.  Is there anybody who cannot accept this

15      rule in our law?

16             PROSPECTIVE JUROR:  Could you repeat

17      that?

18             THE COURT:  If a defendant does not

19      testify in a criminal trial that is not a factor

20      from which any inference unfavorable to such

21      defendant may be drawn?  Can you accept that

22      proposition?

23             PROSPECTIVE JUROR:  No.

24             THE COURT:  Ms. Caleca.

25             Anyone else on that issue?

1              THE COURT:  I defined yesterday the

2     standard of proof required for conviction in every

3     criminal case.  That standard as you will recall

4     is proof of guilt beyond a reasonable doubt.

5              Did all of you hear that definition when

6     I read it?  Is there anybody who would like me to

7     read it again?  I would be happy to. No takers.

8     Okay.

9              Let me skip to the end of that section

10    and I will remind you that it's the duty of each

11    juror to carefully review, weigh and consider all

12    the evidence in the case.  If after doing so you

13    find that the People have not proved the

14    defendant's guilt beyond a reasonable doubt as I

15    have defined the term, then you must find the

16    defendant not guilty.

17             On the other hand, if you are satisfied

18    that the People have proved the defendant's guilt

19    beyond a reasonable doubt as I have defined the

20    term then you must find the defendant guilty.

21             Will you promise us now that if you are

22    selected as a juror you will follow and apply that

23    standard of proof, that is proof beyond a

24    reasonable doubt, exactly as I have defined it for

25    you?  Is there anybody who can cannot make us that

1          promise?

2                    I will remind you that a deliberating

3          jury is not permitted to consider the subject of

4          punishment.  If there is to be any sentencing

5          following your verdict that's for the Court and

6          the Court alone to deal with.  The jury is not

7          permitted to consider the possibility of

8          punishment or penalty in your deliberations and

9          may not include any sentencing recommendation in

10         their verdict.

11                   Will you promise us now that if selected

12         as a juror you will render your verdict free from

13         fear, favor or sympathy without considering any

14         possibility of sentence or punishment?  Anybody

15         who cannot make us that promise?

16                   Mr. Finger?

17                   PROSPECTIVE JUROR:  I have an issue with

18         that.  Can I discuss it or you want me to just --

19                   THE COURT:  You can discuss it.  I will

20         talk to you privately if you prefer.

21                   PROSPECTIVE JUROR:  No.  The problem I

22         have and I know it's been building in me

23         throughout being the observer of these proceedings

24         as we've gone on, is a conflict in my mind between

25         a charge of rape which is to me a very, very

1    serious charge which I know carries

2    extraordinarily profound, virtually life

3    destroying penalties on the one hand, and on the

4    other hand what seems to be something growing out

5    of a very dysfunctional, very sad, very pathetic

6    relationship, but a relationship between a man and

7    a woman.  And where maybe the man didn't take no

8    for an answer but you know that doesn't mean that

9    he should get charged with rape.  And I mean there

10   is an incongruity here.

11          I am saying why is such a heavy penalty,

12   punishment, a crime being charged in an

13   essentially a relationship issue?  I mean in my

14   background this is a sort of thing that you deal

15   with with therapy and counselling, you know, this

16   sort of thing.

17          This is not -- and I am saying -- what I

18   am saying this is what sounds to me wildly

19   overcharged.  Maybe this is a ploy for a -- you

20   know intimidate the defendant to copping a plea or

21   lesser charge.  But it seems to me how could I now

22   consider that there is a humongous penalty --

23          THE COURT:  You don't know what the

24   penalty is.  I haven't told you that and I am

25   going ask you and everyone else not to speculate.

```
 1                    PROSPECTIVE JUROR:  I know what the
 2         penalty for rape or murder --
 3                    THE COURT:  It is not a murder case.
 4                    THE WITNESS:  But these --
 5                    THE COURT:  You think you cannot promise
 6         us you could decide the case free from fear, favor
 7         or sympathy?  Is that basically what you're
 8         saying?
 9                    PROSPECTIVE JUROR:  I am saying the
10         little that I know about the case it seems to me a
11         domestic case being charged with, you know,
12         something that's associated -- I could see if
13         somebody did a rape in the traditional old
14         fashioned sense.
15                    THE COURT:  Thank you, Mr. Finger.  I
16         think you expressed yourself quite clearly.  I do
17         appreciate that.  Thanks very much.
18                    Anybody else on this issue?
19                    Mr. Taylor.
20                    PROSPECTIVE JUROR:  Yes.  Somewhat
21         similar to this gentleman it's more of a matter --
22         although I am aware of the fact that capital
23         cases, death penalty is not an issue anymore in
24         the State of New York, what you are saying I
25         shouldn't even consider whether or not it is.
```

1            THE COURT:  Shouldn't consider what?

2            PROSPECTIVE JUROR:  That the death

3     penalty --

4            THE COURT:  There is no death penalty

5     here.

6            PROSPECTIVE JUROR:  I understand that.

7     But are you saying I should not consider it

8     whether it was or was not and if I don't consider

9     that, can I render a whatchamacallit based on

10    that?

11           THE COURT:  What I am asking you can you

12    promise us if selected as a juror you would render

13    a verdict without considering any possibility of

14    punishment or penalty.  We ask our jurors to

15    decide cases based on the facts and then apply the

16    law as I give it to them and we ask them not to

17    speculate or consider or discuss potential

18    sentencing that may follow a verdict, depending on

19    what your verdict is.

20           PROSPECTIVE JUROR:  Can I consider that

21    -- I know in the State of New York death penalty

22    didn't apply.  Can I consider that in that

23    question?

24           THE COURT:  I am having a little trouble

25    comprehending you. There is no death penalty in

1          this case. There is no death penalty in New York

2          State.

3                      PROSPECTIVE JUROR:  Can I consider that?

4          What you're asking what I can or can't, when

5          you're considering if I know there is no death

6          penalty, you are saying I can't consider whatever

7          penalty you would deem fit.  Can I consider that

8          is what I'm asking you?

9                      THE COURT:  No.  What you have to tell me

10         if you can and I am not going to put words in your

11         mouth, you could promise me and the lawyers you

12         will decide this case if you are a juror without

13         considering the subject of punishment or penalty.

14         In other words you will decide the case on the

15         facts and the law as I will give it to the jury

16         without reference to possible punishment or

17         penalty.  If you can tell us you can do that,

18         that's fine.  If you can't just tell me.

19                      PROSPECTIVE JUROR:  I can because -- I

20         can, yes.

21                      THE COURT:  Thank you.  Anyone else on

22         this issue?

23                      As you know from the witness list police

24         officers will testify in this case.  They take the

25         same oath as anyone else.  The mere fact that a

```
 1              witness is a police officer does not make that

 2              witness any more or any less credible.

 3                        Is there anyone amongst you who has any

 4              feelings about the police or who has had any

 5              experiences with the police which would leave you

 6              in your judgment to give a police officer's

 7              testimony any greater or lesser weight than anyone

 8              else's merely because of the officer's occupation?

 9              Anybody have this feeling one way or the other?

10                        Mr. Philip, what's your feeling?

11                        PROSPECTIVE JUROR:  I just don't like

12              cops.  I don't trust them at all.  I have had very

13              bad experiences with them in the past.

14                        THE COURT:  Does this apply to every

15              police officer, even ones you don't know?

16                        PROSPECTIVE JUROR:  Yes.

17                        THE COURT:  Thank you.

18                        Anyone else on this issue?

19                        Mr. Sclafani?

20                        PROSPECTIVE JUROR:  Yes.  I would take

21              their opinion higher than the regular.

22                        THE COURT:  Even if you don't know the

23              officer.

24                        PROSPECTIVE JUROR:  Yes.  Because of

25              their professionalism.  This is assuming the fact
```

```
 1            they were probably at the scene so they had more

 2            of a clear view of what happened.

 3                    THE COURT:  I really have no idea whether

 4            there were any police at any scene.

 5                    PROSPECTIVE JUROR:  Just because they're

 6            professional.

 7                    THE COURT:  Okay.  Anyone else?

 8                    Ms. Keating, could you evaluate a police

 9            witness as you would anyone else?

10                    PROSPECTIVE JUROR:  Yes.

11                    THE COURT:  I am done.  We'll step to the

12            side now.  We're going to talk to several people.

13            Let's get set up over there and I will talk to you

14            one at a time.

15                    (The following took place at the

16            sidebar:)

17                    THE COURT:  Does your client want to come

18            over here?

19                    MR. LAMB:  No, he doesn't.

20                    THE COURT:  We are at a sidebar with the

21            lawyers.  I understand your client does not want

22            to come over.

23                    MR. LAMB:  That's correct.

24                    THE COURT:  If either side wants me to I

25            will bring Mr. Finger over or we'll just leave it
```

1          alone.

2                    MR. LAMB:  I think all of his questions

3          should be answered publicly.

4                    MS. RAJESWARI:  All right.  That's fine.

5                    THE COURT:  We won't bother with that.

6                    MR. LAMB:  What do we ask him?  I am sure

7          you guys are going to challenge him.  There is not

8          much I am going to say.  He's already served my

9          purpose.

10                   THE COURT:  We'll wait till we if get

11         over here for challenges purposes and see what you

12         want to do.

13                   Mr. Palazzolo, could you step over?  You

14         can come right across here.  Be careful of the

15         stairs.

16                   (Mr. Palazzolo approached.)

17                   THE COURT:  What were we going to talk

18         about?

19                   PROSPECTIVE JUROR:  One of my very good

20         friends three or four months ago was charged with

21         rape with a girl who he slept with who is denying

22         it.  He slept in my living room and I am probably

23         going to be called as a witness because the first

24         time it happened in my living room and she was the

25         one who initiated.  The second time he came right

1          to my apartment after the fact.  She actually

2          accused him of rape.  Only reason she accused him

3          was because her boyfriend walked in.  So instead

4          of admitting she was cheating, she basically

5          called rape and got the police involved and

6          everything.

7                    THE COURT:  Well, what do you think?

8          Could you be a fair juror in this case?

9                    PROSPECTIVE JUROR:  No.

10                   MS. RAJESWARI:  Thank you.

11                   THE COURT:  Okay.  Any questions?

12                   MS. RAJESWARI:  No.

13                   MR. LAMB:  No.

14                   THE COURT:  Thank you.  I will let you go

15         back to your seat.

16                   Mr. Nochella, could you step over please?

17                   (Mr. Nochella approached.)

18                   THE COURT:  This is Mr. Nochella.

19                   PROSPECTIVE JUROR:  Yes.  I am

20         embarrassed to say at 17 I was arrested for sexual

21         abuse charge.  Matter of wrong place, wrong time.

22                   THE COURT:  How did it end up?

23                   PROSPECTIVE JUROR:  Community service.

24                   THE COURT:  Okay.  It was not a felony

25         conviction?

```
1                    PROSPECTIVE JUROR:  No.

2                    THE COURT:  Well, what do you think?  Is

3       that going to -- it doesn't disqualify you.

4                    PROSPECTIVE JUROR:  Absolutely will

5       affect because I know I didn't do anything but yet

6       still got consequences.

7                    THE COURT:  So you are saying or are you

8       saying that because of that you don't think you

9       could be a fair or impartial juror in this case?

10                   PROSPECTIVE JUROR:  Yes.

11                   THE COURT:  Counsels, any questions?

12                   MR. LAMB:  No.

13                   MS. RAJESWARI:  No.

14                   THE COURT:  Thank you, sir.  I will let

15      you resume your seat.

16                   Mr. Agnello, could you step over please?

17      I guess the best way would be to your left and

18      come around.

19                   (Mr. Agnello approached.)

20                   THE COURT:  Okay.  This is Mr. Agnello.

21                   PROSPECTIVE JUROR:  My cousin was beaten

22      up by his girlfriend's brothers.

23                   THE COURT:  I see.

24                   PROSPECTIVE JUROR:  He died.  It was

25      about ten years ago.  Also myself was in an
```

EF

1            abusive relationship.

2                     THE COURT:  That's finished now?

3                     PROSPECTIVE JUROR:  With my ex-wife.

4                     THE COURT:  What do you think?  Anything

5            about these experiences that would have any

6            bearing here in your mind in terms of your ability

7            to be a fair juror?

8                     PROSPECTIVE JUROR:  I think it would

9            possibly.  You know could.

10                    THE COURT:  Might affect your ability to

11           be fair?

12                    PROSPECTIVE JUROR:  Possibly.

13                    THE COURT:  Counsellors, any questions?

14                    MR. LAMB:  No.

15                    MR. KATCHEN:  No.

16                    THE COURT:  Thank you, sir.

17                    Ms. Caleca, could you step over?

18                    (Ms. Caleca approached.)

19                    THE COURT:  This is Ms. Caleca.

20                    PROSPECTIVE JUROR:  Yes.  Both my

21           grandmothers were raped by their husband and

22           beaten by their husband.  My sister was raped by a

23           date so I don't ever think I could be fair to this

24           man.

25                    THE COURT:  Okay.  Counsellors, any

1          questions?

2                    MR. KATCHEN:  No.

3                    MR. LAMB:  No.

4                    THE COURT:  Thank you, Ms. Caleca.

5                    And Ms. Huertas and Ms. Perry, if you

6          want to work your way out of there, we'll talk to

7          you one at a time.

8                    (Ms. Perry approached.)

9                    THE COURT:  This is Ms. Perry.

10                   PROSPECTIVE JUROR:  My husband pled

11         guilty to DWI.  This is two years ago in May.

12                   THE COURT:  Okay.  Anything about that

13         that's going to have any bearing here?

14                   PROSPECTIVE JUROR:  He pled guilty but I

15         think the judge, police officers were fine,

16         district attorneys were fine, but the judge was

17         very cavalier in the sentence, criminalized the

18         issue.

19                   THE COURT:  This was in criminal court?

20                   PROSPECTIVE JUROR:  Yes.

21                   THE COURT:  Targee Street?

22                   PROSPECTIVE JUROR:  Yes.

23                   THE COURT:  I would really love to ask

24         who the judge is.

25                   MS. RAJESWARI:  I think you can guess.

```
 1                    THE COURT:  I can make a reasonable
 2        guess.
 3                    Would this experience prevent you from
 4        being fair in this case or could you be fair in
 5        this case?
 6                    PROSPECTIVE JUROR:  No, I think I would
 7        be fine.  I'm okay.
 8                    THE COURT:  That wouldn't affect your
 9        ability to be a juror in this case?
10                    PROSPECTIVE JUROR:  No.
11                    THE COURT:  Counsels, any questions?
12                    MR. KATCHEN:  Yes.
13                    MR. LAMB:  I don't know if you want to
14        follow-up with other questions or just keep on
15        that one subject.
16                    MR. KATCHEN:  About the subject.  You
17        said that you felt the police officers and
18        prosecution was fine in that case.  It's what the
19        judge did that bothered you.
20                    PROSPECTIVE JUROR:  Okay.  Partially this
21        is also a personal issue.  I mean when went into
22        treatment agreed to have the thing on his car.
23        That was car he was driving because he was in
24        sales.  Okay.  They didn't have the ability to put
25        the thing on the car at the time but he didn't
```

```
 1          care, whatever you do fine.  He lost his job over
 2          that.  So I mean just listen it was slam, bam,
 3          good-by, do it, take it.
 4                    MR. KATCHEN:  Did going through that did
 5          that shake your view of criminal justice system as
 6          a result of that?
 7                    PROSPECTIVE JUROR:  I have been in a lot
 8          of arbitrations and hearing both sides of
 9          arguments on a lot of things.  I think I can keep
10          a straight mind.
11                    THE COURT:  Anything else?
12                    MR. LAMB:  I'm sorry.  Just I didn't hear
13          before.  I am just asking you said you worked for
14          lawyers?
15                    PROSPECTIVE JUROR:  No, no.  I was a
16          union officer.
17                    MS. RAJESWARI:  Retired teacher.
18                    PROSPECTIVE JUROR:  And retired as being
19          a union officer.
20                    THE COURT:  Thanks, Ms. Perry.  I will
21          ask you to return to your seat.
22                    Ms. Huertas.
23                    (Ms. Huertas approached.)
24                    PROSPECTIVE JUROR:  I don't know if I
25          would be a fair juror because my niece -- I'm
```

1          sorry were abused by my brother-in-law and my two

2          younger sisters.  He was very cruel to my sister

3          and she couldn't do anything about it so they

4          suffered a lot.

5                    THE COURT:  Is it your feeling you could

6          not be a fair juror in this case?

7                    PROSPECTIVE JUROR:  I don't know.  I

8          don't think so because my sister suffered a lot of

9          abuse toward her.

10                    THE COURT:  All right.  Counsellors, any

11         questions?

12                    MR. LAMB:  No, no questions.

13                    MS. RAJESWARI:  No.

14                    THE COURT:  Thank you, ma'am.

15                    (The following took place in open court:)

16                    MR. KATCHEN:  Ready.

17                    THE COURT:  Go right ahead.

18                    MR. KATCHEN:  Ladies and gentlemen of the

19         jury, you have heard everybody speak already.

20         It's almost over.  I am not going to go through

21         the whole preliminary instructions again.  I

22         assume most of you who were in the audience were

23         at least listening to the beginning of what both

24         sides were saying.

25                    Is there anything -- actually there is

1           one thing I do want to start with.

2                 Both sides have come up here and asked

3           questions, okay.  We haven't given any of the real

4           details of this case to you, okay.  What we're

5           trying to find out is who could go into this case

6           before hearing any of the facts and have an open

7           mind.  So when you hear a witness testify about X,

8           Y or Z we want to know if you're going to have,

9           you know, strong opinions before you hear from

10          that witness, that you are not -- whatever they

11          say, you're going to think that can't be true, I

12          don't believe it.  That's what this is about.  And

13          that's because the trial portion of this is for

14          the evidence to be presented.

15                So you haven't heard anything and I am

16          just asking that if you are selected for the jury

17          please keep an open mind.  All of the evidence

18          will be presented to you.

19                Now is that a problem for anybody?  Does

20          everybody agree that no evidence has been

21          presented to you?  Yes, you know what the charges

22          are.  But you don't know what evidence supports

23          those charges.  Everybody agrees with that, right?

24                Okay.  Ms. Ortiz, I am going to start

25          with you, and I'm sorry to ask this of you.  I am

```
 1              sure it's personal.  You had mentioned that I

 2              believe you said your sister was a victim of

 3              domestic violence.

 4                   PROSPECTIVE JUROR:  Yes.

 5                   MR. KATCHEN:  No arrests were made as a

 6              result of that?

 7                   PROSPECTIVE JUROR:  Yes.

 8                   MR. KATCHEN:  Why was that?

 9                   THE COURT:  We don't need to get into

10              that.

11                   MR. KATCHEN:  Do you know if she reported

12              the domestic violence?

13                   PROSPECTIVE JUROR:  She stayed for many

14              reasons and she didn't report it.

15                   MR. KATCHEN:  Mr. Taylor, I want to come

16              back to you for a second.  One of the important

17              functions of the jury, sole purpose of the jury,

18              is to listen to all the evidence and make a

19              determination of guilty not guilty, based on that

20              evidence, everything that comes from that witness

21              stand.

22                   We're human beings.  I understand that

23              there is only so much that you could leave at the

24              door.  But if you don't feel that you are going to

25              be able to get out of your mind that I didn't want
```

 1              tot think about what's going to happen to this

 2              person if I vote guilty.

 3                      PROSPECTIVE JUROR:  That wasn't my

 4              concern.  I was just trying to understand the

 5              judge's instructions not considering what would

 6              happen if I don't consider that.  You know, it's

 7              hard not to do that because this is anywhere from

 8              community service to at one time the death

 9              penalty.  To say me being opposed to that penalty

10              sentencing to anything including murder, rape, for

11              the state to turn around and say, you are going to

12              be put to death, I don't think that's right.

13                      If I understand the judge correctly if I

14              am not supposed to consider whatever the penalty

15              will be, can I render a judgment of guilty or not

16              guilty verdict and not consider what the penalty

17              may be.  I have an issue with that.  Even though I

18              know the law says that the death penalty didn't

19              apply in this case.

20                      MR. KATCHEN:  I agree with you with that.

21                      THE COURT:  I didn't hear you said you

22              have an issue with that.

23                      PROSPECTIVE JUROR:  If you're saying that

24              I cannot consider what a person would be penalized

25              knowing that -- it's complicated because I do

 1              consider it.  I have to consider it because I

 2              know.  But if you're saying can I render a verdict

 3              yes.  I don't know.

 4                   THE COURT:  Okay.

 5                   MR. KATCHEN:  Now did everybody hear him?

 6              Does anybody agree with Mr. Taylor that they

 7              wouldn't be able to really put aside the

 8              sentencing aspect of a case if they were deciding

 9              whether or not somebody was guilty?  Anybody agree

10              with that?

11                   You do, Mr. Finger?

12                   PROSPECTIVE JUROR:  Yes.  I think I

13              already said that and I think what I'm questioning

14              is my very limited understanding of this case.  To

15              my mind is this a rape case, you know, or is this

16              a domestic violence case or assault case?

17                   But in my mind I associate rape with the

18              violence more against a stranger and that maybe a

19              very rough sex, bad relationship, dysfunctional

20              thing maybe there is a penalty whatever.

21                   MR. KATCHEN:  Mr. Finger, if I may, if

22              you need an opportunity to speak I am just going

23              to go back to what I said when I started.  Yes

24              some of our questions are a little pointed.  But

25              you can agree you've heard no evidence.

1           PROSPECTIVE JUROR:  No evidence, that's

2      right.

3           MR. KATCHEN:  Okay.  That's just my

4      point.

5           PROSPECTIVE JUROR:  Um-hum.

6           MR. KATCHEN:  I appreciate your opinion,

7      okay, but I've heard your opinion on it.

8           Does anybody disagree with that?  Does

9      anybody think that we have to say that there is a

10     difference between a woman being raped in a

11     relationship and a woman being raped by a

12     stranger?

13          PROSPECTIVE JUROR:  No difference at all,

14     non-consensual at all.  She is raped, she is

15     raped.  By a stranger, by her husband, by anybody,

16     she is raped.  Whether she says -- when she says

17     no, it's no.  But rapists don't believe no is no.

18          THE COURT:  Move it along, Mr. Katchen.

19          MR. KATCHEN:  Ma'am, I'm sorry.  I wasn't

20     going to try to pronounce your name.  When you

21     were speaking earlier did you say your company had

22     been raided by people or the FBI?

23          THE COURT:  She said the FBI.

24          MR. KATCHEN:  I am just trying to

25     clarify.

```
 1                    PROSPECTIVE JUROR:  Zakrzewski.  Yes.
 2                    MR. KATCHEN:  As far as you know that
 3              investigation is still spending.
 4                    PROSPECTIVE JUROR:  It's still very much
 5              ongoing.
 6                    MR. KATCHEN:  Were you there when that
 7              happened?
 8                    PROSPECTIVE JUROR:  Yes.
 9                    MR. KATCHEN:  I imagine there is a memory
10              of that.
11                    PROSPECTIVE JUROR:  Yeah, having people
12              come into your office with guns.
13                    MR. KATCHEN:  There is no FBI that are
14              going to be testifying in this case.  Did that
15              create a negative feeling toward law enforcement
16              for you?
17                    PROSPECTIVE JUROR:  No.  Little
18              apprehensive maybe but not negative.
19                    MR. KATCHEN:  I'm sorry?
20                    PROSPECTIVE JUROR:  Apprehensive maybe,
21              but not negative.
22                    MR. KATCHEN:  Do you view law enforcement
23              differently?
24                    PROSPECTIVE JUROR:  It was scary.
25                    MR. KATCHEN:  I understand that.  I
```

EF

1          understand that.

2                    Ms. Keating, how long did you say you

3          were a police officer?

4                    PROSPECTIVE JUROR:  Almost six years.

5                    MR. KATCHEN:  And a police officer is

6          just a human being, right?

7                    PROSPECTIVE JUROR:  Yes.

8                    MR. KATCHEN:  If they were to testify you

9          would assess their credibility just like you would

10         any other witness?

11                   PROSPECTIVE JUROR:  Yes.

12                   MR. KATCHEN:  Okay.  I am not going to

13         take anymore of your time.  Thank you very much

14         for paying attention over the past two days.

15                   THE COURT:  Mr. Lamb.

16                   MR. LAMB:  Good afternoon, ladies and

17         gentlemen.  It's getting late.  I guess, I am sure

18         everybody is getting tired.  Some people are

19         getting a little cranky.

20                   THE COURT:  Who are you talking about?

21                   MR. LAMB:  I just want to make one point

22         clear here.  Nobody, the defendant, myself are not

23         here asking you to condone rape in any shape,

24         fashion or form.  We're not asking you to

25         distinguish between rape by a stranger and rape by

1        a person who knows the victim.

2                We're saying by the defendant's plea of

3        not guilty that he didn't commit the crime that he

4        is charged with.

5                MR. KATCHEN:  Objection.

6                THE COURT:  Sustained as to the form of

7        that.  It's clear your client has pled guilty.

8        We're in the midst of selecting a trial jury.

9                MR. LAMB:  I just want everybody to be

10       aware of that.

11               Now because of the fact that as I think

12       it's become clear the charges have arisen out of a

13       relationship as opposed to an incident where there

14       are -- where the traditional concept that people

15       have of a rape, of a person jumping out of the

16       bushes and dragging somebody into the bushes, or

17       going down to the playground molesting children or

18       something.

19               Because of the fact this arises out of a

20       relationship and you will hear and I think the

21       people will agree a relationship -- dysfunctional

22       relationship, many of us have had relationships.

23       Most of us have had relationships.

24               MR. KATCHEN:  Objection, Judge.

25               THE COURT:  That's all right.

1                  MR. LAMB:  And my concern -- my only

2          concern is that whether any of you have had a

3          relationship, such a relationship, such a painful,

4          traumatic relationship that you won't be able to

5          be fair, that you wouldn't be able to listen to

6          the evidence here but would rather to be thinking

7          of this horrible relationship that you had or

8          perhaps you were victimized yourself, all right,

9          to the point where you wouldn't be able to listen

10         to the evidence and give my client a fair trial.

11                 Is there anybody that quite candidly has

12         had that kind of relationship where it feels it

13         has so poisoned their mind they couldn't be fair

14         in this case?  Anybody here that has experienced

15         that?

16                 Is there anybody here and I broach this

17         question with great temerity, is there anybody

18         here that will insist even though the judge has

19         told you that in a criminal case you cannot hold

20         it against the defendant if he chooses not to

21         testify, is there anybody here that would defy

22         that and still demand that either the defendant

23         testify or he will be convicted?  Anybody here

24         that has that feeling?

25                 Yes, Mr. Shu.

1           PROSPECTIVE JUROR:  I think how to tell

2      story very much.  I am generous, same story.  This

3      could be a very tough story.  A very bad story so

4      people call very easily you be prejudice by first

5      impressions.  So it depend how you present the

6      evidence.

7           MR. LAMB:  I'm sorry.  So are you saying

8      that you would insist that the defendant testify

9      even though the judge tells you that you shouldn't

10     hold it against him if he doesn't?

11          PROSPECTIVE JUROR:  I am not very sure

12     just because if they start telling me give very

13     good impression.  This could affect the people's

14     decision.  I'm sorry.

15          MR. LAMB:  I will pass on to the next

16     question.

17          The way this trial works as with every

18     trial is that first the district attorney presents

19     his side of the case.  Then the defense presents

20     their side of the case.  Then the attorneys

21     deliver what's known as summations or speeches to

22     you trying to tell you what we feel the evidence

23     is and then the judge instructs you as to the law

24     of the case.  And until all of that is done you

25     are not supposed to have made a final decision.

1            That's a -- that would be a difficult thing.

2                  It can be a difficult thing if you hear

3        something from the witness stand that is

4        unchallenged, sounds very damning, do I have your

5        assurance though if you're selected as a juror

6        that you will be patient and you will hold back

7        any notions of guilt or innocence until all of the

8        evidence is in before you make a decision?

9        Sometimes that's a difficult thing to to.  I have

10       to ask you for your assurance that you can do that

11       in order for me to be satisfied that you could be

12       a fair juror.

13                 Do I have that assurance from all of you

14       that you will hold that -- withhold your final

15       decision as to guilt or innocence until you've

16       heard all the evidence and the law that the judge

17       will give you at end of the case?  Do I have that

18       assurance from each and every one of you?

19                 PROSPECTIVE JUROR:  Caleca.  No.

20                 THE COURT:  Do I have your assurance if

21       you are selected as a juror?  Do I have your

22       assurance from each and every one of you that you

23       would give my client the same fair trial that you

24       would want if you were sitting where he is sitting

25       right now?

```
 1              Can you all assure me of that?  Can you
 2         all assure me of that?
 3              PROSPECTIVE JUROR:  Yes.
 4              THE COURT:  If you would like to step out
 5         go right ahead.  Just don't discuss the case with
 6         each other or anyone else.  Thank you for your
 7         patience.
 8              (Short recess taken.)
 9              (The following took place at the
10         sidebar:)
11              THE COURT:  We're at the sidebar with the
12         lawyers and the defendant.  I guess we'll go one
13         at a time again.
14              THE CLERK:  We have five sworn.
15              THE COURT:  Ms. Ortiz.  Cause People?
16              MR. KATCHEN:  No.
17              THE COURT:  Defense?
18              MR. LAMB:  She said she wasn't sure she
19         could be fair.
20              THE COURT:  I agree with you so I
21         challenge her for cause.
22              People want to be heard?
23              MS. RAJESWARI:  No, we'll consent.
24              THE COURT:  That's a consent.
25              MS. RAJESWARI:  Yes.
```

```
 1                    THE COURT:  Cause on consent.

 2                    Next is Mr. Palazzolo.  Cause People?

 3                    MS. RAJESWARI:  Yes.

 4                    MR. LAMB:  Yes, consent.

 5                    THE COURT:  Consent.  For cause on

 6          consent.

 7                    Next is Mr. Nochella.  Cause?

 8                    MS. RAJESWARI:  Yes.

 9                    MR. LAMB:  On consent.

10                    THE COURT:  For cause on consent.

11                    Next is Mr. Nelson.  Cause People?

12                    MS. RAJESWARI:  No.

13                    THE COURT:  No cause for the defense?

14                    MR. LAMB:  No.

15                    THE COURT:  Peremptory People?

16                    MS. RAJESWARI:  Yes.

17                    THE COURT:  Next is Ms. Zakrzewski.

18          People cause?

19                    MS. RAJESWARI:  Your Honor, yes, for

20          cause.  She indicated that she couldn't treat law

21          enforcement as she would other witnesses due to

22          her history.

23                    MR. LAMB:  I don't remember her saying

24          that she couldn't be fair.  She pressed that it

25          was a traumatic experience being raided but I
```

```
 1              think she ended up by saying she could be fair.
 2                     THE COURT:  It is my recollection she
 3              said she was apprehensive.
 4                     MS. RAJESWARI:  She was scared.
 5                     THE COURT:  I don't think she said enough
 6              to disqualify her for cause.  I will deny that
 7              challenge.
 8                     You have no cause challenge?
 9                     MR. LAMB:  Not for her.
10                     THE COURT:  Peremptory?
11                     MS. RAJESWARI:  Yes.
12                     THE COURT:  Next is Mr. Aymil.  Cause
13              People?
14                     MS. RAJESWARI:  No.
15                     MR. KATCHEN:  No.
16                     THE COURT:  Defense?
17                     MR. LAMB:  I would just say she's already
18              sat in a rape murder trial.
19                     THE COURT:  I guess that's not enough of
20              -- I don't think that disqualifies her.  That's
21              not a cause challenge.
22                     MR. LAMB:  No.
23                     THE COURT:  Peremptory People?
24                     MS. RAJESWARI:  No.
25                     THE COURT:  Defense?
```

Colloquy                                    259

```
 1                     MR. LAMB:  Yes.

 2                     THE COURT:  Next Nieves.  Cause People?

 3                     MR. KATCHEN:  No.

 4                     THE COURT:  Defense?

 5                     MR. LAMB:  No.

 6                     THE COURT:  Peremptory People?

 7                     MS. RAJESWARI:  Yes.

 8                     THE COURT:  Agnello.  Cause People?

 9                     MS. RAJESWARI:  Yes.

10                     THE COURT:  Mr. Lamb, he's the guy who

11          came over on the sidebar.

12                     MR. LAMB:  I know.  I have to consent in

13          all fairness.

14                     THE COURT:  Cause on consent.

15                     Next is Mr. Mirabella.  Cause People?

16                     MR. KATCHEN:  No.

17                     MR. LAMB:  No.

18                     THE COURT:  Peremptory People?

19                     MR. KATCHEN:  No.

20                     THE COURT:  Defense?

21                     MR. LAMB:  No.

22                     THE COURT:  Number 6, Carmine.

23                     THE CLERK:  Yes.

24                     THE COURT:  Mr. McCarter.  Cause People?

25                     MR. KATCHEN:  No.
```

```
 1                   THE COURT:  Defense?

 2                   MR. LAMB:  No.

 3                   THE COURT:  Peremptory People?

 4                   MR. KATCHEN:  Yes.

 5                   THE COURT:  Next is Mr. Philip.  Cause

 6         People?

 7                   MR. KATCHEN:  Yes.  He is the one who

 8         said he doesn't like or trust cops.

 9                   MR. LAMB:  Like or trust cops.

10                   THE COURT:  You concur.

11                   MR. LAMB:  Yes, I have to consent.

12                   THE COURT:  Next is Mr. Finger.

13                   MR. KATCHEN:  Yes.

14                   MR. LAMB:  I have to have one ringer in

15         there.

16                   THE COURT:  Ringer?

17                   MR. LAMB:  I have to consent.

18                   THE COURT:  For cause on consent.

19                   MR. LAMB:  He served his purpose.

20                   THE COURT:  Next is Ms. Keating.  Cause

21         People?

22                   MR. KATCHEN:  No.

23                   THE COURT:  Defense?

24                   MR. LAMB:  Yes.  She said she was not

25         sure that she could be fair.
```

1          MR. KATCHEN:  She said when I questioned

2     her that she could treat a police officer just

3     like any other witness.

4          MR. LAMB:  But she said at one point she

5     said she wasn't sure.

6          THE COURT:  I wrote down cause and then

7     police testimony.

8          MR. KATCHEN:  She definitely came back

9     with my questioning.  I believe she is

10    rehabilitated.

11         THE COURT:  I don't think so. I will

12    grant the cause challenge by the defense.

13         Ms. Huertas.  Cause People?

14         MR. KATCHEN:  Yes.

15         MR. LAMB:  Consent.

16         THE COURT:  Cause on consent.

17         Next is Ms. Perry.  Cause People?

18         MR. KATCHEN:  Yes.  She was pretty clear

19    from the way she was speaking that she had an

20    issue with a judge involved in her husband's case.

21    It didn't seem she was able to sort of tear

22    herself away in that incident.

23         THE COURT:  Are you reading her mind?

24    You heard what she said.

25         MR. KATCHEN:  I am going also by her tone

1          and her language when she discussed it.

2                    MR. LAMB:  I think her issue was with the

3          judge, not with the prosecution in fairness

4          regarding evidence.  I think she concluded that

5          she could be fair.

6                    THE COURT:  That's what she said.  I

7          can't really discredit her in that regard.  That

8          cause challenge is denied.

9                    You don't have a cause challenge, do you?

10                   MR. LAMB:  No.

11                   THE COURT:  Peremptory People?

12                   MR. KATCHEN:  Yes.

13                   THE COURT:  Next is Mr. Shu.  Cause

14         People?

15                   MR. KATCHEN:  No.

16                   THE COURT:  Defense?

17                   MR. LAMB:  I don't think -- I don't think

18         he fully understands what's going on.

19                   THE COURT:  I think he understands

20         perfectly but I think he has trouble speaking.  I

21         couldn't tell an awful lot of what he was saying.

22         I think he understands.

23                   MR. LAMB:  I was trying to listen

24         carefully.

25                   MS. RAJESWARI:  Judge, he did speak with

```
 1              a heavy accent.

 2                      MR. LAMB:  Is it possible you could ask

 3              him over at the sidebar whether he has a problem

 4              with the language?

 5                      THE COURT:  Could we have Shu step over?

 6                      (Mr. Shu approached.)

 7                      THE COURT:  Hi, Mr. Shu.  The reason we

 8              called you over we want to make sure.  I know

 9              English is not your first language.  Have you been

10              able to understand everything we've said?

11                      PROSPECTIVE JUROR:  I am engineering

12              major, English not my native language.  I came

13              here 29 years old and I work on that's very

14              general English, yeah.

15                      MR. LAMB:  General English.

16                      PROSPECTIVE JUROR:  Working on at school.

17              This is my problem, yeah.  I know that.

18                      THE COURT:  Thanks.  Any questions?  I

19              will let you resume your seat.

20                      Anybody want to be heard further?

21                      MR. LAMB:  I think --

22                      THE COURT:  You are making a cause

23              challenge?

24                      MR. LAMB:  Yes.

25                      MS. RAJESWARI:  We will consent.
```

1              THE COURT:  For cause on consent.

2              Now we go to the first row.

3              Mr. Sharkey.  Cause People?

4              MR. KATCHEN:  No.

5              THE COURT:  Defense?

6              MR. LAMB:  No, not for cause.

7              THE COURT:  Peremptory People?

8              MR. KATCHEN:  Yes.

9              THE COURT:  Next is Stoyko.  Cause

10      People?

11             MR. KATCHEN:  No.

12             THE COURT:  Defense?

13             MR. LAMB:  No.

14             THE COURT:  Peremptory People?

15             MR. KATCHEN:  No.

16             THE COURT:  Defense?

17             MR. LAMB:  Yes.

18             THE COURT:  Caleca.  Cause People?

19             MR. KATCHEN:  No.

20             THE COURT:  Defense?

21             MR. LAMB:  Yes.  She said numerous

22      occasions I think three different issues she said

23      she couldn't be fair.

24             THE COURT:  People consent?

25             MR. KATCHEN:  Yes.

1                    THE COURT:  Cause on consent.

2                    Sclafani.

3                    MR. KATCHEN:  No cause.

4                    MS. RAJESWARI:  Not for us.

5                    MR. LAMB:  I think he said repeatedly --

6                    THE COURT:  Mr. Sclafani?

7                    MR. LAMB:  Yes.  He said he would give a

8        cop more credibility.

9                    THE COURT:  He did.  Cause challenge is

10       granted by the defendant.

11                   Mr. Taylor.  Cause People?

12                   MR. KATCHEN:  Yes.

13                   MR. LAMB:  Reluctantly consent.

14                   THE COURT:  For cause on consent.

15                   Last is Mr. Lewis.  Cause People?

16                   MR. KATCHEN:  No.

17                   THE COURT:  Defense?

18                   MR. LAMB:  No.

19                   THE COURT:  Peremptory People?

20                   MR. KATCHEN:  No.

21                   THE COURT:  Defense?

22                   MR. LAMB:  No.

23                   THE COURT:  So Carmine, that's Number 7.

24                   THE CLERK:   Yes, Judge.

25                   THE COURT:  What do we have?  Fifty?

```
 1                  THE CLERK:   She would try and get you

 2           fifty at least.   She is very concerned that

 3           tomorrow is a Jewish holiday.

 4                  MS. RAJESWARI:   And today actually.

 5                  THE COURT:   You want me to tell these

 6           people noon as well?

 7                  MS. RAJESWARI:   Yes.   The two jurors as

 8           well?

 9                  MR. LAMB:   Yes.

10                  THE COURT:   I can make it two and call

11           the others.

12                  MS. RAJESWARI:   Yes.

13                  MR. LAMB:   I think in all fairness to

14           them.

15                  MR. KATCHEN:   That would be fine.

16                  THE COURT:   Make it two.   Where do we

17           stand on challenges, Carmine?

18                  THE CLERK:   People have used nine.

19           Defense has used eight.

20                  (The following took place in open court:)

21                  THE CLERK:   The following jurors have

22           been selected for this case.   Robert Mirabella,

23           you are Juror Number 6.   Ronald Lewis, you are

24           Juror Number 7.   Will those two gentleman remain

25           seated?
```

```
 1                Everyone else is excused from this case

 2        with the thanks of the Court.  Return across the

 3        street to central jury for your next trial.  Thank

 4        you.

 5                THE COURT:  Thank you.

 6                (Unselected prospective jurors left the

 7        courtroom.)

 8                THE CLERK:  Mr. Mirabella, raise your

 9        hand.  Mr. Lewis, raise your hand.  Stand up and

10        raise your right hand.

11                Do both of you solemnly swear that you

12        will try this action in a just and impartial

13        manner and to the best of your judgment render a

14        verdict according to the law and the evidence so

15        help you God?

16                JUROR:  I do.

17                JUROR:  I do.

18                THE COURT:  We are going to break for the

19        afternoon.  We are bringing over another group of

20        people to continue jury selection. I told the

21        jurors who were sworn earlier today to be back at

22        noon.  We are going to change that to 2 p.m.

23                Two p.m. tomorrow in the jury room.  It's

24        right across the hall.  The officers will show you

25        where it is on your way out.  We are going to call
```

 1              the other sworn jurors and tell them two.

 2                   JUROR:  I thought we had six jurors

 3              before me.

 4                   THE COURT:  We ran into a problem with

 5              one.  Something unforeseen came up with one of the

 6              jurors.  You become six and you become seven.  And

 7              I feel fairly confident we'll have a jury by

 8              lunchtime and be ready to go when you come back.

 9                   Thank you.  Let me just advise you as I

10              must, don't discuss the case with each other or

11              anyone else.  Don't speak with anyone prior to

12              being discharged about taking anything in return

13              for supplying information about this case.  Report

14              to me any incident within your knowledge of an

15              attempt by anyone to improperly influence you or

16              any member of the jury.  Don't read, view or

17              listen to any media accounts of this case, that

18              includes the Internet.  Don't try to research any

19              fact, issue or law on your own and don't form any

20              opinion.  Keep an open mind until you begin

21              deliberations.  Thank you.  See you tomorrow

22              afternoon.  The officers will show you the jury

23              room.

24                   (Two sworn jurors left the courtroom.)

25                   THE COURT:  I would like you to all be

EF

1          here promptly at nine.  Make it 9:30.

2                     MS. RAJESWARI:  Yes.

3                     MR. LAMB:  Judge, I have --

4                     THE COURT:  Come here first.

5                     Mr. LAMB:  Not Part 6.

6                     THE COURT:  Come here first.

7                     MR. LAMB:  All right.

8                     THE COURT:  I will tell Judge Rienzi he

9          can have you when I'm through.  Today we lost an

10         hour.  I am not blaming you that you were down in

11         his part but you are on trial.  This takes

12         precedence, okay?

13                    MR. LAMB:  Okay.

14                    THE COURT:  Good.

15                    THE CLERK:  Court stands in recess.  Step

16         out.

17                    (Court stands in recess until Friday,

18         September 10th, 2010 at 9:30 a.m.)

19

20

21

22

23

24

25

EF