```
 1   SUPREME COURT OF THE STATE OF NEW YORK
     COUNTY OF RICHMOND - CRIMINAL TERM - PART: 5
 2   ------------------------------------------------X
     THE PEOPLE OF THE STATE OF NEW YORK,
 3
                      -against-
 4
     ANTHONY RUCANO,
 5
                                  Defendant.
 6   ------------------------------------------------X
     Indict. No. 270/09          18 Richmond Terrace
 7                               Staten Island, New York
     Jury Selection              September 10, 2011
 8
 9   B E F O R E:
10        HONORABLE STEPHEN J. ROONEY, Justice.
11        (Appearances same as previously noted.)
12                     ELAINE FORLENZA, RPR
                       OFFICIAL COURT REPORTER
13
                       -  -  -  -  -  -  -
14
15            THE CLERK:   Case on trial continues.
16        People versus Rucano.  The defendant's present,
17        the lawyers are present.
18            THE COURT:  Bring over another 78.  They
19        rounded up 78 people.
20            Juror Number 4 called, spoke to the
21        clerk.  Says, I thought I could do this but I have
22        anxiety.  He will be here at two.  We'll talk to
23        him but keep that in mind.  That's Omar Pereyra.
24        We'll get a panel over here.
25            MS. RAJESWARI:  Yes.
```

EF

1              THE CLERK:  Bring over the panel.

2              MR. LAMB:  While they're doing that may I

3         step down the hall very momentarily?

4              THE COURT:  Yes.

5              (Pause in proceedings.)

6              MR. LAMB:  While we're waiting may we

7         approach a moment?

8              THE COURT:  Sure.

9              (Discussion held off the record at the

10        bench.)

11             THE CLERK:  Panel enters.

12             (Prospective jurors entered courtroom.)

13             THE CLERK:   Jurors please stand.  Raise

14        your right hand to be sworn as prospective jurors.

15             Do you and each of you solemnly swear

16        that you will answer truthfully all questions put

17        to you relative to your qualifications to serve as

18        jurors in this action, so help you God?

19             ALL JURORS:  Yes.

20             THE CLERK:   Be seated.  Turn off your

21        cell phones.

22             THE COURT:  Good morning.  Welcome to

23        Supreme Court Richmond County.  We're in the

24        process of selecting a jury in a criminal case.

25        This case is called the People of the State of New

1          York against Anthony Rucano.

2                    Mr. Rucano is known as the defendant in

3          the case.  The indictment in this matter involves

4          charges of rape in the first degree, criminal

5          sexual act in the first degree, attempted rape in

6          the first degree, assault in the second degree,

7          tampering with physical evidence, menacing in the

8          second degree, criminal possession of a weapon in

9          the third degree, assault in the third degree,

10         and, finally, criminal mischief in the fourth

11         degree.

12                   It's alleged that the events in question

13         took place during July, August and September of

14         2009.  And the complaining witness is a woman

15         named Duane Ramos.  D U A N E last name Ramos.

16                   That's the nature of the charge or

17         charges in the case and the trial is the process

18         by which you will determine if any of the charges

19         are proven by sufficient evidence and I will talk

20         to you about that in a little while.

21                   First thing I want to give you a little

22         idea of our schedule.  As I said we are in the

23         process of selecting a jury.  We selected a number

24         of jurors already.  We hope to complete the

25         process with this group and then we will begin the

1      trial. The lawyers and I have discussed this. We

2      expect this would be a week and a half trial.  We

3      anticipate that it will be finished and that it

4      will go to the jury so that the jury can begin

5      deliberations in an effort to reach a final

6      unanimous verdict or verdicts no later than

7      September 22nd.  That would be a week from next

8      Wednesday.  That's the anticipated duration of the

9      trial.

10     In terms of our day to day operations we

11     generally work with our jurors from 9:30 to five.

12     We usually take an hour off for lunch between one

13     and two.  I try to avoid going past five during

14     the trial so our jurors can plan their departure

15     from the courthouse.

16     Occasionally we will go past five.  If

17     that happens I will give the jury as much advance

18     notice as I can.  If that happens it will not be

19     long past five. That's the nature of the

20     day-to-day operation in this and every trial that

21     transpires in this courtroom.

22     I hope you can stay with us through the

23     selection process during which I and the lawyers

24     will be asking questions in an effort to determine

25     whether you could be fair jurors.  But I recognize

1           that there may be some scheduling problems for

2           some of you.

3                       At this point I am permitted to consider

4           three categories when it comes to excusing people

5           immediately.  The first category is health

6           problems.  The second category is pressing

7           business reasons or obligations.  I emphasize the

8           word pressing and I must say that if you work for

9           a large entity, a large corporation, the City, the

10          State, something of that sort, it's difficult for

11          me to let you go immediately on that basis.  Not

12          to say I won't listen to you but keep that in

13          mind.  And the third category is pressing personal

14          reasons.  You will be the judge of what they are

15          if you have any such reasons.

16                      So again I hope you can stay with us

17          through the selection process which will commence

18          shortly.  But if you feel you fit into one of

19          those three categories I just mentioned and you

20          would like to speak to me and the lawyers right

21          now about being excused from this matter would you

22          raise your hand please?

23                      (Hands raised.)

24                      THE COURT:  I am going to ask those of

25          you who raised your hand to form a line at the

1          corner of the rail here where the sergeant is.

2                    MR. LAMB:  Can we approach, Judge?

3                    (Discussion held off the record at the

4          bench.)

5                    THE COURT:  I am going to cut this line

6          off.  I am not encouraging you to get onto it but

7          I am going to cut it off.

8                    Sergeant, our line is cut off.

9                    (The following took place at the

10         sidebar:)

11                   THE COURT:  For the record the defendant

12         waives his right to be present at the sidebar?

13                   MR. LAMB:  Correct, Judge.

14                   THE CLERK:  Tell the judge your name for

15         the record.

16                   PROSPECTIVE JUROR:  Rosa Espinosa.

17                   THE COURT:  What's your matter?

18                   PROSPECTIVE JUROR:  I work for J Crew.

19         But my department is short-staffed.  We are short

20         two people and me making off --

21                   THE COURT:  This is who?

22                   PROSPECTIVE JUROR:  J Crew.

23                   THE COURT:  Do they pay you while you're

24         here?

25                   PROSPECTIVE JUROR:  I don't think so.

1                    THE COURT:  Counsellors?

2                    MR. LAMB:  I would consent.

3                    MR. KATCHEN:  Consent.

4                    THE COURT:  You are excused.

5                    (Prospective juror excused.)

6                    (Prospective juror approached.)

7                    THE CLERK:  Stand here.  Tell the judge

8          your name.

9                    PROSPECTIVE JUROR:  Bob Rule.  I recently

10         went on Social Security.  I work for a small paint

11         store.  I work part-time.  If I don't work I don't

12         get paid.

13                   THE COURT:  Counsellors?

14                   MR. LAMB:  Consent.

15                   MR. KATCHEN:  Consent.

16                   THE COURT:  You are excused.

17                   (Prospective juror excused.)

18                   (Prospective juror approached.)

19                   THE CLERK:  Give the judge your name.

20                   PROSPECTIVE JUROR:  Ann Amato.  Two

21         issues.  I work for a small doctor's office.  I am

22         the bookkeeper.  As a matter of fact today is

23         payroll and nobody is getting paid.  Second I

24         baby-sit my grandchildren in the afternoon.

25                   THE COURT:  In the afternoon when?

EF

1                    PROSPECTIVE JUROR:  What?

2                    THE COURT:  When in the afternoon?

3                    PROSPECTIVE JUROR:  After they get out of

4          school.

5                    THE COURT:  Talking about what time?

6                    PROSPECTIVE JUROR:  From 2:30.

7                    THE COURT:  Is there anybody else who

8          could do that?

9                    PROSPECTIVE JUROR:  No.

10                   THE COURT:  Counsellors?

11                   MR. LAMB:  Consent.

12                   MR. KATCHEN:  Consent.

13                   THE COURT:  You are excused.

14                   (Prospective juror excused.)

15                   (Prospective juror approached.)

16                   THE CLERK:  Please tell the judge your

17         name.

18                   PROSPECTIVE JUROR:  My name is Kathleen

19         McLoon and my husband is permanently disabled and

20         I am the only one who can stay with him.

21                   MR. LAMB:  Consent.

22                   MR. KATCHEN:  Consent.

23                   THE COURT:  You are excused.

24                   PROSPECTIVE JUROR:  Thank you very much.

25                   (Prospective juror excused.)

```
 1                    (Prospective juror approached.)
 2               THE CLERK:   Tell the judge your name.
 3               PROSPECTIVE JUROR:   Marcella Barros.   I
 4          am a principal of a high school.  Monday is the
 5          first day of school.
 6               THE COURT:   You work where?
 7               PROSPECTIVE JUROR:   I am a principal New
 8          City public school. I am solely responsible for
 9          that.
10               THE COURT:   I can't let you go.  That
11          doesn't mean you are on the jury but I am going to
12          ask you to stay around and we'll talk to you
13          later.
14               PROSPECTIVE JUROR:   All right.
15               (Prospective juror not excused.)
16               (Prospective juror approached.)
17               THE CLERK:   Tell the judge your name.
18               PROSPECTIVE JUROR:   Kenneth Martin. I am
19          an inspector of the elections next Tuesday from
20          5 a.m. to 9:30 p.m. Primary election.
21               THE COURT:   I know about the election.
22          What does the inspector do?
23               PROSPECTIVE JUROR:   We run the new
24          machines we're trained on.
25               THE COURT:   Are you a full-time employee
```

EF

1             of the Board of Elections?

2                    PROSPECTIVE JUROR:  No.  Just two days a

3             year.

4                    THE COURT:  I can't let you go at this

5             point.  It doesn't mean you are on the jury but

6             we're going to ask you to stay around to answer a

7             few questions.

8                    PROSPECTIVE JUROR:  Okay.

9                    (Prospective juror not excused.)

10                    (Prospective juror approached.)

11                    THE CLERK:  Please tell the judge your

12             name.

13                    PROSPECTIVE JUROR:  Your Honor, my name

14             is Maryann Marro.  I suffer from high anxiety.  I

15             finished therapy last year.  I went to therapy

16             three times in my life for fear of being raped

17             because years ago I was touched by a man.  I can't

18             listen to the details of this trial.

19                    THE COURT:  Counsellors?

20                    MR. LAMB:  Consent.

21                    MR. KATCHEN:  Consent.

22                    THE COURT:  You are excused.

23                    (Prospective juror excused.)

24                    (Prospective juror approached.)

25                    THE CLERK:  Tell the judge your name.

```
 1                    PROSPECTIVE JUROR:  Brian Kelly.  I have

 2          two issues.  One is my wife has a lawsuit that's

 3          in Civil Court, supposed to start September 20th.

 4                    THE COURT:  September 20th.  Okay.

 5                    PROSPECTIVE JUROR:  The other is I am

 6          vice president of a company that only has 30

 7          people and I have all meetings next week.

 8                    THE COURT:  Do they pay you while you're

 9          here?

10                    PROSPECTIVE JUROR:  I believe so.

11                    THE COURT:  If they pay you I can't let

12          you go at this point.  It doesn't mean you're on

13          the jury but I am going to ask you to stay around.

14                    PROSPECTIVE JUROR:  What about the other

15          thing that didn't affect?

16                    THE COURT:  Not as far -- you are not a

17          party.

18                    PROSPECTIVE JUROR:  I am a witness.

19                    THE COURT:  Is the trial actually slated

20          to start?

21                    PROSPECTIVE JUROR:  September 20th was

22          the jury.

23                    THE COURT:  Has the jury been selected?

24                    PROSPECTIVE JUROR:  No.

25                    THE COURT:  Well then you'll have time.
```

EF

```
 1                      PROSPECTIVE JUROR:  Okay, thanks.  Stay?
 2                THE COURT:  Yes, you can have a seat.
 3                (Prospective juror not excused.)
 4                (Prospective juror approached.)
 5                THE CLERK:  State your name for the
 6          record.
 7                PROSPECTIVE JUROR:  Martin Berman and I
 8          have the same situation in Russia with my sister.
 9          I am not sure I could decide something like this.
10                THE COURT:  Counsellors?
11                MR. LAMB:  Consent.
12                MR. KATCHEN:  Consent.
13                THE COURT:  You are excused.
14                (Prospective juror excused.)
15                (Prospective juror approached.)
16                THE CLERK:  Tell the judge your name.
17                PROSPECTIVE JUROR:  Jill Malginny.  I
18          have a twelve-year-old at home.  I work part-time
19          and I'm home when she gets home from school.
20                THE COURT:  How old is she?
21                PROSPECTIVE JUROR:  Twelve.
22                THE COURT:  You want to be home when she
23          gets home?
24                PROSPECTIVE JUROR:  I work three days but
25          I am home for her when she gets home.
```

EF

```
 1                  THE COURT:  There is nobody else home?
 2                  PROSPECTIVE JUROR:  I can't guarantee for
 3          a week and a half.
 4                  THE COURT:  Counsellors?
 5                  MR. LAMB:  Consent.
 6                  MR. KATCHEN:  Consent.
 7                  THE COURT:  You are excused.
 8                  PROSPECTIVE JUROR:   Thank you.
 9                  (Prospective juror excused.)
10                  (Prospective juror approached.)
11                  THE CLERK:  Give your name to the judge.
12                  PROSPECTIVE JUROR:  Yasmine Mean.  Two
13          reasons.  Me and my husband have a small business
14          and I run daily operations.  Without me the
15          business would suffer.
16                  THE COURT:  What kind of business?
17                  PROSPECTIVE JUROR:  Garage door business.
18                  And, two, I have my brother-in-law in
19          prison serving 30 to life, two sentences which I
20          don't believe I could be fair.
21                  THE COURT:  Counsellors?
22                  MR. LAMB:  Consent.
23                  MR. KATCHEN:  Consent.
24                  THE COURT:  You are excused.
25                  PROSPECTIVE JUROR:  Thank you.
```

EF

```
 1                (Prospective juror excused.)

 2                (Prospective juror approached.)

 3                THE CLERK:  Tell the judge your name.

 4                PROSPECTIVE JUROR:  Thomas Hand.  I am a

 5      doctor and I have a large volume of patients

 6      scheduled with no one else to take care of them

 7      over the next.

 8                THE COURT:  Counsellors?

 9                MR. LAMB:  Consent.

10                MR. KATCHEN:  Yes.

11                THE COURT:  You're excused.

12                (Prospective juror excused.)

13                (Prospective juror approached.)

14                PROSPECTIVE JUROR:  I am Jamie

15      Montalbano.  I am a registered nurse.  I work for

16      pediatric subspecialty practice.  There is some

17      testing that's done on children.  I have no

18      replacement.  There is no other nurse that works

19      in the practice.

20                THE COURT:  Counsellors?

21                MR. LAMB:  Consent.

22                MR. KATCHEN:  Yes, consent.

23                THE COURT:  You are excused.

24                PROSPECTIVE JUROR:  Thank you.

25                (Prospective juror excused.)
```

```
 1                    (Prospective juror approached.)

 2              THE CLERK:  Give the judge your name.

 3              PROSPECTIVE JUROR:  My name is Suzie

 4        Fazio.  My mom going in for total knee

 5        replacement.  I have to schedule cardiologists.

 6        She don't speak English.

 7              THE COURT:  When are the appointments?

 8              PROSPECTIVE JUROR:  All next week and she

 9        has to take out blood too for the surgery.

10              THE COURT:  Counsellors?

11              MR. LAMB:  Consent.

12              MR. KATCHEN:  Consent.

13              THE COURT:  You are excused.

14                    (Prospective juror excused.)

15                    (Prospective juror approached.)

16              PROSPECTIVE JUROR:  Elvis Mostofa.  I am

17        starting a new job on Monday.

18              THE COURT:  Monday?

19              PROSPECTIVE JUROR:  Yes.

20              THE COURT:  Monday is the first day.

21              PROSPECTIVE JUROR:  First day not a good

22        way to start.

23              PROSPECTIVE JUROR:  I don't think they'd

24        like that.

25              THE COURT:  Counsellors?
```

```
 1                    MR. LAMB:  Consent.

 2                    MR. KATCHEN:  Consent.

 3                    THE COURT:  You are excused.

 4                    (Prospective juror excused.)

 5                    (Prospective juror approached.)

 6                    THE CLERK:  Please tell the judge your

 7              name.

 8                    PROSPECTIVE JUROR:  My name is Mo Jang.

 9              I am a dentist.  I have three boys.  I am a sole

10              practitioner.

11                    THE COURT:  You have a patient schedule?

12                    PROSPECTIVE JUROR:  Yes.

13                    THE COURT:  Counsellors?

14                    MR. LAMB:  Consent.

15                    MR. KATCHEN:  Consent.

16                    THE COURT:  You are excused.

17                    (Prospective juror excused.)

18                    (Prospective juror approached.)

19                    THE CLERK:  Tell the judge your name.

20                    PROSPECTIVE JUROR:  My name is Steven

21              Flores.  I have two concerns because of the size

22              of the group that I work with considering the

23              length -- potential length of this trial, that's

24              number one and second of all the nature of the

25              alleged crime.
```

```
 1                    THE COURT:  What is it about the nature
 2              of the alleged crime?
 3                    PROSPECTIVE JUROR:  I don't know that I
 4              could be fair because there is no excuse for
 5              sexual violence.
 6                    THE COURT:  Counsellors?
 7                    MR. LAMB:  Consent.
 8                    MR. KATCHEN:  Consent.
 9                    THE COURT:  You are excused.
10                    (Prospective juror excused.)
11                    (Prospective juror approached.)
12                    THE CLERK:  Please tell the judge your
13              name.
14                    PROSPECTIVE JUROR:  Rosemary Adams.  I
15              was assaulted.
16                    THE COURT:  You were?
17                    PROSPECTIVE JUROR:  Yes.
18                    THE COURT:  How long ago?
19                    PROSPECTIVE JUROR:  When I was 18.
20                    THE COURT:  Is this the kind of thing
21              which would prevent you from being able to sit as
22              a fair and impartial juror?
23                    PROSPECTIVE JUROR:  Definitely.
24                    THE COURT:  Counsellors?
25                    MR. LAMB:  Consent.
```

EF

```
 1                    MR. KATCHEN:  Consent.

 2                    THE COURT:  You are excused.

 3                    (Prospective juror excused.)

 4                    (Prospective juror approached.)

 5                    THE CLERK:  Tell the judge your name.

 6                    PROSPECTIVE JUROR:  John Dufrey.  My

 7       mother was recently put in a stage four Alzheimers

 8       disease.  She don't know us anymore and I am not

 9       in the frame of mind to do this.

10                    THE COURT:  Counsellors?

11                    MR. LAMB:  Consent.

12                    MR. KATCHEN:  Consent.

13                    THE COURT:  You are excused.

14                    (Prospective juror excused.)

15                    (Prospective juror approached.)

16                    THE CLERK:  Tell the judge your name.

17                    PROSPECTIVE JUROR:  My name is Catherine

18       Cully.  And I work at Cabrini Nursing Home in

19       Manhattan but I'm scheduled to go on vacation with

20       my mom from Thursday until Monday morning.

21                    THE COURT:  Next Thursday?

22                    PROSPECTIVE JUROR:  Yes, Thursday coming.

23                    THE COURT:  Thursday coming up.

24                    PROSPECTIVE JUROR:  The 16th is my

25       birthday.
```

EF

1                    THE COURT:  Counsellors?

2                    MR. LAMB:  Consent.

3                    MR. KATCHEN:  Consent.

4                    THE COURT:  You are excused.

5                    (Prospective juror excused.)

6                    (Prospective juror approached.)

7                    THE CLERK:  Tell the judge your name.

8                    PROSPECTIVE JUROR:  My name is Levy Lula.

9       I don't understand the writing and reading in

10      English.

11                   THE COURT:  What about verbally, orally?

12      Do you understand English when it's spoken to you?

13                   PROSPECTIVE JUROR:  Kind of, yeah, but in

14      writing, no.  In writing I have a problem.

15                   THE COURT:  I don't know counsellors if

16      any reading or writing is going to be required

17      here.  I suppose if there is documentary evidence

18      maybe some reading.  What's your position?

19                   MR. KATCHEN:  I would consent.

20                   MR. LAMB:  I consent also.

21                   THE COURT:  You are excused.

22                   (Prospective juror excused.)

23                   (Prospective juror approached.)

24                   THE CLERK:  Tell the judge your name.

25                   PROSPECTIVE JUROR:  Connie Fusco.  I have

EF

1              a restaurant with my sister and I need to be

2              there.

3                       THE COURT:  You work in a restaurant?

4                       PROSPECTIVE JUROR:  We own a restaurant

5              me and my sister.

6                       MR. LAMB:  The two of you co-own it?

7                       PROSPECTIVE JUROR:  Yes.  I have

8              children.  If I'm called in she can't be there.

9                       THE COURT:  Counsellors?

10                      MR. LAMB:  Consent.

11                      MR. KATCHEN:  Consent.

12                      THE COURT:  You are excused.

13                      (Prospective juror excused.)

14                      (Prospective juror approached.)

15                      PROSPECTIVE JUROR:  My name is Wilson

16             MalDonado.  I not speak English good. I don't

17             understand and my kids are in school.

18                      THE COURT:  Counsellors?

19                      MR. LAMB:  Consent.

20                      MR. KATCHEN:  Consent.

21                      THE COURT:  You are excused.

22                      (Prospective juror excused.)

23                      (The following took place in open court:)

24                      THE COURT:  Thank you for staying with

25             us.  I told a few of you I couldn't excuse you at

```
 1              this time.  I'm sorry.  I have certain guidelines

 2         I have to follow.  I hope you can appreciate that.

 3                   I am going to give you a few preliminary

 4         remarks, then fill the jury box and begin

 5         questioning people.

 6                   As I said the trial is the process by

 7         which we'll determine if any of the charges are

 8         proven by sufficient evidence and in that process

 9         those of you selected as jurors and I as the judge

10         in the case perform separate functions.

11                   Jurors are called upon to determine

12         whether or not the evidence which they will hear

13         and see in this case establishes the defendant's

14         guilt of the charges.  In order to do this the

15         jury will have to evaluate all the evidence at the

16         end of the trial in order to determine whether

17         what they've heard from witnesses and seen as

18         exhibits is true and if so what it all means.

19         This is called finding the facts.  That's the

20         jury's job.  The judge finds no facts at a jury

21         trial.

22                   The jury's ultimate decision is called a

23         verdict.  The verdict will be either guilty or not

24         guilty or after hearing all of the evidence the

25         jury may find the defendant guilty of some charges
```

1          and not guilty of others.  The attorneys present

2          the evidence. They usually do this by calling

3          witnesses and they may suggest that the jury draw

4          certain conclusions from the evidence.  But only

5          the jury can decide what really happened and the

6          verdict as to each of the counts submitted to the

7          jury will remain the jury's decision alone.  The

8          judge makes no determination of guilt or lack of

9          guilt at a jury trial.

10              My role at the trial is simply to insure

11         that the jury reaches a verdict in accordance with

12         the law.  I will explain the law as to all the

13         issues in this trial.  You are not required to

14         know any law in order to be a juror.

15              In order for both sides to receive a fair

16         trial I have to rule on questions concerning the

17         conduct of the trial.  Those rulings have nothing

18         to do with whether this defendant is guilty or not

19         guilty.  I may also rule on questions concerning

20         what evidence may be considered and if so for what

21         purpose.

22              When I do make a ruling concerning

23         whether the jury may hear testimony or see an

24         exhibit which is offered as evidence, I will be

25         ruling on whether or not the jury's permitted to

1       hear or see this as a matter of law. And,

2       likewise, should the jury be instructed to

3       disregard something they may have heard it will be

4       because that's the law.

5                None of my rulings during this trial or

6       during the jury selection process if I have to

7       make any should be taken by you as indicating

8       whether all or part of what's eventually offered

9       as evidence should be believed or whether the

10      defendant is guilty or not guilty. Again that's

11      solely the jury's job to determine. You do,

12      however, have to accept the law as given to you if

13      both sides are to have a fair trial to which they

14      are entitled. And in this regard I will be

15      discussing some fundamental legal issues with you

16      shortly.

17               In Richmond County the People of the

18      State of New York are represented by the District

19      Attorney Daniel Donovan. Mr. Donovan is

20      represented at this trial by Assistant District

21      Attorneys Anthony Katchen and Raja Rajeswari.

22      They are seated at this table.

23               MR. KATCHEN: Good morning.

24               MS. RAJESWARI: Good morning.

25               THE COURT: The defendant as I already

EF

1          said is Anthony Rucano and Mr. Rucano is

2          represented by his attorney Eugene Lamb.  They are

3          seated at this table.

4                    THE DEFENDANT:  Good morning.

5                    MR. LAMB:  Good morning.

6                    THE COURT:  The fact that this action is

7          brought in the name of the people or that the

8          evidence is presented by public officials does not

9          in any way indicate that the public wants a

10         specific verdict.  The people of this state are

11         served by whatever verdict is justified by the

12         evidence.

13                   Serving on a jury is a vital function for

14         citizens under our system of law.  It's also a

15         great responsibility which is to accord both sides

16         a fair trial.  In order to do this the jury must

17         be free from any preconceived notions or any

18         sympathies or prejudices which might prevent them

19         from returning a fair and a just verdict based

20         solely on the evidence or lack of evidence.

21                   To help insure this our first order of

22         business is to conduct an examination of

23         prospective jurors.  I will be asking some

24         questions.  When I am finished the attorneys will

25         ask some questions.  The purpose of this

1          questioning is simply to determine whether or not

2          you are qualified to sit as a juror in this

3          particular case.

4                  A number of you will not be selected.

5          Some of you will be excused because you are not

6          qualified to sit as a matter of law.  These people

7          will be excused for cause.  Others amongst you

8          will be excused peremptorily which means by one of

9          the attorneys without any cause being given.

10                 I want to stress at this point that if

11         you are excused it is not a reflection on you as a

12         citizen or a person.  It has nothing to do with

13         your honesty or integrity.  Please don't feel

14         insulted if you are excused.  If you are excused

15         it is simply as a result of a determination made

16         by the parties or by me that you were not to sit

17         as a juror in this particular case.

18                 Should I or the lawyers ask you any

19         questions you would rather not answer in open

20         court just raise your hand and tell us and we'll

21         step to the side and discuss it at a sidebar.

22                 So at this point the clerk is going to

23         call sixteen names at random from the drum.  If

24         you hear your name called just step up and have a

25         seat where the officer directs you.

1              THE CLERK:   Step up.  Ursula Zalewska.

2        Z A L E W S K A.

3              Seat two, Kenneth Martin.  M A R T I N.

4              Seat three, Joseph Di Francesco.

5        D I F R A N C E S C O.

6              Seat four, Christine Hyrick.

7        H Y R I C K.

8              Seat five, Carlos Jusino.  J U S I N O.

9              Seat six, Denise Bradshaw.

10       B R A D S H A W.

11             Seat seven, Felicia Gordon.  G O R D O N.

12             Seat eight, Bruno Cicala.  C I C A L A.

13             Seat nine, Vishny Sawh.  S A W H.

14             Seat ten, Melba Centeno.  C E N T E N O.

15             Eleven, step up.  Bashir Munshi.

16       M U N S H I.

17             Seat twelve, Suzanna Cacici.

18       C A C I C I.

19             Seat thirteen, Daniel Nuzzolo.

20       N U Z Z O L O.

21             Seat fourteen is Victoria Angelino.

22       A N G E L I N O.

23             Fifteen, step up.  Gregory Nichols.

24       N I C H O L S.

25             Seat sixteen, Richard Fennell.

EF

1          F E N N E L L.

2                    Sixteen prospective jurors seated.

3                    THE COURT:  I will be directing my

4          questions to the people in the jury box.  It would

5          help if the rest of you listened.  I will be

6          liable to speak to a few more of before the day is

7          out.  It would go a lot more quicker if you

8          listened to the questions.

9                    I have just outlined for you the nature

10         of the charges in the case and I know I didn't

11         give you an awful lot of information, but my

12         question is based on the little bit that I told

13         you.  Do any of you think you know anything about

14         this case?  You think you've heard anything about

15         it or talked to anyone about it?

16                    I have introduced the lawyers and the

17         defendant to you.  Do any of you know any of them?

18                    Let me read to you a list of potential

19         witnesses.  My reading these names does not impose

20         on anyone the burden of calling these people but

21         these are people who may testify at the trial and

22         I would like to know if you recognize any of the

23         names.  I will read them and you can tell me.

24                    Duane Ramos.  D U A N E.  Last name

25         R A M O S.  Detective William Wasson.  Police

```
 1            Officer Albert Lloyd.  A criminalist from the
 2            medical examiner's office named Jennifer King.
 3            Dr. Nancy Needell.  N E E D E L L.  Stefania Mach.
 4            M A C H.  Detective investigator Margaret
 5            Eng-Wallace.  The last name is hyphenated. It's
 6            E N G dash Wallace.
 7                  Rina Ganeles G A N E L E S, a physician
 8            assistant.  A court clerk named Steven Paradiso.
 9            Police Officer Sharon Brown.  Detective
10            Christopher Connolly.  Dr. Michael Brustein.
11            B R U S T E I N.  Steve Frankl.  F R A N K L.
12            Frank Ortiz.  O R T I Z.  Diane Smith and Police
13            Officer Monkai Lewis.  The first name is
14            M O N K A I.  Last name is Lewis L E W I S.
15                  Do any of you recognize any of those
16            names?
17                  Ms. Centeno, who do you know?
18                  PROSPECTIVE JUROR:  Wasson.  I might know
19            William Wasson.
20                  THE COURT:  A detective?
21                  PROSPECTIVE JUROR:  Yes.
22                  THE COURT:  How would you know him?
23                  PROSPECTIVE JUROR:  I work in law
24            enforcement.
25                  THE COURT:  What do you do?
```

```
 1                PROSPECTIVE JUROR:  I am a detective.

 2                THE COURT:  You are.  Have you ever

 3       worked with Detective Wasson?

 4                PROSPECTIVE JUROR:  If it's the one I

 5       might have worked in Staten Island narcotics, yes.

 6                THE COURT:  How long have you known him

 7       if it's the same person?

 8                PROSPECTIVE JUROR:  I just started

 9       working Staten Island narcotics four years.  The

10       first year I was here for a couple of months.

11                THE COURT:  So what would you call him?

12       Acquaintance at best?

13                PROSPECTIVE JUROR:  Yes.  We didn't hang

14       out together.  We just worked in the same office.

15                THE COURT:  If you were a juror in this

16       case and he were called as a witness would you be

17       able to evaluate his credibility and reliability

18       fairly and objectively?

19                PROSPECTIVE JUROR:  I feel I would, yes.

20                THE COURT:  Thank you.

21                Anyone else recognize any of the names?

22                Okay.  My next series of questions I will

23       direct to all of you. If you have an affirmative

24       answer, just raise your hand up and I will get to

25       you.  I will jump around, but I will get to you.
```

EF

```
 1                    First question.  Are any of you or anyone

 2          close to you and by close to you I mean close

 3          friend or relative involved in law enforcement in

 4          any way?  Ms. Centeno already answered this.

 5                    Anybody else?  Mr. Nichols.

 6                    PROSPECTIVE JUROR:  First cousin

 7          detective in Brooklyn, retired.

 8                    THE COURT:  Anything about his former

 9          occupation that would prevent you from being fair?

10                    PROSPECTIVE JUROR:  No.

11                    THE COURT:  Thank you.  Anyone else on

12          this question?  Law enforcement.

13                    Ms. Centeno, if you were selected as a

14          juror forgetting what I asked you in terms of

15          Detective Wasson, do you think you could be fair

16          and impartial and objective?

17                    PROSPECTIVE JUROR:  Yes.

18                    THE COURT:  Thank you.

19                    Yes, sir.  Mr. Cicala.

20                    PROSPECTIVE JUROR:  I don't know.  My

21          son-in-law's parents are both detectives.

22                    THE COURT:  Your son-in-law?

23                    PROSPECTIVE JUROR:  Parents are both

24          detectives, but they're retired.

25                    THE COURT:  They're retired.  Anything
```

```
 1              about their former occupations that would have any

 2              bearing here on your mind?

 3                        PROSPECTIVE JUROR:  No.

 4                        THE COURT:  Anyone else law enforcement

 5              question?

 6                        Are any of you or anyone close to you to

 7              your knowledge involved in the legal field?  A

 8              lawyer, paralegal, employee of a law firm or

 9              prosecutor's office anything of that nature?

10                        Ms. Cacici.

11                        PROSPECTIVE JUROR:  My mother is a

12              paralegal secretary.

13                        THE COURT:  Does she work for a law firm?

14                        PROSPECTIVE JUROR:  Yes.  Brown & Wood.

15                        THE COURT:  Do you know if that firm

16              practices any criminal law?

17                        PROSPECTIVE JUROR:  Not that I know of.

18                        THE COURT:  Anything about your mother's

19              occupation that would prevent you from being a

20              fair juror?

21                        PROSPECTIVE JUROR:  No.

22                        THE COURT:  Anyone else on this question?

23                        Have any of you or anyone close to you to

24              your knowledge ever been the victim of a crime?

25                        Victim of a crime, you or anyone close to
```

```
 1          you?

 2                    Mr. Martin.

 3                    PROSPECTIVE JUROR:  My house was robbed

 4          one time while we were on vacation.  That was back

 5          in the 80's.

 6                    THE COURT:  Back in the 80's.  Was

 7          anybody arrested?

 8                    PROSPECTIVE JUROR:  I don't think so.  I

 9          never heard of anybody.

10                    THE COURT:  Is there anything --

11                    PROSPECTIVE JUROR:  We had suspicions,

12          but I don't think there was any truth.

13                    THE COURT:  Anything about that

14          experience that would prevent you from being a

15          fair juror in this case?

16                    PROSPECTIVE JUROR:  No, I don't think so.

17                    THE COURT:  Anyone else?

18                    I will remind you we can discuss anything

19          privately if you prefer and my next question is

20          has any of you or anyone close to you ever been a

21          defendant in any kind of a criminal proceeding?

22          Nobody on that.

23                    Have any of you ever been a witness in

24          any kind of a courtroom proceeding?

25                    Have any of you ever been a litigant that
```

```
 1              is a plaintiff or a defendant in any kind of a

 2              civil lawsuit or action?

 3                        Have any of you ever served on a jury

 4              before?

 5                        Mr. Fennell, when please?

 6                        PROSPECTIVE JUROR:  I don't remember.

 7                        THE COURT:  Approximately.

 8                        PROSPECTIVE JUROR:  About twenty years

 9              ago.

10                        THE COURT:  Do you remember if it was a

11              civil or criminal case?

12                        PROSPECTIVE JUROR:  It was a criminal

13              case.

14                        THE COURT:  Don't tell us how it ended up

15              but did the jury reach a verdict?

16                        PROSPECTIVE JUROR:  Yes.

17                        THE COURT:  Was there anything about that

18              experience that would prevent you from being able

19              to do it again?

20                        PROSPECTIVE JUROR:  Yes.

21                        THE COURT:  When I say do it again I mean

22              sit here as a juror.

23                        PROSPECTIVE JUROR:  Yes.

24                        THE COURT:  You had a bad experience?

25                        PROSPECTIVE JUROR:  I felt that the
```

EF

```
 1              jurors weren't paying attention to what was going

 2              on in the case.

 3                       THE COURT:  You think that would affect

 4              your ability to sit as a juror in this case?

 5                       PROSPECTIVE JUROR:  I would think after

 6              awhile people get tired they don't pay attention

 7              and it was just frustrating telling people, you

 8              know, dealing with the case with people who just

 9              sat there.  You know what I am trying to say?

10                       THE COURT:  Bottom line I don't want to

11              put words in your mouth are you telling me because

12              of that experience --

13                       PROSPECTIVE JUROR:  I am just saying it

14              was a bad experience because I was frustrated

15              people sitting there the whole time and not paying

16              attention and then you're like, we just sat

17              through it, you weren't listening to the lawyer,

18              so it was just a frustrating experience.

19                       THE COURT:  If you were selected here

20              could you put that experience out of your mind and

21              deal with this case on its own merits?

22                       PROSPECTIVE JUROR:  I don't think so.

23                       THE COURT:  Okay, thanks.

24                       Anyone else with jury experience?

25                       Mr. Martin.
```

 1                   PROSPECTIVE JUROR:  I was on a civil jury

 2          in the 90's sometime, but it didn't go to

 3          completion.  It was settled.

 4                   THE COURT:  Was there anything about that

 5          experience that would prevent you from being about

 6          to sit as a juror this case?

 7                   PROSPECTIVE JUROR:  I don't really think

 8          so.

 9                   THE COURT:  Anyone else?

10                   Ms. Angelino.

11                   PROSPECTIVE JUROR:  About five years ago

12          but it was settled.

13                   THE COURT:  It was settled. Anything

14          about that experience that would prevent you from

15          sitting as a juror in this case?

16                   PROSPECTIVE JUROR:  No.

17                   THE COURT:  That's a no for the record.

18          She has to write it down.

19                   PROSPECTIVE JUROR:  No.

20                   THE COURT:  Anyone else?

21                   Have any of you ever served on a Grand

22          Jury?

23                   What I am going to do at this point is go

24          down the list one through sixteen and if you're

25          employed I would like to know what type of work

```
 1        you do.  I don't need to know for whom you work.
 2        I would like to know what type of work you do if
 3        you're employed.  Sometimes occupations help us in
 4        jury selection.  If you are not employed just tell
 5        me that.  If you are retired please tell me what
 6        you retired from.
 7                   Ms. Zalewska, are you working?
 8                   PROSPECTIVE JUROR:  Yes.
 9                   THE COURT:  What do you do?
10                   PROSPECTIVE JUROR:  Supervisor.
11                   THE COURT:  A supervisor.  What kind of
12        an organization?
13                   PROSPECTIVE JUROR:  This is working with
14        mentally challenged adults.
15                   THE COURT:  Could you say that again?
16                   PROSPECTIVE JUROR:  I am a supervisor at
17        Daytop agency working with mentally challenged
18        adults.
19                   MR. LAMB:  Okay.
20                   THE COURT:  Mr. Martin.
21                   PROSPECTIVE JUROR:  I am a retired
22        chemist.
23                   THE COURT:  Thank you.
24                   Mr. Di Francesco.
25                   PROSPECTIVE JUROR:  I have two jobs,
```

1                    bakery manager and merchandiser.

2                              THE COURT:  Thank you.

3                              Ms. Hyrick.

4                              PROSPECTIVE JUROR:  I work with the

5          mentally disabled.

6                              THE COURT:  Thank you.

7                              Mr. Jusino.

8                              PROSPECTIVE JUROR:  I'm an account

9          executive for skin care brand retail.

10                             THE COURT:  Thank you.

11                             Ms. Bradshaw.

12                             PROSPECTIVE JUROR:  Head chef in a

13         nursing home.

14                             THE COURT:  Chef in a nursing home.

15                             PROSPECTIVE JUROR:  I work in building

16         services at St. Vincent's.

17                             THE COURT:  Thank you.

18                             Ms. Gordon.

19                             PROSPECTIVE JUROR:  Gym team leader for

20         several group homes that deal with the

21         developmentally disabled.

22                             THE COURT:  Thank you.

23                             Mr. Cicala.

24                             PROSPECTIVE JUROR:  I am unemployed at

25         the moment.

 1                    THE COURT:  Okay, thank you.

 2                    Mr. Fennell.

 3                    PROSPECTIVE JUROR:  New York City

 4          sanitation.

 5                    THE COURT:  Thank you.

 6                    Mr. Nichols.

 7                    PROSPECTIVE JUROR:  New York City

 8          department of environment protection.

 9                    THE COURT:  Thank you.

10                    Ms. Angelino.

11                    PROSPECTIVE JUROR:  Accounting.

12                    THE COURT:  Thank you.

13                    Mr. Nuzzolo.

14                    PROSPECTIVE JUROR:  Education, guidance

15          counsellor.

16                    THE COURT:  Thanks.

17                    Ms. Cacici.

18                    PROSPECTIVE JUROR:  Registered client

19          services in the financial services agency.

20                    THE COURT:  Thank you.

21                    Mr. Munshi.

22                    PROSPECTIVE JUROR:  Pharmaceutical

23          company.

24                    THE COURT:  Thank you.

25                    Ms. Centeno.

```
 1              PROSPECTIVE JUROR:  New York City police
 2    Department.
 3              THE COURT:  You told me that and I
 4    already have forgotten.
 5              And Ms. Sawh.
 6              PROSPECTIVE JUROR:  I work with Comfort
 7    Inn.
 8              THE COURT:  Comfort Inn.
 9              PROSPECTIVE JUROR:  Breakfast and
10    housekeeping.
11              THE COURT:  Thank you all for that
12    information.
13              What I am going to do at this point is
14    discuss several fundamental legal principles that
15    apply in all criminal cases.  As I said a little
16    while ago you don't have to know any law in order
17    to be a juror.  It is my job to explain the law to
18    the jurors.  You do have to agree to accept the
19    law if both sides are to have a fair trial to
20    which they are entitled.
21              So I am going to discuss several
22    fundamental legal principles that apply in all
23    criminal trials and ask if you can promise us you
24    will accept these principles.  If you feel you
25    cannot accept any of these fundamental principles
```

1       please tell me.  It is important we know how you

2       feel about it.

3                You heard me mention a moment ago the

4       indictment.  The indictment is the instrument that

5       contains the charges in the case.  The indictment

6       is not evidence.  The mere fact the defendant has

7       been indicted is not evidence of anything.  In

8       particular it is not evidence of guilt.

9                Should you be chosen to serve as a trial

10      juror our law requires that you decide the case

11      wholly and solely on the evidence.  And since it

12      is our rule of law that an indictment is evidence

13      of nothing I ask if you can promise us that you

14      will follow and accept this rule in our law.

15               Anyone amongst you who cannot promise us

16      you will accept this rule in our criminal law?

17               It is our law the final verdict or

18      verdicts in a criminal case must be unanimous.

19      Twelve jurors seldom agree immediately and you

20      will therefore if selected be called upon to

21      deliberate at the end of the trial in an effort to

22      reach a final unanimous verdict or verdicts.

23               You and eleven other people would go to

24      the jury room and discuss the case in an effort it

25      reason together and reach a final unanimous

1           verdict or verdicts.

2                   Do any of you feel you could not

3           deliberate with eleven other people if called upon

4           to do so?

5                   Under our law everyone accused of a crime

6           and brought to trial is presumed innocent unless

7           or until proved guilty beyond a reasonable doubt.

8           The defendant in this case is presumed innocent

9           and to put this another way the defendant is never

10          required to prove his innocence.  On the contrary

11          the People represented by the District Attorney

12          having accused the defendant of the crimes charged

13          have the burden of proving him guilty beyond a

14          reasonable doubt.  The People carry this burden of

15          proof throughout the trial and it never shifts.

16          It always remains on the people and the

17          presumption of innocence remains with every

18          defendant throughout every criminal trial.

19                  Is there anyone amongst you who cannot

20          now in your own mind grant the defendant this

21          presumption of innocence?

22                  On the burden of proof issue again as I

23          said in a criminal case the burden of proof is

24          entirely on the People and remains on them

25          throughout the trial.  A defendant is not required

1         to prove anything nor is a defendant required to

2         disprove anything. As I say the entire burden of

3         proof is on the People, that is the District

4         Attorney and remains on them throughout the trial.

5                   Is there anyone amongst you who cannot

6         accept this rule in our criminal law?

7                   If a defendant does not testify in a

8         criminal trial that is not a factor from which any

9         inference unfavorable to such defendant may be

10        drawn. Is there anybody who cannot accept this

11        fundamental rule in our criminal law?

12                  Okay. What I am going to do at this

13        point is discuss with you the burden of proof

14        required for conviction in every criminal case.

15        This burden of proof is called proof of guilt

16        beyond a reasonable doubt. That standard does not

17        require the People to prove the defendant guilty

18        beyond all possibility of doubt or beyond a shadow

19        of a doubt. It does require them to establish the

20        defendant's guilt beyond a reasonable doubt.

21                  Our law, therefore, requires that before

22        a jury may convict a defendant each juror must be

23        satisfied that the credible evidence is sufficient

24        to convince him or her beyond a reasonable doubt

25        that the defendant is in fact guilty. The

1      evidence must satisfy the jury beyond a reasonable

2      doubt that the defendant is in fact the person who

3      committed the crime or crimes charged and the

4      evidence must also establish beyond a reasonable

5      doubt each and every essential element of a

6      charged crime.  I define the elements for the jury

7      at the end of the trial.

8                  Now what does our law mean when it

9      requires proof of guilt beyond a reasonable doubt?

10     A doubt of a defendant's guilt to be a reasonable

11     doubt must be a doubt for which some reason can be

12     given.  The doubt to be reasonable must,

13     therefore, arise because of the nature and quality

14     of the evidence or from the lack or insufficiency

15     of the evidence.  The doubt to be a reasonable

16     doubt should be one which a reasonable person

17     acting in a matter of this importance would be

18     likely to entertain because of the evidence or

19     because of the lack or insufficiency of the

20     evidence.

21                 A doubt of guilt is not reasonable if

22     instead of being based on the nature and quality

23     of the evidence or insufficiency of the evidence

24     it's based on some guess or whim or speculation

25     unrelated to the evidence.

1           Also a doubt of guilt is not a reasonable

2     doubt if it's based merely on simply for a

3     defendant or from a mere desire by a juror to

4     avoid a disagreeable duty.  I repeat a doubt of

5     the defendant's guilt to be reasonable doubt must

6     arise from the nature and quality of the evidence

7     or from the lack or insufficiency of the evidence.

8           Therefore, the first duty of each juror

9     is to consider and weigh all the evidence and

10    decide what evidence that juror believes is

11    credible and worthy of his or her consideration.

12    The next duty of each juror is to determine

13    whether that juror has in fact a reasonable doubt

14    of the defendant's guilt as that term is defined

15    in our law.

16          A reasonable doubt our law says is a

17    actual doubt one which you're conscious of having

18    in your mind after you considered all the

19    evidence.  If after doing so you than feel

20    uncertain and not fully convinced of the

21    defendant's guilt, and you are also satisfied that

22    in entertaining such a doubt you are acting a

23    reasonable person should act in a matter of this

24    importance, than that's a reasonable doubt to

25    which every defendant is entitled to the benefit.

1            I repeat, it's the duty of each juror

2        carefully to review, weigh and consider all the

3        evidence.  If after doing so you find that the

4        People have not proved the defendant's guilt

5        beyond a reasonable doubt as I have defined the

6        term, then you must find the defendant not guilty.

7            On the other hand, if you are satisfied

8        that the People have proved the defendant's guilt

9        beyond a reasonable doubt as I defined the term,

10       then you must find the defendant guilty.

11           The question is can you promise us now if

12       you are selected as a juror in this case you will

13       in your final deliberations follow and apply the

14       standard of proof that I have defined for you,

15       that is proof beyond a reasonable doubt?  Is there

16       anybody who cannot make us that promise?

17           Thank you.  I am required to advise

18       prospective jurors that if selected you may not

19       during your deliberations consider the subject of

20       punishment.  Sentencing if there is to be any lies

21       solely within the exclusive province of the Court.

22       The jury has no role to play in that.  The jury is

23       not permitted to consider the possibility of

24       punishment or penalty in their deliberations and

25       the jury may not include any sentencing

1        recommendation in their verdict.

2                    The trial jury is the sole and exclusive

3        judge of the facts and the facts only.  The Court

4        is the sole and exclusive judge of the law and of

5        any sentence to be imposed following a verdict.

6                    Will you promise us if selected here you

7        will render your verdict free from fear, favor or

8        sympathy and without considering any possibility

9        of sentence or punishment?  Is there anybody who

10       cannot make us that promise?

11                   And the last issue I will discuss with

12       you has to do with police testimony.  As you know

13       from the witness list I read it's likely the jury

14       in this case will hear from police witnesses.

15       Police officers take the same oath as anyone else.

16       The mere fact a witness is a police officer does

17       not make that witness any more or any less

18       credible.

19                   Is there anyone amongst you who has any

20       feelings about the police or has had any

21       experiences with the police which would lead you

22       in your judgment to give a police officer's

23       testimony greater or lesser weight than anyone

24       else's merely because of the officer's occupation?

25       Anybody have that feeling one way or the other?

EF

```
 1                 Ms. Centeno, do you think you could
 2          evaluate a police witness as you would anyone
 3          else?
 4                 PROSPECTIVE JUROR:  Yes.
 5                 THE COURT:  Thank you all very much.  I
 6          will turn this over to the lawyers.  If they ask
 7          you anything you want to discuss privately we'll
 8          step over to the side.
 9                 MS. RAJESWARI:  Good morning, ladies and
10          gentlemen of the jury.  My name is Raja Rajeswari,
11          along with Assistant District Attorney Anthony
12          Katchen.  We represent the People of the State of
13          New York and we are going to be presenting this
14          case to you.
15                 Now this is the portion of our jury
16          selection where we get to ask you some questions.
17          Then Mr. Lamb gets to do the same.  Our purpose
18          here again is not to pry or embarrass you.  As
19          Justice Rooney said if you need to speak to us in
20          private you just have to let us know.
21                 Both the People and the defense at this
22          time are looking to pick twelve jurors who can
23          assure us that they will be fair and impartial to
24          sit in this particular case.  So please be as
25          honest as you can.  And at this time let me ask
```

```
 1              you a few general questions.  After that I would
 2              like to go to some specific questions.
 3                       We can just go in order.
 4                       Miss, how do you pronounce your last
 5         name?
 6                       PROSPECTIVE JUROR:  Zalewska.
 7                       THE COURT:  Are you married?
 8                       PROSPECTIVE JUROR:  Divorced.
 9                       MS. RAJESWARI:  Do you have any children?
10                       PROSPECTIVE JUROR:  One child.
11                       MS. RAJESWARI:  Do you live in a private
12         house or an apartment?
13                       PROSPECTIVE JUROR:  In an apartment.
14                       MS. RAJESWARI:  Mr. Di Francesco, how
15         about you, sir?
16                       PROSPECTIVE JUROR:  Married, three kids.
17                       THE COURT:  Do you live in a private
18         house?
19                       PROSPECTIVE JUROR:  Private house.
20                       MS. RAJESWARI:  Ms. Hyrick.
21                       PROSPECTIVE JUROR:  Myrick, it's supposed
22         to be.
23                       MS. RAJESWARI:  Myrick.  What about you?
24                       PROSPECTIVE JUROR:  Yes.  Apartment,
25         children.
```

1              MS. RAJESWARI:  Are you married or

2        single?

3              PROSPECTIVE JUROR:  Not married.

4              MS. RAJESWARI:  Mr. Jusino.

5              PROSPECTIVE JUROR:  I am not married.  I

6        live in a private home and no children.

7              MS. RAJESWARI:  What about you,

8        Ms. Bradshaw?

9              PROSPECTIVE JUROR:  Divorced, three kids,

10       private house.

11             MS. RAJESWARI:  Ms. Gordon.

12             PROSPECTIVE JUROR:  Single.  One

13       daughter.  Live in a private house.

14             MS. RAJESWARI:  Mr. Nichols.

15             PROSPECTIVE JUROR:  Married with a child

16       and private house.

17             MS. RAJESWARI:  Ms. Angelino.

18             PROSPECTIVE JUROR:  Single, living in an

19       apartment.

20             MR. LAMB:  I'm sorry?

21             PROSPECTIVE JUROR:  Single in an

22       apartment.

23             MS. RAJESWARI:  Do you have any children?

24             PROSPECTIVE JUROR:  No.

25             MS RAJESWARI:  What about you, Mr.

```
 1              Nuzzolo?
 2                   PROSPECTIVE JUROR:  One child. Live in a
 3        private house.
 4                   MS. RAJESWARI:  Ms. Cacici.
 5                   PROSPECTIVE JUROR:  Married five months,
 6        pregnant and live in a private house.
 7                   MS. RAJESWARI:  Ms. Munshi.
 8                   PROSPECTIVE JUROR:  Married, two kids and
 9        I live in a private house.
10                   MS. RAJESWARI:  Ms. Centeno.
11                   PROSPECTIVE JUROR:  Common-law, private
12        house, one child.
13                   MS. RAJESWARI:  Ms. Sawh.
14                   PROSPECTIVE JUROR:  Married, no kids,
15        private home.
16                   MS. RAJESWARI:  Okay.  I am not going to
17        get to speak to everybody because of time
18        constraints but I will try to get to as many of
19        you as I can.
20                   The judge will already told you this case
21        involves allegations of rape and criminal sexual
22        acts and other charges.
23                   Ms. Gordon, when you hear the word rape
24        do you think rape only happens between strangers?
25                   PROSPECTIVE JUROR:  No.
```

```
 1                  MS. RAJESWARI:  Can rape happen in a
 2          domestic situation where parties know each other?
 3                  PROSPECTIVE JUROR:  Yes.
 4                  MS. RAJESWARI:  Does everybody here agree
 5          with Ms. Gordon that a rape can occur between two
 6          people who actually know each other?  It doesn't
 7          have to be strangers?  Does everybody here agree
 8          with that?
 9                  Ms. Zalewska, what about you, ma'am?
10                  PROSPECTIVE JUROR:  I agree.
11                  MS. RAJESWARI:  Ms. Centeno.
12                  PROSPECTIVE JUROR:  I agree.
13                  MS. RAJESWARI:  Now if the parties are
14          known to each other, are in a relationship because
15          they are either married or they're engaged or
16          they're common-law, does that mean that the woman
17          does not have a right to say no?  What do you
18          think?
19                  MR. LAMB:  Objection, Judge.
20                  THE COURT:  Overruled.
21                  PROSPECTIVE JUROR:  I'm sorry, could you
22          repeat?
23                  MS. RAJESWARI:  Does that mean she has a
24          right to say no because it's somebody she knows?
25                  PROSPECTIVE JUROR:  She has a right to
```

1          say no.

2                    MS. RAJESWARI:  Does everybody agree with

3          that?  What about you, sir?

4                    PROSPECTIVE JUROR:  Yes.

5                    MS. RAJESWARI:  What do you think?

6                    PROSPECTIVE JUROR:  I don't know.  Goes

7          both ways.

8                    MS. RAJESWARI:  We had Mr. Fennell tell

9          you he was a juror in a case and he didn't have a

10         great experience because the jury wasn't paying

11         attention.  If you are all picked -- any one of

12         you are picked as a juror can you assure us that

13         you will listen and pay attention to both the

14         people and to the defense until all the witnesses

15         comes and give you their testimony?

16                   Can I have everybody assurance?

17                   PROSPECTIVE JURORS: Yes.

18                   MS. RAJESWARI:  Mr. Fennell, you think

19         you can sit on this case?

20                   PROSPECTIVE JUROR:  I could be partial.

21                   MS. RAJESWARI:  You could be?

22                   PROSPECTIVE JUROR:  Partial.

23                   THE COURT:  You mean impartial.

24                   PROSPECTIVE JUROR:  Impartial, I'm sorry.

25                   THE COURT:  So, Mr. Fennell, just so I

1          understand if you were on a jury and everybody was

2          paying attention that would work for you?

3                    PROSPECTIVE JUROR:  It was just a bad

4          experience.

5                    MS. RAJESWARI:  You think you could be

6          fair and impartial.

7                    Everybody here agree with Mr. Fennell?

8          This is an important case to the people and the

9          defense.  If you were picked as a juror you will

10         pay attention to all the witnesses and listen to

11         Justice Rooney's instruction?  Can I have

12         everybody's assurance?

13                   PROSPECTIVE JUROR:  Yes.

14                   MS. RAJESWARI:  Is there anybody who

15         can't give me that assurance? What about you?

16                   PROSPECTIVE JUROR:  I could be impartial.

17         No problem.

18                   MS. RAJESWARI:  Now, Mr. Jusino.

19                   PROSPECTIVE JUROR:  Yes.

20                   MS. RAJESWARI:  If you hear that a victim

21         of rape didn't immediately leave the situation,

22         does that automatically mean for you that the rape

23         didn't occur?

24                   PROSPECTIVE JUROR:  No.

25                   MS. RAJESWARI:  Ms. Angelina, if you hear

```
 1            that someone who was raped didn't immediately
 2            leave the situation but rather stood in that
 3            situation, would you still keep an open mind and
 4            listen to them?
 5                      PROSPECTIVE JUROR:  Yes.
 6                      MS. RAJESWARI:  And if the victim or the
 7            witness in the case gives you reasons for why a
 8            person possibly stayed could you keep an open mind
 9            and listen to the person?
10                      PROSPECTIVE JUROR:  Yes.
11                      MS. RAJESWARI:  What about you,
12            Mr. Munshi?  Can you listen to her and see why the
13            person didn't leave?
14                      PROSPECTIVE JUROR:  Yes.
15                      MS. RAJESWARI:  Ma'am, what about you?
16                      PROSPECTIVE JUROR:  Yes.
17                      PROSPECTIVE JUROR:  Yes.
18                      THE COURT:  Can you give me that
19            assurance, you will listen to her as to why?
20                      PROSPECTIVE JUROR:  I will listen but I
21            would have questioned why immediately didn't leave
22            the situation.
23                      MS. RAJESWARI:  That's a natural
24            reaction.  I understand that.  Maybe you or I
25            would have reacted differently to the situation.
```

1          But you will hear the person did not leave or did

2          not tell anybody immediately.  Would you still

3          keep an open mind and listen to what the person

4          says?

5                    PROSPECTIVE JUROR:  I would be a little

6          hesitant about it.  I mean I would listen but I

7          mean if something like that occurs, I mean I think

8          they should go right away and tell somebody.

9          That's my impression.

10                   MS. RAJESWARI:  That's why we pick the

11         jurors because you come with your own perceptions

12         and your life experiences.  We understand that.

13         You would listen but you would have some

14         questions.

15                   PROSPECTIVE JUROR:  Yes.

16                   MS. RAJESWARI:  Do you agree?  You would

17         have some questions?

18                   PROSPECTIVE JUROR:  I mean I will have

19         some questions but this doesn't mean that I will

20         listen with open mind.

21                   MS. RAJESWARI:  That was my question.

22         Does anybody here agree with Mr. Di Francesco?

23         You would have some issues with that?  Can you

24         keep an open mind and listen to the victim?

25                   PROSPECTIVE JUROR:  Yes.

```
 1                      PROSPECTIVE JUROR:  Yes.

 2                      MS. RAJESWARI:  What about you?

 3                      PROSPECTIVE JUROR:  I would have some

 4            issues with that circumstance.

 5                      MS. RAJESWARI:  You would have some

 6            issues with that?

 7                      PROSPECTIVE JUROR:  Yes.

 8                      MS. RAJESWARI:  Ma'am?

 9                      PROSPECTIVE JUROR:  I would listen.

10                      MS. RAJESWARI:  Now Justice Rooney will

11            define the law for you.  He is the judge and he

12            will tell you what the law is.  And when you take

13            an oath as a juror you have to follow the law.

14            But we also want you to obviously bring your

15            common sense, your life experiences with you.

16                      This is not television.  This is not, you

17            know, one of the shows we watch on TV.  This is

18            real life and when you are picked as jurors you

19            are asked to bring your common sense.

20                      In this case if you have some experts, if

21            you hear from some experts witness who are

22            qualified as experts, can I have your assurance

23            you will listen to what the experts have to say in

24            their field of expertise and connect it with the

25            victim's testimony and pay attention to it?  Is
```

1              that an issue for anybody?

2                     Ma'am, what about you?

3                     PROSPECTIVE JUROR:  Yes, I would be able

4              to listen to the expert and understand what he is

5              explaining or why like you say in a situation a

6              person who stays in a relationship, a person

7              doesn't stay in a relationship and reasons why.

8                     MS. RAJESWARI:  You think you could keep

9              an open mind listen to the expert?

10                    PROSPECTIVE JUROR:  Yes.

11                    MS. RAJESWARI:  Everybody agree with

12             Ms. Centeno?  If there is anybody who doesn't

13             agree.  Please tell us.  This is the time to let

14             us know.  After you are picked as a juror it is

15             too late to come forward.  How about you?

16                    PROSPECTIVE JUROR:  I would be fair.

17                    MS. RAJESWARI:  Ma'am, which one of you

18             -- you had three children?

19                    PROSPECTIVE JUROR:  Yes.

20                    MS. RAJESWARI:  How old are your

21             children?

22                    PROSPECTIVE JUROR:  26, 22 and 14.

23                    MS. RAJESWARI:  They're old enough when

24             they were young and your children fought before.

25                    PROSPECTIVE JUROR:  Yes.

```
 1                    MS. RAJESWARI:  If there is a fight
 2          between two children and you are called to settle
 3          that fight, right?  How do you decide who was
 4          telling the truth and who is not telling the
 5          truth?
 6                    PROSPECTIVE JUROR:  If --
 7                    MS. RAJESWARI:  If you weren't there, you
 8          had to come and decide, how would you tell who is
 9          telling you the truth?
10                    PROSPECTIVE JUROR:  Based on the fight
11          itself, how the fight ensued.
12                    MS. RAJESWARI:  Yes.
13                    PROSPECTIVE JUROR:  How bad one was hurt
14          over the other one.
15                    MS. RAJESWARI:  Of course.
16                    PROSPECTIVE JUROR:  Then I will make my
17          decision who started it, who was the more
18          aggressive one.
19                    MS. RAJESWARI:  So you would listen to
20          both of them and you would assess their
21          credibility?
22                    PROSPECTIVE JUROR:  Um-hum.
23                    MS. RAJESWARI:  That's essentially what
24          you're doing, right? That's what you're going to
25          be asked to do as a juror.  You are going to be
```

```
1              asked to assess the credibility of witnesses.

2              It's not a new and different thing.  You have been

3              doing that all your lives.  If you had brothers or

4              sisters, if you have children, if you have nieces,

5              if you have nephews, if you have families, you try

6              to say who was telling you the truth.  You decide

7              that.

8                   So if you are picked as a juror in this

9              case, Mr. Nichols, can I have your assurance that

10             you will not only keep an own mind but you will

11             bring your life experiences with you and listen to

12             everybody and see who has a motive to lie or who

13             has a motive to tell the truth and assess

14             credibility?

15                  PROSPECTIVE JUROR:  Yes.

16                  MS. RAJESWARI:  Can you do that, sir?

17                  PROSPECTIVE JUROR:  Yes.

18                  MS. RAJESWARI:  Everybody agree with

19             Mr. Nichols?

20                  How about you, Mr. Munshi?  Can you do

21             that for us?

22                  PROSPECTIVE JUROR:  Yes.

23                  MS. RAJESWARI:  Ma'am?

24                  PROSPECTIVE JUROR:  Yes.

25                  MS. RAJESWARI:  Anybody disagree?
```

```
 1                  PROSPECTIVE JUROR:  I agree.

 2                  MS. RAJESWARI:  You will listen to motive

 3             and see if you can assess credibility?

 4                  PROSPECTIVE JUROR:  Yes.

 5                  MS. RAJESWARI:  Anybody here who cannot

 6             give us their assurance?

 7                  You are going to hear the standard, the

 8             judge has already explained it to you so I am not

 9             going to go over it in detail.  But I want to make

10             sure of one thing.

11                  The judge has mentioned that the burden

12             of proof rests with the People.  It rests with

13             this table.  And it's a burden of proof that we

14             will prove to you beyond a reasonable doubt.  It

15             never, never ever shifts to the defendant.

16             Defendant doesn't have to prove anything.  But the

17             also defined burden of proof to you.

18                  Beyond a reasonable doubt is the standard

19             we have to prove.  It's not beyond a shadow of a

20             doubt.  It's not beyond all doubt.  It's a not

21             beyond a moral certainty.  We don't have to prove

22             beyond all doubt.

23                  If you are selected as a juror can I have

24             your assurance, Ms. Angelina, that you will only

25             hold the People to the standard that Justice
```

```
 1                    Rooney asked you to?
 2                         PROSPECTIVE JUROR:  Yes.
 3                         MS. RAJESWARI:  And not to a much higher
 4               standard because it's a rape case.  Can I have
 5               your assurance?
 6                         PROSPECTIVE JUROR:  Yes.
 7                         MS. RAJESWARI:  How about you,
 8               Mr. Nuzzolo?
 9                         PROSPECTIVE JUROR:  Yes.
10                         MS. RAJESWARI:  Ms. Cacici.
11                         PROSPECTIVE JUROR:    Yes.
12                         MS. RAJESWARI:  Mr. Munshi.
13                         PROSPECTIVE JUROR:  Yes.
14                         MS. RAJESWARI:  Ma'am?
15                         PROSPECTIVE JUROR:  Yes.
16                         MR. RAJESWARI:  What about you, sir?
17                         PROSPECTIVE JUROR:  Yes.
18                         MS. RAJESWARI:  Is there anybody else who
19               can give me that assurance?
20                         PROSPECTIVE JUROR:  No problem.
21                         MS. RAJESWARI:  Ms. Centena?
22                         PROSPECTIVE JUROR:  Keep an open mind.
23                         MS. RAJESWARI:  Okay.  Now Judge Rooney
24               has also spoke about punishment or sympathy.  I am
25               not going to touch that again.  I just want
```

1          everybody's assurance that if you are selected as

2          a juror you can put punishment and sympathy aside

3          and decide the case based on the evidence.

4                  Can everybody here give me that

5          assurance?  Is there anybody who cannot?  Which is

6          fine if you can't but just let us know at this

7          time.

8                  Anybody who cannot put the thought of

9          punishment or sympathy aside and give a fair

10         verdict in this case?  Anybody who cannot make

11         that promise?

12                 PROSPECTIVE JUROR:  Me.

13                 MS. RAJESWARI:  You want to talk in

14         private?

15                 PROSPECTIVE JUROR:  Yes.

16                 MS. RAJESWARI:  Now there are jurors who

17         for a variety of reasons whether it's personal,

18         whether it's religious, whether it's social,

19         whether it's moral, cannot vote guilty no matter

20         what the evidence is.  There is the hesitation to

21         convict.  No matter what the People prove here, no

22         matter who we bring to the witness stand, they are

23         just not able to convict.  There is a hesitation

24         based on various different reasons.

25                 Is there anybody here who feels that way?

```
 1                You feel that way?

 2                      PROSPECTIVE JUROR:  Yes.

 3                      MS. RAJESWARI:  No matter what the

 4                evidence is you cannot convict?

 5                      PROSPECTIVE JUROR:  Yes.

 6                      MS. RAJESWARI:  Thank you for your

 7                candor.  I appreciate that.

 8                      Does anybody here agree with Mr. Cicala?

 9                Does anybody here agree with him?  This is the

10                time to let us know.

11                      PROSPECTIVE JUROR:  I agree.

12                      MS. RAJESWARI:  I would agree with that.

13                      PROSPECTIVE JUROR:  Yes.

14                      MS. RAJESWARI:  Other than -- could you

15                anybody else?  By you not agreeing with him you

16                are giving me your assurance that if I prove my

17                case beyond a reasonable doubt according to the

18                standards the judge defined for you, you will be

19                able to vote guilty?  Is that right?

20                      PROSPECTIVE JUROR:  Yes.

21                      PROSPECTIVE JUROR:  Yes.

22                      MS. RAJESWARI:  Now if there are any

23                issues that I haven't touched upon just because I

24                didn't think of it or the judge hasn't mentioned

25                it yet, is there anything else that would prevent
```

1        you from sitting as a fair juror for the People

2        and for Mr. Rucano in this case?  Anything that I

3        haven't asked of you that you haven't maybe that

4        you've thought of?  Is there any reason that will

5        prevent you from sitting in this case other than

6        what people have already said?  And thank you so

7        much for your honesty and candor.

8                Anything else?  Okay.  If there is

9        nothing else I am going to thank you for your time

10       and your attention.

11               THE COURT:  Mr. Lamb.

12               MR. LAMB:  Thank you.

13               Good afternoon, ladies and gentlemen of

14       the jury, or good morning.  We've been at this for

15       several days and it's getting a little tiresome

16       and a little redundant.

17               One of the nice things about being the

18       defense as far as jury selection is concerned by

19       the time it's time for me to ask you questions

20       most of the important questions have already been

21       asked of you, so my job is relatively easy.

22               I just want to touch on a few points that

23       were brought up by the judge and brought up by the

24       prosecution.

25               One of them is as far as deliberating.

```
 1            The judge asked you if you could knowing that you

 2       might have a difference of opinion from other

 3       members of the jury, if you could nevertheless go

 4       into the deliberation room at the end of the trial

 5       and deliberate with other jurors.  Now and he

 6       indicated it is almost always the case there are

 7       differences of opinions between the jurors.

 8            THE COURT:  I didn't say that.

 9            MR. LAMB:  I thought you did.

10            THE COURT:  I said if they were selected

11       could they assure us they could deliberate with

12       eleven other people in an effort to reason

13       together. I am just pointing out I didn't say

14       that.  You can pursue it if you want.

15            MR. LAMB:  My only concern is this:  Let

16       me ask Ms. Sawh, I'll pick you.  Ms. Sawh, let's

17       say you go into the deliberation room.  You have

18       heard all evidence.  Now you are sent into the

19       deliberation room and you have a particular

20       feeling one way or the other about guilt or

21       innocence and you are the only one.  And the other

22       eleven people in that room all disagree with you

23       and they're sort of saying, come on, come on, come

24       along with us.  We can all go home, we can get an

25       early break here.  But you feel in your heart and
```

 1              in your conscience you are confident of your

 2              opinion.  Do you think you can stick to your guns?

 3                        PROSPECTIVE JUROR:  Yes.

 4                        MR. LAMB:  And face those eleven other

 5              people?

 6                        PROSPECTIVE JUROR:  Yes.

 7                        MR. LAMB:  Is there anybody here who

 8              feels they may have some difficulty doing that

 9              having to face eleven other people and who may be

10              getting a little impatient with you because you

11              are holding up the works so-to-speak?  Anybody

12              else here?

13                        PROSPECTIVE JUROR:  I would.

14                        MR. LAMB:  You would feel that --

15                        PROSPECTIVE JUROR:  I would feel pressure

16              I have to make a decision.

17                        PROSPECTIVE JUROR:  I would.

18                        THE COURT:  Step up, please.

19                        (Discussion held off the record at the

20              bench.)

21                        MR. LAMB:  Other than Mr. Di Francesco

22              and Ms. Angelina, do I have the assurance of each

23              and every one of you that you will stick to your

24              guns and be true to your conscious and your

25              convictions if you are chosen as jurors?

```
 1                    MR. KATCHEN:  Objection.

 2                    THE COURT:  Sustained as to stick to your

 3            guns.  If you want to ask can they be true to

 4            their convictions based on the findings of fact,

 5            that's fine.

 6                    MR. LAMB:  True to your convictions as

 7            far as your decision as a juror, do I have that

 8            assurance?

 9                    PROSPECTIVE JUROR:  Still feeling

10            pressure from the other people to kind of side

11            with them.

12                    MR. LAMB:  Thank you.

13                    Now you've heard the judge explain to you

14            that there is in this case as with every case

15            presumption of innocence.  The defendant has the

16            right to be presumed innocent and the burden of

17            proof is on the People throughout the case.  They

18            have to prove their case beyond a reasonable

19            doubt.

20                    Now we're all sort of trained in society

21            to believe where there is competition there should

22            be kind of a level playing field, there should be

23            -- the sides should be even so-to-speak.

24                    Is there anybody here who feels that

25            giving the defendant the benefit of the
```

1          presumption of innocence and forcing the District

2          Attorney to prove their case beyond a reasonable

3          doubt somehow gives the defendant unfair advantage

4          in a criminal case?  Is there anybody who feels

5          that?

6                   Do you all wholeheartedly accept the

7          proposition that the defendant as he sits there

8          right now has the right to be presumed innocent

9          and he can only be stripped of that presumption if

10         the People meet their burden of proof and prove

11         him guilty beyond a reasonable doubt?

12                  Does everybody accept that principle of

13         law?  You can all assure me what you will apply it

14         if you are selected as jurors?

15                  Now you've gotten a little bit of a sense

16         what this case is about.  This is not about

17         strangers.  This isn't about the traditional

18         concept of a rape, some stranger hiding in the

19         pushes, drags a woman into the playground, molests

20         a child.

21                  There was a relationship here.  There was

22         the parties living together for several months in

23         a romantic relationship.  A relationship as with

24         any relationship which has some dysfunctional

25         features in it.

```
 1                    MR. KATCHEN:  Judge, may we approach?

 2                    THE COURT:  No need to approach.  Don't

 3           get into any facts.  We haven't started the trial

 4           yet.

 5                    MR. LAMB:  That this arises out of a

 6           relationship which lasted several months between

 7           the parties.

 8                    Is there anybody here that has

 9           experienced such an event in a relationship which

10           was so traumatic or so painful that they feel that

11           perhaps because of that they may not be able to

12           listen to the evidence in this particular case in

13           a fair and objective way?

14                    Ms. Gordon, something you want to discuss

15           privately?

16                    PROSPECTIVE JUROR:  I would rather

17           discuss it in private.

18                    MR. LAMB:  Yes.  Ms. Zalewska.

19                    PROSPECTIVE JUROR:  Privately please.

20                    MR. LAMB:  We all -- almost all of us

21           have relationships with -- romantic relationships

22           at sometime or other in your lives.  Sometimes

23           they're good and sometimes they're not so good and

24           sometimes they're so bad we are scarred for life.

25                    I just want to make sure that we have
```

```
 1          fair and objective jurors here to start out with

 2          the case. Sometimes people's life experiences make

 3          it impossible. There are certain circumstances

 4          that make it impossible.  That's the reason I am

 5          asking this question.  I am not asking this

 6          question in order to pry or be nosey about your

 7          business.  I want to make sure my client gets a

 8          fair trial here.

 9               Would you care for us to listen to them

10          privately now?

11               THE COURT:  No.  When you are done.

12               MR. LAMB:  Now you heard the judge also

13          indicate to you that the defendant doesn't have to

14          prove anything and he does not, he isn't required

15          to testify.

16               If the defendant in this case chooses not

17          to testify will any of you hold that against him

18          or feel he must be hiding something, or would you

19          draw some sort of negative inference from the fact

20          that he failed or chose not to take the stand?

21               You feel that you need to hear from him

22          before you could make a decision as to guilt or

23          innocence?  Anybody here who feels that way?

24               Yes, Mr. Fennell.

25               PROSPECTIVE JUROR:  Yes.  I feel if I was
```

1          defending myself I would want to speak up for

2          myself.

3                    THE COURT:  Despite that, could you

4          accept the law as I give it to all of you in a

5          little while if the defendant does not testify in

6          a criminal trial that's not a factor from which

7          any inference unfavorable to such defendant could

8          be drawn.

9                    PROSPECTIVE JUROR:  I was telling him

10         that I would feel like I'd have to defend myself.

11         I wouldn't hold it against him but I am just

12         saying that personally I would.

13                   THE COURT:  But you can accept the law?

14                   PROSPECTIVE JUROR:  I could accept it.

15                   THE COURT:  He can implicate himself by

16         saying the wrong thing.  But you could accept the

17         law, that's the bottom line.

18                   PROSPECTIVE JUROR:  Yes.

19                   MR. LAMB:  Ms. Angelina.

20                   PROSPECTIVE JUROR:  I can accept the law.

21                   MR. LAMB:  You could.  Okay.

22                   And if he does choose to testify, now he

23         is the defendant, obviously he is the one who

24         stands to lose the most in this case, are you

25         going to reject everything he says or just close

```
 1              your minds to everything he says or do I have your

 2              assurance that you will listen just as carefully

 3              and just as patiently and just as fairly to what

 4              he has to say as you do with any other witness

 5              that testifies here?  Can you assure me of that?

 6              Can all of you assure me of that?

 7                   Ladies and gentlemen, one last question.

 8              Do I have the assurance of each and every one of

 9              you that if you are chosen as a juror here today

10              that you will give my client the same fair trial

11              that you would want if you were sitting where he

12              is sitting?

13                        MR. KATCHEN:  Objection, Judge.

14                        THE COURT:  Overruled.

15                        MR. LAMB:  Do I have that assurance from

16              each and every one of you?

17                   Thank you very much.

18                        THE COURT:  We are going to step to the

19              side to talk to a few people and then I will tell

20              you what happens after that.  We'll set up over

21              here and talk to three people I think.

22                        (The following took place at the

23              sidebar:)

24                        THE COURT:  Sidebar with the lawyers.  I

25              understand your client does not want to be here
```

```
 1              for that.
 2                      MR. LAMB:  That's correct.
 3                      THE COURT:  Ms. Zalewska, could you step
 4              over please?
 5                      (Prospective juror approached.)
 6                      THE COURT:  Ms. Zalewska, it was a
 7              question you asked.
 8                      MR. LAMB:  I asked if anybody had been in
 9              a relationship, difficult relationship.
10                      PROSPECTIVE JUROR:  I was married for a
11              few years and it was abusive marriage.  Not
12              physically abusive but verbal.
13                      THE COURT:  Would this prevent you from
14              being able to be a fair and impartial juror in
15              this case or not?
16                      PROSPECTIVE JUROR:  I am not sure.  I
17              think not but --
18                      THE COURT:  Any other questions?
19                      MR. LAMB:  No.
20                      PROSPECTIVE JUROR:  One more thing I
21              would like to say.  My English is my second
22              language and I am afraid maybe situation I may not
23              understand everything.
24                      THE COURT:  Okay.  Thank you. You may
25              resume your seat.
```

EF

```
 1                    Ms. Bradshaw, could you step over please?

 2                    (Prospective juror approached sidebar.)

 3                    THE COURT:  Hi, Ms. Bradshaw.

 4                    PROSPECTIVE JUROR:  Not even three weeks

 5           my brother tried to rape my sister.  She got

 6           charged with assault.  She slapped him.  Has to go

 7           back to court, criminal court on Targee.

 8                    THE COURT:  Is this the kind of thing

 9           that would affect your ability to be fair in this

10           case?

11                    PROSPECTIVE JUROR:  I think it would

12           because I am siding with her because she gets

13           arrested assaulting him trying to protect herself.

14                    THE COURT:  Counsellors, any questions?

15                    MR. LAMB:  No.

16                    THE COURT:  Counsellor?

17                    MR. KATCHEN:  No.

18                    THE COURT:  Thank you, Ms. Bradshaw.  I

19           will let you resume your seat.

20                    Ms. Gordon, could you step over please?

21                    (Prospective juror approached sidebar.)

22                    THE COURT:  This is Ms. Gordon.

23                    PROSPECTIVE JUROR:  Yes.

24                    THE COURT:  I think you are here in

25           response to Mr. Lamb's question, relationship,
```

1              prior relationship.

2                      PROSPECTIVE JUROR:  Yes.  I had a

3              relationship about four years ago that was bad

4              from the beginning and continued going down hill

5              to the point I had to take out an order of

6              protection.  Matter of fact, I keep the papers in

7              my car.  He is not in the state at the moment, but

8              it was not good.

9                      THE COURT:  Would this prevent you from

10             being able to sit here as a fair and impartial

11             juror?

12                     PROSPECTIVE JUROR:  It would be very,

13             very difficult because I was in a relationship

14             with this gentleman for about three years.  I

15             couldn't even understand myself how I went from

16             where I was and why I was still in it.  It would

17             make it difficult for me.

18                         THE COURT:  Questions?

19                         MR. LAMB:  No questions.

20                         MR. KATCHEN:  No.

21                     THE COURT:  Thank you, ma'am.  I will let

22             you resume your seat.

23                         Yes, sir.

24                     (Prospective juror approached sidebar.)

25                         THE COURT:  This is Jusino.

1       It's Mr. Nuzzolo.

2              PROSPECTIVE JUROR:  I want to say I had

3       my hand up before. I was willing to accept the

4       law.  One thing I feel strongly if I was a

5       defendant life is on the line I would want to take

6       the stand.

7              THE COURT:  I guess that's how you feel.

8       I am certainly not going to argue with you.  But

9       as Mr. Lamb made clear, his client doesn't have to

10      testify.  If he does not that's not a factor from

11      which any inference unfavorable to such defendant

12      may be drawn.

13             If you can accept that and apply that

14      depending how this trial works out, that's fine.

15      If you can't tell us we want to know how you feel.

16             PROSPECTIVE JUROR:  Maybe I wouldn't

17      accept it.  I would feel one hundred percent I

18      would take the stand.

19             THE COURT:  Questions?

20             MR. LAMB:  No.

21             THE COURT:  Thank you.  You may resume

22      your seat.

23             (The following took place in open court:)

24             THE COURT:  What we're going to do at

25      this point is give the lawyers a few minutes to go

EF

```
 1              over their notes and then I will step back here
 2              and deal with jury selection.  This will probably
 3              take five to ten minutes.  If you would like to
 4              step out for a little while feel free or you can
 5              stay right where you are.  But don't discuss the
 6              case with each other or anyone else.  Thank you
 7              for your patience.
 8                      (Pause in proceedings.)
 9                      (The following took place at the
10              sidebar:)
11                      THE COURT:  We are at a sidebar with the
12              lawyers and the defendant.  Let me make a brief
13              record.
14                      Mr. Rucano is exercising his Antommarchi
15              selectively.  I just want the record to be clear
16              that we haven't abused it.
17                      MR. LAMB:  Yes, he is here for me to
18              state, if I am stating this accurately, he has
19              chosen not to be present during the times when
20              jurors are talking private.
21                      THE DEFENDANT:  I don't want to be in
22              anybody's private stuff.
23                      MR. LAMB:  He just --
24                      THE DEFENDANT:  As a courtesy to the
25              jurors.
```

```
 1              MR. LAMB:  -- the selection process.

 2              THE COURT:  That's fine.  He can choose

 3         to be present at sidebars selectively.  There is

 4         nothing wrong with that.  I just want to make it

 5         clear that what's happening.  His Antommarchi

 6         rights have not been abrogated.

 7              MR. LAMB:   I don't believe they have

 8         been in any fashion or form.

 9              THE COURT:  What do we have?  Seven?

10              THE CLERK:   Seven sworn.

11              THE COURT:  Keep in mind Number 4 wants

12         to talk to us about anxiety at 2 p.m.  So I don't

13         know what that means.  Just keep that in mind.  We

14         will go one at a time.

15              Ms. Zalewska, cause People?

16              MR. KATCHEN:  No.

17              THE COURT:  Defense?

18              MR. LAMB:  Yes.  She said she couldn't be

19         sure that she could be fair and she had difficulty

20         with the language.

21              THE COURT:  She did say that.  That

22         challenge is granted.

23              Next is Mr. Martin.  Cause People?

24              MR. KATCHEN:  No.

25              THE COURT:  Defense?
```

EF

1               MR. LAMB:  No.

2               THE COURT:  Peremptory People?

3               MR. KATCHEN:  Yes.

4               THE COURT:  Next is Di Francesco.  Cause

5       People?

6               MR. KATCHEN:  Yes, Judge.

7               THE COURT:  Mr. Lamb?

8               MR. LAMB:  Consent.

9               THE COURT:  For cause on consent.

10              Next is Ms. Hyrick.  Cause People?

11              MR. KATCHEN:  No.

12              THE COURT:  Defense?

13              MR. LAMB:  No.

14              THE COURT:  Peremptory People?

15              MR. KATCHEN:  No.

16              THE COURT:  Defense?

17              MR. LAMB:  No.

18              THE COURT:  Hyrick becomes Number 8.

19              MS. RAJESWARI: She corrected it.

20              THE CLERK:  I have her card as

21      H Y R I C K.  Juror Number 8.

22              THE COURT:  Next is -- we're all set?

23              MR. LAMB:  Yes.

24              THE COURT:  Mr. Jusino.  Cause People?

25              MR. KATCHEN:  No.

```
 1                    THE COURT:  Defense?
 2                    MR. LAMB:  No.
 3                    THE COURT:  Peremptory People?
 4                    MR. KATCHEN:  No.
 5                    THE COURT:  Perempt defense?
 6                    MR. LAMB:  Yes.
 7                    THE COURT:  Next is Ms. Bradshaw.  Cause
 8          People?
 9                    MR. KATCHEN:  We'll consent.
10                    MR. LAMB:  Consent.
11                    THE COURT:  You are making a cause?
12                    MR. LAMB:  Cause.
13                    THE COURT:  For cause.  Consent on both
14          sides granted.
15                    Next is Ms. Gordon.  Cause People?
16                    MR. KATCHEN:  Same.  I think we're in the
17          same situation.
18                    THE COURT:  Mr. Lamb, are you making a
19          cause challenge?
20                    MR. LAMB:  Yes.
21                    THE COURT:  For cause on consent.
22                    Next is Mr. Cicala.  Cause People?
23                    MR. KATCHEN:  Yes.
24                    THE COURT:  What's your position?
25                    MR. LAMB:  No.  But I agree he said he
```

1          could not possibly --

2                  THE COURT:  He said he couldn't convict.

3          If you want to amplify your record, go ahead.

4                  MR. LAMB:  No, I won't.

5                  THE COURT:  That cause challenge is

6          granted.

7                  Next is Ms. Sawh.  Cause People?

8                  MR. KATCHEN:  No.

9                  THE COURT:  Defense?

10                 MR. LAMB:  No.

11                 THE COURT:  Peremptory People?

12                 MR. KATCHEN:  No.

13                 THE COURT:  Defense?

14                 MR. LAMB:  Yes.

15                 THE COURT:  Next is Ms. Centeno.  Cause

16         People?

17                 MR. KATCHEN:  No.

18                 THE COURT:  Defense?

19                 MR. LAMB:  No.

20                 THE COURT:  Peremptory People?

21                 MR. KATCHEN:  No.

22                 THE COURT:  Defense?

23                 MR. LAMB:  Yes.

24                 THE COURT:  Next is Mr. Munshi.  Cause

25         People?

1              MR. KATCHEN:  No.

2              THE COURT:  Defense?

3              MR. LAMB:  No.

4              THE COURT:  Peremptory People?

5              MR. KATCHEN:  No.

6              THE COURT:  Defense?

7              MR. LAMB:  No.

8              THE COURT:  So, Carmine, he becomes

9         Number 9.

10             THE CLERK:  Yes, sir.

11             THE COURT:  Next is Ms. Cacici.  Cause

12        People?

13             MR. KATCHEN:  No.

14             THE COURT:  Defense?

15             MR. LAMB:  No.

16             THE COURT:  Peremptory People?

17             MR. KATCHEN:  No.

18             THE COURT:  Defense?

19             MR. LAMB:  No.

20             THE COURT:  So she becomes Number 10,

21        Carmine.

22             PROSPECTIVE JUROR:  Yes, sir.

23             THE COURT:  Next is Mr. Nuzzolo.  Cause

24        People?

25             MR. KATCHEN:  No, but I will consent.

EF

```
 1                    MR. LAMB:  Yes, for cause.

 2                    THE COURT:  So defense is making a cause

 3          challenge and the People are consenting?

 4                    MR. KATCHEN:  Yes.

 5                    THE COURT:  Granted.

 6                    Next is Ms. Angelino.  Cause People?

 7                    MR. KATCHEN:  No.

 8                    THE COURT:  Defense?

 9                    MR. LAMB:  Yes.  She indicated she wasn't

10          sure she would want to hear from the defendant I

11          believe.

12                    MR. KATCHEN:  She said she could accept

13          the law.

14                    THE DEFENDANT:  She admitted she was

15          going to be pressured.

16                    MR. LAMB:  It was the pressure.  She was

17          with the pressure.  She said --

18                    THE DEFENDANT:  She would submit to the

19          pressure.

20                    MR. LAMB:  To any pressure.

21                    MR. KATCHEN:  That's an unfair question.

22                    MR. LAMB:  I didn't ask 11/1.  I just --

23                    THE COURT:  I will grant the challenge.

24                    Next is Mr. Nichols.  Cause People?

25                    MR. KATCHEN:  No.
```

```
 1                    THE COURT:  Cause defense?

 2                    MR. LAMB:  No.

 3                    THE COURT:  Peremptory People?

 4                    MR. KATCHEN:  No.

 5                    THE COURT:  Defense?

 6                    MR. LAMB:  No.

 7                    THE COURT:  That's Juror Number 11,

 8         Carmine?

 9                    PROSPECTIVE JUROR:  Yes, Judge.

10                    THE COURT:  Finally, Mr. Fennell.  Cause

11         People?

12                    MR. KATCHEN:  No.

13                    THE COURT:  Defense?

14                    MR. LAMB:  Yes.

15                    THE COURT:  What's the basis?

16                    MR. LAMB:  He said several times he

17         couldn't be fair.  He had to hear from my client.

18                    THE COURT:  He said that?

19                    THE DEFENDANT:  She said do you think you

20         could be fair and he said I don't think.

21                    MR. KATCHEN:  I rehabilitated and said he

22         could follow the law.

23                    THE COURT:  Only thing he had a bad jury

24         experience but then People's voir dire he

25         indicated that the people -- and I intervened, if
```

EF

 1         he had a jury of people who paid attention that

 2         would be all right with him.  What else did he

 3         say?

 4                 MR. LAMB:  I pressed him about whether my

 5         client -- whether the defendant should testify or

 6         not and he would have to hear from him.

 7                 THE COURT:  Let's bring him over.  Is

 8         that all right?

 9                 Mr. Fennell, could you step over a minute

10         please?  Mr. Fennell, could you step over here a

11         minute please?  I just want to ask you a question.

12                 (Prospective juror approached the

13         sidebar.)

14                 THE COURT:  We're just trying to remember

15         -- this is Mr. Fennell.  We're trying to remember

16         something you may or may not have said.  I frankly

17         don't recall.  Mr. Lamb voir dired the jury on

18         whether or not they could accept the fact that the

19         defendant didn't have to testify and if he did not

20         whether they could agree with the law that the

21         jury draw no inference unfavorable to a defendant

22         if he didn't testify.  What's your position on

23         that?

24                 PROSPECTIVE JUROR:  My position would be

25         I'm impartial, but I frown upon it.  I could still

1          be fair, but I frown upon it.  Me personally I

2          would want to defend myself.  I know it's tough

3          for people to take the stand.  I frown upon it but

4          I am still impartial towards it.

5                    THE COURT:  Any questions?

6                    MR. KATCHEN:  No.

7                    PROSPECTIVE JUROR:  I just have one

8          thing.  September 22nd I have a court deposition.

9          I wonder if that was going to interfere.

10                   THE COURT:  This is in connection with a

11         civil case of some sort?

12                   PROSPECTIVE JUROR:  Well, I had a DWI in

13         2007 and I have to appear for a court deposition

14         September 22nd.  Otherwise it gets delayed again.

15         It's been delayed twice already.

16                   THE COURT:  I think what I will say is

17         this.  If you end up on this jury we'll make sure

18         you make your deposition.

19                   PROSPECTIVE JUROR:  Thanks.

20                   (Prospective juror left the sidebar.)

21                   THE COURT:  Anybody want to be heard

22         further?

23                   MS. RAJESWARI:  Judge, he still said that

24         he frowns upon it, but he could be impartial.

25                   MR. LAMB:  Continuing to frown upon it.

EF

1               MS. RAJESWARI:  He can follow the law.

2          He gave an answer.

3               THE COURT:  I view that as less than an

4          unequivocal response.  He reiterated I would frown

5          upon it.  I think it's for me to grant a cause

6          challenge.  Are you still making it?

7               MR. LAMB:  Yes.

8               THE COURT:  Granted.  We'll swear these

9          people in and tell them to be back at two and try

10          to get another round in before lunch.

11               THE CLERK:  The People used ten.

12          Defense used eleven.

13               (The following took place in open court:)

14               THE CLERK:  The following jurors have

15          been selected for this case:  Christine Hyrick,

16          you're Juror Number 8.  Bashir Munshi, you are

17          Juror Number 9.  Suzanna Cacici, you are Juror

18          Number 10.  And Gregory Nichols, you are Juror

19          Number 11.  If I called your name remain seated.

20               If I did not, please stand, go across the

21          street to central jury for your next trial.  Thank

22          you.

23               (Prospective jurors not chosen left the

24          courtroom.)

25               THE CLERK:  Jurors in the box stand.

```
 1              Please raise your right hand to be sworn as trial

 2         jurors.

 3              Do you and each of you solemnly swear

 4         that you will try this action in a just and

 5         impartial manner and to the best of your judgment

 6         render a verdict according to the law and the

 7         evidence so help you God?

 8              JURORS:  Yes.

 9              THE COURT:  You can have a seat for just

10         a minute and I will give you some instructions.

11              We are going to continue selecting.  We

12         need a few more people.  We anticipate starting

13         the trial this afternoon.  So what I am going to

14         ask you all to do is be in the jury room which is

15         right across the hall, the officers will show you

16         where it is on your way out, at 2 p.m.  The other

17         jurors will be there at 2 p.m.  I expect we will

18         have a jury at that time and begin the trial.

19              But I must instruct you before you leave

20         as follows:  Do not discuss this case with each

21         other or any other juror or with anyone else.  You

22         simply not must not talk about the case until you

23         begin deliberations at the end of the trial.

24              Second, prior to being discharged you

25         must not speak with anyone about taking anything,
```

1          any payment or benefit in return for supplying

2          information concerning this trial.

3                   Third, report directly to me please any

4          incident within your knowledge involving an

5          attempt by anybody to improperly influence you or

6          any member of the jury.

7                   Don't visit or view the premises where

8          any charged crime is committed.  I don't believe

9          you heard any.  Don't visit any such premises or

10         place.  Don't read, view or listen to any media

11         accounts involving this case should there be any.

12         That includes the Internet.  Don't attempt to

13         research any fact, issue or law related to this

14         case on your own.

15                  And, finally, don't form any opinion,

16         continue to keep an open mind until you begin your

17         deliberations at the end of the case.

18                  Thank you very much for agreeing to

19         serve.  We'll see you at 2 p.m.  The officers will

20         show you the jury room on your way out.

21                  (Four sworn jurors left the courtroom.)

22                  THE CLERK:    Seat one, step up.  Laurie

23         Batwin.  B A T W I N.  Seat one.

24                  Seat number two, step up.  Jennifer

25         Cifelli.  C I F E L L I.

EF

1              Seat three, Mary Ellen Varone.

2         B A R O N E.

3              Seat four. Amardeep Gill. G I L L.

4              Seat five. Greg Matthius.

5         M A T T H I U S.

6              Seat six, first name letter J.  Last name

7         Dellauniversita.  Is that hyphenated?

8              PROSPECTIVE JUROR:  No. Joanne.

9              THE CLERK:  J O A N N E.  Last name is

10        D E L L A U N I V E R S I T A.  Seat six.

11             Seat seven.  Risoky Skalny.  S K A L N Y.

12             Seat eight.  Lisa Martinez.

13        M A R T I N E Z.

14             Seat number nine. Charles Beckett.

15        B E C K E T T.

16             Seat ten, Felicia Matos.  M A T O S.

17             Seat eleven.  Fabiola Carbajal.

18        C A R B A J A L.

19             Seat twelve, Peter Tam.  T A M.

20             Seat thirteen, Arcelius Pizarro.

21        P I Z A R R O.

22             Seat fourteen, Sopat Te.  Last name T E.

23             Seat fifteen, Susan Thomas.  T H O M A S.

24             Seat sixteen, Leana Pasynkova.

25        P A S Y N K O V A.  Seat sixteen.

1              Sixteen prospective jurors seated.

2              THE COURT:  Okay.  My questions don't

3    change.  So I will just launch into this.

4              Do any of you think you know anything

5    about this case apart from what you've heard in

6    court this morning?

7              Do any of you know the lawyers or the

8    defendant?

9              I read a list of potential witnesses

10   earlier.  I will read it again if anybody wants me

11   to.

12             Did you recognize any of the names?

13   Maybe you want to hear the names again?

14             Are any of you or anyone close to you

15   involved or have you been involved in law

16   enforcement in any capacity?

17             One.  Mr. Matthius, who do you know?

18             PROSPECTIVE JUROR:  Retired detective.

19             THE COURT:  You are?

20             THE DEFENDANT:  Yes.

21             THE COURT:  How long were you on the job?

22             PROSPECTIVE JUROR:  18 years.

23             THE COURT:  How long ago did you retire?

24             PROSPECTIVE JUROR:  Two and a half years

25   ago.

```
 1                    THE COURT:  Anything about your
 2          background, training and experience as a police
 3          officer, detective that would prevent you from
 4          being a fair juror?
 5                    PROSPECTIVE JUROR:  I have dealt with
 6          rape cases before, interrupted a rape in progress.
 7          Co-worker was raped and murdered, left on the side
 8          of the road.  I am going to be a little biased
 9          probably.
10                    THE COURT:  Do you want to deal with this
11          right now?  Might as well.
12                    MR. LAMB:  I would consent.
13                    MR. KATCHEN:  People would consent.
14                    THE COURT:  Okay, we're going to excuse
15          you, Mr. Matthius.  It's probably better you get
16          on another kind of case.  You can step out.
17                    We'll fill that seat, counsels?
18                    MS. RAJESWARI:  Yes.
19                    MR. LAMB:  Yes.
20                    THE CLERK:  Am I filling that seat?
21                    THE COURT:  Put somebody else into that
22          seat.  You don't have to move anybody.
23                    MR. LAMB:  That's fine.
24                    MS. RAJESWARI:  Yes.
25                    MR. LAMB:  Young lady has her hand up
```

1        also.
2                    THE CLERK:   One thing at a time.
3                    PROSPECTIVE JUROR:  I said I work for a
4        law firm.
5                    THE COURT:  I'll get to that shortly.
6                    THE CLERK:   Take seat five, step up.
7        Shirley Fernandez.  Seat five.
8                    THE COURT:  Ms. Fernandez, let me get you
9        up to speed.  Do you think you know anything about
10       this case aside from what you heard in court
11       today?
12                   PROSPECTIVE JUROR:  No.
13                   THE COURT:  Do you know the lawyers or
14       the defendant?
15                   PROSPECTIVE JUROR:  No.
16                   THE COURT:  Did you recognize the names
17       of any of those potential witnesses I read
18       earlier?
19                   PROSPECTIVE JUROR:  No.
20                   THE COURT:  Did I get everybody in that
21       last question?  I think I did.
22                   This is Ms. Varone.  You know somebody?
23                   PROSPECTIVE JUROR:  No.  I knew a cop.
24                   THE COURT:  Okay.  Well, that's my
25       question we've got going right now.

```
 1                    PROSPECTIVE JUROR:  Yes.

 2                    THE COURT:  I think Ms. Fernandez is up

 3            to speed.  The question pending is are any of you

 4            or anyone close to you involved in law

 5            enforcement?

 6                    Ms. Varone, you have an affirmative

 7            answer on that?

 8                    PROSPECTIVE JUROR:  I just knew someone

 9            that was a policeman that's retired.

10                    THE COURT:  Is there anything about that

11            relationship friendship that would prevent you

12            from being fair?

13                    PROSPECTIVE JUROR:  No.

14                    THE COURT:  Thank you.

15                    Anyone else on this?  Law enforcement?

16            Ms. Pasynkova.

17                    PROSPECTIVE JUROR:  My son is a police

18            officer.

19                    THE COURT:  New York City police officer?

20                    PROSPECTIVE JUROR:  Yes.

21                    THE COURT:  Is there anything that would

22            prevent you from being fair to both sides?

23                    PROSPECTIVE JUROR:  No.

24                    THE COURT:  Anyone else on this question?

25            Ms. Matos.
```

```
 1                    PROSPECTIVE JUROR:  Yes.  My ex husband
 2          is a correction officer.
 3                    THE COURT:  Your ex husband is a police
 4          officer?
 5                    PROSPECTIVE JUROR:  Yes.
 6                    THE COURT:  Is there anything about that
 7          that would prevent you from being a fair juror in
 8          this case?
 9                    PROSPECTIVE JUROR:  Yes.
10                    THE COURT:  I will let the lawyers talk
11          to you further if they want on that.
12                    I saw another hand I think.  Ms. Pizarro.
13                    PROSPECTIVE JUROR:  My husband is a
14          retired detective.
15                    THE COURT:  How long ago did he retire?
16                    PROSPECTIVE JUROR:  About eight years
17          now.
18                    THE COURT:  Is there anything about his
19          former occupation that would prevent you from
20          being fair?
21                    PROSPECTIVE JUROR:  No, I don't think so.
22                    THE COURT:  Anyone else?
23                    Are any of you or anyone close to you
24          involved in the legal field in any way as a
25          lawyer, paralegal, employee of a law firm or
```

```
 1              prosecutor's office?

 2                      This is Ms. Dellauniversita.

 3                      PROSPECTIVE JUROR:  Yes.

 4                      THE COURT:  Who do you know in the legal

 5              field?

 6                      PROSPECTIVE JUROR:  I am a legal

 7              secretary.

 8                      THE COURT:  For a law firm?

 9                      PROSPECTIVE JUROR:  Yes.

10                      THE COURT:  Is the firm practicing any

11              criminal law?

12                      PROSPECTIVE JUROR:  No.  It's a large

13              firm SCC pro bono and prisoner's rights.

14                      THE COURT:  Have you ever worked on any

15              pro bono cases?

16                      PROSPECTIVE JUROR:  They come through me,

17              yes.

18                      THE COURT:  Is there anything about your

19              experience in this regard that would prevent you

20              from being a fair juror here?

21                      PROSPECTIVE JUROR:  No.

22                      THE COURT:  Anyone else on this question?

23              Nobody.  Ms. Varone.

24                      PROSPECTIVE JUROR:  I have a friend that

25              works for lawyers.
```

1              THE COURT:  Friend that what?

2              PROSPECTIVE JUROR:  She works for

3      lawyers, secretary to lawyers in Manhattan.

4              THE COURT:  You know if she's involved in

5      any criminal law?

6              PROSPECTIVE JUROR:  Not that I know of.

7      I am not sure.

8              THE COURT:  Am I safe in saying that

9      wouldn't have any bearing here in terms your

10     ability to be fair?

11             PROSPECTIVE JUROR:  Yes.

12             THE COURT:  Okay.  Anyone else on this

13     question?  Ms. Pasynkova.

14             PROSPECTIVE JUROR:  I work for a law

15     firm.

16             THE COURT:  You work for a law firm?

17             PROSPECTIVE JUROR:  Yes.

18             THE COURT:  What kind of law is the firm

19     involved in?

20             PROSPECTIVE JUROR:  Immigration, not

21     criminal.

22             THE COURT:  Litigation, not criminal.

23             PROSPECTIVE JUROR:  I am a legal

24     secretary.

25             THE COURT:  Anything about your

1           occupation that would prevent you from being fair?

2                       PROSPECTIVE JUROR:  No.

3                       THE COURT:  Thank you.  Anyone else on

4           this question?  Mr. Skalny.

5                       PROSPECTIVE JUROR:  Yes, I have a problem

6           speak English here.  I don't understand.

7                       THE COURT:  Okay.  We'll get to you

8           shortly on that issue.

9                       Counsellors, keep that in mind all right?

10                      PROSPECTIVE JUROR:  I'm sorry.

11                      THE COURT:  That's all right.  I think

12          we're through with the legal field.

13                      Next question we can talk privately.

14          Have any of you or anyone close to you to your

15          knowledge ever been a defendant in any kind of a

16          criminal proceeding?  Nobody on that.

17                      Is your hand up Ms. Varone or not?  I

18          can't tell.  If there is something you want to

19          talk about privately we'll do that.

20                      PROSPECTIVE JUROR:  All right.  I'll talk

21          about it.

22                      THE COURT:  We'll talk to you shortly.

23                      Ms. Dellauniversita, you want to talk

24          privately?

25                      PROSPECTIVE JUROR:  Yes, please.

```
 1                  THE COURT:  Anybody else?
 2                  Ms. Pizarro?  Privately?
 3                  PROSPECTIVE JUROR:  Yes.
 4                  THE COURT:  Ms. Carbajal, you want to
 5        talk privately?
 6                  PROSPECTIVE JUROR:  Yes.
 7                  THE COURT:  Have any of you been a
 8        witness in any kind of a courtroom proceeding?
 9        Have any of you been a litigant, that is a
10        plaintiff or a defendant, in any kind of a civil
11        lawsuit or civil action?
12                  Have any of you ever served?  Is your
13        hand up?
14                  PROSPECTIVE JUROR:  Yes, it was up
15        before.
16                  THE COURT:  This is Ms. Matos.
17                  PROSPECTIVE JUROR:  I testified in the
18        Grand Jury for a case that I was personally
19        involved in.
20                  THE COURT:  Richmond County or somewhere
21        else?
22                  PROSPECTIVE JUROR:  It was actually
23        Brooklyn, Kings County.
24                  THE COURT:  How long ago was that?
25                  PROSPECTIVE JUROR:  That had to be around
```

1           twelve years ago.

2                   THE COURT:  Was there anything about that

3           experience that would prevent you from being a

4           fair trial juror?

5                   PROSPECTIVE JUROR:  No.

6                   THE COURT:  Thank you.

7                   Anyone else on this question?

8                   The question pending is have any of you

9           ever been a plaintiff or defendant in any kind of

10          a civil matter?  I guess nobody has.

11                  Have any of you ever served on a jury

12          before?

13                  Mr. Beckett, can you tell me when, sir,

14          approximately?

15                  PROSPECTIVE JUROR:  About two years ago.

16                  THE COURT:  Was it civil?

17                  PROSPECTIVE JUROR:  Civil.

18                  THE COURT:  Did the jury reach a verdict?

19                  PROSPECTIVE JUROR:  Yes.

20                  THE COURT:  Was there anything about that

21          experience that would prevent you from being able

22          to sit in this case?

23                  PROSPECTIVE JUROR:  No.

24                  THE COURT:  Ms. Varone, when were you on

25          a jury?

1               PROSPECTIVE JUROR:  About ten years ago.

2               THE COURT:  Was it civil or criminal

3       case?

4               PROSPECTIVE JUROR:  Criminal.

5               THE COURT:  Don't tell us how it ended up

6       but do tell me did the jury reach a verdict?

7               PROSPECTIVE JUROR:  Yes, they did.

8               THE COURT:  Anything about that

9       experience that would prevent you from being able

10      to sit as a juror in this case?

11              PROSPECTIVE JUROR:  No.

12              THE COURT:  I saw another hand.

13              Ms. Carbajal, when?

14              PROSPECTIVE JUROR:  About fifteen years

15      ago.

16              THE COURT:  Criminal or civil?

17              PROSPECTIVE JUROR:  Criminal.

18              THE COURT:   Don't tell us how it ended

19      up but did the jury reach a verdict?

20              PROSPECTIVE JUROR:  Yes.

21              THE COURT:  Was there anything about that

22      experience that would prevent you from being able

23      to sit as a juror in this case?

24              PROSPECTIVE JUROR:  I think so.

25              THE COURT:  You think so.

EF

1              PROSPECTIVE JUROR:  Yeah.

2              THE COURT:  I am not going to question

3        you on it.  The lawyers might want to talk to you

4        about it.  We are going to talk to you at the side

5        anyway.  Remind me to ask you about that then.

6              Anyone else with any jury experience?

7              Ms. Pizarro, when were you on a jury?

8              PROSPECTIVE JUROR:  About maybe twelve

9        years.  Civil.

10              THE COURT:  Civil.  Did the jury reach a

11        verdict?

12              PROSPECTIVE JUROR:  Yes.

13              THE COURT:  Was there anything about that

14        experience that would prevent you from being able

15        to sit as a juror in this case?

16              PROSPECTIVE JUROR:  No.

17              THE COURT:  Anyone else?

18              Have any of you ever served on a grand

19        jury?  Okay.

20              Ms. Batwin, are you employed?

21              PROSPECTIVE JUROR:  Self-employed.

22              THE COURT:  What type of work?

23              PROSPECTIVE JUROR:  Wedding videographer.

24              THE COURT:  Thank you.

25              Ms. Cifelli, are you working?

1           PROSPECTIVE JUROR:  Yes.

2           THE COURT:  What type of work?

3           PROSPECTIVE JUROR:  Pharmacy.

4           THE COURT:  Ms. Varone?

5           PROSPECTIVE JUROR:  No, I am not.

6           THE COURT:  Thank you.

7           Mr. Gill.

8           PROSPECTIVE JUROR:  Unemployed.

9           THE COURT:  Thank you.

10          Ms. Fernandez.

11          PROSPECTIVE JUROR:  Retired.

12          THE COURT:  From what please?

13          PROSPECTIVE JUROR:  Bank of New York.

14          THE COURT:  Thank you.

15          Ms. Dellauniversita.

16          PROSPECTIVE JUROR:  Legal secretary.

17          THE COURT:  Thank you, that's right.  You

18     told me.  Mr. Skalny.

19          PROSPECTIVE JUROR:  Carpenter.

20          THE COURT:  Thank you.

21          Ms. Martinez.

22          PROSPECTIVE JUROR:  Accountant.

23          THE COURT:  Thank you.

24          Ms. Pasynkova.

25          PROSPECTIVE JUROR:  Information

 1              technology.

 2                        THE COURT:  Thank you.

 3                        Ms. Thomas.

 4                        PROSPECTIVE JUROR:  I work for New York

 5              City.

 6                        THE COURT:  New York City what

 7              department?

 8                        PROSPECTIVE JUROR:  Legal.

 9                        THE COURT:  Mr. Te.

10                        PROSPECTIVE JUROR:  I work in hotel.

11                        THE COURT:  Hotel.  I see, thank you very

12              much.  Sorry, I misunderstood.

13                        Ms. Pizarro.

14                        PROSPECTIVE JUROR:  Telephone operator.

15                        THE COURT:  Thank you.

16                        Mr. Tam.

17                        PROSPECTIVE JUROR:  Post office.

18                        THE COURT:  Thank you.

19                        Ms. Carbajal.

20                        PROSPECTIVE JUROR:  Secretary in legal

21              firm.

22                        THE COURT:  Thank you.

23                        Ms. Matos.

24                        PROSPECTIVE JUROR:  Baby-sit in my home.

25                        THE COURT:  Thank you.

1                      And Mr. Beckett.

2                      PROSPECTIVE JUROR:  Postal worker.

3                      THE COURT:  Thank you all for that

4           information.  Let me go through these legal

5           principles again.  I am going to paraphrase where

6           I can because you already heard them once and

7           again this is just to remind you the idea here is

8           to find out if you can promise us you will accept

9           these principles in our law.  If you cannot accept

10          any of them please tell us.  It's important we

11          know how you feel.

12                      I have mentioned the indictment.  The

13          indictment is the instrument that contains the

14          charges.  The mere fact the defendant has been

15          indicted is not evidence of anything and in

16          particular it's not evidence of guilt.

17                      Is there anybody amongst you who cannot

18          accept this principle in our criminal law?

19                      If selected as a juror here at the end of

20          the trial you would be called upon to deliberate

21          with eleven other people in an effort to reach a

22          final unanimous verdict or verdicts.

23                      Do any of you feel you could not

24          deliberate with eleven other people if called upon

25          to do so?

 1                    Ms. Fernandez.  You haven't been a juror

 2          before, right?

 3                    PROSPECTIVE JUROR:  No.

 4                    THE COURT:  What's your feeling?

 5                    PROSPECTIVE JUROR:  Can I talk to you

 6          about it in private?

 7                    THE COURT:  Yes.

 8                    Anyone else on that issue?

 9                    Under our law everyone accused of a crime

10          and brought to trial is presumed innocent unless

11          or until he is proved guilty beyond a reasonable

12          doubt.  The defendant in this case is presumed

13          innocent and to put this another way a defendant

14          is never required to prove his innocence.

15                    On the contrary, the People represented

16          by the District Attorney having accused the

17          defendant of the crimes charged have the burden of

18          proving him guilty beyond a reasonable doubt.  The

19          People carry this burden of proof throughout the

20          trial.  It never shifts.  It always remains on the

21          People.  And the presumption of innocence remains

22          with every defendant throughout every criminal

23          trial.

24                    Is there anyone amongst you who cannot

25          now in your own mind grant the defendant this