```
 1              presumption of innocence?

 2                   Thank you.  Burden of proof issue again

 3              as I said the burden of proof in a criminal case

 4              is entirely on the People and remains on them

 5              throughout the trial.  A defendant's not required

 6              to prove anything nor is a defendant required to

 7              disprove anything. As I said the entire burden of

 8              proof is on the People and remains on them

 9              throughout the trial.

10                   Is there anyone amongst you who cannot

11              follow and accept this rule in our criminal law?

12                   If a defendant does not testify in a

13              criminal trial that's not a factor from which any

14              inference unfavorable to such defendant maybe

15              drawn.

16                   Is there anyone amongst you who cannot

17              accept this fundamental rule in our criminal law?

18                   Ms. Pizzaro?

19                   PROSPECTIVE JUROR:  I have a problem with

20              that.

21                   PROSPECTIVE JUROR:  So do I.

22                   THE COURT:  Who else?  You?

23                   PROSPECTIVE JUROR:  Yes.

24                   THE COURT:  You have a problem with it.

25                   Ms. Pizzaro, we are going to talk to you
```

1            at a sidebar shortly.

2                    Ms. Batwin, maybe we'll do the same with

3            you.

4                    Anybody else have a feeling?

5                    This is Ms. Fernandez.  We are going to

6            talk to you too.

7                    Anyone else?

8                    I defined a little while ago for the

9            first panel the standard of proof required for

10           conviction in every criminal case.  That standard

11           as you now know if you didn't know before is

12           called proof of guilt beyond a reasonable doubt.

13                   Did all of you hear that definition when

14           I gave it earlier?  Anybody want to hear it again?

15           I am happy to read it again if you want.

16                   I have no takers.  Keep that definition

17           in mind.

18                   Let me remind you that it's the duty of

19           each juror carefully to review, weigh and consider

20           all the evidence.  If after doing this you find

21           that the People have not proved the defendant's

22           guilt beyond a reasonable doubt as I have defined

23           the term, then you must find the defendant not

24           guilty.

25                   On the other hand, if you are satisfied

```
 1            that the People have proved the defendant's guilt

 2            beyond a reasonable doubt as I have defined the

 3            term, then you must find the defendant guilty.

 4                    Will you promise us that if you are

 5            selected as a juror in this case you will in your

 6            final deliberations follow and apply the standard

 7            of proof that I have defined for you, that is

 8            proof beyond a reasonable doubt?  Anybody who

 9            cannot make us that promise?

10                    I will remind you that a deliberating

11            jury is not permitted to consider the subject of

12            punishment.  If there is to be any sentencing

13            following the verdict that's for the Court and the

14            Court alone to deal with.

15                    Will you promise that if selected you

16            will render your verdict free from fear, favor or

17            sympathy, and without considering any possibility

18            of sentence or punishment?  Anybody who cannot

19            make us that promise?

20                    And, finally, police officers will

21            testify in this case.  They take the same oath as

22            anyone else.  The mere fact a witness is a police

23            officer does not make that witness any more or any

24            less credible.

25                    Is there anyone amongst you who has any
```

1           feelings about the police or who has had any

2           experiences with the police which would lead you

3           in your judgment to give a police officer's

4           testimony greater or lesser weight than anyone

5           else's merely because of the officer's occupation?

6           Anybody have that feeling one way or the other?

7                     Ms. Pasynkova, what's your feeling?

8                     PROSPECTIVE JUROR:  I feel that they are

9           right.

10                    THE COURT:  You feel --

11                    PROSPECTIVE JUROR:  The police officers

12          are right because they see what's going on and

13          they take care of criminals and you have to give

14          them --

15                    THE COURT:  So you give a police

16          officer's testimony greater weight than anyone

17          else's merely because of the occupation?

18                    PROSPECTIVE JUROR:  Yes.

19                    THE COURT:  Even if you didn't know the

20          officer?

21                    PROSPECTIVE JUROR:  Yes.

22                    THE COURT:  Okay.  I saw another hand.

23                    PROSPECTIVE JUROR:  Me.

24                    PROSPECTIVE JUROR:  Mine.

25                    THE COURT:  Ms. Batwin.

1               PROSPECTIVE JUROR:  So would I.

2               THE COURT:  We don't need a sidebar for

3          you now.

4               Ms. Cifelli.

5               PROSPECTIVE JUROR:  Private.

6               THE COURT:  Ms. Dellauniversita, how do

7          you feel?

8               PROSPECTIVE JUROR:  I raised three boys

9          on Staten Island and I have had a few good and bad

10         experiences with them.

11              THE COURT:  Maybe that's good.  I don't

12         know.

13              PROSPECTIVE JUROR:  I don't know.  Not

14         with my son got five tickets in one week, your

15         Honor.  I don't think so.

16              THE COURT:  What are you telling me?

17              PROSPECTIVE JUROR:  I have issues they

18         might say something because it benefits the case

19         or whatever.  I don't know.  I would have to be

20         honest about this.

21              I would like to say they tell the whole

22         truth but I have questions and again I have had

23         good experiences with them but.

24              THE COURT:  Are you telling me that you

25         tend to discredit a police officer's testimony

1          because of their job?

2                    PROSPECTIVE JUROR:  Yes.

3                    THE COURT:  That would apply to any

4          police officer whether you know him or her or not.

5          I am assuming you don't know the officers.

6                    PROSPECTIVE JUROR:  No, I don't think I

7          know them unless I had dealings with them at the

8          122, I have no idea.  But I don't know.  Again as

9          I said I raised three boys on the side line and I

10         have one or two dealings and not all of them were

11         good.

12                   THE COURT:  Okay.  Is that it?  Anybody

13         else on this issue?

14                   Okay.  I am done.  We're going to step to

15         the sidebar and talk to a few people.  Then I'll

16         let the lawyers address you.

17                   PROSPECTIVE JUROR:  Excuse me, I need a

18         private talk?

19                   THE COURT:  Okay.

20                   (The following took place at the

21         sidebar:)

22                   THE COURT:  Just for the record the DA

23         points out I neglected to ask this jury if anybody

24         was the victim of a crime and the DA is going to

25         ask the question.

```
 1                  The first one is Ms. Batwin.  I don't
 2             know if we need to bring her over.
 3                  MR. LAMB:  I think we can consent on her.
 4             She believes that cops tell the truth.
 5                  MR. KATCHEN:  It's consented to.
 6                  MS. RAJESWARI:  We'll consent.
 7                  THE COURT:  We'll deal with it when we
 8             get to the challenges.  I just want to know if we
 9             have to bring her over.
10                  MR. LAMB:  Cifelli also.
11                  THE COURT:  Did she say she wants to talk
12             to us?
13                  MS. RAJESWARI:  I know --
14                  MR. LAMB:  I know that she said that she
15             would give more credit to police officers.
16                  MS. RAJESWARI:  I don't know.
17                  MR. KATCHEN:  I just want to talk to her.
18                  MS. RAJESWARI:  He can talk to her.
19                  THE COURT:  I put down a check indicating
20             she wanted to.
21                  Ms. Cifelli, can you step over here a
22             minute?  You can come over the bridge here.  Just
23             watch out for the stairs.
24                  (Prospective juror approached the
25             sidebar.)
```

EF

```
 1                    THE COURT:  You had a position I think on
 2          police officer's testimony.  What is it?
 3                    PROSPECTIVE JUROR:  I just really think
 4          they abuse their powers.  I have had experiences
 5          where they don't do anything.
 6                    THE COURT:  Is this a kind of feeling
 7          that would affect your judgment of the testimony
 8          of any police officer?
 9                    PROSPECTIVE JUROR:  It could.  It
10          depends.
11                    THE COURT:  I beg your pardon?
12                    PROSPECTIVE JUROR:  It depends.  It
13          could.
14                    THE COURT:  Any questions?
15                    MS. RAJESWARI:  No.
16                    MR. KATCHEN:  No.
17                    THE COURT:  Ms. Varone, could you step
18          over too?
19                    (Prospective juror approached the
20          sidebar.)
21                    THE COURT:  And I forget what we were
22          going to talk to you about.  What was it?
23                    PROSPECTIVE JUROR:  I said that with a
24          crime when I was in my late 20's my pocketbook was
25          stolen and I found it and --
```

```
 1                      THE COURT:  This was a few years ago?

 2                      PROSPECTIVE JUROR:  I was in my late 20's

 3            at the time.

 4                      THE COURT:  Was anybody arrested?

 5                      PROSPECTIVE JUROR:  They did catch the

 6            guy and they kept everything for evidence.

 7                      THE COURT:  You never went to court?

 8                      PROSPECTIVE JUROR:  No.

 9                      THE COURT:  Anything about that

10            experience that would prevent you from being a

11            fair juror in this case?

12                      PROSPECTIVE JUROR:  I don't think so.  I

13            am not sure.

14                      THE COURT:  Any questions?

15                      MR. LAMB:  You're not sure whether --

16                      THE COURT:  She said I think so.

17                      PROSPECTIVE JUROR:  I think so.  I'm okay

18            with it.

19                      THE COURT:  If you have questions.

20                      MS. RAJESWARI:  You're okay with it that

21            you could be a fair juror?

22                      PROSPECTIVE JUROR:  I guess I could

23            because I did experience something so I kind of

24            would I guess.

25                      THE COURT:  Could you tell us for sure
```

```
 1              that you would be fair or is it your position

 2              you're not sure?  We have to know how you feel.

 3                    (Pause.)

 4                    PROSPECTIVE JUROR:  I don't know if I

 5              could be sure on that.

 6                    THE COURT:  Anything else?

 7                    MR. LAMB:  Nothing.

 8                    THE COURT:  I will let you resume your

 9              seat.  Careful of the stairs.

10                    MR. LAMB:  Ms. Fernandez wanted to talk

11              to us.

12                    THE COURT:  Ms. Fernandez, could you step

13              over please?

14                    (Prospective juror approached the

15              sidebar.)

16                    THE COURT:  I have a couple of things we

17              wanted to talk to you about.  One was whether you

18              could deliberate or not.  You think that would

19              pose a problem deliberating with eleven other

20              people?

21                    PROSPECTIVE JUROR:  Yes.  I had on the

22              charges of the case I had personal in my own

23              family why I won't be able to be on a case like

24              this.

25                    THE COURT:  You don't think you could be
```

1        fair?

2                    PROSPECTIVE JUROR:  Right.

3                    THE COURT:  Any questions?

4                    MR. LAMB:  No.

5                    MR. KATCHEN:  No.

6                    THE COURT:  Thanks, Ms. Fernandez.  The

7        sergeant wants you to go out this way.  One step.

8                    Ms. Dellauniversita, could you step over

9        please?  Maybe it would be better if you went that

10       way.

11                   (Prospective juror approached the

12       sidebar.)

13                   THE COURT:  What were we going to be

14       talking about?

15                   PROSPECTIVE JUROR:  I was trying to

16       remember the question.

17                   THE COURT:  Did you have a feeling about

18       police witnesses?  That's what it was.  You were

19       indicating you had five boys.

20                   PROSPECTIVE JUROR:  Five boys.

21                   THE COURT:  And one of them had five

22       tickets and your feeling?

23                   THE WITNESS:  My whole feeling about --

24       I don't think that's why I'm supposed to be over.

25       I think it was for something else.  I do have

```
1              issues when the Mayor Guiliani was in charge,  the

2              kids were illegally stopped on a constant basis.

3              I have certain issues.

4                        THE COURT:  I remember why you're here.

5              The one have you or anyone close to you been a

6              defendant in a criminal proceeding?

7                        PROSPECTIVE JUROR:  How about if people

8              went to jail that are close in the family. I had a

9              few close members that have been in prison.

10                       THE COURT:  Did you go to any court

11             proceedings yourself?

12                       PROSPECTIVE JUROR:  To see them?

13                       THE COURT:  Yes.

14                       PROSPECTIVE JUROR:  Yes.

15                       THE COURT:  Anything about those events

16             that would prevent you from being fair in this

17             case?

18                       PROSPECTIVE JUROR:  I don't know.  I

19             really don't know if I can put somebody in jail.

20             I don't know if I can go that far.  Not to say

21             whether they're guilty or not but if I could do

22             that.  You know, it killed me to see my family.

23                       THE COURT:  Okay.  Counsellors,

24             questions?

25                       MR. KATCHEN:  No.
```

```
 1                       MR. LAMB:  No.

 2                       PROSPECTIVE JUROR:  Thank you, your

 3              Honor.

 4                       THE COURT:  Ms. Carbajal.

 5                       (Prospective juror approached the

 6              sidebar.)

 7                       THE COURT:  You snuck up on me.  You're

 8              pretty fast.  What were we going to talk about?

 9              Jury experience.

10                       PROSPECTIVE JUROR:  I believe after few

11              days I think pressure from other jurors is exerted

12              when time is going by the decision is not reached

13              and the other jurors can exert a lot of pressure.

14              I think that would be something difficult to deal

15              with.

16                       THE COURT:  Could you deal with it if you

17              had to?

18                       PROSPECTIVE JUROR:  Like I said I think

19              it's very hard.  So I guess I will have to deal

20              with it but I feel that it isn't right people

21              should be -- you know, if you there let the people

22              make their own mind.  You know just keep pushing,

23              it has to be done, we have to get it done.  That

24              was my experience.  And I know people who were

25              influenced but there is that possibility and I
```

```
 1              don't know in my case, it's very hard to say.  I
 2              wasn't at the time but I think it can happen.
 3                        THE COURT:  Any questions?
 4                        MS. RAJESWARI:  You're not sure?
 5                        PROSPECTIVE JUROR:  I am not sure.
 6                        MS. RAJESWARI:  No further questions.
 7                        THE COURT:  Thank you.  I will let you
 8              resume your seat.
 9                        Mr. Tam, you wanted to speak to us?
10                        (Prospective juror approached the
11              sidebar.)
12                        THE COURT:  What did you want to talk
13              about?
14                        PROSPECTIVE JUROR:  I work for the Post
15              Office and we have some case with my co-worker
16              because the case they get fired.  I am very
17              confused about the laws.
18                        THE COURT:  Have you had a hard time
19              understanding what I have been talking about in
20              terms of the law?
21                        PROSPECTIVE JUROR:  Yes.
22                        THE COURT:  Any questions?
23                        MR. LAMB:  No.
24                        MS. RAJESWARI:  No.
25                        PROSPECTIVE JUROR:  College of the most
```

EF

 1          time I read the news, some story most of time so I

 2          just worry about I can't make a fair judgment in

 3          this case.

 4                  THE COURT:  Thank you, sir.  I'll let you

 5          resume your seat.

 6                  Ms. Pizarro, could you step over please?

 7                  (Prospective juror approached the

 8          sidebar.)

 9                  PROSPECTIVE JUROR:  First of all, I have

10          a personal medical emergency.  I burned myself

11          Labor Day and my bandages are starting to seep

12          through.  My arms are raw and they started to seep

13          through and I am starting to feel a lot of pain.

14                  THE COURT:  You want to deal with this

15          right now?

16                  MR. LAMB:  Yes.

17                  MR. KATCHEN:  Yes.

18                  THE COURT:  We're going to excuse you,

19          Ms. Pizarro.  Get to the ER, right?

20                  PROSPECTIVE JUROR:  No, I go right here

21          to Clove Urgicare.

22                  THE COURT:  Okay.  We're excusing

23          Ms. Pizarro.

24                  PROSPECTIVE JUROR:  Do I have to go back

25          across the street?

```
 1                      THE CLERK:  She has to sign out.

 2                      THE COURT:  Just go over there and check

 3            out.

 4                      PROSPECTIVE JUROR:  Thank you so much.

 5                      THE COURT:  Good luck.

 6            All right.

 7                      One at a time.  We don't need to speak to

 8            number one, Ms. Batwin.  She is gone already.  Is

 9            that your consensus?

10                      MR. LAMB:  Yes.

11                      MR. KATCHEN:  Yes.

12                      (The following took place in open court:)

13                      THE COURT:  The lawyers are going to talk

14            to you now.  If you want to talk privately about

15            anything just tell me.

16                      MR. KATCHEN:  Good morning, ladies and

17            gentlemen, and thank you for your patience this

18            morning.

19                      I'm going to just go right into some

20            questions for you.  I know that you were sitting

21            in the audience and probably listening before when

22            people were asked questions and answered them.

23                      Ms. Thomas.

24                      PROSPECTIVE JUROR:  Yes.

25                      MR. KATCHEN:  Earlier a question was
```

```
 1              posed as to whether or not rape can take place

 2              within a relationship.  What do you think about

 3              that?

 4                      PROSPECTIVE JUROR:  Yes.

 5                      MR. KATCHEN:  Why do you think that is?

 6                      MR. LAMB:  Objection.

 7                      THE COURT:  Sustained as to why.

 8                      MR. KATCHEN:  So if a woman says no, it's

 9              no, no matter the circumstances.

10                      PROSPECTIVE JUROR:  Yes.  They have --

11                      MR. LAMB:  Couldn't hear the answer.

12                      MR. KATCHEN:  If you could project your

13              voice a little bit.

14                      PROSPECTIVE JUROR:  So what is the

15              question?

16                      MR. KATCHEN:  The question is if a woman

17              says no, it means no.

18                      PROSPECTIVE JUROR:  Then it has to be

19              respected.

20                      MR. KATCHEN:  Mr. Gill, what are your

21              thoughts on that?

22                      PROSPECTIVE JUROR:  It has to be

23              consensual, simple as that.

24                      MR. KATCHEN:  Ms. Martinez.

25                      PROSPECTIVE JUROR:  The parties have to
```

1          agree.

2                    MR. KATCHEN:  Now is it, Mr. Te?  I

3          didn't hear the pronunciation earlier.

4                    PROSPECTIVE JUROR:  I don't understand

5          English.

6                    MR. KATCHEN:  Do you speak English well?

7                    PROSPECTIVE JUROR:  Not really.

8                    MR. KATCHEN:  Have you been able to

9          understand what the judge has been saying and what

10         the lawyers have been saying?

11                   PROSPECTIVE JUROR:  No.

12                   MR. KATCHEN:  You haven't.  Okay.

13                   And you, sir, same situation you haven't

14         been able to understand?

15                   PROSPECTIVE JUROR:  No.

16                   MR. KATCHEN:  Ms. Matos, I was having a

17         bit of trouble hearing you earlier.  Did you say

18         that your husband is a retired police officer or

19         ex husband?

20                   PROSPECTIVE JUROR:  Correction officer.

21                   MR. KATCHEN:  Corrections.

22                   PROSPECTIVE JUROR:  Yes.

23                   MR. KATCHEN:  And does that affect how

24         you are going to -- if you were chosen as a juror

25         that would affect how you would view the evidence

1          presented to you in this case?

2                    PROSPECTIVE JUROR:  I'm sorry, I don't

3          understand.

4                    THE COURT:  Move your chair up if you

5          want to.

6                    MR. KATCHEN:  I'm sorry.

7                    THE COURT:  Let's move this along.  Ask a

8          question.  Have the jurors speak up.  Enough

9          already.  Enough.  Question.

10                    MR. KATCHEN:  Would you just answer that

11          question again?  Just raise your voice a little

12          bit.

13                    PROSPECTIVE JUROR:  I understand a

14          little.

15                    MR. KATCHEN:  Again, you don't speak

16          English well.

17                    PROSPECTIVE JUROR:  Very little.

18                    MR. KATCHEN:  Have you been able to

19          understand what's been happening so far?

20                    PROSPECTIVE JUROR:  Very little.

21                    MR. KATCHEN: I think she spoke Spanish to

22          another juror to communicate that.

23                    Mr. Beckett, I am going to turn to

24          another question that hasn't been posed yet.

25          Would you expect -- and this is a rape case

1      forgive me if I am getting a bit more vulgar here.

2      Would you expect to see injury to a vagina of a

3      woman in a rape case?  Would you expect to see

4      injury to the vagina of a woman in a rape case?

5               PROSPECTIVE JUROR:  Yes.  It's a question

6      if she's an older woman, younger woman, you know.

7               MR. KATCHEN:  Okay.  So there are factors

8      and you'll keep an open mind and assess the

9      evidence as it comes in, right?

10              PROSPECTIVE JUROR:  Yes.

11              MR. KATCHEN:  Okay.

12              I am not going to take up too much of

13     your time.  One of the things the judge talked

14     about that is extremely important is your role as

15     the jury is to find facts, what does the evidence

16     support?  And you're going to be asked to take an

17     oath just like any witness who testifies, same

18     oath.  You are going to swear that that's what

19     you're going to do.

20              What that means is you are going to put

21     aside sympathy, you are going to put aside

22     thoughts on what the sentence should be if you

23     vote guilty.

24              Is that a problem for you, Ms. Martinez?

25              PROSPECTIVE JUROR:  Yes, a little bit.

1        MR. KATCHEN:  Could you explain?

2        PROSPECTIVE JUROR:  It's hard to put

3   somebody away if you're not really sure.

4        THE COURT:  Could you promise us if

5   selected you would deliberate without any

6   preference or discuss regarding sentence or

7   punishment?

8        I am not telling you what to answer.  I

9   just want to know how you feel about it.  As you

10   know way I instruct juries not to consider fear,

11   favor, sympathy or the possibility of punishment

12   when they deliberate.  If you can promise us you

13   can do that, that's fine.  If you can't, tell us.

14        PROSPECTIVE JUROR:  I am not sure.

15        THE COURT:  Are you not sure, okay.

16        Step up, counsellors.

17        (Discussion held off the record at the

18   bench.)

19        MR. KATCHEN:  Ladies and gentlemen, I am

20   just going to thank you again for your patience.

21        THE COURT:  Mr. Lamb.

22        MR. LAMB:  Good afternoon, ladies and

23   gentlemen.  It's been rather long and everybody is

24   getting a little tired.  So I'll be as brief as

25   possible.

EF

```
 1                    Let me start out with this:  All of you
 2            were sitting in the audience out there listening
 3            while we did the first round; am I right?  And I
 4            think I speak fairly loudly.
 5                    Is there -- did you all hear the
 6            questions that I had asked the previous jurors?
 7                    Is there anything about the questions
 8            that I asked that raised a question in your mind?
 9            Remember I asked questions whether you could be
10            fair about whether they could be fair and follow
11            the law as far as my client's right to be presumed
12            innocent?
13                    Does anybody have a problem with that?
14                    Ms. Batwin.
15                    PROSPECTIVE JUROR:  Yes.  If your client
16            didn't testify in his behalf I would definitely
17            have a problem with that regardless of what the
18            law states.  Emotionally as a human being I would
19            definitely have a problem with that.
20                    MR. LAMB:  Thank you.
21                    PROSPECTIVE JUROR:  I have the same
22            feeling.
23                    MR. LAMB:  Okay.  How about prior bad
24            relationships that you may have been in that it
25            may affect you so that you are unable to -- would
```

1        be unable to listen to the testimony in this case

2        without thinking back on the relationship that you

3        had?

4                 Is there anybody who had any prior

5        relationships that would affect their ability to

6        be fair and impartial?

7                 I believe we spoke already, thank you.

8                 Actually is there anybody -- who all here

9        has some difficulty with the language, with the

10       English language?  I believe Mr. Skalny and Mr. Te

11       and Ms. Matos.  Is there anybody else?

12                Ladies and gentlemen, if you are chosen

13       as jurors here do I have the assurance of you of

14       each and every one of you that you would give the

15       defendant the same fair trial that you would want

16       if you were sitting where he is sitting?  Can you

17       all give me that assurance?

18                PROSPECTIVE JURORS:  Yes.

19                MR. LAMB:  Thank you.

20                THE COURT:  We had a discussion at the

21       sidebar regarding crime victims.  You want me to

22       put that question?

23                MR. KATCHEN:  Yes, Judge.

24                THE COURT:  The question members of the

25       panel, have you or anyone close to you ever been

1       the victim of a crime?

2                I think Ms. Verone we talked about this

3       already.

4                Anybody else?

5                Have any of you or anyone close to you,

6       close friend or relative, have ever been the

7       victim of a crime?  Nobody else on that.

8                Okay, thank you.  I am going to give the

9       lawyers two minutes to go over their notes and

10      they and I will step to the side.  You are all

11      free to step out for a few minutes or you can stay

12      here.  Don't discuss the case with anyone please.

13      I'm sorry we have to turn the air off.

14                PROSPECTIVE JUROR:  It wouldn't be

15      anything relevant.

16                THE COURT:  You want to talk?

17                PROSPECTIVE JUROR:  Yes.

18                THE COURT:  Let's just wait until the

19      lawyers are ready and we'll bring you over.

20                (The following took place at the

21      sidebar:)

22                THE COURT:  Ms. Batwin wanted to talk to

23      us but she's gone.  Are we ready to go?  We'll go

24      one at a time.  Just for the record the

25      defendant's present at the sidebar with the

1          lawyers.

2                    Number one is Ms. Batwin.  Cause People?

3                    MR. KATCHEN:  In fairness it is going to

4          be a cause.

5                    THE COURT:  Consent?

6                    MR. LAMB:  Consent.

7                    THE COURT:  For cause on consent.

8                    Next is Ms. Cifelli.  Cause People?

9                    MR. KATCHEN:  Yes.

10                   MR. LAMB:  Consent.

11                   THE COURT:  For cause on consent.

12                   Next is Ms. Verone.  Cause People?

13                   MR. KATCHEN:  Yes.

14                   MR. LAMB:  Consent.

15                   THE COURT:  For cause on consent.

16                   Next is Mr. Gill.  Cause People?

17                   MR. KATCHEN:  No.

18                   THE COURT:  Defense?

19                   MR. LAMB:  No.

20                   THE COURT:  Peremptory People?

21                   MR. KATCHEN:  No.

22                   THE COURT:  Defense?

23                   MR. LAMB:  No.

24                   THE COURT:  So, Carmine, he becomes

25          Juror 12.

1           THE CLERK:   Twelve.

2           THE COURT:   We don't know about Number 4.

3     Ms. Fernandez.   Wait a minute we have twelve.

4     Technically we are on alternates now.   You get two

5     peremptories per seat as you know.

6           MS. RAJESWARI:   Yes, Judge.

7           THE COURT:   Seat one, alternate seat one,

8     Ms. Fernandez.   Cause People?

9           MR. KATCHEN:   Yes.

10          MR. LAMB:   Consent.

11          THE COURT:   Cause on consent.

12          MR. LAMB:   How many alternates do we

13    have?

14          THE COURT:   Normally we pick two. Since

15    we don't know about Number 4, I think we should

16    pick three or four if we can.   That may require

17    another round I don't know.

18          Next is Ms. Dellauniversita.   Cause

19    People?

20          MR. KATCHEN:   People cause.

21          MR. LAMB:   Consent.

22          THE COURT:   For cause on consent.

23          Next is Mr. Skalny.   Cause People?

24          MR. KATCHEN:   Yes.

25          MR. LAMB:   He can't speak English.

EF

```
1                    THE COURT:  That's very true.  That's

2          consent?

3                    MR. KATCHEN:  Yes.

4                    MR. LAMB:  Yes.

5                    THE COURT:  Mr. Lamb?

6                    MR. LAMB:  Yes.

7                    THE COURT:  For cause on consent.

8                    Next is Martinez.  Cause People?

9                    MR. KATCHEN:  Yes.

10                   MR. LAMB:  Yes.

11                   THE COURT:  For?

12                   MR. LAMB:  Consent.

13                   THE COURT:  For cause on consent.

14                   Next is Mr. Beckett.  Cause People?

15                   MR. KATCHEN: No.

16                   THE COURT:  Defense?

17                   MR. LAMB:  No.

18                   THE COURT:  Peremptory People?

19                   MR. KATCHEN:  No.

20                   THE COURT:  Defense?

21                   MR. LAMB:  No.

22                   THE COURT:  Okay.  Beckett becomes

23         Alternate 1, Carmine.

24                   THE CLERK:  Yes, Judge.

25                   THE COURT:   Next is Ms. Matos.  Cause
```

EF

1              People?

2                      MR. KATCHEN:  Yes.

3                      MR. LAMB:  Can't speak English.  Consent.

4                      THE COURT:  Cause on consent.

5                      Next is Ms. Carbajal.  Cause People?

6                      MR. KATCHEN:  Yes.

7                      THE COURT:  Defense?

8                      MR. LAMB:  Consent.

9                      THE COURT:  For cause on consent.

10                     Next is Mr. Tam.  Cause People?

11                     MR. KATCHEN:  Yes.

12                     MR. LAMB:  Consent.

13                     THE COURT:  For cause on consent.

14                     Next seat is empty.  She had to go to the

15         doctor.  Next is seat 14, Mr. Te.  Cause People?

16                     MR. KATCHEN:  Yes.

17                     MR. LAMB:  Can't speak English.

18                     THE COURT:  Cause on consent.

19                     Next is Ms. Thomas.  Cause People?

20                     MR. KATCHEN:  No.

21                     THE COURT:  Defense?

22                     MR. LAMB:  No.

23                     THE COURT:  Peremptory People?

24                     MR. KATCHEN:  No.

25                     THE COURT:  Defense?

EF

```
 1                   MR. LAMB:  Yes.

 2                   THE COURT:  So that's your first

 3          challenge for second alternate seat.

 4                   And last is Ms. Pasynkova.  Cause People?

 5                   MR. KATCHEN:  Yes.  She indicates she

 6          wouldn't be able to be fair.

 7                   MR. LAMB:  Consent.

 8                   THE COURT:  For cause on consent.

 9                   We might lose a juror.  I don't know what

10          this guy Number 4 is going to say.  He is coming

11          in at two.  I have two other cases to handle.  I

12          suggest we break till two, deal with him and then

13          we'll deal with the rest of these people.

14                   MR. LAMB:  It may play a role how we

15          handle the rest of the alternates too.

16                   THE COURT:  I understand that.

17                   How many people are out there?

18                   THE CLERK:  24.

19                   MS. RAJESWARI:  You want to do it

20          together?

21                   THE COURT:  I don't know how many cause

22          challenges there will be.

23                   MS. RAJESWARI:  We'll put them in one

24          round.

25                   (The following took place in open court:)
```

1          THE CLERK:  Come to order.  The

2     following jurors have been selected for this case.

3     Amardeep Gill and Charles Beckett you have been

4     chosen for this case.  Remain seated.

5          Everyone else in the jury box stand.  Go

6     out in the hallway.  You'll get information that

7     you have to return to central jury now for your

8     next case.

9          (Prospective jurors not chosen left the

10    courtroom.)

11         THE COURT:  Okay, Mr. Gill and

12    Mr. Beckett, you have heard you have been

13    selected.  We are going to excuse you until 2 p.m.

14    We would like you to be in a jury room in the

15    building, the  court officers will show you where

16    you are to be, at two o'clock.  We'll get you back

17    in shortly after.

18         Please don't discuss the case or try and

19    do any research on your own.  Thank you very much.

20    Enjoy your lunch.  You can step out now.

21         COURT OFFICER:  I will bring them right

22    upstairs.

23         (Two sworn jurors left the courtroom.)

24         THE COURT:  Everyone else we're not done.

25    I know that's not what you want to hear but we're

```
 1            not done.  We need to pick a few more people and

 2            we are going to do that this afternoon 2 o'clock.

 3                      Thanks for your patience.  We ask you to

 4            be in central jury where you were this morning.

 5            Don't come here, please go there and the officers

 6            will bring you over.  Don't discuss the case and

 7            have a good lunch.

 8                      (Prospective jurors left the courtroom.)

 9                      THE CLERK:   Everyone step out.  Thank

10            you.

11                      THE COURT:  2 o'clock and we'll talk

12            to --

13                      MS. RAJESWARI:  Juror Number 4.

14                      THE COURT:  Juror Number 4.  Omar

15            Pereyra.  And than we'll get on the record to see

16            how you want to proceed.

17                      THE CLERK:   Trial second call.

18                      AFTERNOON SESSION.

19                      THE CLERK:  Take seats.  Come to order.

20            All parties are present.

21                      THE COURT:  Well, I suppose we should

22            bring Mr. Pereyra in?

23                      MR. KATCHEN:  Yes.

24                      MR. LAMB:  Yes.

25                      THE COURT:  Right?
```

```
 1                         MR. LAMB:  Yes.

 2                         THE CLERK:   Juror Number four.  Please

 3              bring in Mr. Pereyra.

 4                         MR. KATCHEN:  I am also turning over to

 5              Mr. Lamb a photo of 40 Silverton Terrace that I

 6              will use during the course of the trial.  He can

 7              keep that.

 8                         MR. LAMB:  Acknowledge receipt.

 9                         COURT OFFICER:  Are you ready?

10                         THE COURT:  Yes.

11                         (Juror Number 4 entered courtroom.)

12                         THE CLERK:   Juror Number four is

13              present.

14                         THE COURT:  He can have a seat.  Just

15              have any seat, Mr. Pereyra.  I'm sorry, are you

16              having some kind of difficulty?  Can you tell us

17              what it is?

18                         PROSPECTIVE JUROR:  Yes, sir.  Pretty

19              much, you know, I have anxiety problems and in the

20              past I have had panic attacks.  And you know when

21              we were first here and I had explained to you

22              about what was going on at work and then I

23              understood the reason you retained me.

24                         You know, I really thought this was

25              something I could do.  But as you know the time
```

EF

```
 1            comes dragging on, I am just getting increasingly

 2            anxious about not being at work.

 3                  You know I have been prescribed Xanax.

 4            Not like yesterday, just in the past to deal with

 5            my anxiety issues.  I mean obviously I am a

 6            functioning person.  I am a director of operations

 7            at work.  I manage a team of people.  But I just

 8            feel that this is just too much for me right now.

 9                  And, you know, obviously I have been

10            having problems sleeping.  And I just don't think

11            I am going to be able to sit here and concentrate

12            and do what I need to do as a jury member because

13            I am just stressed out.

14                  THE COURT:  Counsellors, you want to step

15            up a moment please?

16                  (Discussion held off the record at the

17            bench.)

18                  THE COURT:  Mr. Pereyra, I am going to

19            ask you to step out of the courtroom for just a

20            moment.  We are going to make a brief record and I

21            will bring you right back in.

22                  We are going to have Mr. Pereyra just

23            step out in the hall for a minute.  Not in the

24            jury room just in the hall.

25                  COURT OFFICER:  Okay.
```

EF

1                    (Juror Number 4 left the courtroom.)

2              THE COURT:  Okay, he's left the

3         courtroom.  Counsellors, make your record please.

4              MR. LAMB:  It would be my feeling based

5         on what he just said that he could not be truly

6         helpful as a juror for either side.  His anxieties

7         and concerns about work is too distracting.

8         Although I'm sorry to see him go, I was happy with

9         his original answers when we originally questioned

10        him, what he is saying now I have to take at face

11        value and if so I think he would be a less than

12        desirable juror.

13             THE COURT:  Grossly unqualified is the

14        standard for a sworn juror.  You think he is

15        grossly unqualified for reasons we didn't know

16        when he was selected?

17             MR. LAMB:  I believe so.

18             MR. KATCHEN:  I do as well.

19             THE COURT:  Mr. Rucano, this is a sworn

20        juror so I'd like to get your -- I guess the

21        People and Mr. Lamb are consenting to excuse this

22        juror?

23             MR. LAMB:  Yes.

24             MR. KATCHEN:  Yes.

25             THE COURT:  Since he is sworn it's up to

EF

```
 1            him, Mr. Rucano.

 2                    THE DEFENDANT:  I will agree with my

 3            lawyer.

 4                    THE COURT:  We'll bring him in, release

 5            him and get on the record with how we're going to

 6            proceed from here.

 7                    You can bring Mr. Pereyra back in.

 8                    (Juror Number 4 entered the courtroom.)

 9                    THE COURT:  Okay.  Mr. Pereyra, we've

10            discussed it and the lawyers have consented to

11            excuse you from this matter.  You are excused.  I

12            think you have to go back to central jury and

13            check out with them.  Is that right?

14                    THE CLERK:  Yes, sir.

15                    THE COURT:  We will give him his card.

16                    THE CLERK:  Yes, Judge.

17                    (Juror Number 4 left the courtroom.)

18                    (Pause in proceedings.)

19                    THE COURT:  Whenever you're ready let me

20            know.

21                    MR. LAMB:  I'm sorry.  I'm sorry, Judge.

22                    THE COURT:  Ready?

23                    MR. LAMB:  Yes.

24                    THE COURT:  We had selected Mr. Gill as

25            Juror Number 12.  I am assuming we are simply
```

```
 1                going to move him into Seat Number 11?
 2                      MR. LAMB:  Yes, sir.
 3                      THE COURT:  Is that on consent of
 4                everybody?
 5                      MR. KATCHEN:  Yes.
 6                      MS. RAJESWARI:  Yes.
 7                      THE COURT:  So Mr. Gill becomes Juror
 8                Number 11.
 9                      Now we come up to Mr. Beckett.  We dealt
10                with him at the sidebar as Alternate Number 1.  I
11                don't know if he's still acceptable to both sides
12                or not.
13                      You mentioned something before we broke
14                for lunch you shouldn't be charged with your
15                alternate challenge to Ms. Thomas.  We can get to
16                that in a minute.
17                      The first question is Mr. Beckett.  Since
18                we only have eleven, now twelve jurors he would be
19                the twelve and we dealt with him as an alternate.
20                We didn't deal with him as one of the first
21                twelve.
22                      Now if you want to simply leave him in
23                place then we make him Juror Number 12 there is no
24                challenge as to him.  And you would not be -- he
25                would not be considered an alternate.
```

1            MR. LAMB:  Considered one of the twelve

2       jurors?

3            THE COURT:  Regular juror.  When we

4       finish with the first eleven now, the situation

5       was, as I understand, Carmine, correct me if I am

6       wrong, People have used ten, defense had used

7       eleven.  So you follow me?

8            MR. LAMB:  Yes.

9            THE COURT:  So without even getting into

10      the alternate issue Beckett is now up for

11      consideration as Juror Number 12, and if you want

12      to deal with it in terms of your regular

13      challenges not having reached the alternate

14      status, yet you still have four, the People have

15      five.

16           MR. LAMB:  If I would exercise it would

17      be my peremptory number twelve?

18           THE COURT:  Correct.

19           Now on the other hand if both sides are

20      satisfied with him, then we'll simply make him

21      Juror Number 12 and then I will address

22      Ms. Thomas's issue.

23           MR. LAMB:  May I just have a moment to

24      confer with my client?

25           THE COURT:  Sure.

EF

```
 1                      (Discussion held off the record between
 2              the defendant and Mr. Lamb.)
 3                      MR. LAMB:   Judge, may we approach?
 4                      THE COURT:   Sure.
 5                      (Discussion held off the record at the
 6              bench.)
 7                      THE COURT:   Counsellors, we're going to
 8              move everybody up and make Mr. Gill Number 11.
 9                      MR. LAMB:   That's acceptable to the
10              defense.
11                      MR. KATCHEN:   People as well.
12                      THE COURT:   Make your record as to
13              Mr. Beckett please.
14                      MR. LAMB:   Yes, Judge.   When I left the
15              building today I perhaps made an error in that as
16              I was leaving the building walking up Stuyvesant,
17              there was a corrections officer who was also an
18              acquaintance who was standing outside, engaged me
19              in conversation about the trial.
20                      We discussed the trial for several
21              minutes.   When we had finished discussing it I
22              noticed that there was an individual standing very
23              close, within three or four feet with his back to
24              us, seemingly looking at his cell phone.
25                      I did not recognize, see who the person
```

```
 1              was at the time that I was talking.  As soon as I
 2              finished talking and turned, he also turned and it
 3              turned out to be Mr. Beckett.
 4                   THE COURT:  So --
 5                   MR. LAMB:  I believe -- I am fairly
 6              convinced that he was certainly close enough to
 7              hear the conversation.
 8                   THE COURT:  Your application is what?
 9                   MR. LAMB:  Would be to challenge him.
10                   THE COURT:  For cause?
11                   MR. LAMB:  For cause.
12                   THE COURT:  He hasn't been sworn.  A
13              cause challenge can be raised at any time prior to
14              a juror being sworn.  Possibly even after sworn.
15              I am not sure about that but he hasn't been sworn.
16              I will grant the cause challenge based on what you
17              just said.  That means we will have eleven jurors.
18                   We'll bring the panel back, pick a
19              twelfth and pick some alternates.  The alternate
20              challenge defense exercise as to Ms. Thomas, the
21              time was up for consideration and Seat Number 2, I
22              will void if that's what you want.
23                   MR. LAMB:  Thank you.
24                   THE COURT:  Void it.  So once we get to
25              the alternates again you'll have two challenges
```

EF

1           per alternate seat and pick as many alternates as

2           you want or as we can get.

3                      How much people do we have left?

4                      THE CLERK:   24.

5                      THE COURT:   We'll do them all.

6                      MR. KATCHEN:   I just want to clarify one

7           thing as to that.   The voided alternate challenge

8           becomes a regular peremptory defense.

9                      THE COURT:   I don't follow you.

10                     MR. KATCHEN:   So if they started at

11          eleven as to Ms. Thomas, if they -- if we believe

12          we had twelve and we started on alternates and

13          they exercised peremptory challenges at that time,

14          by voiding that we now making that --

15                     THE COURT:   You want me to treat the

16          alternate peremptory challenge Mr. Lamb raised to

17          Ms. Thomas as one of his fifteen challenges to the

18          whole panel.

19                     MR. LAMB:   I would object.

20                     THE COURT:   I am not going to do that.

21          When he exercised that challenge he was under the

22          assumption that we had twelve jurors and in fact

23          we were working on a second alternate.   I won't do

24          that.   I will simply void it.

25                     That's your application?

 1              MR. LAMB:  Yes, Judge.

 2              THE COURT:  I will simply void it.  It

 3       just won't count and when we start with the

 4       alternate each side will have two challenges per

 5       seat.

 6              Let's bring down please Mr. Gill and

 7       Mr. Beckett and we're going to bring them in one

 8       at a time.  Gill first.

 9              COURT OFFICER:  Okay.

10              (Pause in proceedings.)

11              THE COURT:  You know I am toying with the

12       idea of once we swear Mr. Gill in and release

13       Mr. Beckett, I am toying with the idea given the

14       hour of bringing in the eleven sworn jurors and

15       telling them to come back Monday.  I don't know

16       how you feel about that.  I could keep them

17       around.

18              By the time we get the panel over here

19       it's going to be ten to three.  We have 24 people.

20       We're going to be going to 4:15 or so or I will

21       keep them around and give them preliminary

22       instructions.

23              MR. LAMB:  I don't have a feeling one way

24       or the other.  I would accede to the Court's

25       wisdom.

EF

```
 1                     THE COURT:  People?

 2                     MR. KATCHEN:  It would be fine to let

 3          them go.

 4                     THE COURT:  Maybe I will do that.

 5                     MR. LAMB:  I certainly don't object.

 6                     THE COURT:  So I will bring them in and

 7          tell them we're still selecting.  We've run into a

 8          couple of roadblocks and we are not going to be

 9          able to get to them until late in the afternoon.

10          So I will release them until Monday and tell them

11          this is not affecting our schedule and we will

12          bring them back Monday morning.

13                     MR. LAMB:  Very good.

14                     THE COURT:  All right?

15                     MS. RAJESWARI:  Yes.

16                     THE COURT:  We can bring in Mr. Gill

17          first.

18                     COURT OFFICER:  Okay.

19                     (Juror entered courtroom.)

20                     THE COURT:  Counsellors, this is

21          Mr. Gill.  We're going swear him in.  Agreed?

22                     MS. RAJESWARI:  Yes.

23                     MR. KATCHEN:  Agreed.

24                     THE COURT:  You can have any seat.

25          Mr. Lamb, agreed?
```

1           MR. LAMB:  Yes.

2               THE COURT:  Sorry.  We're going to swear

3       Mr. Gill.  The Court is going to swear you in.

4               THE CLERK: Is your name Amardeep Gill?

5               PROSPECTIVE JUROR:  Yes.

6               THE CLERK:  Raise your right hand.  Do

7       you solemnly swear that you will try this action

8       in a just and impartial manner and to the best of

9       your judgment render a verdict according to the

10      law and the evidence so help you God?

11              PROSPECTIVE JUROR:  Yes.

12              THE COURT:  Thank you, sir.  What we're

13      going to do is send you into the jury room.  Right

14      now our jurors are in there and bring you all back

15      in here in a few minutes.  Don't discuss the case

16      with anyone and we'll see you shortly.  Thank you.

17              (Juror Number 11 left the courtroom.)

18              THE COURT:  Patty, after he's in the jury

19      room, you can bring in the other man.

20              COURT OFFICER:  Okay.

21              (Pause in proceedings.)

22              COURT OFFICER:  Are you ready, your

23      Honor?

24              THE COURT:  Yes.

25              (Prospective juror entered courtroom.)

EF

1              THE COURT:  Mr. Beckett doesn't have to

2       have a seat.

3              Mr. Beckett, we're going to release you

4       from this case.  Various logistical issues have

5       come up. It has nothing do with you.  We are going

6       to release you from this matter.  And what we're

7       going to ask you to do is go back to central jury.

8       I am not sure what happens over there.  You will

9       talk to the jury clerk.  They may let you go

10      entirely or may send you somewhere else.

11             Thank you very much for your patience and

12      have a good day.

13             PROSPECTIVE JUROR:  You too.

14             (Prospective juror left the courtroom.)

15             THE COURT:  And we can bring in the panel

16      whenever Patty gets to them.

17             MS. RAJESWARI:  Can I approach?

18             (Discussion held off the record at the

19      bench.)

20             COURT OFFICER:  Are you ready for the

21      sworn jurors?

22             THE COURT:  Yes.

23             (Sworn jurors entered courtroom.)

24             THE SERGEANT:  Sworn jurors one through

25      eleven entering.

1                    (Jury roll call taken.)

2                    THE CLERK:   Case on trial continues.   Do

3          both sides stipulate to the presence of the first

4          eleven sworn jurors?   People?

5                    MR. KATCHEN:   So stipulated.

6                    THE CLERK:    Defense?

7                    MR. LAMB:   So stipulated.

8                    THE COURT:   Welcome back to those of you

9          who haven't seen me today.   We've run into some

10         logistical problems.   It's not the fault of either

11         party in this case.   Certain issues have come up

12         with regard to various jurors and it's altered our

13         path somewhat.

14                   And the bottom line is this.   As you can

15         see there are eleven of you.   We still need

16         another juror and we still need some alternate

17         jurors.   We are bringing another panel over here,

18         the rest of the panel from this morning to

19         continue that selection process this afternoon.

20                   It went slower than I thought.   Again,

21         it's nobody's fault these things happen.   So what

22         we are going to do is complete the jury selection

23         with the remaining twenty or so people this

24         afternoon. I don't know how long that's going to

25         take. Rather than keep you pent up in the jury

EF

```
 1              room for another hour and a half, we decided to

 2              let you go until Monday morning.

 3                       This is not slowing us down.  We built in

 4              time.  When I give you the schedule at the

 5              beginning to account for this, every case has some

 6              glitches in terms of scheduling.  That's what

 7              happened here.  What we're going to do is ask you

 8              to be back in the jury room 10:30.  I have some

 9              other cases to handle earlier, but we'll get

10              started about 10:30.  By that time we'll hear

11              preliminary instructions, opening statements and

12              testimony.

13                       I'm sorry we brought you down here for

14              nothing today, but we will continue to adhere to

15              the schedule.  Let me just instruct you before you

16              leave as I must.  Don't discuss this case with

17              each other or anyone else.  Don't speak with

18              anyone about taking anything, any payment or

19              benefit in return for supplying information

20              concerning this trial.

21                       Report directly to me any incident within

22              your knowledge involving any attempt by anyone to

23              improperly influence you or any other member of

24              the jury.  Don't visit or view the premises or

25              place where any charged crime allegedly was
```

EF

1           committed.  I don't think you heard of a location.

2                   Don't read, view or listen to any media

3           accounts, that includes the internet. Don't

4           attempt to research any fact, issue or law related

5           to this case.  Don't form any opinion.  Please

6           keep an open mind until after you begin your

7           deliberations at the end of the case.

8                   Thank you again for your patience. I'm

9           sorry we weren't able to work with you this

10          afternoon but we'll stay to the schedule.  Have a

11          good weekend and see you Monday at 10:30.

12                  (Eleven sworn jurors left the courtroom.)

13                  THE COURT:  The sworn jurors have left.

14          Let's bring in -- that's on consent, by the way,

15          that I sent them home?

16                  MR. LAMB:  Yes.

17                  MR. KATCHEN:  Yes.

18                  MS. RAJESWARI:  Yes.

19                  THE COURT:  Let's bring the panel back

20          and do this again.

21                  THE CLERK:  Sergeant, 24 jurors please.

22                  THE COURT:  This will be the sixth round.

23                  (Pause in proceedings.)

24                  COURT OFFICER:  Are you ready for the

25          panel?

```
 1                 THE COURT:  Yes.
 2                 (Prospective jurors entered courtroom.)
 3                 THE COURT:  Okay.
 4                 THE CLERK:   Jurors, as you hear your
 5       name, step up and have a seat in the jury box.
 6                 Seat Number 1, step up.  John Libretti.
 7       L I B R E T T I.
 8                 Seat two, Richard Litwon.
 9       L I T W O N.
10                 PROSPECTIVE JUROR:  Litwon.
11                 THE CLERK:   Seat three.  Lawrence
12       Genovese.  G E N O V E S E.
13                 Seat four, Joseph Lagambina.
14       L A G A M B I N A.
15                 Seat five, Carol Lowe.  L O W E.
16                 Seat six, Jacqueline Babolato
17       B A B O L A T O.
18                 Seat seven, Edward Maher.  M A H E R.
19                 Seat eight, Renata Tuchowska.
20       T U C H O W S K A.
21                 Seat nine, Anthony Marino.  M A R I N O.
22                 Seat ten, Leonard Balaj.  B A L A J.
23                 Seat eleven, Lawrence Graziano.
24       G R A Z I A N O.
25                 Seat twelve, Ryan Kielty.  K I E L T Y.
```

```
 1                    Thirteen, Marcella Barros.  B A R R O S.
 2                    Fourteen, Jennifer Buonincontro.
 3          B U O N I N C O N T R O.
 4                    Fifteen, Megan Burke.  B U R K E.
 5                    Sixteen, Catherine Po.  P O.
 6                    Seat number 17, front row closest to the
 7          window.  Arthur Driscoll.  D R I S C O L L.
 8          That's seat 17.
 9                    Eighteen, Teresita Apostol A P O S T O L.
10                    Nineteen, Brett Meaney.  M E A N E Y.
11                    Twenty, Andrew Pope.  P O P E.
12                    Twenty-one, Michael Romanello
13          R O M A N E L L O.
14                    Twenty-two, Matthew Russell.
15          R U S S E L L.
16                    Twenty-three, Janet Melendez.
17          M E L E N D E Z.
18                    Twenty-four, step up.  William McMillan.
19          M C M I L L A N.
20                    Twenty-four prospective jurors seated.
21                    THE COURT:  Okay, welcome back.  Thank
22          you very much for your patience.  We'll try to get
23          through this as quickly as we can.  We are doing
24          all 24 people who remain so if you can't hear me
25          out in the front row let me know.  I will shout.
```

```
 1              Perhaps you could do the same.  My questions don't

 2              change so I will just launch into this.

 3                    Do any of you know the lawyers or the

 4              defendant all of whom have been introduced to you?

 5                    Do any of you -- did any of you recognize

 6              the names of the potential witnesses I read

 7              earlier today?

 8                    This is Mr. Marino.  Who do you know?

 9                    PROSPECTIVE JUROR:  Yes.  I think Officer

10              Lloyd.

11                    THE COURT:  Officer Lloyd.

12                    PROSPECTIVE JUROR:  And I think a

13              detective also.

14                    THE COURT:  Are you a police officer?

15                    PROSPECTIVE JUROR:  Yes.

16                    THE COURT:  How long have you been a

17              police officer?

18                    PROSPECTIVE JUROR:  Seven years.

19                    THE COURT:  Have you worked with these

20              men?

21                    PROSPECTIVE JUROR:  Yes.

22                    THE COURT:  You know them personally?

23                    PROSPECTIVE JUROR:  Yes.  I don't off

24              duty I don't hang out with them but I see them at

25              work.
```

```
 1                    THE COURT:  If you were selected as a
 2          juror here and they were witnesses in the case
 3          could you evaluate their credibility objectively
 4          and impartially or would you be influenced somehow
 5          --
 6                    PROSPECTIVE JUROR:  I still see them.  I
 7          just saw Officer Lloyd yesterday.
 8                    THE COURT:  You think that might
 9          influence you somehow?
10                    PROSPECTIVE JUROR:  Could be.  I don't
11          know.
12                    THE COURT: Could be.  I will let the
13          lawyers follow that up if they want.
14                    Anybody else?  Anybody want to hear the
15          names read again?
16                    Okay.  Do any of you think you know
17          anything about this case apart from what you heard
18          here in court this morning?
19                    Are any of you or anyone close to you
20          involved in law enforcement?  Mr. Marino already
21          answered this.  Anybody else?  I will just jump
22          around here.  Mr. Maher.
23                    PROSPECTIVE JUROR:  My father is a
24          detective.
25                    THE COURT:  Currently?
```

```
 1                    PROSPECTIVE JUROR:  Yes.

 2               THE COURT:  NYPD?

 3                    PROSPECTIVE JUROR:  Yes.

 4               THE COURT:  Is that going to have any

 5          affect of your ability to be a fair juror?

 6                    PROSPECTIVE JUROR:  No.

 7               THE COURT:  Any other hands?  Stick with

 8          the jury box.  Ms. Babolato.

 9                    PROSPECTIVE JUROR:  My cousin is a

10          captain.

11               THE COURT:  Police officer?

12                    PROSPECTIVE JUROR:  Captain in the NYPD.

13               THE COURT:  Is that going to have an

14          affect on your ability to be a fair juror?

15                    PROSPECTIVE JUROR:  No.

16               THE COURT:  Anyone else in the jury box?

17               Ms. Burke.

18                    PROSPECTIVE JUROR:  My husband.

19               THE COURT:  A police officer?

20                    PROSPECTIVE JUROR:  Yes.

21               THE COURT:  Would that have any affect on

22          your ability to be fair?

23                    PROSPECTIVE JUROR:  No.

24               THE COURT:  Thank you.

25               Mr. Libretti.
```

```
 1                    PROSPECTIVE JUROR:  And you my girlfriend
 2           is a police officer and neighbor is a captain.
 3                    THE COURT:  Same question.  Is that going
 4           to have any affect on your ability to be fair?
 5                    PROSPECTIVE JUROR:  No.
 6                    THE COURT:  Other hands.  In the jury box
 7           anybody else?
 8                    Let me get out to the front row.
 9                    Mr. Driscoll.
10                    PROSPECTIVE JUROR:  My cousin.
11                    THE COURT:  Would that have any affect on
12           your ability to be fair?
13                    PROSPECTIVE JUROR:  No.
14                    THE COURT:  Thank you.
15                    Mr. Pope.
16                    PROSPECTIVE JUROR:  Cousin and next door
17           neighbor.
18                    THE COURT:  What do you think?  Would
19           that affect your ability to be fair?
20                    PROSPECTIVE JUROR:  I don't think so.
21                    THE COURT:  Anyone else?
22                    I got everybody.
23                    Are any of you or anyone close to you to
24           your knowledge involved in the legal field in any
25           way as a lawyer, a paralegal, employee of a law
```

```
  1              firm, a prosecutor's office?  Anything of that

  2              sort?

  3                      Mr. Maher.

  4                      PROSPECTIVE JUROR:  My uncle's a lawyer.

  5                      THE COURT:  What kind of law is he

  6              involved in, if you know?

  7                      PROSPECTIVE JUROR:  Civil law.

  8                      THE COURT:  Civil law.  Does he do any

  9              criminal law, practice any criminal law?

 10                      PROSPECTIVE JUROR:  No.

 11                      THE COURT:  Safe to say that would have

 12              no effect here on you?

 13                      PROSPECTIVE JUROR:  No.

 14                      THE COURT:  Anyone else?

 15                      Mr. Meaney.

 16                      PROSPECTIVE JUROR:  Yes, I am a director

 17              of contracts in the New York City Parks

 18              Department.

 19                      THE COURT:  You work with contracts?

 20                      PROSPECTIVE JUROR:  Yes.

 21                      THE COURT:  Are you a lawyer yourself?

 22                      PROSPECTIVE JUROR:  No, sir.

 23                      THE COURT:  Is there anything about your

 24              occupation that would have any effect on your

 25              ability to be a fair and impartial juror?
```

```
1                    PROSPECTIVE JUROR:  No.

2                    THE COURT:  Thank you.

3                    Anyone else on that question?

4                    Have any of you or anyone close to you to

5          your knowledge ever been the victim of a crime?

6                    Ms. Lowe.

7                    PROSPECTIVE JUROR:  I have a very close

8          friend of mine was the victim of a crime.

9                    THE COURT:  Can you tell me what kind of

10         crime?

11                   PROSPECTIVE JUROR:  Driving a car,

12         stabbed in the neck.

13                   THE COURT:  Did he survive?

14                   PROSPECTIVE JUROR:  He did.

15                   THE COURT:  How long ago was this?

16                   PROSPECTIVE JUROR:  That's six years ago.

17                   THE COURT:  Was there anybody arrested?

18                   PROSPECTIVE JUROR:  Not that I am aware

19         of.

20                   THE COURT:  Is there anything about that

21         event that would prevent you from being a fair

22         juror in this case?

23                   PROSPECTIVE JUROR:  Probably not.

24                   THE COURT:  Anyone else in the jury box?

25                   Mr. Driscoll.
```

```
 1                    PROSPECTIVE JUROR:  I was mugged many

 2           years ago.

 3                    THE COURT:  Anybody arrested?

 4                    PROSPECTIVE JUROR:  No.

 5                    THE COURT:  Were you injured?

 6                    PROSPECTIVE JUROR:  No.

 7                    THE COURT:  Is there anything about that

 8           event that would prevent you from being fair here?

 9                    PROSPECTIVE JUROR:  No.

10                    THE COURT:  Thank you.

11                    Anyone else?

12                    PROSPECTIVE JUROR:  Or people we know?

13                    THE COURT:  Yes.

14                    PROSPECTIVE JUROR:  I do have two

15           situations where there actually were rape charges,

16           sister-in-law and a student.

17                    THE COURT:  I want to ask you a little

18           bit about that.  Would you feel more comfortable

19           discussing that privately?

20                    PROSPECTIVE JUROR:  Yes.

21                    THE COURT:  We'll talk to you a little

22           later about that.  Thank you.

23                    Anyone else on this question, crime

24           victims?

25                    Again we can talk privately about
```

```
 1              anything and the question is have you or anyone

 2              close to you to your knowledge ever been a

 3              defendant in any kind of a criminal proceeding?

 4                      Mr. Meaney, you want to discuss that

 5              privately?

 6                      PROSPECTIVE JUROR:  Yes.

 7                      THE COURT:  We'll do that.  Anyone else?

 8                      Have any of you ever been a witness in

 9              any kind of a courtroom proceeding?

10                      Mr. Balaj.

11                      PROSPECTIVE JUROR:  Yes, I was a witness

12              in Staten Island, Targee Street.

13                      THE COURT:  On Targee Street?

14                      PROSPECTIVE JUROR:  About two years ago.

15                      THE COURT:  Some kind of criminal case I

16              gather, Targee Street.  Trial or hearing?

17                      PROSPECTIVE JUROR:  I think it was a

18              trial.

19                      THE COURT:  Was there anything about that

20              experience as a witness that would prevent you

21              from being a fair juror?

22                      PROSPECTIVE JUROR:  No.  Absolutely not.

23                      THE COURT:  I saw some other hands.

24                      Mr. Libretti.

25                      PROSPECTIVE JUROR:  I was a witness at a
```

1           bank robbery.

2                   THE COURT:  You never ended up on the

3           witness stand?

4                   PROSPECTIVE JUROR:  No.

5                   THE COURT:  How long ago was that?

6                   PROSPECTIVE JUROR:  Two years ago.

7                   THE COURT:  So the case resolved itself

8           without your participation I gather?

9                   PROSPECTIVE JUROR:  Yes.

10                  THE COURT:  Would that event whatever you

11          witnessed have any affect here?

12                  PROSPECTIVE JUROR:  No.

13                  THE COURT:  Anyone else?

14                  Mr. Marino.

15                  PROSPECTIVE JUROR:  Yes.  Through the

16          scope of my employment.

17                  THE COURT:  Sure.  You probably testified

18          at trials, hearings, Grand Jury proceedings?

19                  PROSPECTIVE JUROR:  Yes.

20                  THE COURT:  Anything about these

21          experiences on the witness stand that would

22          prevent you from being a fair juror?

23                  PROSPECTIVE JUROR:  No.

24                  THE COURT:  Anyone else in the witness

25          box?  Anybody in the front row?

```
 1                    Okay.  Have any of you ever been a
 2          litigant in a civil action or proceeding, that is
 3          a plaintiff or a defendant, in any kind of a civil
 4          lawsuit, civil action of any sort?
 5                    Mr. Graziano.
 6                    PROSPECTIVE JUROR:  Yes.  New York city
 7          Transit Authority.
 8                    THE COURT:  Okay, some kind of a civil
 9          case.
10                    PROSPECTIVE JUROR:  Yes.
11                    THE COURT:  How long ago was this?
12                    PROSPECTIVE JUROR:  Two years ago.
13                    THE COURT:  Is it over?
14                    PROSPECTIVE JUROR:  It's over.
15                    THE COURT:  Is there anything about that
16          experience as a litigant that would prevent you
17          from being a fair juror?
18                    PROSPECTIVE JUROR:  No.
19                    THE COURT:  Mr. Kielty.
20                    PROSPECTIVE JUROR:  My wife is in a suit
21          right now.
22                    THE COURT:  I see.  Some kind of civil
23          lawsuit?
24                    PROSPECTIVE JUROR:  Yes.
25                    THE COURT:  Are you involved as a
```

1          witness?

2                    PROSPECTIVE JUROR:  I think I am going to

3          be a witness.

4                    THE COURT:  That's still pending?

5                    PROSPECTIVE JUROR:  Yes.  It's supposed

6          to be in two weeks it's supposed to start.

7                    THE COURT:  Did we talk about that?

8                    PROSPECTIVE JUROR:  Yes.

9                    THE COURT:  We did talk about it.  If you

10         were selected as a juror here would that pending

11         lawsuit have any affect on your ability to be a

12         fair juror in this criminal case?

13                   PROSPECTIVE JUROR:  No.

14                   THE COURT:  Okay.  Thanks.

15                   Anybody else on this question?

16                   Have any of you ever been a juror before,

17         served as a juror?

18                   Mr. Graziano, when please?

19                   PROSPECTIVE JUROR:  Approximately like

20         twenty years ago.

21                   THE COURT:  Civil or criminal if you

22         remember.

23                   PROSPECTIVE JUROR:  Criminal.

24                   THE COURT:  Don't tell us how it ended.

25         Did the jury reach a verdict?

EF

```
 1                     PROSPECTIVE JUROR:  Yes.
 2                THE COURT:  Anything about that
 3           experience that would prevent you from being able
 4           to sit as a juror here?
 5                     PROSPECTIVE JUROR:  No.
 6                THE COURT:  Other hands?  I think I saw
 7           someone else.
 8                     Ms. Lowe.
 9                     PROSPECTIVE JUROR:  It was about twenty
10           years ago.  It was a civil case.
11                THE COURT:  Did the jury reach a verdict?
12                     PROSPECTIVE JUROR:  Yes.
13                THE COURT:  Was there anything about that
14           experience as a juror that would prevent you from
15           sitting in this case?
16                     PROSPECTIVE JUROR:  No.
17                THE COURT:  Anyone else in the jury box?
18                     Anybody in the front row?
19                     Have any of you ever served as a Grand
20           Juror?  Nobody on that.
21                     Okay.  Mr. Libretti, are you employed?
22                     PROSPECTIVE JUROR:  Yes.
23                THE COURT:  What type of work do you do?
24                     PROSPECTIVE JUROR:  Bank.
25                THE COURT:  Thank you.
```

```
 1                    Mr. Listwon, what do you do?
 2                    PROSPECTIVE JUROR:  Not employed.
 3                    THE COURT:  Thank you.
 4                    Mr. Genovese.
 5                    PROSPECTIVE JUROR:  Vice president, Wall
 6           Street.
 7                    THE COURT:  Thank you.
 8                    Mr. Lagambina?
 9                    PROSPECTIVE JUROR:  Maintenance worker
10           and landscaping business.
11                    THE COURT:  Thank you.
12                    Ms. Lowe.
13                    PROSPECTIVE JUROR:  Retired teacher and
14           part-time recruiter for Kingsboro Community
15           College.
16                    THE COURT:  Thanks.
17                    Ms. Babolato.
18                    PROSPECTIVE JUROR:  Cashier for Honda.
19                    THE COURT:  Thank you.
20                    Mr. Maher.
21                    PROSPECTIVE JUROR:  New York City fireman
22           and a nurse.
23                    THE COURT:  Thank you.
24                    Ms. Tuchowska.
25                    PROSPECTIVE JUROR:  I am a registered
```

1          nurse.

2                    THE COURT:   Thank you.

3                    Mr. Marino, we know what you do.

4                    Mr. Balaj.

5                    PROSPECTIVE JUROR:   Restaurant.

6                    THE COURT:   Thank you.

7                    Mr. Graziano.

8                    PROSPECTIVE JUROR:   Bus operator New York

9          City Transit.

10                   THE COURT:   Thank you.

11                   Mr. Kielty.   Am I pronouncing that right?

12                   PROSPECTIVE JUROR:   Yes.   Vice president

13         telecommunication company.

14                   THE COURT:   Thank you.

15                   Ms. Barros.

16                   PROSPECTIVE JUROR:   High school

17         principal.

18                   THE COURT:   Thank you.

19                   Ms. Buonincontro.

20                   PROSPECTIVE JUROR:   Cosmetologist.

21                   THE COURT:   Thank you.

22                   Ms. Burke.

23                   PROSPECTIVE JUROR:   Human resources.

24                   THE COURT:   Thank you.

25                   Ms. Po.

EF

```
 1                 PROSPECTIVE JUROR:  Medical assistant.

 2                 THE COURT:  Thank you.  Medical

 3       assistant --

 4                 PROSPECTIVE JUROR:  In a doctor's office.

 5                 THE COURT:  Thank you.

 6                 Mr. Driscoll.

 7                 PROSPECTIVE JUROR:  High school teacher.

 8                 THE COURT:  Thank you.

 9                 Ms. Apostol.

10                 PROSPECTIVE JUROR:  Registered nurse.

11                 THE COURT:  Thank you.

12                 Mr. Meaney.

13                 PROSPECTIVE JUROR:  Contracts.

14                 THE COURT:  Right. You told me.  Thanks.

15                 Mr. Pope.

16                 PROSPECTIVE JUROR:  In sales for a paint

17       company.

18                 THE COURT:  Thank you.

19                 Mr. Romanello.

20                 PROSPECTIVE JUROR:  Unemployed.

21                 THE COURT:  Thank you.

22                 Mr. Russell.

23                 PROSPECTIVE JUROR:  Bond trader Wall

24       Street firm.

25                 THE COURT:  Thank you.
```

EF

1              Ms. Melendez.

2              PROSPECTIVE JUROR:  Supervisor.

3              THE COURT:  Thank you.

4              Mr. McMillan.

5              PROSPECTIVE JUROR:  Verizon.

6              THE COURT:  Thank you all for that

7      information.

8              Let me go through these principles of

9      law.  You don't have to know any law in order to

10     be a juror.  It is my job to explain the law to

11     the jury.  You do however have to agree to accept

12     the law if you can in order to insure that both

13     sides receive a fair trial.  So I will go through

14     these principles again.  I am going to paraphrase

15     where I can.

16             As you know now if you didn't before an

17     indictment is evidence of nothing.  The indictment

18     is the instrument which contains the charges in

19     the case but it's not evidence of anything.  The

20     mere fact that the defendant has been indicted is

21     as I say evidence of nothing and in particular

22     it's not evidence of guilt.

23             Can everybody accept this proposition in

24     our law? Is there anybody who cannot accept this

25     proposition in our criminal law?

EF

1                     If selected as a juror you would be

2          called upon to deliberate with eleven other people

3          at the end of the trial in an effort to reason

4          together and arrive at a final unanimous verdict

5          or verdicts.

6                     Do any of you feel you could not

7          deliberate with eleven other people if called upon

8          to do so?

9                     Under our law everyone accused of a crime

10         and brought to trial is presumed innocent unless

11         or until he is proved guilty beyond a reasonable

12         doubt.  The defendant in this case is presumed

13         innocent, and to put this another way a defendant

14         is never required to prove his innocence.

15                    On the contrary, the People represented

16         by the District Attorney having accused the

17         defendant of the crimes charged have the burden of

18         proving him guilty beyond a reasonable doubt.  The

19         People carry this burden of proof throughout the

20         trial.  It never shifts.  It always remains on the

21         People and the presumption of innocence remains

22         with every defendant throughout every criminal

23         trial.

24                    Is there anyone amongst this panel who

25         cannot now in his or her own mind grant the

EF

1       defendant this presumption of innocence?

2                   As I said in a criminal case the burden

3       of proof is entirely on the People and remains on

4       them throughout the trial.  A defendant's not

5       required to prove anything.  A defendant's not

6       required to disprove anything.  The entire burden

7       of proof is on the People and remains on them

8       throughout the trial.

9                   Is there anyone who cannot accept this

10      rule in our criminal law?

11                  Mr. Genovese, what's your feeling on

12      that?

13                  PROSPECTIVE JUROR:  I just have a problem

14      with someone not coming up and speaking for

15      themselves.

16                  THE COURT:  Anybody else have a feeling

17      on this one way or the other?  Everybody slow

18      down.  Let me make sure I get hands.

19                  Mr. Libretti, what's your feeling?

20                  PROSPECTIVE JUROR:  I agree with that.  I

21      feel he should speak to the case.

22                  THE COURT:  And I saw Ms. Lowe.  Your

23      feeling as well?

24                  PROSPECTIVE JUROR:  I feel the same way

25      they would need to get up and I guess defend their

EF

 1            case.

 2                        THE COURT:  Even though the law is

 3            otherwise?

 4                        PROSPECTIVE JUROR:  Yes.

 5                        THE COURT:  Ms. Babolato, you too?

 6                        PROSPECTIVE JUROR:  Yes.

 7                        THE COURT:  Mr. Kielty, same thing?

 8                        PROSPECTIVE JUROR:  Same thing.

 9                        THE COURT:  Ms. Barros?

10                        PROSPECTIVE JUROR:  Not maybe this

11            particular issue but the presumed innocent, that's

12            a problem for me, and I think maybe privately to

13            discuss.

14                        THE COURT:  We'll talk to you privately.

15                        Ms. Lowe.

16                        PROSPECTIVE JUROR:  I was thinking the

17            same thing in this particular case.  I am

18            presuming innocence you know because it's a very

19            emotional case and very violent crime, I don't

20            know if I can be impartial entirely.

21                        THE COURT:  Okay.

22                        PROSPECTIVE JUROR:  Without emotions

23            getting in the way.  I have to be honest.

24                        THE COURT:  Anybody else in the jury box

25            have this issue?  In the audience in the front

1        row?

2                      Okay.  Those of you who already expressed

3              an opinion up to this point on this issue whether

4              it's the presumption of innocence or the burden of

5              proof I will probably also be referring to the

6              next question or issue I am going to put before

7              you.  And that is this if a defendant does not

8              testify in a criminal trial that is not a factor

9              from which an inference unfavorable to such

10             defendant may be drawn.

11                     Mr. Genovese, is that an issue for you?

12                     PROSPECTIVE JUROR:  Yes.  Otherwise I

13             would take from the feeling of just staring at the

14             person throughout the whole trial and making my

15             own assumption aside from the facts.

16                     THE COURT:  Okay.  Mr. Libretti, same

17             thing?

18                     PROSPECTIVE JUROR:  Yes.

19                     THE COURT:  Ms. Lowe, is that your issue

20             as well as others I guess?  I am not trying to put

21             words in anybody's mouth.  Tell me what you think.

22                     Ms. Babolato, same thing?

23                     PROSPECTIVE JUROR:  Yes.

24                     THE COURT:  Mr. Kielty?

25                     PROSPECTIVE JUROR:  Yes.

```
 1                      THE COURT:  Anybody in the audience the
 2           front row on this issue?
 3                      Okay.  I defined earlier today the
 4           standard of proof required for a conviction.   In
 5           every criminal case that standard as you know now
 6           if you didn't before is called proof of guilt
 7           beyond a reasonable doubt.
 8                      Did all of you hear that definition when
 9           I read it earlier today?
10                      PROSPECTIVE JUROR:  Yes.
11                      THE COURT:  Does anybody want to hear it
12           again? I am happy to read it again if you'd like
13           me to.  I am getting no takers on that.
14                      Keep that definition in mind.  Let me
15           remind you that it is the duty of each sworn trial
16           juror carefully to review, weigh and consider all
17           the evidence.  If after doing this you find that
18           the People have not proved the defendant's guilt
19           beyond a reasonable doubt as I have defined the
20           term, then you must find the defendant not guilty.
21                      On the other hand, if you are satisfied
22           that the People have proved the defendant's guilt
23           beyond a reasonable doubt as I defined the term
24           than you must find the defendant guilty.
25                      Will you promise us now that if you are
```

1           selected as a juror in this case you will in your

2           final deliberations follow and apply the standard

3           of proof that I have defined for you, that is

4           proof beyond a reasonable doubt?  Anybody who

5           could cannot make us that promise?

6                      All right.  I will remind you that a

7           deliberating jury is not permitted to consider the

8           subject of punishment.  If there is to be any

9           sentencing following a verdict that's for the

10          Court and the Court alone to deal with.  The jury

11          has no role to play in that.  The jury is not

12          permitted to discuss the subject of possible

13          punishment or penalty in their deliberations.  The

14          jury may not include any sentencing recommendation

15          in their verdict.

16                      Can you promise us now that if selected

17          you will render your verdict free from fear, favor

18          or sympathy, without considering any possibility

19          of sentence or punishment.

20                      Mr. Lowe, you already expressed a feeling

21          about sympathy.

22                      PROSPECTIVE JUROR:  I want to be

23          objective but I don't know if I could.

24                      THE COURT:  Anyone else on this issue?

25          Mr. Libretti.

EF

1              PROSPECTIVE JUROR:  I agree.

2              THE COURT:  Anybody else?

3              Ms. Babolato.

4              PROSPECTIVE JUROR:  Yes.

5              THE COURT:  Anyone else?

6              Okay.  In this case it's likely that the

7       jury will hear from police witnesses.  Police

8       officers take the same oath as anyone else.  The

9       mere fact that a witness is a police officer does

10      not make that witness any more or any less

11      credible than anyone else.

12             Do any of you have any feelings about the

13      police or have you had any experiences with the

14      police which would lead you to give a police

15      officer's testimony greater or lesser weight than

16      anyone else's merely because of the officer's

17      occupation?  Anybody have that feeling one way or

18      the other?

19             Mr. Marino, what do you think?  You would

20      evaluate a police witness just as you would anyone

21      else?

22             PROSPECTIVE JUROR:  I have my feelings on

23      it.  I have been up there numerous times.  I know

24      how nerve wracking it is to be up there as a cop.

25      I think they hold a lot of valuable information,

EF

1          probably a little greater because they were at the

2          scene of the crime.

3                    THE COURT:  I don't know if that's the

4          case here.

5                    PROSPECTIVE JUROR:  I am just saying for

6          most instances an arresting officer so he must

7          have been at the scene of the crime.  So he must

8          hold more information than the rest.

9                    THE COURT:  Okay.  We'll step to the side

10         before the lawyers talk to you.  We'll talk to a

11         couple of people.

12                   (The following took place at the

13         sidebar:)

14                   THE COURT:  We're at the sidebar with the

15         lawyers.  Your client does not wish to be here?

16                   MR. LAMB:  No.

17                   THE COURT:  Mr. Balaj, could you step

18         over for a moment please?

19                   (Prospective juror approached.)

20                   THE COURT:  I think the DA wanted to ask

21         you a couple of questions.

22                   MR. KATCHEN:  Mr. Balaj, you said you

23         testified as a witness in a case two years ago.

24         What was the case?

25                   PROSPECTIVE JUROR:  It was one of the

1          employees.

2                    MR. KATCHEN:  What was the case?

3                    PROSPECTIVE JUROR:  It was one of my

4          employees was accused of sexual abuse.

5                    MR. KATCHEN:  That was the case I had

6          prosecuted, you testified on his behalf, correct?

7                    PROSPECTIVE JUROR:  Yes.  I mean I was

8          called as a manager.  I was the manager.

9                    MR. KATCHEN:  I'll make a record now to

10         the best of my recollection your testimony

11         essentially was you didn't see anything happen.

12                   PROSPECTIVE JUROR:  That's what it was.

13                   MR. KATCHEN:  And there wasn't much

14         cross-examination on that but it was a case that I

15         did prosecute.

16                   THE COURT:  Is there anything about that

17         the fact that the DA in this case was also the DA

18         in that case that would prevent you from being

19         fair and impartial?

20                   PROSPECTIVE JUROR:  Absolutely not, but I

21         just -- the question was that and I needed to make

22         sure.  It was very -- they asked me a couple of

23         questions and that was it.

24                   THE COURT:  Any other questions?

25                   MR. LAMB:  Anything about the incident

```
 1          because this is a sex crime?
 2                      PROSPECTIVE JUROR:  Yes.  What happened
 3          was everything whatever he said, it happened
 4          outside of the restaurant.  He just called me if I
 5          was going to be a witness.
 6                      MR. LAMB:  You were the defense witness?
 7                      PROSPECTIVE JUROR:  Yes.
 8                      MR. LAMB:  Anything involving the case
 9          that you would think would carry over into this
10          case?
11                      PROSPECTIVE JUROR:  Not really.
12                      THE COURT:  Okay.
13                      MR. KATCHEN:  Just to the extent you
14          couldn't remember.
15                      PROSPECTIVE JUROR:  Yes.
16                      MR. KATCHEN:  Did you think that you were
17          treat fairly by me especially when you were asked?
18                      PROSPECTIVE JUROR:  Personally it was a
19          very, very -- I was scared you know.  If he sat in
20          the witness stand I was very scared so I didn't
21          feel comfortable at all.  That was something that
22          I didn't have anything, speaking very slow and you
23          have to speak louder.
24                      MR. LAMB:  Let me ask you this both sides
25          are going to have an opportunity when the witness
```

EF

```
 1                 takes the stand to cross-examine which some people

 2                 consider badgering a witness.

 3                         Are you going to feel sympathetic toward

 4                 the witness to the point where you might think

 5                 that one of us is bullying the witness?

 6                         PROSPECTIVE JUROR:  Not really.  I mean I

 7                 was -- I would look at it.  That's my job is to

 8                 look at the facts but I just want to mention it

 9                 was an experience that is going to leave

10                 something.

11                         MR. LAMB:  Thank you.

12                         THE COURT:  Thank you, sir.  I will let

13                 you resume your chair.

14                         Ms. Barros.

15                         (Prospective juror approached the

16                 sidebar.)

17                         THE COURT:  I think you were going to

18                 talk about the presumption of innocence.

19                         PROSPECTIVE JUROR:  So I have been

20                 hearing everything that's going on all day and the

21                 thing that I am struggling with is that in my mind

22                 I look at him I see him as guilty.  I see him as

23                 guilty.  I don't know if --

24                         THE COURT:  You must be a tough

25                 principal.
```

1           PROSPECTIVE JUROR:  But I have had to

2     deal with female students that have been raped

3     even by people in the home.  I have never been a

4     victim of a rape.  My mother is a victim of sexual

5     victimization.  For me it just -- I can't -- I am

6     trying to get past where I know I should do, but

7     in my mind unless the woman were to say something

8     I don't know she would have to say something so

9     convincing for me to be swayed because I see it --

10    I just see him guilty just to be honest about

11    that.

12          THE COURT:  Any questions?

13          MR. LAMB:  Thank you for being honest

14    about it.

15          MR. KATCHEN:  Thank you.

16          THE COURT:  Thank you.  I will let you go

17    back.

18          Mr. Driscoll, could you step over please?

19          (Prospective juror approached.)

20          THE COURT:  That's good.  I think you

21    were going to talk about some people you know who

22    were crime victims.

23          PROSPECTIVE JUROR:  My sister-in-law --

24    like adopted sister-in-law in the family.  She was

25    very young, she was abused as a child and actually

1        raped.  Just last year I teach government at high

2        school where I stupidly ask the question has

3        anyone been raped. Someone raised her hand, yes, I

4        was raped.

5                    THE COURT:  What do you think?  Could you

6        be a fair impartial juror?

7                    PROSPECTIVE JUROR:  I would like to

8        believe I could.

9                    MR. LAMB:  The question is can you be?

10       Everybody would like to be but.

11                   PROSPECTIVE JUROR:  My best sense I would

12       hope I could be.

13                   THE COURT:  If you can give an

14       unequivocal response we would all appreciate it.

15       If you can't, you can't.

16                   PROSPECTIVE JUROR:  Okay.  I just

17       mentioned these things.  I thought it was

18       something that had to be mentioned as far as me

19       being a prospective juror to make a verdict based

20       on the evidence I believe I could do that, yes.

21                   MS. RAJESWARI:  Okay.

22                   PROSPECTIVE JUROR:  Is that not

23       unequivocal?

24                   THE COURT:  People speak in a colloquial

25       fashion.  I think what the lawyers would like to

1           hear you say is yeah or nay, if that's possible.

2           If it's not possible, then it's not.

3                     PROSPECTIVE JUROR:  I am about to say I

4           think.  That's the way --

5                     THE COURT:  That's the way people talk.

6                     PROSPECTIVE JUROR:  I could, yes.  I

7           could give a decision based on evidence.

8                     THE COURT:  Okay.  Any other questions?

9                     MS. RAJESWARI:  No.

10                    MR. KATCHEN:  Thank you.

11                    THE COURT:  Thank you, sir.

12                    Mr. Meaney, could you step over please?

13                    (Prospective juror approached.)

14                    THE COURT:  Here is Mr. Meaney.  If you

15          could step over here.  I believe we were going to

16          talk about crime victims.

17                    PROSPECTIVE JUROR:  I was convicted of a

18          misdemeanor.

19                    THE COURT:  I beg your pardon?

20                    PROSPECTIVE JUROR:  I was convicted of a

21          misdemeanor.  I pleaded guilty to attempted

22          assault.

23                    THE COURT:  Attempted assault.  How long

24          ago was this?

25                    PROSPECTIVE JUROR:  Twelve years ago.

```
 1                    THE COURT:  It was here in Richmond

 2        County?

 3                    PROSPECTIVE JUROR:  Yes, it was.

 4                    THE COURT:  Is there anything about that

 5        experience -- that doesn't disqualify you. The

 6        question is, is there anything about that

 7        experience that would prevent you from being a

 8        fair and impartial juror, fair to both sides?

 9                    PROSPECTIVE JUROR:  No, your Honor.

10                    THE COURT:  Any questions?

11                    MR. LAMB:  No.

12                    MR. KATCHEN:  Who did you attempt to

13        assault?

14                    PROSPECTIVE JUROR:  It was a girlfriend.

15                    MR. KATCHEN:  Thank you.

16                    THE COURT:  Anything else?

17                    MR. LAMB:  No.

18                    THE COURT:  Anybody else?

19                    Thank you, Mr. Meaney.

20                    Did we get everybody who wanted to speak

21        to us?  I think we did but I am not sure.

22                    (The following took place in open court:)

23                    THE COURT:  We have one juror in the

24        bathroom.  We'll continue when they get back.

25                    (Pause in proceedings.)
```

1              MS. RAJESWARI:  May I, Judge?

2              THE COURT:  Yes.

3              MS. RAJESWARI:  Good afternoon, ladies

4       and gentlemen.  I know it's very late in the day.

5       We'll try to keep our remarks brief.

6              As you know by now I am Assistant

7       District Attorney Raja Rajeswari, along with

8       Mr. Katchen.  We're going to present the case.

9              I am going to apologize in advance to the

10      potential jurors seated in the front row.  I am

11      going to try to speak to everybody.  If you can't

12      hear me please let me know.

13             I am not going to have occasion to speak

14      to all of you but I am going to ask some of you

15      certain questions.

16             Mr. Listwon, you said you are unemployed

17      now.  What did you do before?

18             PROSPECTIVE JUROR:  I used to have my own

19      business.  Sell stuff to mom and pop stores, gift

20      items.

21             MS. RAJESWARI:  Are you married, sir?

22             PROSPECTIVE JUROR:  Yes.

23             MR. LAMB:  Could we approach for one

24      second briefly?

25             (Discussion held off the record at the

```
 1                  bench.)
 2                          THE COURT:  Everybody please keep your
 3                  voice up.  Mr. Lamb is having a little trouble
 4                  hearing from his table over there.
 5                          MS. RAJESWARI:  Are you married, sir?
 6                          PROSPECTIVE JUROR:  Yes, I am.
 7                          MS. RAJESWARI:  Do you have children?
 8                          PROSPECTIVE JUROR:  Not currently living
 9                  with me.  They are adults.
10                          MS. RAJESWARI:  Okay.  Do you have live
11                  in a private home or apartment, sir?
12                          PROSPECTIVE JUROR:  Apartment.
13                          MS. RAJESWARI:  Mr. Lagambina, are you
14                  married, sir?
15                          PROSPECTIVE JUROR:  Yes.
16                          MS. RAJESWARI:  And do you live in a
17                  private home or apartment?
18                          PROSPECTIVE JUROR:  Apartment.
19                          MS. RAJESWARI:  Do you have children?
20                          PROSPECTIVE JUROR:  Yes.
21                          MS. RAJESWARI:  How many?
22                          PROSPECTIVE JUROR:  I have two daughters
23                  and a stepdaughter.
24                          MS. RAJESWARI:  Thank you.
25                          Mr. Maher, what about you, sir?
```

1           PROSPECTIVE JUROR:  I am engaged, private

2      house.

3           MS. RAJESWARI:  Congratulations.  Any

4      children yet?

5           PROSPECTIVE JUROR:  No.

6           MS. RAJESWARI:  Miss -- how do you

7      pronounce your last name?

8           PROSPECTIVE JUROR:  Tuchowska.  Divorced,

9      two children and I live in a private house.

10          MS. RAJESWARI:  Ms. Po, what about you?

11          PROSPECTIVE JUROR:  I am single.

12          MS. RAJESWARI:  Do you live in an

13     apartment or private home?

14          PROSPECTIVE JUROR:  Apartment.

15          MS. RAJESWARI:  And you have no children?

16          PROSPECTIVE JUROR:  No children.

17          MS. RAJESWARI:  How about you --

18     actually, Ms. Burke?  I didn't hear what you did

19     for a living.

20          PROSPECTIVE JUROR:  Human resources.

21          MS. RAJESWARI:  And are you married?

22          PROSPECTIVE JUROR:  Married, live in a

23     private home, no children.

24          MS. RAJESWARI:  What about you,

25     Ms. Buonincontro?  Where do you live?

 1                    PROSPECTIVE JUROR:  I live at home with

 2          my mom, private house.

 3                    MS. RAJESWARI:  Are you single?

 4                    PROSPECTIVE JUROR:  Yes.

 5                    MS. RAJESWARI:  Mr. Graziano, what about

 6          you, sir?

 7                    PROSPECTIVE JUROR:  Married, two grown

 8          children.

 9                    MS. RAJESWARI:  Private house or

10          apartment?

11                    PROSPECTIVE JUROR:  Apartment.

12                    THE CLERK:   Mr. Driscoll, what about

13          you?

14                    PROSPECTIVE JUROR:  Married, one child,

15          private home.

16                    MS. RAJESWARI:  Ms. Apostol.

17                    PROSPECTIVE JUROR:  Married, two

18          children, private home.

19                    MS. RAJESWARI:  Mr. Pope?

20                    PROSPECTIVE JUROR:  I'm single, live in a

21          private home, no children.

22                    MS. RAJESWARI:  Mr. Romanello.

23                    PROSPECTIVE JUROR:  Single, live at home

24          with my grandmother.

25                    MS. RAJESWARI:  Mr. Romanello, you said

1              you were unemployed.  What were you?

2                    PROSPECTIVE JUROR:  Carpenter.

3                    MS. RAJESWARI:  A carpenter?

4                    PROSPECTIVE JUROR:  Yes.

5                    MS. RAJESWARI:  Mr. Russell.

6                    PROSPECTIVE JUROR:  Single, no children,

7        apartment.

8                    MS. RAJESWARI:  What about you,

9        Ms. Melendez?

10                    PROSPECTIVE JUROR:  Private house.  Four

11        kids, private house.

12                    MS. RAJESWARI:  And Mr. McMillan what

13        about you?

14                    PROSPECTIVE JUROR:  Single.  I don't have

15        any kids.  Not old enough yet.

16                    MS. RAJESWARI:  Ladies and gentlemen, by

17        now you heard that this case involved allegations

18        of rape.  You've seen -- if you were hopefully

19        paying attention, you heard Mr. Katchen and myself

20        and Mr. Lamb on a couple of rounds. You know this

21        is not a stranger situation.  This is a domestic

22        situation where the parties knew each other.

23                    The fact that the parties know each other

24        does that change anybody's opinion that a rape can

25        occur?

1                    Mr. Maher, can two people in a

2          relationship, engaged, married or living together,

3          can a woman get raped, sir?

4                    PROSPECTIVE JUROR:  Yes.

5                    MS. RAJESWARI:  What about you, Ms. Po,

6          do you agree with him?

7                    PROSPECTIVE JUROR:  Yes.

8                    MS. RAJESWARI:  Ms. Burke?

9                    PROSPECTIVE JUROR:  Yes.

10                   MS. RAJESWARI:  Ms. Buonincontro?

11                   PROSPECTIVE JUROR:  I agree.

12                   MS. RAJESWARI:  Mr. Graziano?

13                   PROSPECTIVE JUROR:  Yes, I agree.

14                   MS. RAJESWARI:  Ms. Melendez, can two

15         people in a relationship, husband and wife,

16         boyfriend girlfriend, can rape still occur between

17         people who just know each other?

18                   PROSPECTIVE JUROR:  No.

19                   MS. RAJESWARI:  No.

20                   THE COURT:  She said has no personal

21         opinion.

22                   MS. RAJESWARI:  Mr. Russell, what about

23         you?

24                   PROSPECTIVE JUROR:  I agree with that.

25                   MS. RAJESWARI:  Mr. Pope.

```
 1                    PROSPECTIVE JUROR:  I suppose so.

 2                    MS. RAJESWARI:  You suppose you think

 3          people in a relationship?

 4                    What about you, Ms. Apostol, what do you

 5          think?

 6                    PROSPECTIVE JUROR:  Definitely.

 7                    MS. RAJESWARI:  Ms. Tuchowska?

 8                    PROSPECTIVE JUROR:  Yes.

 9                    MS. RAJESWARI:  Can I have your assurance

10          if some of you are picked as jurors in this

11          particular case you will keep an open mind and

12          listen to the witnesses in the case?

13                    If you hear that a victim of rape did not

14          immediately leave the situation or did not

15          immediately report it, can you still keep an open

16          mind and listen to why or what that person had to

17          say?  Can I have your assurance, sir?

18                    PROSPECTIVE JUROR:  Yes.

19                    MS. RAJESWARI:  What about you?

20                    PROSPECTIVE JUROR:  Yes.

21                    MS. RAJESWARI:  Sir?

22                    PROSPECTIVE JUROR:  Yes.

23                    MS. RAJESWARI:  What about you,

24          Ms. Tuchowska?

25                    PROSPECTIVE JUROR:  Yes.
```

```
 1                    MS. RAJESWARI:  Mr. Driscoll?

 2                    PROSPECTIVE JUROR:  Yes.

 3                    MS. RAJESWARI:  Ms. Apostol?

 4                    PROSPECTIVE JUROR:  Yes.

 5                    MS. RAJESWARI:  Ms. Melendez, what about

 6           you, ma'am?

 7                    PROSPECTIVE JUROR:  Yes.

 8                    MS. RAJESWARI:  Okay.  Mr. Romanello?

 9                    PROSPECTIVE JUROR: Yes.

10                    MS. RAJESWARI:  Mr. Russell?

11                    PROSPECTIVE JUROR:  Yes.

12                    MS. RAJESWARI:  Anybody disagree just

13           because somebody didn't leave a bad situation,

14           abusive relationship, didn't report it, does that

15           mean they can't be believed?  Anybody disagree

16           with what some of the jurors say?

17                    Now, Ms. Burke, you say you have

18           children.

19                    PROSPECTIVE JUROR:  No.

20                    MS. RAJESWARI:  Ms. Apostol?

21                    PROSPECTIVE JUROR:  I have two children.

22                    MS. RAJESWARI:  How old are they?

23                    PROSPECTIVE JUROR:  17 and 1.

24                    MS. RAJESWARI:  Teenage children.  Do

25           they argue?
```

1              PROSPECTIVE JUROR:  Seldom.

2              MS. RAJESWARI:  Seldom.  When they were

3       younger did they fight?  You have to settle

4       arguments between them?

5              PROSPECTIVE JUROR:  Yes.

6              MS. RAJESWARI:  How do you settle it?

7              PROSPECTIVE JUROR:  I would agree to

8       speak with both of them, listen to each one and

9       then make a decision.

10             MS. RAJESWARI:  Did everybody hear what

11      she said?  Can I have your assurance if you are

12      picked as a juror you will listen to both sides?

13             THE COURT:  Sustained.  Don't say that.

14      Strike that.  The panel will disregard that.

15             MS. RAJESWARI:  All right.  If you will

16      keep an open mind and you will listen to what the

17      evidence is, you will listen to what the witnesses

18      say and then make a decision, yes?

19             Is there anybody here who can't give us

20      the assurance you will listen to the witnesses and

21      you will keep an open mind and you can make a

22      decision?  Anybody who can't make a decision?

23             Ms. Lowe.

24             PROSPECTIVE JUROR:  I am not sure again

25      the nature of the case if I could be that

1          open-minded to listen to both sides.  I hope I

2          wouldn't have any preconceived notions because of

3          the nature of the case, that my emotions are

4          getting in the way.

5                    MS. RAJESWARI:  I am just mentioning it.

6          Thank you for your candor.

7                    Ladies and gentlemen, this is the time to

8          tell us if you think that there is some issue that

9          prevents you from being a fair juror, fair to the

10         defense and to the People.  So thank you for your

11         candor.

12                   Does anybody here agree with Ms. Lowe

13         that they cannot listen to the evidence and keep

14         an open mind and come to a decision?

15                   And you also heard Judge Rooney give you

16         various different standards.  Some of you didn't

17         agree, some of you said you couldn't and I thank

18         you for coming up and telling us.

19                   Is there anybody here who feels that they

20         cannot sit and deliberate with eleven other

21         jurors?  Based upon previous jury experience or

22         based upon any other reason?  Anybody?  What about

23         you?

24                   THE COURT:  I already asked that

25         question.

1           MS. RAJESWARI:  Okay.  And can everybody

2      give me an assurance that if you are picked as a

3      juror you will follow Judge Rooney's instructions

4      and I am not going to repeat what the standard is

5      on beyond a reasonable doubt.  You will follow

6      what he says?  Yes?  Is there anybody here who

7      cannot give me that assurance?

8           Mr. McMillan, you can follow the judge's

9      instructions on the standard of proof? Listen to

10     him?

11          PROSPECTIVE JUROR:  Yes.

12          MS. RAJESWARI:  The judge also mentioned

13     you cannot --

14          THE COURT:  I already discussed that with

15     the panel.

16          MS. RAJESWARI:  Everybody can give me

17     that assurance?  Yes?

18          Ladies and gentlemen, there are for a

19     variety of reasons personal, social, political,

20     religious, whatever they may be that a juror may

21     feel no matter what the prosecutor proves, no

22     matter how strong the evidence is, even if they

23     convince me, I still cannot convict, I have a

24     hesitation based on any reason?  Is there anybody

25     here who feels that way?

```
 1                    Juror number one.  Mr. Libretti, you feel
 2          that way?  Thank you.
 3                    Does anybody here agree with
 4          Mr. Libretti?
 5                    What about you, Mr. Russell?
 6                    PROSPECTIVE JUROR:  No.
 7                    MS. RAJESWARI:  If I prove my case to you
 8          beyond a reasonable doubt you would be able to
 9          convict?
10                    PROSPECTIVE JUROR:  Sure.
11                    MS. RAJESWARI:  Can I assume everybody
12          else agrees with Mr. Russell?  Yes.
13                    (Nodding heads.)
14                    MS. RAJESWARI:  And is there anything
15          that I haven't mentioned or Justice Rooney hasn't
16          mentioned till now that we don't know about your
17          personal life, your life experiences if you think
18          will affect your ability to sit on this case with
19          these charges?
20                    Is there anything that we haven't thought
21          to ask you that you think will affect you?
22          Anybody?
23                    Ms. Melendez, do you want to speak to us
24          in private?
25                    PROSPECTIVE JUROR:  Yes.
```

1              MS. RAJESWARI:  Other than Ms. Melendez,

2       is there anybody else?

3              Okay.  If there are no takers for that

4       question, I am going to thank you for waiting all

5       day for your time and your attention.  Thank you

6       very much.

7              THE COURT:  Mr. Lamb.

8              MR. LAMB:  I promise I will be brief.

9              Mr. Listwon, I didn't quite hear what you

10      said.

11             PROSPECTIVE JUROR:  Self-employed,

12      selling gift items to small stores.

13             MR. LAMB:  Okay.  As salesman now

14      retired.

15             PROSPECTIVE JUROR:  Yes. Disabled, I had

16      a heart operation.

17             MR. LAMB:  Okay.  And, Mr. Graziano, I

18      believe you had indicated you had been on a

19      criminal jury sometime ago?

20             PROSPECTIVE JUROR:  Yes.

21             MR. LAMB:  What was the -- what were the

22      charges involved if you don't mind me asking?

23             PROSPECTIVE JUROR:  Murder.

24             MR. LAMB:  That was a murder case.  Were

25      there any sexual crimes charged?

```
 1                    PROSPECTIVE JUROR:  Not that I recall,

 2           no.

 3                    MR. LAMB:  And there was nothing about

 4           that experience that you feel would make you

 5           unqualified to be a juror in this case?

 6                    PROSPECTIVE JUROR:  No.

 7                    MR. LAMB:  And I believe, Ms. Lowe, you

 8           had indicated you were a civil juror?

 9                    PROSPECTIVE JUROR:  Yes.

10                    MR. LAMB:  You understand there is a

11           difference in both, in the type of case and the

12           law that's applied?

13                    PROSPECTIVE JUROR:  Um-hum.

14                    MR. LAMB:  You wouldn't carry the rules

15           of law that were given to you in that case over to

16           this case, right?

17                    PROSPECTIVE JUROR:  No.

18                    MR. LAMB:  You would listen to Judge

19           Rooney as to what the law in this case is?

20                    PROSPECTIVE JUROR:  Right.  That would

21           not be a problem for me.

22                    MR. LAMB:  As a matter of fact, let me

23           ask that question to all of you. Do all of you --

24           can all of you promise me that you will listen to

25           the law as judge Rooney will give it to you at the
```

```
 1              end of the case?  He will instruct you as to the

 2              law as to how you are to apply the evidence and

 3              whether you agree with it or not.

 4                      Can you all promise us that you will

 5              follow Judge Rooney's advice as to -- rulings as

 6              to what the law is?  Can you all assure us that

 7              you can do that?

 8                      (Heads nodding.)

 9                      MR. LAMB:  Now Ms. Rajeswari asked if you

10              would automatically or something to the affect

11              that you would automatically disregard an alleged

12              rape victim's claim if she did not report it

13              immediately.

14                      I am going to ask you the reverse

15              question.  Would you consider it a factor to be

16              considered in terms of her credibility whether she

17              is telling the truth?

18                      MR. KATCHEN:  Objection, Judge.

19                      MS. RAJESWARI:  Objection.

20                      THE COURT:  Overruled.

21                      PROSPECTIVE JUROR:  Could you repeat

22              that?

23                      MR. LAMB:  Okay.  If a witness -- if a

24              complaining witness in a sex crime case testifies

25              that they did not report the incident immediately,
```

```
 1              would you consider that as a factor to be
 2              considered in whether she's telling the truth that
 3              it happened or not?
 4                   PROSPECTIVE JUROR:  I think so.
 5                   PROSPECTIVE JUROR:  Yes.
 6                   MR. LAMB:  Mr. Genovese, the answer to
 7              your question is yes?
 8                   PROSPECTIVE JUROR:  I feel the same way.
 9                   MR. LAMB:  Do you all agree it is a
10              factor to be considered?  Yes, Mr. Kielty?
11                   PROSPECTIVE JUROR:  No.
12                   MR. LAMB:  You don't think it's a factor
13              to be considered as to whether she is telling the
14              truth or not?
15                   PROSPECTIVE JUROR:  No.
16                   PROSPECTIVE JUROR:  I don't either.
17                   PROSPECTIVE JUROR:  Me neither.
18                   MR. LAMB:  You don't either?
19                   THE COURT:  That's Ms. Barros you are
20              talking to?
21                   PROSPECTIVE JUROR:  Mr. Lagambina.
22                   THE COURT:  You know the trial jury.
23                   PROSPECTIVE JUROR:  She could be scared,
24              frightened.
25                   MR. LAMB:  I didn't ask --
```

1              THE COURT:  Can you consider that too?  I

2        think what Mr. Lamb wants to know in evaluating

3        the credibility of the complaining witness, of any

4        witness would you consider all the facts and

5        circumstances that come out through direct and

6        cross-examination?

7              PROSPECTIVE JUROR:  No.

8              THE COURT:  Pardon?

9              PROSPECTIVE JUROR:  I would not. What he

10        was asking me, I don't -- I wouldn't.  I wouldn't

11        mind if she didn't want to say.  If she didn't say

12        right away I would think that maybe she is scared

13        too, that could be a reason.

14              MR. LAMB:  Or maybe she lied, either way.

15              PROSPECTIVE JUROR:  It's two ways. Not

16        whether you would disregard her testimony, but

17        whether you would consider it as a factor for you

18        to consider one of the pieces.

19              PROSPECTIVE JUROR:  It could go both

20        ways.

21              MR. LAMB:  To wrestle with.

22              PROSPECTIVE JUROR:  I agree.

23              PROSPECTIVE JUROR:  For me the factor

24        whether she was lying would lie more on what I am

25        hearing is the evidence, but not at all on the

1          fact that she didn't come forward.

2                    MR. LAMB:  Okay, thank you.  Anybody

3          else?

4                    Anybody else that feels they wouldn't

5          even consider it as a possibility, as a possible

6          factor in considering whether she's telling the

7          truth or not?

8                    How about Mr. Maher?

9                    PROSPECTIVE JUROR:  I think it would go

10         either way.  She was either scared or she could be

11         lying.

12                   MR. LAMB:  You would consider it?

13                   PROSPECTIVE JUROR:  Yes.

14                   MR. LAMB:  And weigh it based upon all

15         the other evidence?

16                   PROSPECTIVE JUROR:  Yes.

17                   MR. LAMB:  Does everybody agree with

18         that?  That's all I'm asking.  Maybe I didn't ask

19         it well.  At this late hour, it's a possibility.

20                   Does anybody here -- as you know now this

21         is not an incident amongst, between strangers.

22         This is an incident between parties that knew one

23         another, not only knew one another, but lived

24         together.  There was a relationship.

25                   Is there anybody here who has had such a

1          traumatic or negative relationship, been in such a

2          terrible relationship that they feel that it would

3          carry over into this case, that they would not be

4          objective in this case?

5                   And if your answer -- if you'd like to

6          answer the question privately you can certainly do

7          that.  Nobody here that's been -- at any time in

8          the past been in such a traumatic relationship in

9          the past that they would not carry -- that it

10         might effect their thinking in this case?

11                  Yes, Ms. Barros.

12                  PROSPECTIVE JUROR:  Not this exact

13         circumstance, but I have had personal experiences

14         in a relationship where the other person's version

15         was believed over mine and that's a hard pill to

16         swallow.

17                  MR. LAMB:  And that may affect your

18         ability to be objective and open minded in this

19         case?

20                  PROSPECTIVE JUROR:  That's something I

21         carry with me and that was over ten years ago.

22         And I just -- that part is very vivid for me that

23         I was not believed and the other person was

24         because they were just very good at their version

25         of it.

1              MR. LAMB:  Um-hum.  Thank you.

2              My last question is if you are selected

3       as a juror can you assure me, all of you assure me

4       that you would give my client the same fair trial

5       that you would want if you were sitting where he

6       is sitting now?  Can I get that assurance from all

7       of you?

8              PROSPECTIVE JUROR:  Yes.

9              MR. LAMB:  Miss, could you make that

10      assurance to me?

11             PROSPECTIVE JUROR:  Thank you.

12             THE COURT:  Can you step up just one

13      moment please?

14             (Discussion held off the record at the

15      bench.)

16             THE COURT:  All right.  I believe,

17      Ms. Po, you are a physician assistant?

18             PROSPECTIVE JUROR:  No medical assistant.

19             THE COURT:  Medical assistant in a

20      medical office?

21             PROSPECTIVE JUROR:  Yes, in a

22      dermatologist's office.

23             THE COURT:  Okay.  And, Ms. Apostol, you

24      are a nurse?

25             PROSPECTIVE JUROR:  Yes.

EF

```
 1                    THE COURT:  Are there any other nurses or
 2          people with medical training?
 3                    PROSPECTIVE JUROR:  Yes, I am.
 4                    THE COURT:  Mr. Maher, I'm sorry. You are
 5          a firefighter and a nurse.
 6                    PROSPECTIVE JUROR:  Yes.
 7                    THE COURT:  Anybody else?  Ms. Tuchowska?
 8                    PROSPECTIVE JUROR:  I am a registered
 9          nurse Staten Island Hospital.
10                    THE COURT:  This is what happens late
11          Friday afternoon.  I miss things.  That went right
12          by me.  Anybody else, with any medical training?
13                    What I am going to do with regard to the
14          four of you, Ms. Po, Mr. Maher, Ms. Tuchowska,
15          Ms. Apostol is to give you an instruction and ask
16          you if you can abide by it should you be selected.
17                    There is going to be I am told is medical
18          evidence in this case.  In evaluating evidence and
19          the issues presented you should use your common
20          sense, knowledge and experience just as you would
21          in making decisions in your daily life.  And when
22          I speak of knowledge and experience in this
23          context I mean the sort of knowledge and
24          experience that an average person would acquire in
25          life.
```

```
 1                  Some of you may have something more than

 2          ordinary knowledge or experience in a certain

 3          area, specifically in the medical field.  And you

 4          may have developed a special expertise in this

 5          area, well beyond what an average person would

 6          have.  If you have such a special expertise and if

 7          it relates to some material issue in this case,

 8          and I don't know if your medical background will

 9          relate to a material issue in this case or not

10          because I haven't heard the evidence either, but

11          if it does, it would be wrong to rely on your

12          special expertise to inject into your

13          deliberations either a fact that is not in

14          evidence or unfavorable from the evidence or an

15          opinion that could not be drawn from the evidence

16          to a person without that special expertise.  The

17          reason it would be wrong to do so is the jury must

18          decide the case only on the evidence presented in

19          the courtroom.

20                  And so with respect to any material issue

21          in the case you must not use any special expertise

22          you have to insert into deliberations, evidence

23          that has not been presented in the Courtroom

24          during the trial.

25                  Ms. Po, Mr. Maher, Ms. Tuchowska and
```

```
 1            Ms. Apostol could you all accept and follow that

 2       instruction if you were sworn as jurors in this

 3       case and you got that instruction at the end of

 4       the trial?  Would any of you have any problem

 5       following and accepting that rule?  Nobody.  Okay

 6       thank you very much.

 7            I think Ms. Melendez wanted to talk to

 8       us.  We will speak with Ms. Melendez at a sidebar

 9       and then we'll take a few minutes.

10            (The following took place at the

11       sidebar:)

12            (Prospective juror approached.)

13            THE COURT:  This came up when you were

14       voir diring and I didn't hear everything so what

15       are we going to talk about?

16            MS. RAJESWARI:  I think I was asking her

17       can rape occur between boyfriend and girlfriend

18       and domestic relationship and I didn't actually

19       hear her answer myself.

20            THE COURT:  You said -- somebody said you

21       wanted to talk.

22            PROSPECTIVE JUROR:  When I was -- I was

23       raped.  I don't like to talk about this.

24            THE COURT:  You think you can be a fair

25       juror in this case or not?
```

```
 1                    PROSPECTIVE JUROR:  Yes.

 2                    THE COURT:  You think you could.  That's

 3            a nod for the record.  Would your personal

 4            experience in this regard prevent you from being

 5            fair and objective or not?

 6                    PROSPECTIVE JUROR:  What do you mean?

 7                    THE COURT:  Do you think you could be

 8            fair and objective in evaluating the evidence

 9            here?

10                    PROSPECTIVE JUROR:  Yes.

11                    THE COURT:  Okay.  Counsellors any

12            questions?

13                    MR. LAMB:  Well, I don't mean to pry but

14            I am sure that was a horrible experience and there

15            is going to be a woman testifying here who is

16            going to also claim that she was raped.  And the

17            whole question here is -- the question is whether

18            she's telling the truth or not.

19                    Would your experience horrible experience

20            that you had make you so sympathetic towards her

21            that you might not listen to the evidence and feel

22            for her?

23                    PROSPECTIVE JUROR:  Yes.

24                    MR. KATCHEN:  We're prepared to consent

25            for cause.
```

EF

1              THE COURT:  We'll deal with that in a

2       bit.

3              Thank you. You could have a seat and

4       we'll be back with you shortly.

5              (The following took place in open court:)

6              THE COURT:  We're going to take a few

7       minutes while the lawyers go over their notes and

8       you will learn your faith.  You are free to step

9       out or stay here.  Just don't discuss the case.

10      Thank you.

11             (The following took place at the

12      sidebar:)

13             THE COURT:  We're at a sidebar with the

14      lawyers and the defendant.  I guess we'll go one

15      at a time.

16             Carmine, how many challenges does each

17      side have left for the first twelve?

18             MR. KATCHEN:  The People used ten and

19      defense used eleven.

20             THE COURT:  Okay.  So we'll go one at a

21      time.  Mr. Libretti.  Cause People?

22             MR. KATCHEN:  Yes.

23             MR. LAMB:  Consent.

24             THE COURT:  For cause on consent.

25             Next is Mr. Listwon.  Cause People?

Colloquy                                    481

1              MR. KATCHEN:  No.

2              THE COURT:  Defense?

3              MR. LAMB:  No.

4              THE COURT:  Peremptory People?

5              MR. KATCHEN:  Yes.

6              THE COURT:  Next is Mr. Genovese.  Cause

7    People?

8              MR. KATCHEN:  Yes.

9              MR. LAMB:  Yes, I consent to that.

10             THE COURT:  For cause on consent.

11             Next is Mr. Lagambina. Cause People?

12             MR. KATCHEN:  No.

13             THE COURT:  Defense?

14             MR. LAMB:  No.

15             THE COURT:  Peremptory People?

16             MR. KATCHEN:  No.

17             THE COURT:  Defense?

18             MR. LAMB:  Yes.

19             THE COURT:  Ms. Lowe.  Cause People?

20             MR. KATCHEN:  Yes, Judge.

21             MR. LAMB:  Consent.

22             THE COURT:  Cause on consent.

23             Ms. Babolato.  Cause, people?

24             MR. KATCHEN:  Yes.

25             MR. LAMB:  Yes.

EF

Colloquy                                    482

1        THE COURT:  For cause on consent.

2        Mr. Maher.  Cause People?

3        MR. KATCHEN:  No.

4        THE COURT:  Defense?

5        MR. LAMB:  No.

6        THE COURT:  Peremptory People?

7        MR. KATCHEN:  No.

8        THE COURT:  Defense?

9        MR. LAMB:  Yes.

10       THE COURT:  Ms. Tuchowska.  Cause People?

11       MR. KATCHEN:  No.

12       THE COURT:  Defense?

13       MR. LAMB:  No.

14       THE COURT:  Peremptory People?

15       MR. KATCHEN:  No.

16       THE COURT:  Defense?

17       MR. LAMB:  Yes.

18       THE COURT:  You got one more.

19       Right, Carmine?

20       THE CLERK:  Yes.

21       THE COURT:  Mr. Marino.  Cause People?

22       MR. KATCHEN:  Yes.

23       MR. LAMB:  Consent.

24       THE COURT:  For cause on consent.

25       Next is Mr. Balaj. Cause People?

EF

1              MR. KATCHEN:  Yes.

2              THE COURT:  Balaj?

3              MR. KATCHEN:  Yes.  He was a defense

4      witness in a case I prosecuted.  I cross-examined

5      him and he said --

6              MR. LAMB:  You weren't satisfied with his

7      answer?

8              MS. RAJESWARI:  He didn't have a good

9      experience from it, Judge.

10             MR. KATCHEN:  I mean --

11             MR. LAMB:  I think he said that he walked

12     away pretty neutral.  That was my opinion.

13             THE COURT:  He did.  I mean again I am no

14     mind reader.  I can only go with what this man

15     said that experience would have no affect on his

16     ability to evaluate this case fairly and

17     impartially.

18             MS. RAJESWARI:  As he proceeded as he

19     left his last thing it left a bad -- you can have

20     it read back.

21             THE COURT: I don't think he said anything

22     objectively that could be qualified what would be

23     a cause challenge.

24             MR. KATCHEN:  Could I be heard?

25             THE COURT:  Briefly.

1              MR. KATCHEN:  A person was dismissed for

2        cause based upon a conversation we couldn't know

3        anything about outside.  This juror was a person I

4        cross-examined in a different trial.  I think --

5              THE COURT:  Apparently a minor witness

6        from what I understood.

7              MR. KATCHEN:  Of --

8              THE COURT:  Are you opposing?

9              MR. LAMB:  I am opposing.

10             THE COURT:  Challenge is denied.

11             You don't have a cause challenge?

12             MR. LAMB:  For Balaj.

13             THE COURT:  People peremptory?

14             MR. KATCHEN:  Yes.

15             THE COURT:  Next is Graziano.  Cause

16       People?

17             MR. KATCHEN:  No.

18             THE COURT:  Defense?

19             MR. LAMB:  This is Graziano.

20             THE COURT:  Right.

21             MR. LAMB:  No cause.

22             THE COURT:  Peremptory People?

23             MR. KATCHEN:  Yes.

24             THE COURT:  That's your fourteenth.  You

25       each have one left.

1           THE CLERK:   Graziano was a -- was a

2      peremptory People?

3                 THE COURT:   Perempt People.

4                 Next is Kielty.   Cause People?

5                 MR. KATCHEN:   Yes.

6                 MR. LAMB:   Consent.

7                 THE COURT:   For cause on consent.

8                 Next is Barros.   Cause People?

9                 MR. KATCHEN:   Yes.

10                MR. LAMB:   Consent.

11                THE COURT:   Cause on consent.

12                Next is Ms. Buonincontro. Cause People?

13                MR. KATCHEN:   No.

14                THE COURT:   Defense?

15                MR. LAMB:   No.

16                THE COURT:   Peremptory People?

17                MR. KATCHEN:   No.

18                THE COURT:   Defense?

19                MR. LAMB:   No.

20                THE COURT:   No.   So, Carmine,

21     Ms. Buonincontro becomes Juror 12.

22                THE CLERK:   Yes.

23                THE COURT:   She's Number 12.

24                THE CLERK:   That's Jennifer Buonincontro.

25                THE COURT:   Let's see if we can get some

```
 1              alternates.  So we're now into the alternate

 2              situation.  Each side has two peremptories per

 3              seat.

 4                        Ms. Burke, cause People?

 5                        MR. KATCHEN:  No.

 6                        THE COURT:  Defense?

 7                        MR. LAMB:  No.

 8                        THE COURT:  Peremptory People?

 9                        MR. KATCHEN:  No.

10                        THE COURT:  Defense?

11                        MR. LAMB:  No.  No challenge.

12                        THE COURT:  No perempt?

13                        MR. LAMB:  No.

14                        THE COURT:  Ms. Burke becomes

15              Alternate 1.

16                        THE CLERK:  Yes, Judge.

17                        THE COURT:  Next is Ms. Po.  Cause

18              People?

19                        MR. KATCHEN:  No.

20                        THE COURT:  Defense?

21                        MR. LAMB:  No.

22                        THE COURT:  Peremptory People?

23                        MR. KATCHEN:  No.

24                        THE COURT:  Defense?

25                        MR. LAMB:  Yes.
```

```
 1                    THE COURT:  That's a peremptory?

 2                    MR. LAMB:  Yes.

 3                    THE COURT:  Next is Mr. Driscoll.  Cause

 4          People?

 5                    MR. KATCHEN:  No.

 6                    THE COURT:  Defense?

 7                    MR. LAMB:  No.  Yes.  I am sorry I am

 8          looking at the wrong sheet.

 9                    MS. RAJESWARI:  I didn't hear you,

10          Mr. Lamb.

11                    MR. LAMB:  My client wants to challenge

12          him for cause.

13                    THE COURT:  Why?

14                    MR. LAMB:  I believe he continued to

15          vacillate as to his ability to state

16          unequivocally, great hesitation.

17                    THE COURT:  People?

18                    MR. KATCHEN:  We are opposing that,

19          Judge.  When he was asked to give an unequivocal

20          answer to the Court and even given the option of

21          continuing to say I am not sure, he gave an

22          unequivocal, yes, I could be fair.

23                    THE COURT:  I am going to grant the

24          challenge.

25                    Next is Ms. Apostol.  Cause People?
```

```
 1                      MR. KATCHEN:  No.

 2                      THE COURT:  Defense?

 3                      MR. LAMB:  No.

 4                      THE COURT:  Peremptory People?

 5                      MR. KATCHEN:  No.

 6                      THE COURT:  Defense?

 7                      MR. LAMB:  Yes.

 8                      THE COURT:  That's your second for the

 9           second seat.  Am I right, Carmine?

10                      THE CLERK:  Yes.

11                      THE COURT:  Next is Mr. Meaney.  Cause

12           People?

13                      MS. RAJESWARI:  Your Honor, Mr. Lamb in

14           this round Ms. Tuchowska, medical assistant,

15           Ms. Po and Ms. Apostol, he is knocking out every

16           single person who has a medical expertise based on

17           their profession.  And in the previous rounds --

18           in the previous round when there was a physician

19           yesterday, he had knocked her out for that also.

20                      I am making a Batson challenge at this

21           time.

22                      THE COURT:  You want to be heard?

23                      MR. LAMB:  I am not making a decision.

24                      THE DEFENDANT:  I want to tell you

25           something.
```

```
 1                  (Discussion held off the record.)
 2              MR. LAMB:  First of all, I don't see
 3         where they constitute a class.  Secondly, my
 4         challenge is not because of that.  I am not just
 5         satisfied with the answers that she gave to the
 6         DA.
 7              THE COURT:  Who are we talking about now?
 8              MR. LAMB:  Ms. Apostol.
 9              THE COURT:  I don't think that's a prima
10         facie showing.  Batson challenge is denied.
11              Mr. Meaney is next up.  Cause, People?
12              MR. KATCHEN:  Yes, Judge.  I believe he
13         said he had prior conviction and having the
14         assault.
15              THE COURT:  Misdemeanor assault.
16              MR. KATCHEN:   Attempted misdemeanor
17         assault.
18              THE COURT:  We are talking about B
19         misdemeanor.
20              MR. KATCHEN:  On an ex-girlfriend.
21              THE COURT:  You want to be heard?
22              MR. LAMB:  He didn't say that it would
23         have any affect on his ability to be fair.
24              THE COURT:  I am not a mind reader.  If
25         it was a felony it would be a felony conviction,
```

1           he would be disqualified.  But B misdemeanor

2           conviction given his answers doesn't disqualify

3           him.  I will deny the cause challenge.

4                     Do you have a cause challenge?

5                     MR. LAMB:  No.

6                     THE COURT:  Peremptory People?

7                     MR. KATCHEN:  Yes.

8                     THE COURT:  Next is Mr. Pope.  Cause

9           People?

10                    MR. KATCHEN:  No.

11                    THE COURT:  Defense?

12                    MR. LAMB:  No.

13                    THE COURT:  Peremptory People?

14                    MS. RAJESWARI:  Your Honor we are up to

15          Alternate Number 2 and we previously exercised one

16          challenge?

17                    THE COURT:  You have exercised one.  You

18          have one left for the second seat.

19                    MR. KATCHEN:  We'll exercise a

20          peremptory.

21                    THE COURT:  That's the People's second

22          peremptory for Seat Number 2.

23                    THE CLERK:  Yes.

24                    THE COURT:  Both sides have exercised two

25          peremptories for Seat Number 2.

1              Next is Mr. Romanello.  Cause People?

2              MR. KATCHEN:  No.

3              THE COURT:  Defense?

4              MR. LAMB:  No.

5              THE COURT:  And neither side has

6     peremptories left.  So Mr. Romanello -- right,

7     Carmine?

8              THE CLERK:  Yes.

9              THE COURT:  Mr. Romanello becomes

10    Alternate Number 2?

11             THE CLERK:  Yes.

12             THE COURT:  Next is Mr. Russell.  Cause

13    People?

14             MR. KATCHEN:  No.

15             THE COURT:  Defense?

16             MR. LAMB:  No.

17             THE COURT:  Peremptory People?

18             MR. KATCHEN:  No.

19             THE COURT:  Defense?

20             MR. LAMB:  Yes.

21             THE COURT:  Next is Ms. Melendez.  Cause

22    People?

23             MR. KATCHEN:  Yes.

24             MR. LAMB:  Consent.

25             THE COURT:  For cause on consent.

```
 1                    And, finally, we have Mr. McMillan. Cause
 2          People?
 3                    MR. KATCHEN:  No.
 4                    THE COURT:  Defense?
 5                    MR. LAMB:  No.
 6                    THE COURT:  Peremptory People?
 7                    MR. KATCHEN:  No.
 8                    THE COURT:  Defense?
 9                    MR. LAMB:  No.
10                    THE COURT:  No.  Okay he becomes
11          Alternate 3, Carmine?
12                    THE CLERK:  Yes.
13                    THE COURT:  We'll swear them in and tell
14          them to come back Monday.  I am going to make it
15          10:30.  I have the new Grand Jury to deal with
16          Monday but we should be ready to go by 10:30.
17                    (The following took place in open court:)
18                    THE CLERK:  The following jurors have
19          been selected for this case.  Jennifer
20          Buonincontro, you are Juror Number 12.  Megan
21          Burke, you are Alternate Juror Number 1.  Michael
22          Romanello, you are Alternate Juror Number 2.  And
23          William McMillan, you are Alternate Juror 3.
24                    If I called your name remain seated.  If
25          I did not you are excused from this case with the
```

EF

1           thanks of the court.  Return now to central jury

2           across the street for your next trial.  Thank you.

3                        THE COURT:  Thank you.

4                        (Prospective jurors not selected left the

5           courtroom.)

6                        THE COURT:  If I called your name remain

7           seated.

8                        THE CLERK:  Will those four jurors whose

9           name I called please stand?  Raise your right hand

10          to be sworn as trial jurors.

11                       Do you and each of you solemnly swear

12          that you will try this action in a just and

13          impartial manner and to the best of your judgment

14          render a verdict according to the law and the

15          evidence, so help you God.

16                       ALL JURORS:  Yes.

17                       THE COURT:  Thanks.  You can have a seat

18          for just a minute and I am going to let you go.

19          Thank you for agreeing to serve.

20                       Ms. Burke, Mr. Romanello and Mr. McMillan

21          you heard yourselves designated as alternate

22          jurors.  We wouldn't dare try a case without

23          alternates.  People get sick, emergencies come up

24          and that happens all the time.  If and when it

25          does you would be moved into another seat.  So I

1          that this to you so you won't feel you're the

2          fifth wheels, along for the ride.  You are an

3          integral part of the case.  We are grateful to you

4          for agreeing to serve.

5                    We are going to adjourn now until Monday

6          morning and I am going ask you to be in the jury

7          room Monday morning at 10:30 in the morning.  The

8          officer will show you where the jury room is on

9          your way out.  It's right across the hall.

10                   And let me just instruct you as I must

11         before you leave the building.  You must not

12         discuss this case among yourselves or with anyone

13         else.  Until you begin deliberations at the end of

14         the trial you simply must not talk about the case.

15                   Prior to being discharged you may not

16         speak with anyone about taking anything, any

17         payment or benefit in return for supplying

18         information concerning this trial.

19                   You must report directly to me any

20         incident within your knowledge involving an

21         attempt by anyone to improperly influence you or

22         any member of the jury.

23                   Don't visit or view the premises or place

24         where any charged crime was alledgedly committed

25         or any other premises or place involved in the

EF

 1            case.  I don't believe you've heard any particular
 2            location yet.  I expect you will.
 3                      Don't read, view or listen to any media
 4            account of this case should there be any.  That
 5            includes the Internet.  Don't try to research any
 6            fact, issue or law related to this case on your
 7            own, whether by research in the library or the
 8            Internet or by any other means.
 9                      And, finally, don't form any opinion,
10            please keep an open mind until you begin
11            deliberations at the end of the case.  Thank you
12            all very much.  It was a long day.  We appreciate
13            your patience.  Have a good weekend and we'll see
14            you on Monday at 10:30.  The officer will show you
15            the jury room.
16                      (Four sworn jurors left the courtroom.)
17                      THE COURT:  Sworn jurors have left.
18            Monday 10:30.
19                      THE CLERK:  Court's in recess.
20                      MS. RAJESWARI:  Your Honor, can I
21            approach for a second?
22                      (Discussion held off the record at the
23            bench.)
24                      THE COURT:  Mr. Rucano, I want to
25            instruct you be very careful about discussing the

1     case out on the sidewalk or in the hallways of the

2     courthouse when the jurors might be around.   That

3     would be obviously improper.

4               The lawyers have the same instruction, be

5     very careful what you say to anyone outside of the

6     courtroom.   It's very important that you don't say

7     anything about the case to anyone in front of

8     these jurors.

9               THE DEFENDANT:   Yes.   I do not discuss it

10    with anyone.

11              THE COURT:   Okay.   Monday morning.

12              THE CLERK:   Step out.

13              (Court stands in recess until Monday,

14    September 13th, 2010 at 10:30 a.m.)

15                    *    *    *    *

16              It is hereby certified that the
                foregoing is a true and accurate
17              transcript of the proceedings.

18              _Elaine Forlenza_

19              ELAINE FORLENZA, RPR
                OFFICIAL COURT REPORTER

20

21

22

23

24

25

EF