UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X

ANTHONY RUCANO,

        *Petitioner*,

   -*against*-

J. LaMANNA, SUPERINTENDENT OF GREEN
HAVEN CORRECTIONAL FACILITY,

        *Respondent*.

----------------------------------X

**MEMORANDUM & ORDER**

18-CV-4586

**KIYO A. MATSUMOTO, United States District Judge:**

On August 10, 2018, *pro se* petitioner Anthony Rucano ("petitioner"), currently incarcerated at Green Haven Correctional Facility, filed a petition for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254. (ECF No. 1, Petition for Writ of Habeas Corpus ("Pet.").) On June 28, 2019, petitioner filed a Motion for Discovery pursuant to Rules 6(a) and 7(a) of the Rules governing Section 2254 cases. (ECF No. 49, Motion for Discovery ("Pet. Mot.").) On December 30, 2019, petitioner filed a motion to Appoint Counsel pursuant to 18 U.S.C. § 3006(A) and 28 U.S.C. § 1915(e)(1). (ECF No. 53, Motion to Appoint Counsel, ("Pet. App.").) For the following reasons, both motions are denied.

## BACKGROUND

On September 21, 2010, petitioner was convicted of rape, assault, criminal sexual acts, and criminal possession of

1

a weapon. (ECF No. 19, Appellee's Brief ("Aff. in Opp.") ¶ 2.) Petitioner was in an abusive relationship with Katherine Ramos ("Ramos"). Ramos claimed multiple instances of rape and assault over several months in 2009. (*Id.* ¶¶ 6-21.) Petitioner admits it was a violent relationship, but denies the rape and accuses Ramos of being the chief abuser. (*Id.* ¶¶ 25-35.) The two attended couples therapy together with a social worker named Anna Lorusso-Moramarco ("Moramarco"). (*Id.* ¶ 11; Pet. 53.) On September 29, 2009, Ramos went to the police and reported the abuse. (Aff. in Opp. ¶ 21.) The police brought Ramos to a hospital, and an exam revealed bruises, scratches, bite marks, and lesions. (*Id.*) Rucano was arrested that evening. (*Id.* ¶ 35.) Petitioner was convicted after a thirteen-day jury trial of Rape in the First Degree, Criminal Sexual Act in the First Degree, Attempted Rape in the First Degree, Assault in the Second Degree, Assault in the Third Degree, and two counts of Criminal Possession of a Weapon in the Third Degree. (*Id.* ¶¶ 2, 5.) Moramarco did not testify at trial, but her session notes were admitted into evidence after petitioner and Ramos waived confidentiality. (ECF No. 9-18, State Ct. Rec. 119-20.)[1]

---

[1]   Citations to the State Court Record track the ECF pagination.

2

## PROCEDURAL HISTORY

Rucano appealed his conviction in June 2013, and the appellate division affirmed the judgment. *People v. Rucano*, 130 A.D.3d 656 (N.Y. App. Div. 2d Dep't 2015). The Court of Appeals denied leave to appeal on April 4, 2016. *People v. Rucano*, 27 N.Y.3d 1005 (N.Y. 2016). On July 15, 2014, petitioner filed a motion pursuant to New York Criminal Procedure Law section 440, which was denied. (Aff. in Opp. ¶ 37.) Petitioner sought leave to appeal, but was denied. (*Id.*) Petitioner sought a writ from the Supreme Court, which was denied on October 19, 2015. *Rucano v. New York*, 136 S. Ct. 366 (2015).

On August 10, 2018, petitioner filed this petition for *habeas* relief. (*See generally* Pet.) The petition, which is in excess of 120 mostly handwritten pages (not including appendices), asserts claims for ineffective assistance of counsel, due process violations, and prosecutorial misconduct based on assertions that: prosecutors used non-verbal cues and leading questions to bias the grand jury; petitioner was not served notice of his right to testify at the grand jury; petitioner's rights were violated when the trial court denied his request to enlist a forensic document expert; *Brady* violations; prejudice due to his attorney's absence at *voir dire* as well as the discharge of an unsworn alternate juror; a violation of evidentiary rules because Ramos used a diary at

3

trial to refresh her recollection; petitioner's neighbor's testimony should have been excluded as prejudicial; and that the appellate court's denial of petitioner's motion to file a *pro se* brief was improper. (*See generally* Pet.; Aff. in Opp. 21-29.)

**DISCUSSION**

I.  **Motion for Discovery**

On June 28, 2019, petitioner filed a Motion for Discovery pursuant to Rule 6(a) and 7(a) of the Rules governing Section 2254 cases. (Pet. Mot. 1.) Rule 6(a) allows the court to expand the record and order discovery on a discretionary basis so long as the petitioner shows good cause. 28 U.S.C. foll. § 2254, Rule 6(a). Rule 7(a) allows the court to "direct the parties to expand the record by submitting additional materials relating to the petition." 28 U.S.C. foll. § 2254, Rule 7(a). "[A] habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." *Bracy v. Gramley,* 520 U.S. 899, 904 (1997); *see also Drake v. Portuondo,* 321 F.3d 338, 346 (2d Cir. 2003). Petitioner must show that if the factual record is developed, petitioner may be entitled to relief. *Bracy*, 520 U.S. at 908-909. The petitioner bears a heavy burden in establishing a right to discovery. *Rennis v. Thomas*, 2003 WL 22358799, at *2 (S.D.N.Y. 2003).

Petitioner seeks copies of healthcare "billing and subscription records from AETNA," petitioner's healthcare provider, related to his couples therapy sessions with Ramos. (Pet. Mot. ¶ 7.) Petitioner claims these records are fraudulent. (Pet. Mot. ¶¶ 6-8.) For example, petitioner claims that Moramarco's session notes for the therapy sessions falsely listed "Duane Ramos" as the patient, yet AETNA Insurance records show that Ramos was not a covered member on petitioner's insurance plan. (*Id.* ¶ 8; *see also id.* ¶ 10.) Petitioner next avers that Moramarco perjured herself in a later civil suit initiated by petitioner when Moramarco claimed petitioner was never a patient of hers. (*Id.* ¶ 9.) Petitioner's argument seems to rest on the idea that it was petitioner, and not Ramos, that initiated the therapy sessions, and had the grand jury known this, lesser charges would have been brought. (State Ct. Rec. 113-14.) Petitioner surmises that because the sessions were incorrectly billed to his insurance, session notes from the therapy sessions must have been falsified, and also warrant criminal charges against Moramarco. (*Id.* 38.) Petitioner believes that the failure of prosecutors to heed his post-trial complaints about Moramarco were tantamount to prosecutorial misconduct. (Pet. Mot. ¶¶ 11-12.)

Petitioner's motion for discovery is denied. Even accepting his allegations as true, whether or not Duane or

Katherine Ramos initiated the couples therapy sessions with Moramarco was not a material issue underlying defendant's conviction. Petitioner fails to support the contention that a grand jury would have indicted on a lesser charge had they known petitioner initiated the sessions because petitioner was charged with violent crimes occurring outside of the context of therapy. The court finds it implausible that petitioner's initiation of therapy sessions would have mitigated his conduct, much less served as exculpatory evidence, in the eyes of the grand jurors. Discovery of insurance billing information related to these notes, even if the underlying billing information was false, would not bear on the merits or outcome of the petition, and petitioner has not shown any reason why this information would affect the constitutionality of his indictment, trial, or conviction. Petitioner also fails to explain how the purported inconsistencies in Moramarco's record keeping had any bearing on the outcome of his trial. Further, even if Moramarco had offered perjurious testimony in a separate civil action, years after petitioner's conviction, petitioner has not shown how that testimony would be relevant to petitioner's conviction.

Accordingly, the court finds that even if the factual record on these issues was developed, it would not affect petitioner's prospects of entitlement to relief because the underlying issues were not relevant to his conviction.

**II. Motion to Appoint Counsel**

On December 30, 2019, petitioner filed a motion to Appoint Counsel pursuant to 18 U.S.C. § 3006(A) and 28 U.S.C. § 1915(e)(1). (Pet. App. 1.) Petitioner requests that counsel be appointed on the grounds that: (1) the petition is factually complex; (2) petitioner is unable to investigate the facts; (3) there is conflicting testimony; (4) petitioner is indigent and has limited access to a law library; (5) the petition is legally complex; and (6) petitioner's claims are meritorious. (*See generally* Pet. App.)

"[A] habeas petitioner has no constitutional right to counsel in his habeas proceeding[.]" *Harris v. United States*, 367 F.3d 74, 77 (2d Cir. 2004) (citing *Coleman v. Thompson,* 501 U.S. 722, 752–53 (1991)). Nonetheless, the court has discretion to appoint counsel in the interest of justice. *Roberts v. U.S.*, 13-CV-653 (DLI), 2013 WL 12424695 (E.D.N.Y. June 28, 2013). In deciding whether to appoint counsel, the court first examines whether petitioner's claims are "likely to be of substance." *Hodge v. Police Officers*, 802 F.2d 58, 61 (2d Cir. 1986). If the claims meet this threshold requirement, "the court should then consider the indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the

7

complexity of the legal issues and any special reason in that case why appointment of counsel would be more likely to lead to a just determination." *Id.*; *accord Goad v. Bell*, No. 919CV0965MADDJS, 2020 WL 219190, at *4 (N.D.N.Y. Jan. 15, 2020) (applying *Hodge* factors to § 2254 habeas petition); *Watson v. New York*, No. 19-CV-0707 (CM), 2019 WL 6117711, at *3 (S.D.N.Y. Nov. 15, 2019), *reconsideration denied*, No. 19-CV-0707 (CM), 2020 WL 353944 (S.D.N.Y. Jan. 17, 2020) (same).

Petitioner's request for counsel boils down to his contention that New York's statutory and procedural law is convoluted and results in a system that prevents the vindication of federal constitutional rights for indigent defendants. (Pet. App. 2.) Petitioner offers no legal or factual support for this broad, baseless assertion.[2] Petitioner has also failed to articulate any prosecutorial conduct contrary to clearly established federal law that would vindicate the claim that his

---

[2] Petitioner avers that "[s]everal courts have cited" the deficiencies in New York's statutory and procedural scheme as a basis for appointing counsel, but the authorities he cites in support of his position do not remotely support his contention. Petitioner cites to "*Ticker v. Randall*, 948 F.2d 288, 291-92 (7th Cir. 1991)," but that reporter citation corresponds to a different case, *Boyd v. Ford MotorCo.*, which was a Sixth Circuit decision concerning the Jones Act that did not involve the appointment of counsel. The court was unable to identify a case captioned *Ticker v. Randall* in the Seventh Circuit. Petitioner also cites to *Gatson v. Coughlin*, 679 F. Supp. 270, 271 (W.D.N.Y. 1988). The court in *Gatson* appointed counsel for defendant, an indigent prisoner challenging his transfer to another prison and termination of prison employment pursuant 42 U.S.C. § 1983. *Gatson* did not concern a *habeas* petition and, moreover, the court did not speak at all to the adequacy of New York's criminal statutes and procedures, as petitioner suggests.

8

due process rights were violated. The court finds that petitioner's claims are not likely to be of substance.

Even assuming petitioner's claims *are* of substance, and meet threshold requirements, the facts of this case still do not support appointment of counsel. *Goad*, 2020 WL 219190, at *4 (denying petitioner's motion to appoint counsel because, even assuming petitioner's claims had substance, "petitioner has still not identified any 'special reason' why appointing counsel to assist him is warranted."). Petitioner fails to identify what facts he is unable to investigate in the absence of counsel. Petitioner also does not raise conflicting evidence that would require extensive cross examination. *See Hodges*, 802 F.2d at 61.

At bottom, petitioner has not articulated what functional purpose appointing counsel would serve at this time. The petition is fully briefed and there are no hearings scheduled in this matter. *See Goad*, 2020 WL 219190, at * 5 (denying motion to appoint counsel where *habeas* petition was fully briefed). In addition, the court denied petitioner's motion to develop the record, meaning there are no pending discovery issues requiring the assistance of counsel. Because petitioner has not demonstrated any circumstances suggesting the appointment of counsel would likely lead to a more just determination in this matter, the motion to appoint counsel is

9

denied without prejudice.  Petitioner may reapply for appointment of counsel at a later date if the court determines a hearing is necessary, or if other circumstances warrant the appointment of counsel.

## **CONCLUSION**

For the reasons stated above, petitioner's motions for discovery and appointment of counsel are denied.  Petitioner has not shown good cause to expand the record because the discovery sought is irrelevant to the issues underlying petitioner's indictment, trial, and conviction.  Nor has petitioner shown that appointing counsel on his behalf would serve the interest of justice, as petitioner is fully capable of researching and presenting his claims.  Petitioner may reapply for appointment of counsel at a later date if circumstances so warrant.

The Clerk of Court is respectfully directed to send a copy of this Memorandum and Order to the petitioner at his last known address and note service on the docket.

**SO ORDERED.**

Dated:     February 28, 2020
           Brooklyn, New York

                                        _____/s/_____
                                        Hon. Kiyo A. Matsumoto
                                        United States District Judge