UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------X

ANTHONY RUCANO,

                *Petitioner*,                  **MEMORANDUM & ORDER**

                                                18-CV-4586 (KAM)

    -against-

J. LaMANNA, SUPERINTENDENT OF GREEN
HAVEN CORRECTIONAL FACILITY,

                *Respondent.*

--------------------------------------X

**MATSUMOTO, United States District Judge:**

        On August 10, 2018, Petitioner Anthony Rucano ("Petitioner"), proceeding *pro se*, brought the above-captioned petition for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254 ("Section 2254") challenging the constitutionality of his 2010 state court conviction of rape, assault, criminal sexual acts, and criminal possession of a weapon. (ECF No. 1, Petition for Writ of *Habeas Corpus* ("Pet.").) In January 2011, Rucano was sentenced to concurrent terms of imprisonment, the longest of which was twelve years. (ECF No. 09-12, Sentencing Transcript, 11-18.) On December 31, 2018, petitioner mailed an amended memorandum to support his Section 2254 petition. (ECF No. 33, Amended and Supplemental Memorandum of Law in Support of Petition for Writ of *Habeas Corpus* ("Am. Pet.").) Both the

original petition and supplemental memorandum essentially assert that petitioner was deprived of a fair trial in violation of his Sixth and Fourteenth Amendment rights because of prosecutorial misconduct, various erroneous evidentiary rulings at trial, and effective assistance of trial and appellate counsel.  (*See generally* Pet.; Am. Pet.)  For the reasons discussed below, the petition is denied in its entirety.

**BACKGROUND**

I.   **Factual Background**

Petitioner met the victim, Duane Katherine Ramos, on an Internet dating site in March 2009.  (ECF No. 43, Amended Opposition ("Am. Opp.") ¶ 7; *See generally* ECF No. 9-6, State Court Trial Transcript ("Trial Tr.")[1] at 142.)  The petitioner and the victim were engaged soon after in May 2009.  (Trial Tr. at 144.)  Ramos claimed multiple instances of rape and assault over several months in 2009.  (*See generally* ECF No. 9-6, Trial Tr.)  Petitioner did not deny the abusive and violent nature of the relationship, but claimed instead that Ramos was the emotional and physical abuser and denied that he raped Ramos. (Am. Opp. ¶¶ 26-36.)  The two went to a couple's counseling session together with a social worker named Anna Lorusso-

---

[1] The State Court Trial Transcript is filed across multiple docket entries, from ECF No. 09-6 to ECF No. 09-10, with a continuous pagination of 705 pages.  For simplicity and clarity purposes, citation to the transcript will be the actual page number of the transcript, instead of the discrete ECF pagination across different filings.

Moramarco.  (Am. Opp. ¶ 34; ECF No. 9-8, Trial Tr. 408.)  On
September 29, 2009, Ramos reported Petitioner's abusive
relationship to the police.  (ECF No. 9-7, Trial Tr. 199-203.)
The police took Ramos to the hospital for gynecological and
general physical examinations.  (ECF No. 9-7, Trial Tr. 200-
203.)  Examinations revealed bruises, scratches, bite marks and
lesions, Petitioner's semen on swabs of Ramos's vagina, panty
liner and underwear, but no injury was found in Ramos's genital
area.  (ECF No. 9-6, Trial Tr. 50-53.)  Petitioner was arrested
at his home at 5 p.m.  (ECF No. 9-8, Trial Tr. 410-11.)

## II.   Trial, Verdict, and Sentence

On September 21, 2010, petitioner was convicted after
a thirteen-day jury trial, by the Supreme Court of New York,
Richmond County, of Rape in the First Degree, Criminal Sexual
Act in the First Degree, Attempted Rape in the First Degree,
Assault in the Second Degree, Assault in the Third Degree, and
two counts of Criminal Possession of a Weapon in the Third
Degree.  (ECF No. 9-10, Trial Tr. 696-701.)

Petitioner was sentenced on January 21, 2011 to
concurrent terms of: (1) twelve years' imprisonment each for
first-degree rape and first-degree criminal sexual act, with
each sentence to be followed by five years of post-release
supervision; (2) eight years' imprisonment for attempted first-
degree rape, to be followed by five years of post-release

supervision; (3) five years' imprisonment for second-degree assault, to be followed by three years of post-release supervision; (4) one to three years' imprisonment for third-degree criminal possession of a weapon; and (5) one year's imprisonment for third-degree assault.  (ECF No. 09-12, Sentencing Transcript, 16-18.)

## III.  **Direct Appeal**

In June 2013, through his appellate counsel, petitioner appealed his judgment of conviction to the New York Supreme Court, Appellate Division, Second Department (the "Appellate Division"), alleging that the People "failed to prove appellant's guilt beyond a reasonable doubt" and that the appellant was denied due process and effective assistance of trial counsel.  (ECF No. 9-13, Brief for Defendant-Appellant, June 2013.)  On July 1, 2015, the Appellate Division affirmed the judgment and ruled that defendant's challenge to the legal sufficiency of the evidence and his contention that he was deprived of a fair trial because of the prosecutor's summation remarks were unpreserved for appellate review.  (ECF No. 9-36, *People v. Rucano*, 130 A.D.3d 656 (2d Dept. 2015) (citing CPL 470.05[2]) at 22-23.)  The Appellate Division also determined that there was "no merit to the defendant's contention that he was deprived of the constitutional right to effective assistance of counsel."  *Id.*  On April 4, 2016, the New York Court of

Appeals denied petitioner leave to appeal.  (See ECF No. 9-47,
*People v. Rucano*, 27 N.Y.3d 1005 (2016).)

## IV.   440.10 Motion

On July 15, 2014, petitioner filed a *pro se* motion to
vacate his conviction and sentence pursuant to C.P.L § 440.10
arguing that there was prosecutorial misconduct and alleged
ineffective assistance of counsel.  (ECF No. 9-18.)  Petitioner
also requested assignment of qualified counsel to assist him in
adjudicating his 440.10 motion.  (*Id.* at 1-2.)  On December 15,
2014, the Honorable Stephen Rooney of the Supreme Court of the
State of New York, Richmond County, ruled that because
defendant's direct appeal was pending before the Appellate
Division, the motion to vacate the judgment was denied.  (ECF
No. 9-27, Decision and Order.)  Defendant's motion for the
assignment of counsel was also denied as defendant could not
claim a state or federal constitutional right to effective
assistance of counsel pursuant to C.P.L § 440.10.  (*Id.*)  On
April 30, 2015, the Appellate Division denied petitioner's
motion for leave to appeal.  (ECF No. 9-32, Decision and Order.)
Petitioner then sought a writ from the Supreme Court of the
United States, which was denied on October 19, 2015.  (ECF No.
9-44, *Rucano v. New York*, 136 S. Ct. 366 (2015).)

## V.   Writ of Error *Coram Nobis*

On September 1, 2016, petitioner filed a *pro se*

application for a writ of error *coram nobis*, alleging
ineffective assistance of counsel with respect to his June 2013
direct appeal.  (ECF No. 9-48, Notice of Motion for Writ of
Error *Coram Nobis*.)  On April 12, 2017, the Appellate Division
denied the application because the petitioner had failed to
establish that he was denied effective assistance of counsel.
(ECF No. 9-55, *People v. Rucano*, 149 A.D.3d 876 (2d Dept.
2017).)  On October 19, 2017, the Court of Appeals denied leave.
(ECF No. 9-60, *People v. Rucano*, 30 N.Y.3d 983 (2017).)
Petitioner then sought a writ of certiorari from the Supreme
Court of the United States, which was denied on April 16, 2018.
(ECF No. 9-63, *Rucano v. New York*, 138 S. Ct. 1563 (2018).)

**VI.   The Instant *Habeas* Petition**

On August 10, 2018, petitioner filed the petition for
*habeas* relief, alleging ineffective assistance of counsel, due
process violations, and prosecutorial misconduct, based on,
*inter alia*, assertions of prosecutor's use of non-verbal cues
and leading questions, trial court's denial of expert witness,
*Brady* violations, and court's misapplication of evidentiary
rule.  (*See generally* Pet.)

On December 31, 2018, petitioner filed an amended
memorandum in support of his *habeas* petition, renewing claims of
ineffective trial and appellate assistance and prosecutorial
misconduct, which were raised in his previous *pro se*

submissions, including his July 2014 and September 2016 motions. (*See generally* Am. Pet.; Am. Opp. 20-33.)   On April 15, 2019, Respondent filed a supplemental memorandum of law in opposition to the amended petition.   (Am. Opp.)

## LEGAL STANDARD

Under 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), an application for a writ of *habeas corpus* by a person in custody pursuant to a state court judgment may only be brought on the grounds that his or her custody is "in violation of the Constitution or laws or treaties of the United States."   28 U.S.C. § 2254(a).   A *habeas* petitioner is required to show that the state court decision, having been adjudicated on the merits, is either "contrary to, or involved an unreasonable application of, clearly established Federal law" or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."   28 U.S.C. § 2254(d); *see also Johnson v. Williams*, 568 U.S. 289 (2013).

For the purposes of federal *habeas* review, "clearly established law" is defined as "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision."   *Williams v. Taylor*, 529 U.S. 362, 412 (2000). A state court decision is "contrary to," or an "unreasonable application of," clearly established law if the

decision: (1) is contrary to Supreme Court precedent on a question of law; (2) arrives at a conclusion different than that reached by the Supreme Court on "materially indistinguishable" facts; or (3) identifies the correct governing legal rule but unreasonably applies it to the facts of the petitioner's case. *Id.* at 412-13.  Factual determinations made by the state court are presumed to be correct, and the petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

State procedural default or failure to exhaust state court remedies will operate as a bar to review unless the petitioner can (1) establish cause for his default and actual prejudice resulting from the alleged violation of federal law, or (2) demonstrate that the failure to consider the petitioner's claims would result in a fundamental miscarriage of justice. *See Gutierrez v. Smith*, 702 F.3d 103, 111 (2d Cir. 2012); *Carvajal v. Artus*, 633 F.3d 95, 104 (2d Cir. 2011).

A petitioner may fulfill the cause for default requirement in two related ways.  First, the petitioner can demonstrate that "some objective factor, external to Petitioner's defense, interfered with his ability to comply with the state's procedural rule."  *Gutierrez*, 702 F.3d at 111 (citing *McClesky v. Zant*, 499 U.S. 467, 493 (1991)). Alternatively, the petitioner can establish cause by

demonstrating futility — specifically, that "prior state case law has consistently rejected a particular constitutional claim." *Id.* (citing *DiSimone v. Phillips*, 461 F.3d 181, 191 (2d Cir. 2006)).  To establish prejudice, the petitioner must demonstrate that the alleged error resulted in "actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Torres v. Senkowski*, 316 F.3d 147, 152 (2d Cir. 2003) (internal quotation marks and citation omitted).

Even if the petitioner is unable to establish cause and prejudice, the court may excuse the procedural default if petitioner can show that a fundamental miscarriage of justice would result, *i.e.*, "that he is actually innocent of the crime for which he has been convicted." *Dunham v. Travis*, 313 F.3d 724, 730 (2d Cir. 2002) (citations omitted). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Id.* (quoting *Bousley v. United States*, 523 U.S. 614, 623 (1998)) (alteration in original, internal quotation marks omitted).

In reviewing the instant petition, the court is mindful that "[a] document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus,* 551 U.S. 89, 94 (2007)

(internal quotation marks and citations omitted); *Williams v. Kullman,* 722 F.2d 1048, 1050 (2d Cir. 1983) (noting that courts should review *pro se habeas* petitions with a lenient eye). Consequently, the court is obliged to interpret petitioner's pleadings as raising the strongest arguments they suggest. *Harris v. Mills,* 572 F.3d 66, 72 (2d Cir. 2009); *Martin v. United States,* 834 F. Supp. 2d 115, 119 (E.D.N.Y. 2011) (citing *Williams,* 722 F.2d at 1050).

## DISCUSSION

On August 10, 2018, *pro se* petitioner Rucano currently incarcerated at Green Haven Correctional Facility, filed a petition for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254.  (Pet.)  Petitioner amended his petition on December 31, 2018, possibly responding to the prosecution's comments in its Opposition Brief that the petition "does not conform to conventional styles of argumentation," that his "discrete claims of error are not clearly delineated by his petition."  (Opp. 20-21.)  However, the court agrees with Respondent's observation that even the new petition has intertwined arguments which are not neatly organized, and portions of the petition appear to be addressed to other courts and reproduced from previous filings. Construing the petition liberally, petitioner raises two main claims – the state trial court's denial of his due process rights and a fair trial, and ineffective assistance from trial

and appellate counsels.  (*See generally* Am. Pet.)  As discussed below, because the court finds petitioner's myriad of arguments within the two main claims (the due process violation and ineffective assistance of counsel) to be procedurally barred and without merit, the court denies the petition in its entirety.

## I.   Petitioner Was Not Denied Due Process or a Fair Trial.

Petitioner first claims that his state court trial and conviction were riddled with prosecutorial misconduct and incorrect evidentiary rulings, which deprived him of due process and a fair trial.  (Am. Pet. 77-113.)  Specifically, petitioner asserts ten grounds of errors and improprieties, independent of his ineffective assistance of counsel claims.  Many of these claims are procedurally barred because they were rejected by the state trial court on "a state law ground that is independent of the federal question and adequate to support" petitioner's conviction and sentence.  *Beard v. Kindler*, 558 U.S. 53 (2009) (*quoting Coleman*, 501 U.S. at 729).

It is well-settled that a § 440.10 motion "cannot be used as a vehicle for an additional appeal or as a substitute for a direct appeal."  *Woods v. Heath*, No. 12-CV-02175 NGG, 2013 WL 6092804, at *9 (E.D.N.Y. Nov. 19, 2013) (quoting *People v. Donovan*, 107 A.D.3d 433 (N.Y. App. Div. 2d Dep't 1985)).  Here, the petitioner asserts the same claims that were raised and rejected in his § 440.10 motion.  As the trial court properly

noted in denying the C.P.L § 440 motion, petitioner's arguments "are either conclusory allegations that are not supported by any documentary evidence or affidavit, or they are based upon matters that are within the record." (ECF No. 9-27 at 1.)  The Honorable Stephen Rooney ruled that the "defendant is not entitled to the relief he seeks based upon conclusory allegations." (*Id*.)  The trial court also denied the § 440 motion because "the court must deny a motion when the judgment is, at the time of the motion appealable or pending on appeal, and sufficient facts appear on the record with respect to the ground or issue raised upon the motion to permit adequate review thereof upon such an appeal." (*Id*. at 1-2.)  The claims had been pending on direct appeal when the trial court ruled on the 440 motion.

Petitioner has failed to demonstrate cause and prejudice to warrant review of his procedurally barred claims. As to cause, nothing in the petition or record suggests the presence of an objective factor that interfered with petitioner's ability to properly raise his claims on direct appeal, *see Gutierrez*, 702 F.3d at 111, and petitioner does not establish futility, much less contend that New York case law had "consistently rejected" his constitutional claims. *See DiSimone*, 461 F.3d at 191.  Nor has petitioner shown that his lapse was attributable to errors by his appellate counsel. *See*

*Bossett v. Walker*, 41 F.3d 825, 829 (2d Cir. 1994). "A *habeas* petitioner may bypass the independent and adequate state ground bar by demonstrating a constitutional violation that resulted in a fundamental miscarriage of justice, i.e., that he is actually innocent of the crime for which he has been convicted." *Dunham*, 313 F.3d at 730 (citing *Schlup v. Delo*, 513 U.S. 298, 321 (1995)). In order to meet the "actual innocence" requirement, the petitioner must "support his allegations of constitutional error with new reliable evidence." *Blount v. Napoli*, No. 09-CV-4526 KAM, 2012 WL 4755364, at *14 (E.D.N.Y. Oct. 5, 2012) (quoting *Schlup*, 513 U.S. 298 at 327)). The court detects no additional evidence in the petition that was not before the trial judge when the jury found petitioner guilty of the charges, or before the Appellate Term when it affirmed petitioner's conviction.

Petitioner has failed to demonstrate cause and prejudice to warrant review of his procedurally barred claims. Accordingly, petitioner's claim that he was denied his due process rights and a fair trial is denied because the claims are procedurally barred. For the avoidance of doubt, however, the court also considers, *infra*, the merits of petitioner's claims.

1. **Prosecution's Use of Non-Verbal Cues**

Petitioner alleges that during the grand jury questioning of the complainant, the prosecutor employed

pervasive non-verbal cues to instruct the complainant to read
from her diary, effectively circumventing recording in the
transcript and concealing the existence of the diary from the
jury.  (Am. Pet. 84-85.)  That the prosecutor "continuously
pursued a course of conduct designed to conceal [the Ramos
diary's] existence" is mere subjective conjecture and *habeas*
relief cannot be granted on such speculation.  (*See* Am. Pet.
85;) *Wood v. Bartholomew*, 516 U.S. 1, 8 (1995) (federal courts
should not grant "*habeas* relief on the basis of little more than
speculation with slight support"); *Osinoiki v. Riley*, 1990 WL
152540, at *2-3 (E.D.N.Y. Sept. 28, 1990) (conclusory statements
based on speculation "are inadequate to satisfy petitioner's
burden") (*citing Machibroda v. United States*, 368 U.S. 487, 495
(1962)); *see also Toland v. Walsh*, No. 04-CV0773 (GLS), 2008 WL
65583, at *14-15 (N.D.N.Y. Jan. 4, 2008) (denying *habeas* relief
where possibility that missing witness would give favorable
testimony was "based upon nothing other than mere conjecture"
and stating that "federal *habeas* relief cannot be granted upon
claims that are rooted in speculation").  Accordingly,
petitioner's claim as to the speculated use of non-verbal cues
does not provide a basis for *habeas* relief.

## 2. **Prosecution's Use of Leading Questions**

Petitioner alleged that "the grand jury record is
replete with Assistant District Attorney Katchen asking leading

questions and statements designed to guide the complainant's testimony . . ., [going] as far as testifying for the complainant to meet the statutory requirements of [various indictment charges]."  (Am. Pet. 16-17.)  Petitioner even compared the complainant's grant jury testimony to the trial charge conference where some of his felony charges were dropped, averring that it was "because of the fact that, unlike at the grand jury, at trial the complainant did not . . . have the help of Katchen to provide leading questions and statements designed to meet statutory requirements of the charges he was looking to invent."  (Am. Pet. 18.)

        Although it is the job of the prosecutor to elicit testimony from witnesses in front of a grand jury, it has been well-established that "leading questions tend to mute one of the chief functions of the grand jury, the evaluation of the strength of the evidence and the credibility of witnesses." *United States v. Brito*, 907 F.2d 392, 395 (2d Cir. 1990). Reversal is "virtually automatic" if it is established that the government knowingly permitted the introduction of false testimony.  *United States v. Wallach*, 935 F.2d 445, 456 (2d Cir.1991).  Petitioner, however, mischaracterizes the nature of the questions asked by the prosecutor.  Petitioner assumes that prosecutor's question, "by 'oral sex,' you mean his penis was in your mouth?", is evidence of the prosecutor testifying on behalf

of the complainant to satisfy the statutory requirement of criminal sexual charges. (Am. Pet. 17.) The court disagrees. This question is nothing more than the prosecutor's attempt to clarify the meaning of the word "oral sex," and therefore cannot be construed as leading. Petitioner also claimed that the prosecutor's question, "did he pull your legs apart?", was used to establish "forcible compulsion." (*Id.*) But when reviewed in context, this question was a natural follow-up to the witness's preceding testimony - "[h]e forced himself on top of me . . . [h]e took his penis and put it in my vagina." (*Id.*)

Moreover, in any event, claims of deficiencies in state grand jury proceedings are not cognizable in a *habeas corpus* proceeding. *United States v. Mechanik*, 475 U.S. 66, 106 S.Ct. 938, 89 L.Ed.2d 50 (1986)(held that claims of deficiencies in a state grand jury proceeding cannot support a collateral attack under 28 U.S.C. § 2254); *Lopez v. Riley*, 865 F.2d 30, 32 (2d Cir. 1989); *Davis v. Nassau*, 524 F. Supp. 2d 182, 192 (E.D.N.Y. Nov. 29, 2007) ("[A]lleged defects in a grand jury proceeding cannot provide grounds for *habeas* relief."). Thus, petitioner's claim as to the alleged use of leading questions during the grand jury proceeding does not provide a basis for *habeas* relief, and is denied.

3. **Reasonably Calculated Notice of Petitioner's Right to Testify Before Grand Jury**

Petitioner argues that he was served with notice under C.P.L. § 190.50 only after the grand jury was convened and his right to be provided with reasonably calculated notice so that he could testify at the grand jury was denied.  (Am. Pet. 94.)

First, petitioner's right to appear before the grand jury is not cognizable on federal *habeas* review because the right is not a matter of federal constitutional law.  28 U.S.C. § 2254(a) (permitting federal *habeas corpus* review only where the petitioner has alleged that he is in state custody in violation of "the Constitution or a federal law or treaty"); *Estelle v. McGuire*, 502 U.S. 62, 68 (1991) ("In conducting *habeas* review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.").  Instead, the right to appear in front of a grand jury is a statutorily created right in the state of New York.  N.Y. Crim. Proc. Law § 190.50(5)(a) ("When a criminal charge against a person is being or is about to be or has been submitted to a grand jury, such person has a right to appear before such grand jury as a witness in his own behalf if, prior to the filing of any indictment or any direction to file a prosecutor's information in the matter, he serves upon the district attorney of the county a written notice making such

17

request and stating an address to which communications may be
sent.").  As the New York Court of Appeals has explained, a
"defendant's right to appear as a witness before the Grand Jury,
in contrast to his Sixth Amendment constitutional right to
submit evidence on his own behalf at trial, is derived
exclusively from statute." *People v. Smith*, 87 N.Y.2d 715, 724
(N.Y.1996) (citing N.Y. Crim. Proc. Law § 190.50(5)).

Even if federal *habeas* review of petitioner's right to
testify before a grand jury were proper, the record indicates,
and petitioner also conceded, that the notice was filed on
September 30, 2009 and contained a date of October 5, 2009, to
which petitioner's arraignment attorney served reciprocal grand
jury notice on the record on October 1, 2009.  (Aff. Cor. ¶ 38.)
Petitioner speculates, however, that the dates on the notice
were physically altered, but presents no facts in support.  (Am.
Pet. 13.)  As noted, federal *habeas* relief cannot be granted
upon claims that are rooted in speculation.  *See Wood v.
Bartholomew*, 516 U.S. 1, 8 (1995) (federal courts should not
grant "*habeas* relief on the basis of little more than
speculation with slight support.")  As such, petitioner's claim
regarding notice is meritless and is denied.

## 4. Court's Refusal to Enlist a Forensic Document Expert

Petitioner argues that the trial court abused its
discretion by denying his request to enlist a forensic document

expert to analyze the victim's diary.  (Am. Pet. 30-32.)
Petitioner insists that an examination of the diary would reveal
that the diary entries were subsequently modified by the
claimant to add allegations of crimes against petitioner.  (Pet.
26.)

Under New York Law, the "decision to appoint experts
to assist a defendant is left to the sound discretion of
the trial court, *see* N.Y. County Law § 722-c(McKinney 1972); 18
U.S.C. § 3006A(e), upon a defense showing of necessity and
inability to afford the expense of such services." *Johnson v.
Harris,* 682 F.2d 49, 50 (2d Cir.1982) (citing *United States v.
Oliver,* 626 F .2d 254, 260 (2d Cir.1980)).  There is no federal
constitutional requirement that a defendant be appointed an
expert at the public's expense.  *See id.*  (citing to the state
and federal statutory authority for appointment of defense
experts). Contrary to petitioner's contention that he was
entitled to the appointment of an expert, the Second Circuit
clearly has held that such a decision is committed to the sound
discretion of the trial court.  *See Johnson,* 682 F.2d at 50.
Absent an abuse of discretion, a defendant cannot obtain
relief. *See id.* (denying *habeas* relief based on claim
that trial court erroneously failed to authorize funds for
defendant to retain a forensic expert).

Petitioner suggested that the "water solubility test" could have "definitely proven that the added lines accusing [petitioner] of rape on several entries were all written at the same time," (Am. Pet. 125), but he offered no evidence or any factual basis to support his assertion.  Petitioner's claim is thus meritless, and is denied.

## 5. **Brady Violation**

Petitioner also argues that the prosecutor withheld the copy of the complainant's diary until the first day of trial, which constitutes a *Brady* violation.  (Am. Pet. 100-101.) This argument was already raised in petitioner's 440 motion.

In a criminal matter, the prosecution has the obligation to disclose exculpatory evidence to the defendant. *Brady v. Maryland*, 373 U.S. 83 (1967); *Giglio v. United States*, 405 U.S. 150, 154 (1972).  A *Brady* violation consists of three factors: (1) "[t]he evidence at issue must be favorable to the accused, either because it is exculpatory or impeaching;" (2) "that evidence must have been suppressed by the State, either willfully or inadvertently;" and (3) "prejudice must have ensued."  *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). Evidence is material and prejudice results if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."  *United States v. Bagley*, 473 U.S. 667, 682 (1985).

Nondisclosure merits relief only if it "undermines confidence in the outcome of the trial." *Kyles v. Whitly*, 514 U.S. 419, 434 (1995) (citation and internal quotation marks omitted).

Petitioner's claim is meritless because Petitioner has provided no basis that the diary, which purportedly constitutes "colorable impeaching evidence," (Am. Pet. 103-04), contained evidence that would have led to a different result at trial. Petitioner's theory, that modifications were made to the diary entries were done all at the same time, is based on pure speculation, and thus the claim fails. *See Wood v. Bartholomew*, 516 U.S. 1, 8 (1995) (federal courts should not grant "*habeas* relief on the basis of little more than speculation with slight support.")  Plaintiff's *Brady* claim is denied.

### 6. **Absence of Trial Counsel During *Voir Dire***

Petitioner claims that he was prejudiced by his trial counsel's absence during the first part of *voir dire*. (Am. Pet. 222.)  Petitioner bases this claim on counsel's alleged absence during the clerk's recount of juror's names. (Am. Pet. at 222-223.)  Petitioner alleges that "it is clear that the court clerk, by calling out [petitioner's counsel] and stating, 'the lineup so far is,' could only be recounting the details of jurors' names to [the counsel], as he was not present to hear it when first announced in the courtroom." (Am. Pet. 223.)

Respondent notes that the record does not support the absence of trial counsel during *voir dire*.

Petitioner's allegation is entirely speculative; the clerk might have simply been repeating the jurors' seating arrangement for confirmation.  *See Wood v. Bartholomew*, 516 U.S. 1, 8 (1995) (federal courts should not grant "*habeas* relief on the basis of little more than speculation with slight support.")

Additionally, where the proceeding involved no substantive issues affecting substantial rights of the parties, the defense counsel's alleged absence during the early phase of *voir dire* is not a proper ground to disturb the judgment of convictions.  *See Lovacco v. Kelly*, No. 99 CV 3094 (GBD), 2005 WL 2482518, at *5 (S.D.N.Y. Oct. 7, 2005) (even if it is assumed that the judge was not physically within the courtroom itself, his absence was not so egregious as to constitute a structural error); *People v. Carr,* 25 N.Y.3d 105, 113 (2015) (holding that when the discussion involved important issues for trial that might have affected a "substantial right" of a party, defense counsel's presence was required.)  Plaintiff's claim regarding his trial counsel's absence during part of the *voir dire* is denied.

7. **Trial Court's Discharge of An Unsworn Alternate Juror**

Petitioner further contends that his right to a fair and impartial trial was violated when the trial court abused its

22

discretion by discharging a juror improperly.  (Am. Pet. 225.)
Specifically, petitioner questioned the trial court for not
inquiring into the circumstances of the discharge of an unsworn
juror after it was suspected that the unsworn juror had spoken
with a court officer about the case.  (Am. Pet. 225.)
Respondent explains that the alternate juror was discharged
after defense counsel reported that the alternate juror may have
overheard defense counsel's conversation regarding the trial
with a court officer during a lunch break.  (Opp. at 8.)

          Petitioner's claim is without merit.  When the trial
"court merely replaced one impartial juror with another
impartial juror," petitioner's right to a fair trial surely
remained intact.  *Rosario v. Bennett*, No. 01 CIV. 7142(RMB)(AJ,
2002 WL 31852827, at *26 (S.D.N.Y. Dec. 20, 2002) (quoting
*Ocasio v. David*, 99 Civ. 10760, 2001 WL 930847 at *1 (S.D.N.Y.
Aug.16, 2001)(holding that a habeas review court should give
broad deference to trial court's plainly reasonable decision to
discharge an unsworn juror whose ability to deliberate was in
doubt).  Here, even though petitioner averred that the court
failed to make the "requisite inquiry" as to the "cause or
ground" for the challenge, the court merely replaced an unsworn
impartial juror with another, based on the reasonable concern
that the alternate juror might have overheard defense counsel's
conversation about the case and could introduce bias to the jury

pool.  (Am. Pet. 225.)   The court's decision "will be upheld
unless the defendant shows bias and prejudice." *Ocasio v.
David*, No. 99 CIV. 10760 (JSM), 2001 WL 930847, at *1 (S.D.N.Y.
Aug. 16, 2001) (citation omitted).  Petitioner has not shown
bias or prejudice.  Thus, this claim is also meritless and
denied.

### 8. **Complainant's Improper Use of The Diary**

Petitioner alleged that the complainant was improperly
allowed to read from her diary to refresh her recollection of
the details of their abusive relationship, "without it being
marked for identification or entered into evidence."  (Pet. 58-
60.)  In apparent contradiction of his claim that the diary
should have been admitted into evidence, petitioner also claimed
that the diary constitutes inadmissible "hearsay that violated
the rules of past recollection recorded."  (*Id*. 60.)  Respondent
notes that Petitioner first raised this claim in his *coram nobis*
petition and that because the diary was used to refresh
recollection, it was not admitted.

"Due process requires the state courts in conducting
criminal trials to proceed consistently with that fundamental
fairness which is essential to the very concept of justice."
*Dunnigan v. Keane*, 137 F.3d 117, 125 (2d Cir.1998) (internal
quotation marks omitted).  "Erroneous evidentiary rulings rarely
rise to the level of harm to this fundamental constitutional

right to present a meaningful defense." *Washington v. Schriver*, 255 F.3d 45, 56 (2d Cir.2001) (internal quotation marks omitted). A ruling to exclude evidence is only "an error of constitutional dimension," *Rosario v. Kuhlman*, 839 F.2d 918, 924 (2d Cir.1988), if "the omitted evidence, evaluated in the context of the entire record, creates a reasonable doubt that did not otherwise exist." *Jones v. Stinson*, 229 F.3d 112, 120 (2d Cir.2000) (internal citations and alterations omitted).  A trial court's exclusion of evidence that was cumulative or irrelevant cannot violate a petitioner's right to a fair trial because admission of the evidence would not have affected the outcome.  Petitioner fails to explain or argue how the diary would have created reasonable doubt.

The trial court's exclusion of the diary was not error, let alone error of a constitutional dimension, because the diary was merely used to refresh the complainant's recollection.  The diary provided cumulative background evidence, and the trial court acted well within its discretion in excluding the diary. *See Blissett v. Lefevre*, 924 F.2d 434, 439 (2d Cir.1991).  Thus, the claim fails and is denied.

**9. Improper Testimony from Witness Stefania Mach**

Petitioner contends that the testimony from his downstairs neighbor, Stefania Mach, was improperly admitted, because it is prejudicial and speculative.  (Pet. 38; Am. Pet.

25

59-60, 65-66.)  Mach testified on direct examination that on one night in late September 2009, at about 9 or 10 p.m., she heard petitioner and claimant having sex, and claimant screaming something like "leave me alone, I no want, give me a break," and heard either the petitioner or claimant running.  (Trial Tr. 354-56.)

Erroneous evidentiary rulings by a state trial court generally do not rise to the level of constitutional violations upon which a federal court may issue a writ of *habeas* corpus. *See Jenkins v. Bara*, 663 F. Supp. 891, 899 (E.D.N.Y.1987) (citing *Lipinski v. New York*, 557 F.2d 289, 292 (2d Cir.1977)). Erroneously admitted evidence must be "crucial, critical, [and] highly significant."  *Collins v. Scully*, 755 F.2d 16, 19 (2d Cir.1985).  In this regard, petitioner bears a "heavy burden." *Roberts v. Scully*, 875 F.Supp. 182, 189 (S.D.N.Y.1993), *aff'd*, 71 F.3d 406 (2d Cir.1995) (unpublished table decision).  The Due Process Clause of the Fourteenth Amendment is violated where "the evidence in question 'was sufficiently material to provide the basis for conviction or to remove reasonable doubt that would have existed on the record without it.'"  *Johnson v. Ross*, 955 F.2d 178, 181 (2d Cir.1992) (quoting *Collins*, 755 F.2d at 19).

Here, the trial court allowed Mach's testimony as to whether she heard the Petitioner and the complainant having

sexual intercourse and complainant protesting.  (Trial Tr. 354-56.)  The trial court did not allow Mach to testify further as to the conversation she overheard between the complainant and the Petitioner, of whose footsteps she heard because that would have led to speculation by the jury.  (*Id*.)  The Court also admonished the jury that Ms. Mach was not present and struck testimony.  (*Id*.)  Petitioner has not shown an abuse of the trial court's discretion because the trial record makes clear that Petitioner forcibly raped complainant.  Petitioner's claim fails and is denied.

## II.  **Petitioner Was Not Denied Effective Assistance of Counsel**

Petitioner appears to allege that both his trial counsel and appellate counsel were ineffective in allowing the alleged errors referenced above to occur.  (Am. Pet. 10-12.) Petitioner contends that "appellate counsel was made aware of numerous claims of ineffective assistance of counsel that . . . would have shown trial counsel failed to perform an investigation of the facts and law."  (*Id*. at 12.)

Petitioner already raised these claims in his direct appeal, his C.P.L. § 440.10 application, and *coram nobis* petition.  The Court considers claims of ineffective assistance of counsel upon *de novo* review.  "In order to prevail, [petitioner] must first satisfy the prongs of *Strickland* on *de novo* review on the merits."  *Rosario v. Ercole*, 601 F.3d 118,

27

126 (2d Cir. 2010.)  A court reviewing a claim for ineffective assistance of counsel on a writ of *habeas corpus* evaluates the two-part *Strickland* test.  To prevail on an ineffective assistance of counsel claim, a petitioner must demonstrate: (1) that his counsel's performance was so deficient that it was objectively unreasonable under professional standards prevailing at the time; and (2) that his counsel's deficient performance was prejudicial to the petitioner's case.  *Strickland v. Washington*, 466 U.S. 668, 687.

Petitioner may prove the first prong by showing that counsel's representation "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688.  A reviewing court, however, must be "highly deferential" and avoid "second guess[ing]" counsel's decisions so long as they are within the "wide range of reasonable professional assistance." *Id*. at 689. Petitioner can demonstrate prejudice by establishing "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.  As explained above, Petitioner has failed to show that counsel's alleged errors, including but not limited to, the failure to object to the admissibility of certain evidence and the purported and unsupported absence of defense counsel during the first part of *voir dire*, was prejudicial.  (*See supra* at Section I. Petitioner Was Not Denied Due Process or a Fair

Trial.)  Thus, the claim that trial counsel was ineffective is denied.

Appellate counsel also was not ineffective.  Appellate counsel is not required to raise every colorable claim urged by the client, but is entitled to focus on key issues while "winnowing out weaker arguments."  *See e.g.*, *Jones v. Barnes*, 463 U.S. 745, 751–53 (1983).  Reviewing courts should not second guess the reasonable professional judgments of appellate counsel as to the most promising appellate issues.  *Id.* at 754.  A *habeas* petitioner may establish constitutionally inadequate performance of appellate counsel only by showing that appellate counsel "omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker."  *Mayo*, 13 F.3d at 533.

Respondent argues that appellate counsel "wrote a 53-page brief arguing that trial counsel's performance was deficient for failing to object to, or to request a mistrial in response to, three elements of the trial" related to the admissibility of certain testimony and evidence.  (Am. Opp. at 36.)  Although appellate counsel may not have addressed all of Petitioner's arguments, in applying deference to counsel's strategy, as required by *Strickland*, the conduct of petitioner's counsel was objectively reasonable, and the ineffective assistance of appellate counsel claim fails on the merits.  *See*

*e.g.*, *Jones v. Barnes*, 463 U.S. 745, 751-53 (1983) (Appellate counsel is not required to raise every colorable claim urged by the client, but is entitled to focus on key issues while "winnowing out weaker arguments.")   Therefore, Petitioner's ineffective assistance of counsel claim is denied.

<u>**CONCLUSION**</u>

For the forgoing reasons, the petition for a writ of *habeas corpus* is DENIED in its entirety. A certificate of appealability shall not issue because petitioner has not made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Clerk of Court is respectfully directed to enter judgment in favor of Respondent, close this case, and send a copy of this Memorandum and Order and the judgment to the petitioner at his last known address and note service on the docket.

**SO ORDERED.**

Dated:      October 4, 2021
            Brooklyn, New York


                            _____
                                    /s/
                            Hon. Kiyo A. Matsumoto
                            United States District Judge